Herbert S. Washer (HW 2375)
Adam S. Hakki (AH 3561)
Kirsten N. Cunha (KC 0283)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, New York  10022-6069
Tel.:  (212) 848-4000
Fax:  (212) 848-7179

*Attorneys for Amaranth International
Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
IN RE: AMARANTH NATURAL GAS                                  :
COMMODITIES LITIGATION                                       :
                                                             :        Master File No. 07 Civ. 6377 (SAS)
                                                             :
This Document Relates to:                                    :
                                                             :               **ECF CASE**
ALL ACTIONS                                                  :
                                                             :
                                                             :
-------------------------------------------------------------X

**AMARANTH INTERNATIONAL LIMITED'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS CORRECTED
CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS .......................................................................................................3

    I.      AIL's Structure and Role .................................................................................3

    II.     AIL's Location And Governance......................................................................4

    III.    Plaintiffs' Claims Against AIL ........................................................................5

ARGUMENT ............................................................................................................................5

    I.      The Court Lacks Personal Jurisdiction Over AIL.............................................5

           A.     The Court Lacks Both General and Specific Jurisdiction Over AIL ...........6

           B.     The Court Lacks Agency Jurisdiction Over AIL........................................7

    II.     The Court Lacks Subject Matter Jurisdiction As To AIL Because Plaintiffs Lack Standing To Sue AIL Under The CEA (Counts I And II) .............8

           A.     Plaintiffs Lack Standing To Sue AIL As A Primary Violator Under The CEA (Count I)..........................................................................8

           B.     Plaintiffs' Lack Standing To Bring Their Aiding And Abetting Claim Against AIL (Count II)..................................................................10

           C.     There Is No Private Right Of Action Under The CEA For Vicarious Liability, For Control Person Liability, Or For Violations Of CFTC Rule 166.3 ...............................................................10

                 1.     Control Person Liability..................................................................11

                 2.     Vicarious Liability ........................................................................11

                 3.     CFTC Rule 166.3 ..........................................................................13

    III.    The Complaint Fails to State a Claim Against AIL..............................................13

           A.     Plaintiffs Fail To State A Claim Of Market Manipulation Under The CEA (Count I).........................................................................15

B.    Plaintiffs Fail To State A Claim For Vicarious Liability Under The CEA (Count II) ..................................................................................18

    1.    Plaintiffs Do Not Properly Allege A Principal-Agent Relationship Between AIL And Amaranth Advisors ...................18

    2.    AIL's Status As Passive Investor In The Master Fund Does Not Extend Vicarious Liability To AIL................................20

C.    Plaintiffs Fail To State A Claim For Aiding And Abetting Under The CEA (Count II) ..................................................................................23

D.    Plaintiffs Fail To State A Claim For Control Person Liability Under the CEA (Count II)..........................................................................25

E.    Plaintiffs Fail To State A Claim Under CFTC Rule 166.3 (Count II)..................................................................................................................26

IV.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed (Count V).................27

A.    Plaintiffs' Unjust Enrichment Claim Is Preempted By The CEA.............27

B.    Plaintiffs Fail To State A Claim For Unjust Enrichment Against AIL............................................................................................................28

CONCLUSION........................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*766347 Ontario, Ltd. v. Zurich Capital Mkts.,* 274 F. Supp. 2d 926 (N.D. Ill. 2006)..................23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................14

*AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ........................19

*In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528 (S.D.N.Y. 2007)................................29

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................................................3, 14

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) ..................................11, 12

*Benfield v. Mocatta Metals Corp.,* No. 91 Civ. 8255 (LJF), 1992 WL 58879 (S.D.N.Y. Mar. 13, 1992)........................................................................24

*Bolt Elec., Inc. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) ....................................3

*Bruhl v. Price Waterhousecoopers Int'l*, No. 03 Civ. 23044 (KAM), 2007 WL 997362 (S.D. Fla. Mar. 27, 2007)........................................................16

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................8

*Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 230 F. Supp. 2d 439 (S.D.N.Y. 2002)........................21

*CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002) ........................................25

*CFTC v. Commodities Fluctuations Sys., Inc.*, 583 F. Supp. 1382 (S.D.N.Y. 1984)....................26

*CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482 (S.D.N.Y. 2004) ............................................25, 26

*CFTC v. Liberty Mut. Group, Inc.*, No. 07 Civ. 21267 (EGT), 2008 WL 60498 (S.D. Fla. Jan. 3, 2008)........................................................26

*CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321 (11th Cir. 2002)..................................26

*CFTC v. Standard Forex*, No. 93 Civ. 0088 (CPS), 1993 WL 809966 (E.D.N.Y. Aug. 9, 1993) ........................................................25

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)........................................................ 10

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006)........................................19

*Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd.,* No. 97 Civ. 3802, 1998 WL 782024
(S.D.N.Y. Nov. 6, 1998) ........................................................................................20

*CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006).............................................29

*Credit Suisse Securities (USA) LLC v. Billing*, 127 S. Ct. 2383 (2007) ........................................27

*In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553
(S.D.N.Y. June 28, 2007)..................................................................................... *passim*

*Cunningham v. Water Tan & Co.*, 65 F.3d 1351 (7th Cir. 1995) .................................................21

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 265 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................28

*Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998) ...................................................................24

*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 231 (S.D.N.Y. 2005),
*aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) ...................12

*Elliott Assocs., L.P. v. Covance, Inc.*, No. 00 Civ. 4155 (SAS), 2000 WL 1752848
(S.D.N.Y. Nov. 28, 2000) ........................................................................................3

*Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999) .......................................14

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 Civ. 3791 (CSH), 1995 WL 77589 (S.D.N.Y.
Feb. 27, 1995) ........................................................................................................20

*FDIC. v. FSI Futures, Inc.*, No. 88 Civ. 0906 (PNL), 1991 WL 224302 (S.D.N.Y. Oct.
16, 1991) ...............................................................................................................13

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 258 N.E.2d 202 (N.Y. 1970), *amended
on other grounds*, 117 F.R.D 359 (S.D.N.Y. 1987)............................................................8

*Fidelity Funding of Cal., Inc. v. Reinhold*, 79 F. Supp. 2d 110 (E.D.N.Y. 1997) ........................24

*In re Fidelity/Micron Sec. Litig.*, 964 F. Supp. 539 (D. Mass. 1997) ...........................................21

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).................................14

*Fustok v. Conticommodity Servs.*, 618 F. Supp. 1069 (S.D.N.Y. 1985)..................................11, 13

*George Reiner & Co. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977)....................................................6

*Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006).........................................................................21

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439 (S.D.N.Y. 2007).................28

*Grossman v. Citrus Assocs. of the New York Cotton Exch., Inc.*, 706 F. Supp. 221
    (S.D.N.Y. 1989) ..................................................................................................9, 10, 16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ..............................................................18

*Kamen v. AT&T Co.*, 791 F.2d 1006 (2d Cir. 1986) .......................................................3

*Karabu Corp. v. Gitner,* 16 F. Supp. 2d 319 (S.D.N.Y. 1998) ........................................6

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ...........................................................28

*Khalid Bin Alwaleed Found. v. E.F. Hutton & Co.* 709 F. Supp. 815 (N.D. Ill. 1989) ................13

*Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255 (2d Cir. 2006) .................8, 10, 25, 27

*Kolari v. New York – Presbyterian Hosp.,* 455 F.3d 118 (2d Cir. 2006).......................27

*Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd,* 152 F.3d 918
    (2d Cir. 1998) ........................................................................................................ *passim*

*Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332 (S.D.N.Y. 2005) ...............14, 25

*Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988) .........................................7

*Landoil Res. Corp. v. Alexander & Alexander Servs.,* 565 N.E.2d 488 (N.Y. 1990) .....................6

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006) ..............................................17

*In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002).........................16, 22

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956 (2d Cir. 1998)...............28

*McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604 (N.Y. 1967).........................6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................5, 6

*Meyer v. Holley*, 537 U.S. 280 (2003) ..........................................................................20

*Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331
    (S.D.N.Y. 1998) ..........................................................................................................28

*Michelson v. Merrill Lynch*, 619 F. Supp. 727 (S.D.N.Y. 1985)...................................11

*Modica v. Modica*, 791 N.Y.S.2d 134 (App. Div. 2d Dep't 2005)................................29

*In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004) ........................ *passim*

*In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ........................ *passim*

*Niagara Mohawk Energy Mktg, Inc. v. Entergy Power Mktg. Corp.*, 706 N.Y.S.2d 794
    (App. Div. 4th Dep't 2000) ................................................................................5

*Nicholas v. Saul Stone & Co.,* 224 F.3d 179 (3d Cir. 2000)............................................13

