**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE: AMARANTH NATURAL GAS
COMMODITIES LITIGATION

This Document Relates To:

ALL ACTIONS

Master File No. 07 Civ. 6377 (SAS)

**ECF Case**

---

**DEFENDANT TFS ENERGY FUTURES, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**

Craig Carpenito
Alan Kanzer
Karl Geercken
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
(212) 210-9444 (fax)

*Attorneys for Defendant TFS Energy Futures, LLC*

Dated:  April 28, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

PLAINTIFFS' ALLEGATIONS ........................................................................2

ARGUMENT .......................................................................................................3

      I.    Plaintiffs' Aiding and Abetting Claim Against TFS Does Not Satisfy
           the Heightened Pleading Standard of Rule 9(b) ...............................3

          A.  Rule 9(b) Applies to Market Manipulation Claims ...................4

          B.  Rule 9(b) Also Applies to Aiding and Abetting of Market
              Manipulation ............................................................................6

          C.  The Claim Against TFS Does Not Survive Rule 9(b) ...............6

              1.  The Claim Does Not Sufficiently Allege Actual Knowledge..............7

              2.  The Claim Does Not Sufficiently Allege a Strong Inference of
                   TFS's Knowledge ...............................................................8

      II.   Plaintiffs' Aiding and Abetting Claim Cannot Even Survive Rule 12(b)(6)....9

          A.  The Complaint's Allegations Are Too Non-Specific to Satisfy
              Even More Lenient Pleading Requirements ...............................9

          B.  TFS, As a Floor Broker, Is a Mere Processor of Orders Which,
              by Law, Can Have No Aiding and Abetting Liability ...............10

      III.  Plaintiffs' Unjust Enrichment Claim Fails Because There Is No Nexus
           Between the Putative Class and TFS ..............................................11

CONCLUSION.....................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Armstrong v. McAlpin,*
699 F.2d 79 (2d Cir. 1983) ................................................................6, 10

*ATSI Communications Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ................................................................4, 5

*Chee v. Marine Midland Bank, N.A.,*
Nos. 88-cv-0557, 88-cv-0673, 88-cv-0813, 88-cv-1808, 88-cv-1867
and 88-cv-2145, 1991 WL 15301 (E.D.N.Y. Jan. 29, 1991) ................................10

*Chill v. General Electric Co.,*
101 F.3d 262 (2d Cir. 1996) ................................................................8

*Cumis Ins. Soc'y, Inc. v. E.F. Hutton & Co.,*
457 F. Supp. 1380 (S.D.N.Y. 1978) ................................................................10

*Dow Jones & Company, Inc. v. International Securities Exchange, Inc.,*
451 F.3d 295 (2d Cir. 2006) ................................................................9

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185 (1976) ................................................................4

*First Nationwide Bank v. Gelt Funding Corp,*
27 F.3d 763 (2d Cir. 1994) ................................................................7

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,*
49 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................................11

*Gurary v. Winehouse,*
190 F.3d 37 (2d Cir. 1999) ................................................................4

*Hutton v. Klabal,*
726 F. Supp. 67 (S.D.N.Y. 1989) ................................................................11

*In re Crude Oil Commodity Litig.,*
No. 06-cv-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................*passim*

*In re Initial Public Offering Sec. Litig.,*
Master File No. 21 MC 92, ___ F. Supp. 2d ___,
2008 WL 819762 (S.D.N.Y. Mar. 26, 2008) ................................................................*passim*

**Cases**                                                                                                        **Page(s)**

*In re Motel 6 Sec. Litig.*,
Nos. 93-cv-2183 and 93-cv-2866, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997) ...................12

*In re Natural Gas Commodity Litig.,*
358 F.Supp.2d 336 (S.D.N.Y. 2005)...............................................................................4, 5

*In re NYSE Specialists Sec. Litig.*,
503, F.3d 89 (2d Cir. 2007)...............................................................................................7

*Kalnit v. Eicher*,
264 F.3d 131 (2d Cir. 2001)..............................................................................................9

*Krause v. Forex Exchange Market, Inc.,*
356 F. Supp. 2d 332 (S.D.N.Y. 2005).............................................................................6, 7

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..............................................................................................7