*Olmstead v. Pruco Life Ins. Co.,* 283 F.3d 429 (2d Cir. 2002)......................................12

*Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491 (S.D.N.Y. 2005) ....................................29

*Pits, Ltd. v. Am. Express Bank Int'l*, 911 F. Supp. 710 (S.D.N.Y. 1996)......................21

*Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695 (N.Y. 1972)..........................29

*Point Landing, Inc. v. Omni Capital Int'l., Ltd.,* 795 F.2d 415 (5th Cir. 1986*), aff'd sub
    nom. Omni Capital Int'l., Ltd. V. Rudolph Wolff & Co.,* 484 U.S. 97 (1987) ..................13

*Polansky v. Gelrod*, 798 N.Y.S.2d 762 (App. Div. 3d Dep't 2005)...................................7

*Reading Int'l v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003)..................28

*Redtail Leasing, Inc. v. Bellezza,* No. 95 Civ 5191 (JFK), 1997 WL 603496 (S.D.N.Y.
    Sept. 30, 1997) ........................................................................................29

*Rush v. Savchuk,* 444 U.S. 320 (1980)............................................................................8

*Seiko Time Corp. v. Pascual*, 117 F.R.D. 354 (S.D.N.Y. 1987).....................................7

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) .............................3

*In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y.
    Aug. 31, 2000) ........................................................................................16

*S. Pac. Transp. Co. v. Cont'l Shippers Ass'n*, 642 F.2d 236 (8th Cir. 1981)................19

*Stewart v. Volkswagen of Am., Inc.*, 613 N.E.2d 518 (N.Y. 1993)..................................5

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta*, 128 S. Ct. 761 (2008)............11, 12

*Stotler v. CFTC*, 855 F.2d 1288 (7th Cir. 1988) ..........................................................21

*Sundial Int'l Fund Ltd.  v. Delta Consultants Inc.,,*, 923 F. Supp. 38 (S.D.N.Y. 1996) ................10

*Tatum v. Legg Mason Wood Walker, Inc.*, 83 F.3d 121 (5th Cir. 1996) ........................................18

*Tauza v. Susquehanna Coal*, 115 N.E. 915 (N.Y. 1917) ................................................................6

*Thornock v. Kinderhill Corp.*, 749 F. Supp. 513 (S.D.N.Y. 1990)................................................24

*Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F. Supp. 1033 (S.D.N.Y. 1993) ...........................9

*Time, Inc. v. Simpson,* No. 02 Civ. 4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)........................................................................................................7

*United States v. Feldman*, 825 F.2d 124 (7th Cir. 1987) ..............................................................19

*Weil v. Am. Univ.,* No. 07 Civ. 7748 (DAB), 2008 WL 126604 (S.D.N.Y. Jan. 2, 2008) .............3

## STATUTES

7 U.S.C. § 1 (2002) .............................................................................................1, 2, 25, 27

7 U.S.C. § 2(a)(1)(B) (2002).............................................................................................12

7 U.S.C. § 13c (2002) .................................................................................................11, 13

7 U.S.C. § 25 (1994) .............................................................................................. *passim*

17 C.F.R. § 166.1 (2006) ...................................................................................................26

17 C.F.R. § 166.3 (2006) .............................................................................................13, 26

Fed. R. Civ. P. 8 ..................................................................................................1, 2, 14, 18

Fed. R. Civ. P. 9(b) ............................................................................................1, 2, 15, 18

Fed. R. Civ. P. 12(b)(1), 12(b)(2) .......................................................................................1, 3

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 2, 3

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................................5

N.Y. C.P.L.R. 301 ...............................................................................................................5

N.Y. C.P.L.R. 302(a) ......................................................................................................5, 6

S. Rep. No. 101-337 (1990) .................................................................................... *passim*

**MISCELLANEOUS**

Restatement (Third) of Agency § 1.01 (2006)...............................................................19

Amaranth International Limited ("AIL") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' corrected consolidated class action complaint with prejudice pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(2), and 12(b)(6). AIL joins and incorporates by reference the arguments of all other defendants in their motions to dismiss to the extent applicable to AIL.

## PRELIMINARY STATEMENT

AIL is a Bermuda investment company that invested in Amaranth LLC (the "Master Fund"), a Cayman Islands investment company. Plaintiffs allege that Amaranth Advisors LLC ("Amaranth Advisors"), which managed the assets of the Master Fund, engaged in trading that violated the Commodity Exchange Act (the "CEA"). Plaintiffs do not allege that AIL participated in, or knew about, any of the alleged wrongful conduct. Nor do plaintiffs allege facts that could establish that Amaranth Advisors was acting as AIL's agent when it engaged in the relevant trading. Instead, plaintiffs seek to hold AIL liable simply because it passively invested in a hedge fund whose assets were managed by Amaranth Advisors. That would be no different than holding a mutual fund investor *personally* liable for market manipulation or insider trading by the mutual fund's investment advisor. So far as AIL is aware, no court has ever sustained such a claim under the CEA against a mutual or hedge fund investor. In fact, it does not appear that any plaintiff has even attempted to pursue this theory before. Even worse, AIL is a *foreign* investor in a *foreign* hedge fund and did no business in the United States either directly or indirectly. Thus, plaintiffs' case against AIL not only violates the most basic principles of investor liability, but it also violates the limits of this Court's personal jurisdiction.

Plaintiffs' claims against AIL fail on multiple, independent grounds.

*First*, AIL is not subject to personal jurisdiction. It transacted no business in the United States and had no meaningful contacts with the forum. Furthermore, AIL was not a "principal" with respect to any of the conduct in question. Accordingly, there can be no personal jurisdiction over AIL under a theory of vicarious jurisdiction.

*Second*, plaintiffs lack standing to pursue claims against AIL. To have standing under the CEA, plaintiffs must have one of the statute's requisite relationships with the defendant. Plaintiffs have alleged *none* of the requisite relationships with AIL.

*Third*, even if plaintiffs had jurisdiction and standing to pursue AIL, they have failed to state a claim. The complaint does not allege that AIL committed any acts prohibited by the CEA. Instead, without any legal or factual basis to do so, plaintiffs have simply lumped AIL together with other entities that share the word "Amaranth" in their corporate name. Such generalized and conclusory pleading is impermissible under the CEA, Rule 12(b)(6), Rule 9(b), and even Rule 8.

In addition, while not strictly relevant to this motion, it is a matter of public record that AIL, along with other investors in the Master Fund, lost *billions* when the fund collapsed. Thus, plaintiffs' meritless claims against AIL seek to pile more losses on an innocent victim of one of the largest fund collapses in history. AIL's own investors include numerous public pension funds that lost huge sums on their investments. In addition, as the Court is aware, the Commodity Futures Trading Commission (the "CFTC") has brought a civil action in this district under the CEA against Amaranth Advisors and others arising from the same facts as this

case.[1]  Significantly, after extensive investigation, the CFTC did not name AIL as a defendant in

its case.[2]

## STATEMENT OF FACTS[3]

### I.     AIL's Structure and Role

AIL is a private investment fund organized under Bermuda law.  (Plaintiffs'

Corrected Consolidated Class Action Complaint, dated Feb. 14, 2008 ("Compl.") ¶ 26;

Declaration of Roderick M. Forrest, dated April 25, 2008 ("Forrest Decl.") ¶ 1.)  AIL invests in

the Master Fund, a Cayman Islands investment company.  (Compl. ¶ 26; Forrest Decl. ¶ 3.)

AIL's relationship with the Master Fund is, and at all relevant times was, solely as a passive

investor with respect to the conduct at issue.  (Forrest Decl. ¶ 3.)

Amaranth Advisors acts as investment advisor to the Master Fund pursuant to an

[1] *See* Complaint For Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act, dated July 25, 2007, *U.S. Commodity Futures Trading Commission v. Amaranth Advisors, LLC,*  No. 07 Civ. 6682 (S.D.N.Y. July 25, 2007).

[2] AIL certifies that, on April 1, 2008, it sent a letter to plaintiffs' counsel summarizing its arguments in support of this motion as required by the Court.

[3] Plaintiffs' factual allegations are taken as true solely for purposes of AIL's motion to dismiss under Rule 12(b)(6).  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). Conclusory allegations are not credited as true.  *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002); *In re Crude Oil Commodity Litig.,* No, 06 Civ. 6077, 2007 WL 1946553 at *3 (S.D.N.Y. June 28, 2007) (a complaint attacked by 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citing *Bell At. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007)).  Moreover, the Court may, for purposes of AIL's 12(b)(6) arguments, consider documents cited or referenced in the complaint, or publicly filed or available documents.  "[T]he court may also consider documents, while not explicitly incorporated into the complaint, that are 'integral' to plaintiff's claims."  *Elliott Assocs., L.P. v. Covance, Inc.*, No. 00 Civ. 4155 (SAS), 2000 WL 1752848, at *4 (S.D.N.Y. Nov. 28, 2000).