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir. 1997)............................................................................................11

*Mazzaro v. Bank of America Corp.,*
525 F. Supp. 2d 381 (S.D.N.Y 2007)..........................................................................6, 7, 9

*Michelle Pommier Models, Inc. v. Men Women NY Model Mgmt.*,
14 F. Supp. 2d 331 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999) ...........................11

*Modica v. Modica*,
71 N.Y.S.2d 134, 135 (2d Dep't 2005)............................................................................12

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,*
317 F. Supp. 2d 301 (S.D.N.Y. 2003)..............................................................................11

*Redtail Leasing, Inc. v. Belezza,*
No. 95-cv-5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ...........................................12

*Rombach  v. Chang*,
355 F.3d 164 (2d Cir. 2004)..............................................................................................4

*Slusser v. CFTC*,
210 F.3d 783 (7th Cir. 2000) .............................................................................................4

*Simon v. Castello*,
172 F.R.D. 103 (S.D.N.Y. 1997) .......................................................................................6

| **Cases** | **Page(s)** |
|---|---|

*Smith v. Local 819 I.B.T. Pension Plan,*
291 F.3d 236 (2d Cir. 2002)............................................................................8

*Three Crown Ltd. P'ship v. Caxton Corp.,*
817 F. Supp. 1033 (S.D.N.Y. 1993).................................................................6

## Statutes and Rules

7 U.S.C. § 9...............................................................................................2, 4

7 U.S.C. § 13b...........................................................................................2, 4

7 U.S.C. § 13(a)(2).....................................................................................2, 4

Fed. R. Civ. P. 9(b) ...............................................................................*passim*

Fed. R. Civ. P. 12(b) .................................................................................1, 9

## Other Authorities

E. Allen Farnsworth, Contracts § 2.20, at 103-104 (2d Ed. 1990) .......................11

## PRELIMINARY STATEMENT

Despite its great length, Plaintiffs' Corrected Consolidated Class Action Complaint (the "Complaint") is fatally deficient as to defendant TFS Energy Futures, LLC ("TFS"). In its 78 pages and 271 paragraphs, the Complaint makes reference to TFS only 3 times – each in a definition section of the Complaint – and utterly fails to set forth even the most basic allegations necessary to sustain a claim against TFS for aiding and abetting market manipulation. This failure to set forth facts to support Plaintiffs' conclusory allegations is all the more remarkable since all of the Complaint's claims against TFS are grounded in fraud and therefore subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

In addition, the Complaint fails to state a claim against TFS under even the more permissive standards of Federal Rule of Civil Procedure 12(b)(6). First, the Complaint is devoid of factual allegations sufficient to raise a right to relief above the speculative level. Moreover, in the absence of any well-pleaded facts regarding any specific knowledge, New York courts hold that floor brokers such as TFS – who are nothing more than clerical order takers and processors – have no duty to monitor or question their customers regarding the customers' trading orders.

Finally, because unjust enrichment is a quasi-contractual claim, the Complaint must allege a contractual or quasi-contractual relationship between Plaintiffs and TFS. The Complaint fails to state a claim for unjust enrichment because it tries to artificially detach the elements of the claim from the quasi-contractual context in which the claim must be viewed. Indeed, Plaintiffs have not and cannot allege any quasi-contractual relationship with TFS.

1

## PLAINTIFFS' ALLEGATIONS[1]

The gravamen of the Complaint is that the Amaranth Defendants[2] purportedly manipulated the market in natural gas futures contracts ("NG Contracts") during the period between February 16, 2006 and September 28, 2006 by dominating trading in NG Contracts on the New York Mercantile Exchange ("NYMEX") in violation of Sections 6(c), 6(d) and 9(a)(2) of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 9, 13b, and 13(a)(2).  (Compl. ¶ 1,  2, 63, 238-40.)

Plaintiffs allege on behalf of a putative class that they purchased and sold NYMEX NG Contracts during the class period and, as a result, suffered losses due to the alleged manipulative conduct.  (Compl. ¶¶ 16-21.)