AIL provides additional facts in the Declaration of Roderick M. Forrest ("Forrest Decl.") solely for purposes of its Rule 12(b)(1) and 12(b)(2) arguments.  In deciding motions under Rules 12(b)(1) and 12(b)(2), the Court may review evidence outside the pleadings, including affidavits. *See Weil v. Am. Univ.,* No. 07 Civ. 7748 (DAB), 2008 WL 126604, at *3 (S.D.N.Y. Jan. 2, 2008); *Kamen v. AT&T Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986).

investment advisory agreement, by which the Master Fund delegated plenary trading authority to Amaranth Advisors.  (Compl. ¶ 22; Forrest Decl. ¶ 3.)  AIL is not a party to that agreement and, at all relevant times, had no legal, contractual, or agency relationship with Amaranth Advisors or any other party named in these proceedings (other than as a passive investor in the Master Fund).  (Forrest Decl. ¶ 3.)  AIL has no authority to control, influence, or participate in the investment decisions of Amaranth Advisors (or any of its affiliates).  (*Id.* ¶ 4.)

AIL had no role in any of Amaranth Advisors' trading decisions, including the alleged transactions that are the subject of this lawsuit.  (*Id.*)  AIL was not a party to any of the alleged transactions, and none of the alleged transactions was consummated on AIL's behalf, for AIL's account, as agent for AIL, or involved AIL's assets.  (*Id.*)  AIL had no knowledge of the alleged scheme or allegedly improper transaction strategies at issue.  (*Id.*)

None of these facts is contradicted by any well-pleaded, non-conclusory, factual allegation in the complaint.

## II.    AIL's Location And Governance

AIL's registered office is in Bermuda.  (*Id.* ¶ 1.)  The Board of Directors of AIL consists entirely of two directors, both Bermuda lawyers.  (*Id.* ¶ 2.)  These directors reside in Bermuda and are wholly independent from Amaranth Advisors.  (*Id.* ¶¶ 2-3.)

AIL has no, and at all relevant times had no, directors, officers, or employees who work or reside in the United States.  (*Id.* ¶ 2.)  AIL is not, and never has been, licensed or qualified to do business (or otherwise registered) in the United States or anywhere else outside of Bermuda.  (*Id.*)  AIL does not have and at all relevant times did not have: (i) a registered agent for service of process; (ii) a post office box; or (iii) even a telephone listing in the United States.  (*Id.*)  AIL (i) has never owned or leased any real property in the United States; (ii) has never

paid, and has never been required to pay, taxes in the United States; and (iii) has never commenced any suit in any court of the United States. (*Id.*)

Consistent with Bermuda law, control of AIL is vested in its Board of Directors. (*Id.*) AIL's Board of Directors is elected by its investors, not by an Amaranth-affiliated person or entity. (*Id.*) None of the other defendants or any of their employees or agents has, or at any relevant time had, a seat or representation on AIL's board. (*Id.*)

None of the assertions is contradicted by any factual allegation in the complaint.

## III.    Plaintiffs' Claims Against AIL

The complaint makes the following claims against AIL: (1) market manipulation in violation of Sections 6(c), 6(d), 9(a), and 22(a) of the CEA (Count I); (2) vicarious liability under Section 2(a)(1)(B) of the CEA (Count I and Compl. ¶ 26); (3) aiding and abetting pursuant to Section 22(a)(1) of the CEA (Count II and Compl. ¶ 254); (4) control person liability under Sections 2(a)(1)(B), 4(b), and 13(b) of the CEA (Count II and Compl. ¶ 26); and (5) unjust enrichment (Count V).

## ARGUMENT

## I.    The Court Lacks Personal Jurisdiction Over AIL

The scope of this Court's personal jurisdiction is governed by New York's long-arm statute. *See* Fed R. Civ. P. (4)(k)(1)(A). Personal jurisdiction over a non-domiciliary is determined according to CPLR Sections 301 and 302(a), both of which require the defendant to have meaningful and purposeful contacts with the state of New York. *See, e.g., Niagara Mohawk Energy Mktg, Inc. v. Entergy Power Mktg. Corp.*, 706 N.Y.S.2d 794, 795-96 (App. Div. 4th Dep't 2000). Plaintiffs bear the burden of demonstrating that the court has jurisdiction. *Stewart v. Volkswagen of Am., Inc.*, 613 N.E.2d 518, 521 (N.Y. 1993); *see also Metro. Life Ins.*

*Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996). Plaintiffs have not and cannot meet that burden against AIL.

### A.    The Court Lacks Both General and Specific Jurisdiction Over AIL

General "personal jurisdiction is proper if the defendant is 'doing business' in New York so as to establish a presence in the State. The defendant must be doing business 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Karabu Corp. v. Gitner,* 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998) (citing *Landoil Resources Corp. v. Alexander & Alexander Servs.,* 565 N.E.2d 488, 490 (N.Y. 1990)). Presence in the state generally requires that the defendant conduct business in New York on a regular, day-to-day basis. *See Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) (Cardozo, J.). Here, there can be no serious argument that AIL conducts any business in New York, let alone on a continual and systematic basis. (*See, supra,* pages 4 and 5 (discussing in detail absence of contacts between AIL and New York/United States).)

The Court also lacks specific jurisdiction over AIL. A defendant is subject to personal jurisdiction in New York if it "transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the cause of action relates to that conduct. CPLR § 302(a)(1); *see also George Reiner & Co. v. Schwartz*, 363 N.E. 2d 551, 553, (N.Y. 1977); *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967). As previously noted, AIL does not have *any* contacts with New York, let alone any contacts related to the conduct at issue. AIL had absolutely no role in any of Amaranth Advisors' trading decisions, including the alleged transactions that are the subject of these proceedings. (*See, supra,* pages 3 and 4.)

**B.**     **The Court Lacks Agency Jurisdiction Over AIL**

To establish personal jurisdiction on the basis of agency, a plaintiff must "convince the court that [the agent] engaged in purposeful activities in [New York] in relation to [the relevant] transaction for the benefit of and with the knowledge and consent of the … defendant[]." *Time, Inc. v. Simpson,* No. 02 Civ. 4917 (MBM), 2003 WL 23018890, at *4 (S.D.N.Y. Dec. 22, 2003) (citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988)).  In addition, a plaintiff also must establish that the "defendant[] exercised sufficient control over [the alleged agent] to make him [an] agent [of the defendant]." *See Polansky v. Gelrod,* 798 N.Y.S.2d 762, 763 (App. Div. 3d Dep't 2005).

None of the necessary components of an agency relationship is present here. Plaintiffs do not allege that AIL had any knowledge of the alleged manipulative conduct at issue, that AIL consented to any such conduct, or that AIL had any control whatsoever over any of the alleged conduct.  AIL was merely a passive investor in the Master Fund.  It had no agency relationship with Amaranth Advisors or any other party named in these proceedings.  (Forrest Decl. ¶¶ 3-4); *see Time, Inc.,* 2003 WL 23018890, at *6 (rejecting agency theory of personal jurisdiction where plaintiff made only conclusory allegations with respect to defendant's knowledge of, consent to, and control over, alleged agent's conduct); *Polansky,* 798 N.Y.S.2d at 764 (rejecting agency theory of personal jurisdiction where "plaintiff offer[ed] only the conclusory allegation" of agency).

The fact that AIL invested in the Master Fund, which, in turn, invested in the U.S. through Amaranth Advisors does not confer jurisdiction over AIL.  The contacts of a corporation may not be attributed to the corporation's shareholders for purposes of gaining personal jurisdiction over the shareholders.  *See Seiko Time Corp. v. Pascual,* 117 F.R.D. 354, 357 n.2 (S.D.N.Y. 1987) ("[T]he mere fact that [defendant] is a controlling shareholder of a corporation

concededly doing business in New York would be insufficient to sustain jurisdiction ….") (citing *Ferrante Equip. Co. v. Lasker-Goldman Corp.,* 258 N.E.2d 202, 204 (N.Y. 1970)), *amended on other grounds,* 117 F.R.D. 359 (S.D.N.Y. 1987).

Finally, plaintiffs' lumping of AIL together with the other "Amaranth Defendants" throughout the complaint cannot support personal jurisdiction over AIL. Under settled constitutional law, "[e]ach defendant's contacts with the [jurisdiction] must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (state court's effort to "consider[] the defending parties together and aggregat[e] their forum contacts in determining whether it had jurisdiction" was "plainly unconstitutional").