The Complaint alleges the Amaranth Defendants manipulated NG Contract prices by intentionally "slamming the close", a term that is not defined in the Complaint and is not, to TFS's knowledge, a term of art in the industry.  (Compl. ¶ 2(e)).  Plaintiffs allege that the Amaranth Defendants did this by selling NG Contracts on the NYMEX at the end of the contracts "settlement period,"[3] to depress the NG Contracts value. (Compl. ¶¶ 100-04.)  The Amaranth Defendants' ostensible motive was to benefit from substantially larger "short" positions that they allegedly held on an entirely different exchange, the Intercontinental

---

[1]  Solely for the purposes of this motion, TFS shall assume the accuracy of any well-pleaded factual allegations of the Complaint (but not any legal conclusions, deductions, or opinions couched as factual allegations).  *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92, ___ F. Supp. 2d ___, 2008 WL 819762, at *3 (S.D.N.Y. Mar. 26, 2008) ("*In re IPO*").  TFS reserves the right to challenge all of Plaintiffs' allegations in the event this motion is denied.

[2]  The Amaranth Defendants are defined as: Amaranth Advisors, L.L.C.; Amaranth LLC; Amaranth Management, LP; Amaranth International Limited; Amaranth Partners LLC; Amaranth Capital Partners LLC; Amaranth Advisors (Calgary) ULC; Nicholas M. Maonis; Brian Hunter; and Matthew Donohoe.  (Compl. ¶ 33.)

[3] The Complaint defines the "settlement period" as "the last 30 minutes of trading on the termination day" of a given futures contract.  (Compl. ¶ 50.)

Exchange ("ICE").  *(Id.)*  The Complaint does not allege that TFS acts as a floor broker on the ICE.  The only connection that the Complaint alleges that TFS had with this purportedly improper trading is that in its capacity as a floor broker (a clerical processor of trades) on the NYMEX, TFS executed some of the Amaranth Defendants' trades. [4]  (Compl. ¶¶ 8, 36, 114, 226.)

TFS is not alleged to have engaged in market manipulation or to have controlled anyone who engaged in market manipulation.[5]  The Complaint only asserts causes of action against TFS for generally "aiding and abetting violations of the Commodity Exchange Act" (Cause 3) and for unjust enrichment (Cause 5).  Because neither the aiding and abetting cause of action nor the unjust enrichment cause of action state a claim against TFS, TFS should be dismissed from this case.

## ARGUMENT

TFS incorporates by reference any grounds for dismissal asserted by TFS's co-Defendants to the extent those grounds are applicable to TFS.

### I.    Plaintiffs' Aiding and Abetting Claim Against TFS Does Not Satisfy the Heightened Pleading Standard of Rule 9(b)

Plaintiffs' market manipulation claims, and, consequently, their claims against TFS for aiding and abetting the market manipulation, are subject to the stringent pleading requirements of Fed. R. Civ. P. 9(b).  The Complaint, however, utterly fails to allege the requisite well-pleaded

---

[4] TFS is, indeed, merely a floor broker, and is not alleged to have provided advisory services or exercised any independent judgment with respect to any trades at issue in the complaint. Defendants ALX Energy, Inc., James DeLucia and Gotham Energy Brokers are also alleged to have effected Amaranth trades as NYMEX floor brokers.  Those three defendants, together with TFS, are frequently lumped together in the Complaint as the "Floor Broker Defendants".

[5] Indeed, while both the Commodity Futures Trading Commission ("CFTC") and the Federal Energy Regulatory Commission ("FERC") have brought actions against certain of the defendants regarding the same conduct at issue in the Complaint, neither the CFTC nor FERC have named TFS as a defendant.

facts demonstrating that TFS had *knowledge* of the Amaranth Defendants' alleged scheme. Moreover, Plaintiffs do not even allege facts supporting a strong *inference* of TFS's knowledge. The Complaint's claims against TFS must accordingly be dismissed.