## II.    The Court Lacks Subject Matter Jurisdiction As To AIL Because Plaintiffs Lack Standing To Sue AIL Under The CEA (Counts I And II)

### A.    Plaintiffs Lack Standing To Sue AIL As A Primary Violator Under The CEA (Count I)

In 1982, Congress amended the CEA and codified an investor's private right of action for damages resulting from violations of the CEA. 7 U.S.C. § 25 (1994); *see also Kolbeck v. LIT Am., Inc.,* 923 F. Supp. 557, 563 (S.D.N.Y. 1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998); *Klein & Co. Futures, Inc. v. Board of Trade of City of New York,* 464 F.3d 255, 259 (2d Cir. 2006). CEA § 25 limits the universe of potential private plaintiffs by providing that a plaintiff must be one:

(A) who received trading advice from such a person for a fee;

(B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of [an option, a contract or an interest in a commodity pool]; or

(D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

7 U.S.C. § 25(a)(1) (1994); *see also Kolbeck,* 923 F. Supp. at 566 (CEA § 25(a)(1) lists "four disjunctive 'conditions precedent,' at least one of which must be met in order to bring a private action for violation of the CEA") (citing *Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F. Supp. 1033, 1042-43 (S.D.N.Y. 1993)); *Grossman v. Citrus Assocs. of the New York Cotton Exch., Inc.,* 706 F. Supp. 221, 230-31 (S.D.N.Y. 1989).

Here, plaintiffs have none (and have alleged none) of the four requisite relationships with AIL. *First*, plaintiffs do not allege that they received trading advice from AIL for a fee. *Second*, plaintiffs do not allege that they made any contract or sale of a commodity for future delivery through AIL, or that plaintiffs deposited funds with AIL for that purpose. *Third*, plaintiffs do not allege that they purchased from or sold to AIL any option, contract, or interest in a commodity pool, or that plaintiffs placed through AIL any orders for options, contracts, or interests in commodity pools. *Fourth*, plaintiffs have not alleged that AIL itself engaged in any acts of market manipulation. The complaint merely alleges that "investors invested directly into [AIL], which invested substantially all of its capital in Amaranth LLC. … *Amaranth LLC then invested the funds on a global basis in a host of trading vehicles*." (Compl. ¶ 26 (emphasis added)). There is no allegation that AIL's own assets were employed to purchase or sell any futures contracts at all, let alone used to manipulate the price of contracts purchased by plaintiffs. Amaranth Advisors traded the assets of *Amaranth LLC*, not those of *AIL*. (Forrest Decl. ¶ 4.)

Because plaintiffs cannot satisfy the CEA's conditions precedent, their claims must be dismissed for lack of subject matter jurisdiction. *See Grossman,* 706 F. Supp. at 230-31

(dismissing complaint for failure to meet CEA's "conditions precedent"); *Klein & Co. Futures,* 464 F.3d at 260-61.

**B.      Plaintiffs' Lack Standing To Bring Their Aiding And Abetting Claim Against AIL (Count II)**

In addition to private actions against primary violators, CEA § 25 permits private plaintiffs to seek damages from any person who willfully "aids, abets, counsels, induces, or procures the commission of a violation" of the CEA.  *See* 7 U.S.C. § 25(a)(1).  Courts in this circuit have consistently held, however, that even an alleged aider and abettor must stand in one of the four relationships enumerated in § 25 for plaintiffs to have standing.  *See Grossman,* 706 F. Supp. at 230-31; *Sundial Int'l Fund v. Delta Consultants,* 923 F. Supp. 38, 41 (S.D.N.Y. 1996).  Accordingly, Count II fails for the same reason as Count I.  Furthermore, as explained at pages 22 and 23, *infra*, plaintiffs do not come close to properly alleging that AIL was an aider and abettor in any event.  They allege no knowledge of, or participation in, wrongdoing on the part of AIL.

**C.      There Is No Private Right Of Action Under The CEA For Vicarious Liability, For Control Person Liability, Or For Violations Of CFTC Rule 166.3**

Plaintiffs do not remedy their standing deficiency by alleging theories of control person and vicarious liability.  When Congress enacted the private right of action in CEA § 25, though it authorized private lawsuits against aiders and abettors, it did not include language that would permit private plaintiffs to assert theories of control person liability or vicarious liability under the CEA.  As the Supreme Court has noted, absent express Congressional authorization in the statute, such claims will not be implied.  *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177 (1994) (rejecting existence of private right of action for aiding and abetting violations of Securities Exchange Act § 10(b): "[I]f … Congress

intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text"); *Stoneridge Inv. Partners, LLC v. Scientific Atlanta,* 128 S. Ct. 761, 772 (2008) (recognition of an implied right of action absent Congressional intent "necessarily extends [the judiciary's] authority to embrace a dispute Congress has not assigned it to resolve" and "runs contrary to the established principal that the jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation") (internal citations and quotations omitted); *see also Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 116-17 (2d Cir. 2007).

### 1.    Control Person Liability

As noted above, CEA § 25(a)(1), which governs private actions, is silent with respect to control person liability.  Courts in this circuit have held that this absence of express language does, in fact, preclude control person liability in private actions under the CEA.  *See Fustok v. Conticommodity Servs.,* 618 F. Supp. 1069 (S.D.N.Y. 1985); *Michelson v. Merrill Lynch,* 619 F. Supp. 727 (S.D.N.Y. 1985).  Indeed, CEA § 13c(b) expressly limits actions for control person liability to those "brought by the Commission."  *See Fustok,* 618 F. Supp. at 1072-73 (discussing legislative history).  Plaintiffs therefore lack standing to assert their claim for control person liability against AIL.

### 2.    Vicarious Liability

CEA § 25(a)(1) is also silent as to vicarious liability.  Thus, for the same reasoning as applied to control person liability, a private plaintiff may not pursue such claims under the CEA.  Only the CFTC may bring control person and vicarious liability claims under the statute, and, significantly, it has declined to do so against AIL.  This distinction is not unique to the CEA.  For example, earlier this year in *Stoneridge*, the Supreme Court drew a sharp distinction between secondary liability theories that expressly may be brought by the SEC and

assertions by private plaintiffs that they impliedly may bring such claims, observing that private rights of action must be narrowly construed. *Stoneridge,* 128 S. Ct. at 774.

Courts in this circuit employ the following test to determine whether a private right of action exists under federal statutory provisions: "1) whether the provision explicitly provides a private right of action; 2) whether the provision contains 'rights-creating language' for those protected under the statute; 3) whether the statute has provided an alternative method of enforcement; and 4) whether Congress provided a private right of action for enforcement of any other section of the statute." *In re Eaton Vance Mut. Funds Fee Litig.,* 380 F. Supp. 2d 222, 231 (S.D.N.Y. 2005) (citing *Olmstead v. Pruco Life Ins. Co.,* 283 F.3d 429, 432-34 (2d Cir. 2002)), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110 (2d Cir. 2007). Application of these factors warrants rejection of private rights of action for vicarious liability under the CEA. First, as noted above, CEA § 25 does not explicitly provide a private right of action for vicarious liability. Second, it does not contain any "rights-creating language" for those protected under the CEA. Third, the CEA provides an alternative method of enforcement against those whose agents violate provisions of the CEA. Specifically, CEA § 2(a)(1)(B) provides the CFTC with jurisdiction to pursue principals for "[t]he act, omission, or failure of any official, agent, or other person acting for [the principal] within the scope of his employment or office." 7 U.S.C. § 2(a)(1)(B). Finally, Congress expressly provided for private rights of action for both direct violations of the CEA, as well as for aiding and abetting direct violations. 7 U.S.C. § 25(a)(1). As such, if Congress intended for the agency principles contained in CEA § 2(a)(1)(B) to apply under § 25, Congress could have – and would have – expressly included language to that effect,

as it did by incorporating the aiding and abetting language from CEA § 13c(a) into CEA §

25(a)(1).[4]

### 3.    CFTC Rule 166.3

Finally, to the extent that plaintiffs' claims are based on 17 C.F.R. § 166.3, they

must be dismissed because no private right of action lies for violations of this CFTC Regulation.

*See Khalid Bin Alwaleed Foundation v. E.F. Hutton & Co., Inc.,* 709 F. Supp. 815, 820 (N.D. Ill.

1989); *Fustok*, 618 F. Supp. at 1072.