### A.    Rule 9(b) Applies to Market Manipulation Claims

Plaintiffs' primary claim is against the Amaranth Defendants for market manipulation under Sections 6(c), 6(d) and 9(a)(2) of the CEA, 7 U.S.C. §§ 9, 13b, and 13(a)(2).  As such, the Complaint is subject to the heightened pleading requirements of Rule 9(b).  The Second Circuit recently held that, "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)."  *ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007).  "The deception arises from the fact that investors are misled to believe 'that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators'".  *Id.* at 100 (quoting *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999).[6]  Indeed, it is a well settled principle in this District that Rule 9(b)'s heightened pleading standard must be satisfied to sustain a market manipulation claim under the CEA where, as here, the conduct alleged to underpin the manipulation is of the type "classically associated with fraud."  *See In re Crude Oil Commodity Litig.*, No. 06-cv-6677, 2007 WL 1946553, at *4 (S.D.N.Y. June 28, 2007); *see also In re Natural Gas Commodity Litig.,* 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) ("*In re Natural Gas II*").

*In re Natural Gas II* applied the Second Circuit rule of *Rombach  v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004), mandating that when a complaint "sounds in fraud," it must fulfill the prerequisites of Rule 9(b), even where the complaint "does not allege a cause of action requiring

---

[6] Other courts similarly hold that a claim of manipulation is, in fact, a claim of fraud.  See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (stating manipulation "connotes intentional or willful conduct designed to deceive or defraud"); *Slusser v. CFTC*, 210 F.3d 783, 786 (7th Cir. 2000) (stating "manipulation is a species of fraud").

4

proof of fraud." 358 F. Supp. 2d at 343.  Specifically, the court held that Rule 9(b) applied to a market manipulation claim under the CEA where the alleged goal of the scheme was to create the perception of increased liquidity and demand for natural gas, thereby manipulating supply and demand.  *Id.*

Similarly, the *In re Crude Oil* court dismissed a class action complaint alleging manipulation of the market in crude oil futures for failure to plead with particularity under Rule 9(b).  The court held that because the "crux of plaintiffs' allegations is that defendants misled the market with regard to supply and demand," Rule 9(b)'s heightened pleading requirements applied to plaintiffs' manipulation claim.  *Crude Oil*, 2007 WL 1946553, at *5.

The same reasoning applies here.  Plaintiffs allege that the Amaranth Defendants manipulated the NG Contracts market by placing large orders to sell NG Contracts in the settlement period of the contract.  (Compl. ¶¶ 2(e), 5, 101, 113, 122, 127.)  Plaintiffs further allege that the Amaranth Defendants artificially drove down prices by placing these sale orders at the close of the NG Contracts settlement periods, thereby flooding the market and creating misleading supply and demand information for the NG Contracts.  (Compl. ¶¶ 6(f), 78, 81(d), 82(d), 112-115, 181.)  This alleged manipulation of "supply and demand" fits squarely with the reasoning of *Crude Oil* and *In re Natural Gas II*, and pursuant to these cases and *ATSI Communications*, Rule 9(b) applies to Plaintiffs' market manipulation claims.[7]

---

[7] The parties exchanged pre-motion letters in accordance with Rule III.B of This Court's Individual Rules and Procedures.  Plaintiffs' letter argued that this Court's recent *In re IPO* opinion holds that "Section 11 claims against issuer defendants were not subject to . . . Rule 9(b)'s heightened pleading requirements because plaintiffs' claims against issuer defendants rested on market manipulation, not false statements."  Plaintiffs' reliance on *In re IPO* is misplaced, as the *In re IPO* decision applied Rule 9(b) to plaintiff's market manipulation case brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, and specified that Rule 9(b) did not apply to the Section 11 claims because those claims "sound[ed] in negligence," not in fraud.  2008 WL 819762, at **4, 13.

**B.      Rule 9(b) Also Applies to Aiding and Abetting of Market Manipulation**

Similarly, because the primary violations upon which Plaintiffs' aiding and abetting

claim are based "sound in fraud," the aiding and abetting claims are also subject to the

heightened pleading requirements of Rule 9(b) and must be pleaded with the requisite

particularity.  *Krause v. Forex Exchange Market, Inc.,* 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005)

(applying Rule 9(b) to aiding and abetting in the context of the CEA); *see also Mazzaro v. Bank

of America Corp.,* 525 F. Supp. 2d 381, 388 (S.D.N.Y 2007) (applying Rule 9(b) to aider and

abettor liability with respect to a fraud claim).