## III.    The Complaint Fails to State a Claim Against AIL

As discussed, Counts I and II of the complaint assert that AIL is liable under the

CEA both as a primary violator, as well as under theories of vicarious, aiding and abetting, and

control person liability.  (Compl. ¶¶ 237-56).  Even assuming that each of these theories existed

---

[4] Previous decisions allowing vicarious liability under the CEA are therefore wrongly decided.
*See, e.g., Kolbeck v. LIT Am., Inc.,* 923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d
Cir. 1998); *In re Natural Gas Commodity Litig.,* 337 F. Supp. 2d 498, 507 (S.D.N.Y. 2004);
*FDIC v. FSI Futures, Inc.,* No. 88 Civ. 0906 (PNL), 1991 WL 224302 (S.D.N.Y. Oct. 1, 1991).
This is particularly clear in light of *Eaton Vance* and subsequent decisions of the Supreme Court
noted above strictly construing implied private rights of action.  Moreover, rejection of vicarious
liability in private actions under the CEA comports with the narrow statutory construction of
CEA § 25 appropriately adopted by other courts.  *See, e.g., Khalid Bin Alwaleed Foundation v.
E.F. Hutton & Co., Inc.,* 709 F. Supp. 815, 819-20 (N.D. Ill. 1989) (statutory history of CEA §
25 indicates "that Congress intended the private right of action to be a necessary exception to the
general rule of CFTC enforcement and as such to be limited to its terms"); *Point Landing, Inc. v.
Omni Capital Int'l., Ltd.,* 795 F.2d 415, 423 (5th Cir. 1986), *aff'd sub nom. Omni Capital Int'l.,
Ltd. V. Rudolph Wolff & Co.,* 484 U.S. 97 (1987) (the "inference to draw from the congressional
silence [with respect to nationwide service of process] is that Congress omitted that language
from [CEA § 25] because it did not intend to permit nationwide service of process"); *Fustok v.
Conticommodity Servs.,* 618 F. Supp. 1069 (S.D.N.Y. 1985) (CEA § 25 statutory silence
precludes control person liability in private actions).  Indeed, other courts have questioned the
application of vicarious liability in private rights of action under the CEA.  *See, e.g., Nicholas v.
Saul Stone & Co.,* 224 F.3d 179, 187 (3d Cir. 2000) (declined to decide "whether or to what
extent an agency relationship can ever appririately be used to establish a [CEA § 25]
relationship," and noting district court's holding that "[p]laintiffs have provided no authority for
allowing a [CEA § 25] relationship to be established through an agency theory and there is no
indication in the statute indicating the availability of such relief").

in a private action under the CEA, plaintiffs are required to plead facts in support of each with a particularity that satisfies Rule 9(b). *See In re Crude Oil Commodity Litig.,* No. 06 Civ. 6677 (NRB), 2007 WL 1946553 at *5 (S.D.N.Y. June 28, 2007) (concluding that plaintiffs' market manipulation claim sounded in fraud and "should be subject to the heightened pleading standard for Rule 9(b)");[5] *Kolbeck,* 923 F. Supp. at 569 (claims of agency under the CEA must comply with Rule 9(b) "when the agency relationship itself allegedly is part of the fraud");[6] *Krause v. Forex Exch. Mkt., Inc.,* 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005) (applying Rule 9(b) to aiding and abetting claim under CEA); *see also In re Natural Gas Commodity Litig.,* 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) ("*In re Natural Gas II*"); *Ellison v. Am. Image Motor Co.,* 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (dismissing market manipulation claims against certain defendants for failure to comply with Rule 9(b), stating that Rule 9(b) is "not satisfied by a complaint in which defendants are clumped together in vague allegations.").

Moreover, even under the pleading requirements of Fed. R. Civ. P. 8, conclusory allegations or unwarranted deductions of fact may not be accepted by the Court. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994); *In re Crude Oil Commodity Litig.,* 2007 WL 1946553, at *3 (citing *Bell At. Corp. v. Twombly,* 127 S. Ct. 1955,

---

[5] Plaintiffs' market manipulation claim "sounds in fraud" because it purports to allege a deception on the market as to the true supply and demand for natural gas contracts. *See In re Crude Oil,* 2007 WL 1946553, at * 5 (though plaintiffs had "carefully avoided the word 'fraud' in their complaint," because "the crux of plaintiffs' allegations is that defendants misled the market with regard to supply and demand," the manipulation claim was subject to Rule 9(b)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 101 (2d Cir. 2007) (in securities context, "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)").

[6] Plaintiffs theory of agency, opaque as it may be, appears to rest on a theory that AIL, as a 'feeder fund', used Amaranth LLC as some kind of conduit through which to "put[] up funds" in order to "[get] the manipulation started." (Compl. ¶¶ 23, 26, 254.) This theory makes the agency relationship "part of the fraud," and, as such, the agency relationship must be pled with particularity under FRCP 9(b). *See Kolbeck*, 923 F. Supp. at 569.

1964 (2007)).  As shown below, plaintiffs' allegations against AIL fall far short of the Rule 8

standard as well.

A.     **Plaintiffs Fail To State A Claim Of Market Manipulation Under The CEA (Count I)**

The elements of a market manipulation claim under the CEA are: (1) the

defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the

defendant caused the artificial price; and (4) the defendant specifically intended to cause the

artificial price.  *In re Crude Oil Commodity Litig.,* 2007 WL 1946553, at *3 (S.D.N.Y. June 28,

2007); *In re Natural Gas Commodity Litig.,* 337 F. Supp. 2d 498, 507 (S.D.N.Y. 2004) ("*In re

Natural Gas I*").  To meet the requirements of Rule 9(b), plaintiffs must specify "what

manipulative acts were performed, which defendants performed them, when the manipulative

acts were performed, and what effect the scheme had on the market."  *In re Natural Gas

Commodity Litig.,* 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005).

In Count I of the complaint, plaintiffs state the bare legal conclusion that, in

violation of the CEA anti-manipulation rule, "[e]ach Amaranth Defendant or its control person or

agent specifically intended their activities alleged herein to move or support the prices of

NYMEX natural gas contracts to or at artificial levels," and that "[e]ach Amaranth Defendant

intentionally engaged in conduct which caused NYMEX natural gas contracts prices and price

spreads to be artificial throughout the Class Period."  (Compl. ¶ 239.)  Throughout the rest of the

complaint, without any averment of fact in support, plaintiffs simply lump AIL together with

every other Amaranth entity into a group labeled the "Amaranth Defendants" (*See* Comp. ¶ 33)

by merely asserting the bare legal conclusions that "[t]he Amaranth Defendants were in practice

a tightly knit association-in-fact, which operated as a single entity."  (Compl. ¶¶ 29, 32.)  The

only factual allegation in the entire complaint specific to AIL is that AIL "got the manipulation

15

started by putting up funds to manipulate the NYMEX natural gas futures contracts at issue herein, and shared in the financial benefits of the manipulation."  (Compl. ¶ 26.)

Plaintiffs' grouping of AIL together with every other Amaranth entity into a group labeled the "Amaranth Defendants," (*see* Comp. ¶ 33), is impermissible.  The mere fact that AIL invested in the Master Fund and has a name that includes the word "Amaranth" does not relieve plaintiffs of their burden of alleging that AIL *itself* committed market manipulation.  *In re Crude Oil Commodity Litig.,* 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("'lumping' all defendants together fails to satisfy the particularity requirement").  Plaintiffs are not entitled to simply allege that an amorphous group of "Amaranth Defendants" engaged in manipulative conduct without specifying "which defendants performed them," and "when the manipulative acts were performed."[7]  *In re Natural Gas II,* 358 F. Supp. 2d at 343; *see also In re Crude Oil,* 2007 WL 1946553, at *7; *Grossman v. Citrus Assoc. of N.Y. Cotton Exch. Inc.,* 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (complaint must be dismissed where it "simply says nothing about [the defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation" of the law).

In addition, plaintiffs have failed entirely to make any specific allegations against AIL, other than that it somehow "got the manipulation started by putting up funds to manipulate

---

[7] To analogize to the securities laws, which likewise prohibit market manipulation, it is well settled under Section 10(b) and Rule 10b-5 that allegations that a company engaged in fraud or manipulation do *not* allow a case against that company's affiliates where the affiliates are not alleged to have participated in the wrongdoing.  *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044-Civ-MARRA, 2007 WL 997362, at **3-4 (S.D. Fla. Mar. 27, 2007) (where plaintiffs lumped allegations against parent and subsidiary as if they were a single entity, court dismissed claim against parent because "[p]laintiffs fail[ed] to make any express allegation that directly connect[ed] [the parent corporation] to the alleged conduct at issue"); *see also In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041(DLC), 2000 WL 1234601, at *5-6 (S.D.N.Y. Aug. 31, 2000); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (dismissing securities fraud class action against affiliates of KPMG Belgium where plaintiffs' sole allegation against affiliates was that they "effectively hold themselves forth as a single entity").

the NYMEX." (Compl. ¶¶ 23, 26, 254.) There is no authority for a claim that merely investing assets in the Master Fund could constitute a violation of the CEA, particularly where, as here, there is no allegation that AIL even had knowledge of wrongdoing. Plaintiffs simply have not met their burden under Rule 9(b) to allege "what manipulative acts were performed" by AIL, and "what effect [those acts] had on the market." *In re Natural Gas II,* 358 F. Supp. 2d at 343; *see also In re Crude Oil Commodity Litig.,* 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007).