**C.      The Claim Against TFS Does Not Survive Rule 9(b)**

To state a claim for aiding and abetting under the CEA, plaintiffs must allege: (1) the

existence of an underlying fraud; (2) that TFS actually knew of the fraud; and (3) that TFS

provided substantial assistance in the achievement of the underlying fraud.  *See Armstrong v.

McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); see also *Mazzaro*, 525 F. Supp. 2d at 387; *Krause*, 356

F. Supp. 2d at 338.  "Constructive knowledge is insufficient to create aiding and abetting

liability."  *Mazzaro*, 525 F. Supp. 2d at 387.  Actual knowledge of the aider and abettor is

required to sustain a claim.  *Id.*

Although 9(b) allows "intent, knowledge, and other condition of mind of a person [to] be

averred generally," this relaxation of 9(b)'s requirement is not a "license to base claims of fraud

on speculation and conclusory allegations."  *Crude Oil*, 2007 WL 1946553, at *8 (quoting *Simon

v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997)).  "Rather, the complaint must 'adduce specific

facts supporting a <u>strong inference</u> of fraud'".)  *Id.,* (quoting *Three Crown Ltd. P'ship v. Caxton

Corp.,* 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993))(emphasis in original).  The necessary strong

inference must be established by either "(a) alleging facts to show that defendants had both

motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

6

circumstantial evidence of conscious misbehavior or recklessness." *Crude Oil*, 2007 WL 1946553, at *8 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)); *see also Mazzaro*, 525 F. Supp. 2d at 387; *Krause*, 356 F. Supp. 2d at 339.

In this instance, Plaintiffs have alleged neither actual knowledge of the purported fraud, nor facts supporting a strong inference of TFS's knowledge.  Their aiding and abetting claim against TFS therefore fails to satisfy Rule 9(b)'s requirements for aiding and abetting under the CEA, and the claim must be dismissed.

### 1.    The Claim Does Not Sufficiently Allege Actual Knowledge

The Complaint does not include any specific factual allegations regarding any knowledge possessed by TFS, one of the "Floor Broker Defendants" named in the case.  The closest that the Complaint gets to any substantive factual allegations regarding TFS's knowledge of Amaranth's scheme is to state that one Amaranth employee told another that he would contact a clerk at a *different* Floor Broker Defendant to inform the clerk of Amaranth's long position.  (Compl. ¶112.)  Within the same paragraph, Plaintiffs then make an utterly unsupported leap of logic that Amaranth's employees must have similarly informed all other floor brokers of Amaranth's position.  (*Id.*)  Plaintiffs thereafter extrapolate even further to allege, without any substantiation or particularized factual allegation, that all floor brokers therefore had full knowledge of Amaranth's intent.  (*Id.*)  The court "need not accord '[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'"  *In re IPO,* 2008 WL 819762 (quoting *In re NYSE Specialists Sec. Litig.*, 503, F.3d 89, 95 (2d Cir. 2007).  *See also First Nationwide Bank v. Gelt Funding Corp*, 27 F.3d 763, 771 (2d Cir. 1994) ("In the absence of a factual basis underlying [plaintiff's] causation claim, we cannot accept its allegation as fact.")

The remainder of the allegations against the Floor Broker Defendants in general consists of formulaic general legal conclusions that all floor brokers aided and abetted with "knowledge

and substantial assistance", (Compl. ¶¶ 100, 105) and "knowingly executed" Amaranth's

strategy (Compl. ¶ 225). The sole allegation made directly against TFS is in the "Parties" section

of the complaint, where TFS is alleged to have had "knowledge of, and aided and abetted"

Amaranth's manipulation. Such "[c]onclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T.*

*Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Finally, the Complaint is devoid of any allegation that TFS had knowledge that Amaranth

was trading NG Contracts through other Floor Broker Defendants or knew of the Amaranth

Defendants' alleged "short" positions on the ICE. Since it is the crux of Plaintiffs' case that a

large number of trades were placed in order to "slam the close" and to benefit Amaranth through

these short positions, TFS simply cannot be held liable for aiding and abetting unless it had

knowledge of these essential elements.