Plaintiffs also fail to allege specific intent against AIL. Plaintiffs must establish the requisite "strong inference of fraud" by (a) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (b) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *See In re Crude Oil,* 2007 WL 1946553, at *8 (citing *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290-91 (2d Cir. 2006); *Kolbeck,* 923 F. Supp. at 568.

Other than plaintiffs' purely "speculative and conclusory" allegation that "[e]ach Amaranth Defendant … specifically intended their activities alleged herein to move or support the prices of NYMEX natural gas contracts," (Compl. ¶ 239), plaintiffs allege *no* facts to establish AIL's specific intent. Nothing in the complaint comes close to constituting "strong circumstantial evidence of conscious misbehavior or recklessness" on the part of AIL. In addition, with respect to "motive and opportunity," the complaint again impermissibly lumps AIL together with every other Amaranth entity. (*Id.*) Even the lumped allegations that "Amaranth was the largest participant in the natural gas market," that Amaranth "conducted substantial trading," and that "Amaranth profited handsomely," are insufficient to create any "inference of fraudulent intent." *See In re Crude Oil,* 2007 WL 1946533, at *26 (rejecting as insufficient allegations that defendant was a large market player who stood to profit from alleged

manipulation: "[s]uch a generalized motive, one which could be imputed to any corporation with a large market presence in any commodity market, is insufficient to show intent.") (citing *Kalnit v. Eichler,* 264 F.3d 131, 140 (2d Cir. 2001)).[8]

### B. Plaintiffs Fail To State A Claim For Vicarious Liability Under The CEA (Count II)

As explained in Point II.C.2, *supra*, there is no private right of action under the CEA for vicarious liability. But even assuming plaintiffs could bring such a claim, they have failed to plead facts that could sustain vicarious liability against AIL.

Plaintiffs allege — without any factual support — that Amaranth Advisors "was a broadly empowered agent of the Amaranth Defendants under Section 2(a)(1)(B) of the CEA," (Compl. ¶ 22), and therefore AIL is "liable under CEA § 2(a)(1)(B) … for the acts of [its] officials, agents or other persons acting within the scope of their employment or office." (Compl. ¶ 23, 26.). These are precisely the sort of conclusory allegations and legal conclusions that do not state a claim either under Rule 9(b) or Rule 8 standard. Plaintiffs allege no facts whatsoever to support the agency theory of vicarious liability they assert.

### 1. Plaintiffs Do Not Properly Allege A Principal-Agent Relationship Between AIL And Amaranth Advisors

Courts have required plaintiffs to plead the existence of an agency relationship with particularity "when the agency relationship itself allegedly is part of the fraud," as it is here. *See Kolbeck,* 923 F. Supp. at 569 (claims of agency under the CEA must comply with Rule 9(b)).

---

[8] For the reasons stated in the brief of Amaranth Advisors, plaintiffs have failed to allege manipulation in violation of the CEA against any defendant. Because a party cannot be held secondarily liable absent a primary violation, all of plaintiffs' secondary liability claims also must fail as to AIL. *See, e.g., Tatum v. Legg Mason Wood Walker, Inc.,* 83 F.3d 121, 123 n.3 (5th Cir. 1996); *Kolbeck,* 923 F. Supp. at 570

The elements of an agency relationship under the CEA are: (1) the agent acts on behalf of the principal, (2) the agent consents to so act, and (3) the agent is subject to the principal's control. *United States. v. Feldman,* 825 F.2d 124, 129 (7th Cir. 1987) (citing *S. Pac. Transp. Co. v. Cont'l Shippers Ass'n,* 642 F.2d 236, 238 (8th Cir. 1981)). This test comports with the definition of agency under the Restatement (Third) of Agency, and under other cases applying federal law. *See* Restatement (Third) of Agency § 1.01 (2006); *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994); *see also Cleveland v. Caplaw Enters.,* 448 F.3d 518, 522 (2d Cir. 2006). None of these elements of agency is present here.

*First*, plaintiffs do not allege that AIL acknowledged that Amaranth Advisors would be its agent (or act on its behalf) during the relevant time in connection with trading activity. AIL is a mere passive investor in the Master Fund, and AIL was not a party to the advisory agreement between the Master Fund and Amaranth Advisors.

*Second,* for the same reasons, Amaranth Advisors cannot be said to have consented to be AIL's agent in connection with the trading activity.

*Third*, AIL, as a mere passive investor in the Master Fund, did not – and could not – control Amaranth Advisors, and the complaint does not allege otherwise. To demonstrate control, plaintiffs must allege facts showing that AIL could direct the actions of Amaranth Advisors.

AIL is not alleged to have had any control over the trading activity of Amaranth Advisors. That is hardly surprising. AIL was not the owner of or even an investor in Amaranth Advisors. It did not even have a contractual relationship with Amaranth Advisors. The absence of specific factual allegations to the contrary is fatal to plaintiffs' claim for vicarious liability under the CEA. *See Kolbeck,* 923 F. Supp. at 568 (dismissing complaint where plaintiffs merely

pled existence of agency relationship but failed "to specify what that agency relationship entailed and permitted"); *Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd.,* No. 97 Civ. 3802, 1998 WL 782024, at **5-6 (S.D.N.Y. Nov. 6, 1998) (Scheindlin, J.) (dismissing claim for agency liability where complaint pled insufficient facts to establish an agency relationship).

### 2.    AIL's Status As Passive Investor In The Master Fund Does Not Extend Vicarious Liability To AIL

The fact that Amaranth Advisors is alleged to have acted on behalf of the Master Fund with respect to the trading in question does not extend vicarious liability to AIL. Investors such as AIL are not vicariously liable for the conduct of an agent of the entity in which they invest. *See, e.g., Meyer v. Holley,* 537 U.S. 280, 282 (2003) ("traditional agency principles … normally impose[] vicarious liability upon the corporation but not upon its officers or owners."); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 Civ. 3791 (CSH), 1995 WL 77589, at *6 (S.D.N.Y. Feb. 27, 1995) ("[A] stockholder is not merely by reason of his stock interest, liable at common law for any of the obligations of a corporation ….").

In a similar case, *In re Natural Gas I,* the court declined to treat corporate parents as vicariously liable for the actions of their subsidiaries under the CEA. There, the plaintiffs alleged only that the parent companies wholly owned the subsidiaries, and that such ownership gave them control of the subsidiaries sufficient to establish vicarious liability. *Id.* at 515-16. The Court rejected that theory of liability, holding that:

> Subsection 2(a)(1)(B) imposes the common law standards of respondeat superior liability on principals for the actions or inactions of their agents. But the Court cannot ignore the equally well-established principles limiting piercing a corporate veil. Plaintiffs have not identified, nor has the Court located, any case in which corporate parents were held liable for the actions of their corporate subsidiaries under § 2(a)(1)(B). Rather, it appears that § 2(a)(1)(B) has been used as the doctrine of respondeat superior has traditionally been applied – to hold employers liable for the wrongs of their employees in certain situations.

*Id.* at 515.[9]

      The complaint's allegations that "investors invested directly into Amaranth International, which invested all of its capital in Amaranth LLC," (Compl. ¶ 26), that "Amaranth LLC then invested the funds on a global basis," (*id.*), and that "Amaranth Advisors was the entity that directed the investments … under the Advisory Agreement between Amaranth LLC and Amaranth Advisors," (*id.* ¶ 22), are even weaker than those in *Natural Gas I.*  AIL is not even alleged to have *owned* the company that engaged in the alleged wrongdoing, Amaranth Advisors.  It is merely alleged to have *invested in* a company whose assets Amaranth Advisors managed.[10]

---

[9] Although plaintiffs do not claim they are trying to pierce AIL's corporate veil, the effort to hold AIL responsible for the allegedly manipulative conduct of Amaranth Advisors is tantamount to veil piercing.  The Complaint characterizes a host of separate legal entities as a "tightly knit association-in-fact, which operated as a single entity," (Compl. ¶¶ 29, 32), and thereby suggests that Amaranth Advisors is merely the alter ego of AIL.  To pierce the corporate veil, plaintiffs must plead with particularity: (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.  *Cary Oil Co. v. MG Refin. & Mktg., Inc.,* 230 F. Supp. 2d 439, 458 (S.D.N.Y. 2002); *Kolbeck,* 923 F. Supp. at 569 (showing of domination and control to advance alter ego theory of veil piercing must be made with greater particularity when alleging that the controlled corporation perpetrated fraud) (citing *Pits, Ltd. v. Am. Express Bank Int'l,* 911 F. Supp. 710, 715 (S.D.N.Y. 1996)).  Plaintiffs' allegations do not come close to satisfying either prong of the test as to AIL.