2. The Claim Does Not Sufficiently Allege a Strong Inference of TFS's<br>Knowledge

The Complaint also does not allege any facts regarding misbehavior or recklessness by

TFS, and Plaintiffs' boilerplate allegations of motive are wholly insufficient to establish a strong

inference of intent on behalf of TFS. Plaintiffs' only attempt to allege that TFS had any motive

to aid and abet the alleged fraud is a blanket assertion that all of the Floor Broker Defendants had

a generalized "financial motive to aid and abet Amaranth" because Amaranth is a large trader

who "generated substantial revenue for the Floor Broker Defendants in the form of

commissions." (Compl. ¶ 223, 224.)

A generalized motive "which could be imputed to any publicly-owned, for-profit

endeavor, is not sufficiently concrete for purposes of inferring scienter". *Chill v. General*

*Electric Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (affirming dismissal without leave to replead for

8

failure to state fraud under 9(b)).  *See also Kalnit v. Eicher*, 264 F.3d 131, 140 (2d Cir. 2001) (finding allegation that a company acted to obtain a more favorable business agreement too generalized to be sufficient under Rule 9(b)); *Crude Oil*, 2007 WL 1946553, at *8.  Indeed, in *Mazzaro*, 525 F. Supp. 2d at 388, allegations of "substantial fees" and "unusually large volume" of business were held to be insufficient to create a reasonable inference of intent sufficient to salvage the complaint at issue from dismissal.  The Complaint in the instant case does not even allege any facts regarding the volume of business or commissions received by TFS; indeed, Plaintiffs admit that TFS is not Amaranth's primary floor broker.  (Compl. ¶112.)  As a result, these conclusory, blanket assertions of motive and intent are insufficient to sustain Plaintiffs' claim under Rule 9(b).

## II.    Plaintiffs' Aiding and Abetting Claim Cannot Even Survive Rule 12(b)(6)

### A.    The Complaint's Allegations Are Too Non-Specific to Satisfy Even More Lenient Pleading Requirements

Even if this Court determines that Rule 9(b) does not apply to the claims against TFS, the Complaint fails to state an aiding and abetting claim against TFS under the more liberal Rule 12(b)(6) standards.  As discussed above, the Complaint does not provide "factual allegations 'sufficient to raise a right to relief above the speculative level.'"  *In re IPO*, 2008 WL 819762 at *3.  Plaintiff's complaint "consists of conclusory allegations unsupported by factual assertions" and therefore . . . 'fails even the liberal standard of Rule 12(b)(6)'" *Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*, 451 F.3d 295, 307 (2d Cir. 2006).

### B.    TFS, As a Floor Broker, Is a Mere Processor of Orders Which, by Law, Can Have No Aiding and Abetting Liability

Moreover, without any well-pleaded facts regarding any knowledge, there can be no aiding and abetting liability for a floor broker – a simple order taker – such as TFS, with no duty

to monitor or question its customers regarding their trading orders.  *See Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983) ("we are not prepared to hold that a broker who merely executes an investment manager's orders for improper purchases or sales can be held liable as an aider and abettor"); s*ee also Cumis Ins. Soc'y, Inc. v. E.F. Hutton & Co.*, 457 F.Supp. 1380, 1386-87 (S.D.N.Y. 1978) (no aiding and abetting liability where brokerage firm lacked knowledge of investment advisor's wrongdoing).

Indeed, the Complaint does not allege that TFS provided any advice or exercised any judgment on behalf of the Amaranth Defendants.  TFS's function is, instead, similar to that of a discount brokerage that merely executes orders, rather than providing any advice or exercising judgment on behalf of its clients.  In *Chee v. Marine Midland Bank, N.A.*, Nos. 88-cv-0557,  88-cv-0673,  88-cv-0813,  88-cv-1808,  88-cv-1867 and 88-cv-2145, 1991 WL 15301 (E.D.N.Y. Jan. 29, 1991), the court analyzed the role of such a discount brokerage and dismissed aiding and abetting claims against the brokerage.  The court noted that the brokerage did not make any recommendations regarding trading strategies or markets and instead "simply executed buy and sell orders" when instructed to do so by the alleged primary wrongdoer.  *Id.* at*2.  Following *Armstrong* and *Cumis*, the court therefore held that – even though the discount brokerage may have provided technical advice to the person who was alleged to have wrongly placed the trades at issue – the broker could not be held liable without knowledge of the wrongdoer's improprieties.  *Id.*