[10] The D.C. Circuit has explicitly recognized that investors in a hedge fund are not the principals of the fund's investment advisor.  *See Goldstein v. SEC,* 451 F.3d 873, 879-81 (D.C. Cir. 2006) ("[i]t simply cannot be the case that investment advisers are the servants of [both the fund and its investors]").  It is also worth noting that courts regularly defer to CFTC determinations of agency because the ascription of agency liability under the CEA is a matter of policy.  *Cunningham v. Water Tan & Co.,* 65 F.3d 1351, 1357 (7th Cir. 1995); *Stotler v. CFTC,* 855 F.2d 1288, 1292 (7th Cir. 1988).  While not controlling on this issue of agency, CFTC has not named AIL or any other fund entities in the enforcement proceeding arising from the same alleged conduct at issue in this lawsuit.  The CFTC's approach in this case is generally in accord with federal policy with respect to holding investment funds liable under the analogous securities laws.  *See In re Fidelity/Micron Sec. Litig.,* 964 F. Supp. 539, 543-44 (D. Mass. 1997) (only the investment advisor and not a mutual fund could be pursued under Section 10(b)); S. Rep. No. 101-337, at 16

Nor is AIL's shared associational name with the other "Amaranth Defendants" sufficient to allege an agency relationship with these other distinct legal entities. *See In re Lernout & Hauspie Sec. Litig.,* 230 F. Supp. 2d 152, 170 (D. Mass. 2002) ("[S]everal courts have declined to treat different firms as a single entity, holding them jointly and severally liable for one another's acts, simply because they shared an associational name …").

In the end, plaintiffs are asking the Court to hold AIL liable solely because AIL was an investor in, and shareholder of, a separate corporation (the Master Fund) whose assets were traded by Amaranth Advisors. That is piercing the corporate veil, pure and simple. Yet plaintiffs never invoke that doctrine in their complaint, nor do they even attempt to allege any of the recognized bases for veil piercing. That is no accident. A corporation (here, the Master Fund) can only be pierced in extraordinary circumstances, such as where it is being used as an alter ego/dummy for the purposes of wrongdoing, where it is grossly undercapitalized, or where corporate formalities are entirely ignored. None of these bases is even plausibly available to plaintiffs. There is nothing to suggest that the Master Fund was undercapitalized (indeed, at the time of the alleged wrongdoing it was one of the largest hedge funds in the world), that corporate formalities were ignored, or that the Master Fund was set up as an alter ego to effectuate fraud by AIL.

Plaintiffs are asking the Court to brush past the strict requirements for veil piercing and hold AIL liable simply because it (in plaintiffs' words) "got the manipulation started" when it invested in the Master Fund. If *that* – merely investing in a corporation that allegedly engages in wrongful conduct (in this case, through a third-party investment advisor) – were a basis for shareholder liability, then the corporate form could be pierced in every case.

n.17 (1990) (passive investment vehicles should not be held liable for the conduct of their investment advisors).

Respect for the corporate form is fundamental to the workings of the capital markets; without it, people could not invest passively, and the most basic mechanism for raising capital would not work. Respect for the corporate form is especially crucial in the realm of investment companies because it allows investors like AIL (and those invested in AIL) to pool their assets with others in an investment company that, in turn, hires an investment advisors to manage its assets. This basic structure, which underlies the trillions of dollars invested in mutual funds and hedge funds, is essential to the ability of investors to diversify their investments and entrust their savings to investment professionals without fear of personal liability beyond the loss of their investment. It also is perhaps the most important source of liquidity for the markets and capital for the nation's businesses. Similarly fundamental is the ability of foreign investors (like AIL) to invest in a foreign company (like the Master Fund) that provides capital and liquidity to the United States without subjecting themselves to U.S. personal jurisdiction.

Plaintiffs, without making it explicit, appear to be claiming an exception to the basic rules of the CEA, shareholder liability/veil piercing, and personal jurisdiction for "feeder funds," like AIL. There is, and should be, no such exception. There is no legal basis for it, and feeder funds are a common and fundamental feature of hedge fund investments. Plaintiffs have not and could not state a claim that AIL is vicariously liable for the trading activities of Amaranth Advisors.

### C.    Plaintiffs Fail To State A Claim For Aiding And Abetting Under The CEA (Count II)

To state a claim for aiding and abetting under the CEA, "a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." *In re Natural Gas I*, 337 F. Supp. 2d at 511 (citing *766347 Ontario, Ltd. v. Zurich Capital Mkts.*,

274 F. Supp. 2d 926, 934-35 (N.D. Ill. 2003)).  Plaintiffs must also properly allege that defendant had "specific intent" to further the violation, and that defendant's participation substantially assisted the violation.  *Benfield v. Mocatta Metals Corp.,* No. 91 Civ. 8255 (LJF), 1992 WL 58879, at \*6 (S.D.N.Y. Mar. 13, 1992).  The allegations must satisfy the requirements of Rule 9(b).  *In re Natural Gas II*, 358 F. Supp. 2d at 342.  Plaintiffs have not alleged facts with respect to AIL that establish any of the above elements under any standard of pleading.

The complaint states in conclusory fashion that AIL "knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein" and "willfully intended to assist the manipulation in violation of [CEA § 25(a)(1)]."  (Compl. ¶¶ 253-54.)  This simple recitation of the language of CEA § 25 and the elements of an aiding and abetting cause of action cannot sustain plaintiffs' claim.  *See In re Crude Oil,* 2007 WL 1946553 at \*3.

Plaintiffs' sole allegation against AIL is that "[AIL] got the manipulation started by putting up funds for investment in Amaranth LLC."  (Compl. ¶ 246.)  That plainly is not an allegation that AIL played an "active role" in the manipulation as required.  *See Thornock v. Kinderhill Corp.,* 749 F. Supp. 513, 516 (S.D.N.Y. 1990).  The mere allegation that a defendant provided funds to a primary violator is insufficient to state a claim for aiding and abetting.  *See Damato v. Hermanson*, 153 F.3d 464, 473 n.12 (7th Cir. 1998) (use of an entity's funds for unlawful purposes not a sufficient to state claim for aiding and abetting under the CEA).

Separately, and equally fatal to the aiding and abetting claim, plaintiffs fail to allege properly that AIL had "specific" intent to aid the alleged manipulation.  Indeed, the complaint alleges no facts whatsoever suggesting that AIL even knew of the alleged scheme.  *See Benfield*, 1992 WL 58879, at \*6; *see also Fid. Funding of Cal., Inc. v. Reinhold*, 79 F. Supp.

24

2d 110, 122 (E.D.N.Y. 1997); *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005).

### D. Plaintiffs Fail To State A Claim For Control Person Liability Under the CEA (Count II)

As explained in Point II.C.1, *supra*, there is no private right of action under the CEA for control person liability. But even assuming plaintiffs could bring such a claim, they have failed entirely to plead facts that could sustain control person liability against AIL.

To state a claim for control person liability under the CEA, a plaintiff must plead with particularity: (1) an underlying violation; (2) control by the defendant generally of the operation of the entity and the power and ability to control the specific transaction; and (3) either (a) absence of good faith of the controlling person or (b) knowing inducement directly or indirectly, by the controlling person. *See CFTC v. Standard Forex*, No. 93 Civ. 0088 (CPS), 1993 WL 809966, at *13 (E.D.N.Y. Aug. 9, 1993); *CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d 482, 504 (S.D.N.Y. 2004) (citing *CFTC v. Baragosh*, 278 F.3d 319, 330 (4th Cir. 2002); *In re Natural Gas*, 358 F. Supp. 2d at 343. Plaintiffs' control person liability claim fails to meet this standard as to AIL.

Plaintiffs assert superficially that AIL is a "controlling person within the meaning of CEA § 13(b), 7 U.S.C. § 13c(b)" and that AIL "controlled the Amaranth Defendants." (Compl. ¶¶ 26, 255.) These averments suffer from the fundamental defect that they are mere conclusory allegations, which are not alone sufficient to state a claim of control person liability against AIL.