III.    **Plaintiffs' Unjust Enrichment Claim Fails Because There Is No Nexus Between the Putative Class and TFS**

In addition, Plaintiffs fail to state a claim against TFS for unjust enrichment because they try to artificially detach the elements of the claim from the quasi-contractual context in which the

claim must be viewed.[8]  "Unjust enrichment under New York Law falls under the umbrella of quasi-contract."  *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298, 300 (S.D.N.Y. 1999) (citing E. Allen Farnsworth, Contracts § 2.20, at 103-104 (2d Ed. 1990) and *Lightfoot v. Union Carbide Corp.* 110 F.3d 898, 905 (2d Cir. 1997); *see also Michelle Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998) ("there must be some legally cognizable relationship between the parties"), *aff'd*, 173 F.3d 845 (2d Cir. 1999).

New York courts therefore dismiss unjust enrichment cases for failure to state a claim where the complaint does not allege a contractual or quasi-contractual relationship between plaintiffs and defendants.  For example, in *Reading International, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003), an antitrust plaintiff who owned a movie theater argued that he had stated an unjust enrichment claim because he had alleged that, by virtue of defendant theater chains' anticompetitive behaviors, the defendants had been enriched at his expense, and that equity and good conscience required them to make restitution.  The court held that this argument "would remove the elements of unjust enrichment from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed."  317 F. Supp. 2d at 333-34.  Despite the fact that plaintiff had recited the elements of unjust enrichment, the claim was dismissed based on plaintiff's failure to allege that he had a contractual or quasi-contractual relationship – or even any prior business dealings – with defendants.  *Id.*

---

[8] The elements of an unjust enrichment claim are "that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution.  *Hutton v. Klabal*, 726 F. Supp. 67 (S.D.N.Y. 1989) (upholding unjust enrichment claim in a case arising out of an agreement between plaintiff and defendant to purchase and resell etchings).

The putative class action representatives in this case were all traders on the natural gas futures market who allege that their losses, injuries and damages were "proximately caused" by Defendants' manipulation of the market.  The attenuated relationship between these plaintiffs and TFS will not support an unjust enrichment claim.[9]

New York courts have, for example, dismissed for lack of privity unjust enrichment claims in class action securities cases alleging fraud on the market.  In *Redtail Leasing, Inc. v. Belezza,* No. 95-cv-5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997), a case arising out of insider trading allegations against defendants who allegedly profited at the expense of shareholders of Motel 6, the court dismissed unjust enrichment causes of action because "an unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant", and because plaintiff only alleged a "contemporaneous trading relationship" with defendants.  The court also dismissed additional cases arising out of similar insider trading allegations against different defendants for the same reason:  "[w]ithout factual allegations that Plaintiffs had a more substantive connection to the Defendants beyond a contemporaneous trading relationship, Plaintiffs have not alleged facts to support a claim."  *In re Motel 6 Sec. Litig.*, Nos. 93-cv-2183 and 93-cv-2866, 1997 WL 154011, at *7 (S.D.N.Y. April 2, 1997).

---

[9] Even if this Court finds there are grounds for an unjust enrichment claim, plaintiffs fail to allege any of the remaining elements for a constructive trust.  *Modica v. Modica*, 71 N.Y.S.2d 134, 135 (2d Dep't 2005).

## CONCLUSION

Accordingly, the Plaintiffs' claims against TFS should be dismissed.  Further, because the

problems with the Complaint are substantive, as demonstrated above, any additional pleading

would be futile.  Therefore, the Complaint should be dismissed without leave to replead.

Dated: April 28, 2008
       New York, New York

                              Respectfully submitted,
                              ALSTON & BIRD, LLP


                              By:  /s/ Craig Carpenito
                              Alan Kanzer (AK-5839)
                              Karl Geercken (KG-5987)
                              Craig Carpenito (CC-1686)
                              90 Park Avenue
                              New York, NY 10016
                              (212) 210-9400
                              (212) 210-9444 (fax)

                              *Attorneys for Defendant TFS Energy Futures, LLC*

LEGAL02/30778040v6