Further, plaintiffs plead no facts to demonstrate any "absence of good faith" on the part of AIL, or any "knowing inducement" by AIL of any specific violation of the CEA. Furthermore, there are no allegations that AIL exercised general control over Amaranth Advisors

or any of the Amaranth entities, let alone any allegations that AIL had the power to control the specific trading strategies at issue. These deficiencies are fatal. *See CFTC v. Int'l Fin. Servs.*, 323 F. Supp. 2d at 504 (Plaintiffs "must show that the defendant exercised general control over the operation of the entity principally involved *and* possessed the power or ability to control the specific transaction."); *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002); *CFTC v. Liberty Mut. Group, Inc.*, No. 07 Civ. 21267, 2008 WL 60498 (S.D. Fla. Jan. 3, 2008).

###     E.      Plaintiffs Fail To State A Claim Under CFTC Rule 166.3 (Count II)

Count II of the complaint alleges that AIL is liable under 17 C.F.R. § 166.3, (Compl. ¶ 255), which provides that "[e]ach *Commission registrant* … must diligently supervise the handling by its partners, officers, employees, and agents …of all commodity interest accounts." 17 C.F.R. § 166.3 (emphasis added). Only Commission registrants can be held liable under Rule 166.3. *See CFTC v. Commodities Fluctuations Sys., Inc.,* 583 F. Supp. 1382 (S.D.N.Y. 1984); *see also* 17 C.F.R. § 166.1 (defining registrant as "any person who is registered or required to be registered with the Commission pursuant to the [CEA] or any rule, regulation, or order thereunder"). Because plaintiffs have not and could not allege that AIL was a Commission registrant or was required to register under the CEA, plaintiffs' Rule 166.3 claim must be dismissed.

IV.     **Plaintiffs' Unjust Enrichment Claim Should Be Dismissed (Count V)[11]**

A.     **Plaintiffs' Unjust Enrichment Claim Is Preempted By The CEA**

Plaintiffs' claim for unjust enrichment is preempted by the CEA.  In *Credit Suisse Securities (USA) LLC v. Billing,* 127 S. Ct. 2383 (2007), the Supreme Court held that the enactment of the securities laws precluded the application of the antitrust laws to joint underwriting activity in the securities markets.  Similar considerations weigh strongly against permitting plaintiffs to bring state law claims for unjust enrichment related to trading of futures contracts on the NYMEX, particularly against passive investment vehicles such as AIL.

*First*, trading of futures contracts falls squarely within the realm of conduct regulated by the CEA.  *Second*, the CEA grants the CFTC full authority to regulate trading of futures contracts on the NYMEX.  *See* 7 U.S.C. § 1, *et seq.* (2002).  *Finally*, and perhaps most significantly, the application of state law unjust enrichment theories of liability to hold investment vehicles such as AIL liable would directly conflict with the complex regulatory regime embodied in the CEA, and also with federal policy concerning liability of investment funds for the acts of their investment advisors.  *See* 7 U.S.C. § 25 (expressly limits standing to seek private remedies to a subset of potential plaintiffs that stand in one of four enumerated

---

[11] Because this litigation is still in its early stages, the Court should refuse to exercise supplemental jurisdiction over plaintiffs' state law unjust enrichment claim.  *See Klein & Co. Futures, Inc. v. Board of Trade of City of New York,* 464 F.3d 255, 262 (2d Cir. 2006) (affirming district court's decision dismissing CEA claims under 7 U.S.C. § 25 for lack of standing and declining to exercise supplemental jurisdiction over state claims: "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims") (citations omitted); *see also Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006).

relationships); S. Rep. No. 101-337, at 16 n.17 (1990) (passive investment vehicles should not be held liable for the conduct of their investment advisors).[12]

### B.    Plaintiffs Fail To State A Claim For Unjust Enrichment Against AIL

Even if plaintiffs' unjust enrichment claim were not preempted by the CEA, plaintiffs have failed to plead sufficient facts to state a claim against AIL. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). A plaintiff seeking to establish an unjust enrichment claim must first show that a benefit was conferred upon a defendant, and then show that, between the two parties, enrichment of the defendant by this benefit is unjust. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 963 (2d Cir. 1998). Furthermore, unjust enrichment is a quasi-contractual claim in equity that applies only where there is a contractual (or other form of substantial) relationship. *See Gristede's Foods, Inc. v. Unkechauge Nation,* 532 F. Supp. 2d 439, 455 (E.D.N.Y. Nov. 18, 2007); *Reading Int'l v. Oaktree Capital Mgmt. LLC,* 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003).

Plaintiffs have not alleged any sort of contractual or quasi-contractual relationship or direct dealings with AIL. *See Reading*, 317 F. Supp. 2d at 334; *see also Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998) ("although no express contract exists, there must be some legally cognizable relationship between the parties") (citations omitted). Plaintiffs merely allege that they "purchased and sold NYMEX natural gas contracts during the Class Period" and that they "transacted at the artificial

---

[12] Courts in this Circuit have concluded that the CEA preempts similar state law claims. *See DGM Invs., Inc. v. N.Y. Futures Exch., Inc.,* 265 F. Supp. 2d 254 (S.D.N.Y. 2003) (holding that plaintiffs' state law claims for gross negligence, bad faith, and respondeat superior were preempted by the CEA).

prices caused by the Amaranth Defendants."  (Compl. ¶¶ 16, 17.)  At most, plaintiffs have

alleged a "contemporaneous trading relationship" with Amaranth Advisors (not AIL), which is

not enough to plead unjust enrichment against Amaranth Advisors, let alone AIL.  *Redtail*

*Leasing, Inc. v. Bellezza,* No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *7 (S.D.N.Y. Sept. 30,

1997) (dismissing unjust enrichment claim where plaintiffs merely alleged a "contemporaneous

trading relationship"); *see also CompuDyne v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006)

(dismissing unjust enrichment claim where plaintiffs did not allege they were counterparties to

any of the allegedly unlawful trades).

      Nor have plaintiffs alleged that AIL achieved any benefit from the alleged

manipulative trading at issue at plaintiffs' expense.  Plaintiffs allege in conclusory fashion that

AIL "shared in the financial benefits of the manipulation."  (Compl. ¶ 26.)  Plaintiffs have not

alleged any specific benefit that AIL received as a result of the alleged manipulation.  *See In re*

*Bayou Hedge Funds Investment Litig.,* 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (the benefit

alleged must be "specific" and "direct") (citations omitted).

      Finally, even if plaintiffs had pled the above elements, equity and good conscious

do not permit unjust enrichment against AIL.  Where a party gains a benefit through no

fraudulent or tortious act of its own, and both parties are equally innocent, equity inclines

towards denying unjust enrichment claims.  *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491,

501 (S.D.N.Y. 2005) (citing *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (N.Y.

1972)).  There has been no suggestion – nor could there be – that AIL was aware of or culpable

for any wrongdoing.  Moreover, whatever the merits of claims about Amaranth Advisors' trading

in natural gas futures may be, it is clear that AIL and its investors have paid dearly for Amaranth

Advisors' commodity trading losses.  (*See* Compl. ¶¶ 170-71 (conceding Amaranth Advisors'

large trading losses during August and September of 2006).)  Imposing liability on AIL – and the public pensions and endowments that own it – for alleged strategies they did not know about would be unjust.[13]

**CONCLUSION**

AIL respectfully requests that the Court enter an order dismissing all claims against it with prejudice.

Dated:    New York, New York
          April 28, 2008

Respectfully Submitted,


SHEARMAN & STERLING LLP
By:    /s/ Adam S. Hakki
       Herbert S. Washer (HW 2375)
       Adam S. Hakki (AH 3561)
       Kirsten Nelson Cunha (KC 0283)

       599 Lexington Avenue
       New York, New York  10022
       Tel:  (212) 848-4000
       Fax:  (212) 848-7179

       *Attorneys for Amaranth*
       *International Limited*

---

[13] Plaintiffs also are not entitled to the establishment of a constructive trust.  (Compl. ¶ 270).  In order for a court to establish a constructive trust under New York law, a plaintiff must allege: 1) a confidential or fiduciary relationship; 2) a promise; 3) transfer in reliance on the promise; and 4) unjust enrichment.  *Modica v. Modica*, 791 N.Y.S.2d 134 (App. Div. 2d Dep't 2005).  As explained above, plaintiffs' unjust enrichment claim fails as to AIL, which is sufficient to reject the imposition of a constructive trust.  Moreover, the constructive trust allegations fail because plaintiffs have made absolutely no showing of the existence of a confidential or fiduciary relationship with AIL, or that any promise was made between any of the plaintiffs and AIL.