## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
                                          :
                                          :
                                          :
IN RE: AMARANTH NATURAL GAS               :
COMMODITIES LITIGATION                    :   ECF Case
                                          :
This Document Relates to:                 :   Case No.: 07 Civ. 6377 (SAS)
                                          :
ALL ACTIONS                               :
                                          :
                                          :
                                          :
-----------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF MATTHEW DONOHOE'S MOTION TO DISMISS THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT


**SIMPSON THACHER & BARTLETT LLP**

Mark J. Stein
Joshua A. Levine
Brijesh P. Dave
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Matthew Donohoe*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................. 2

ARGUMENT ............................................................................................. 5

I.     THE HEIGHTENED PLEADING STANDARDS OF RULE 9(B) APPLY TO
       PLAINTIFFS' PURPORTED CLAIMS UNDER THE CEA ............................ 5

       A.     Standard for a Market Manipulation Claim Under the Commodity Exchange
              Act ..................................................................................................... 5

       B.     Plaintiffs Do Not Allege Any Specific Manipulative Acts by Mr. Donohoe ......... 7

II.    PLAINTIFFS FAIL TO ALLEGE MR. DONOHOE'S MANIPULATIVE INTENT
       WITH THE REQUISITE PARTICULARITY ............................................... 8

       A.     The Instant Messages Plaintiffs Cite Do Not Support A *Strong* Inference of
              Manipulative Intent ............................................................................. 9

       B.     The Contention that Mr. Donohoe "Must Have Known" of the Alleged
              Scheme is Insufficient as a Matter of Law .............................................. 11

       C.     Plaintiffs' Allegations of Motive Are Insufficient as a Matter of Law ................. 13

III.   PLAINTIFFS SIMILARLY FAIL TO STATE A CLAIM AGAINST MR.
       DONOHOE FOR AIDING AND ABETTING AND CONTROL PERSON
       LIABILITY ............................................................................................ 14

       A.     Plaintiffs Have Not Alleged with the Requisite Specificity that Mr. Donohoe
              Had Knowledge of a Principal's Intent to Violate the CEA and Intended to
              Further That Violation ........................................................................... 14

       B.     Plaintiffs Have No Right of Action for Control Person Liability ......................... 15

IV.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST
       ENRICHMENT ...................................................................................... 16

V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION OF THE CEA
       EVEN UNDER THE MORE LIBERAL RULE 8 PLEADING STANDARD ............... 17

VI.    ARGUMENTS IN AMARANTH ADVISORS L.L.C.'S AND AMARANTH
       ADVISORS (CALGARY) ULC'S MEMORANDUM OF LAW ARE
       INCORPORATED BY REFERENCE ............................................................ 19

CONCLUSION ........................................................................................... 20

## TABLE OF AUTHORITIES

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995) ............................................................ 13

*ATSI v. Schaar Fund, Ltd.,* 493 F.3d 87 (2d. Cir. 2007) ............................................................ 5

*B.H. Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................ 18

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ 18

*Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296 (2d. Cir. 2004) .................... 16, 19

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002) ...................................... 3

*Compudyne v. Shane,* 453 F. Supp. 2d 807 (S.D.N.Y. 2006) ...................................... 16

*Fustok v. Conticommodity Servs., Inc.,* 618 F. Supp. 1069 (S.D.N.Y. 1985)................................ 15

*Gristede's Foods, Inc. v. Unkechauge Nation,* 06-CV-1260, 2007 U.S. Dist. LEXIS 87562
(S.D.N.Y. Nov. 28, 2007) ............................................................ 16

*Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.,* 706 F. Supp. 221 (S.D.N.Y. 1989) ......... 7

*Harrison v. Rubenstein,* No. 02 Civ. 9356, 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007).............. 3

*Higginbotham v. Baxter Int'l Inc.,* 495 F.3d 753 (7th Cir. 2007) ............................................ 13

*In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.,* 782 F. Supp. 1382 (D. Ariz. 1991)
............................................................ 11

*In re Bayou Hedge Funds Inv. Litig.,* 472 F. Supp. 2d 528 (S.D.N.Y. 2007)........................ 16, 17

*In re BISYS Sec. Litig.,* 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................................ 7

*In re Crude Oil Commodity Litig.,* No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28,
2007) ............................................................ passim

*In re Natural Gas Commodity Litig.,* 337 F. Supp. 2d 498 (S.D.N.Y. 2004) ................... 6, 14, 18

*In re U.S. Office Prods. Sec. Litig.,* 326 F. Supp. 2d 68 (D.D.C. 2004) ...................................... 13

*Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161 (2d Cir. 2005) ............................................ 12

*Marchese v. Nelson,* 809 F.Supp. 880 (D. Utah 1993) ............................................................ 8, 10

*Martes v. USLIFE Corp.,* 927 F. Supp. 146 (S.D.N.Y. 1996)........................................ 17

*Michele Pommier Models, Inc. v. Benitez,* 14 F. Supp. 2d 331 (S.D.N.Y. 1998)........................ 16

*Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 619 F. Supp. 727 (S.D.N.Y. 1985) ... 15

*Miller v. N.Y. Produce Exchange*, 550 F.2d 762 (2d Cir. 1947).......................................................5

*Mormels v. Girofinance, S.A.*, 544 F. Supp. 815 (S.D.N.Y. 1982)..................................................5

*Reading Int'l v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ........................ 16

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir. 1986) ......................................................5

*Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133 (2d Cir. 2004) ...................................................7

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ....................................... 18

*Zucco Partners LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201 (D. Or. 2006) ........................... 12

*Modica v. Modica*, 791 N.Y.S.2d 134 (2d Dep't 2005)............................................................... 17

Commodity Exchange Act, 7 U.S.C. §§ 1 to 27f............................................................................1

Order to Show Cause and Notice of Proposed Penalties, Docket No. IN07-26-000 (FERC July 26, 2007) .......................................................................................................................................3

Pursuant to Federal Rule of Civil Procedure ("Rule") 9(b) and 12(b)(6),

Defendant Matthew Donohoe respectfully submits this memorandum of law in support of his

motion to dismiss the Corrected Consolidated Class Action Complaint ("the Complaint") filed by

Plaintiffs Roberto Calle Gracey, Dax Partners LP, John F. Special, Gregory H. Smith and Alan

Martin (together, "Plaintiffs"). [1]

## PRELIMINARY STATEMENT

Plaintiffs assert claims against Matthew Donohoe for: (1) market manipulation in

violation of the Commodity Exchange Act, 7 U.S.C. §§ 1 to 27f ("CEA"); (2) aiding and abetting

and control person liability for market manipulation; and (3) unjust enrichment. Yet,

notwithstanding the length of the Complaint (79 pages, 271 paragraphs), the extensive public

record to which Plaintiffs have had access, including a 135-page Senate Subcommittee report, a

complaint filed by the Commodities and Futures Trading Commission ("CFTC") and an Order to

Show Cause issued by the Federal Energy Regulatory Commission ("FERC"), and the

opportunities Plaintiffs have been provided to correct deficiencies through amendment,

Plaintiffs' claims against Mr. Donohoe fail for the most basic of reasons: they have not alleged

the requisite elements for each of their purported claims.

Mr. Donohoe was an execution trader affiliated with Amaranth. Mr. Donohoe did

not devise trading strategy. Rather, as his job title suggests, he implemented the trading strategy

developed by Mr. Hunter.

Plaintiffs allege that Mr. Donohoe took part in a grand market manipulation

scheme. However, Plaintiffs offer no well-pleaded allegations identifying the manipulative acts

---

[1]    Matthew Donohoe certifies that, pursuant to Rule III.B of the Honorable Shira A.
Scheindlin's Individual Rules and Procedures, a letter was sent to counsel for Plaintiffs
stating his intention to file the instant motion to dismiss based on the arguments set forth
in this memorandum of law in support.

that Mr. Donohoe allegedly committed.  Nor do they offer well-pleaded allegations that give rise to a strong inference that Mr. Donohoe acted with the intent to manipulate the natural gas futures market, or aid and abet such a manipulation.  Rather, Plaintiffs offer only conclusory allegations and boilerplate assertions, which in large part simply lump Mr. Donohoe with ten other defendants and collectively refer to these entities and individuals as "Amaranth Defendants" in support of their contentions.  Such allegations are legally insufficient.  Absent allegations regarding the specific actions Mr. Donohoe performed, and facts giving rise to a strong inference that he intended to manipulate the natural gas futures market, Plaintiffs' claims that Mr. Donohoe violated the CEA and aided and abetted a violation of the CEA must be dismissed.

Plaintiffs' remaining purported claims asserting control person liability and unjust enrichment similarly fail.  As an initial matter, there is no private cause of action for control person liability under the CEA; but, even if there were, Plaintiffs' conflicting and illogical allegations would not establish control person liability as to Mr. Donohoe.  More specifically, Plaintiffs allege that Mr. Donohoe was an agent of the Amaranth Defendants and Mr. Hunter, and it is axiomatic that an agent cannot control his principal.  Plaintiffs' unjust enrichment claim is equally deficient because Plaintiffs not only fail to allege any manipulative or inequitable actions on the part of Mr. Donohoe, but also have not alleged, *inter alia*, a relationship between Plaintiffs and Mr. Donohoe sufficient to assert a claim for unjust enrichment.

## STATEMENT OF FACTS[2]

Amaranth LLC ("Amaranth") was a multi-strategy trading fund advised by Amaranth Advisors L.L.C. and Amaranth Advisors Calgary ULC, which were in the business of,

---

[2]    Without detailing the specifics set forth by others, Mr. Donohoe addresses herein only those facts sufficient to demonstrate the deficiencies of Plaintiffs' Complaint as to him.

among other investment strategies, trading commodities futures, including natural gas.  Compl. ¶ 23.[3]

In 2005, Matthew Donohoe joined the natural gas trading team as an execution trader for Brian Hunter, Amaranth's head natural gas trader.  At the time, Mr. Donohoe had only three-and-a-half years of experience in derivatives trading.  He had no other relevant work experience, and no experience handling a book anywhere near as large or complex as that traded by Mr. Hunter.   Not surprisingly, Mr. Donohoe's role as an execution trader at Amaranth was largely mechanical: he executed trades in order to implement Mr. Hunter's trading strategy.  *See* Compl. ¶ 31.

In the fall of 2006, market forces turned against Amaranth.  Amaranth sustained massive losses in the natural gas futures market, eventually leading it to wind down the investment funds.  Order to Show Cause and Notice of Proposed Penalties, ¶ 34, Docket No. IN07-26-000 (FERC July 26, 2007) ("OSC").  On the heels of this well-publicized development, the Senate Permanent Subcommittee on Investigations ("Senate Subcommittee") engaged in an extensive investigation of any wrongdoing in connection with Amaranth's collapse.  In addition, the CFTC and the FERC similarly conducted their own inquiries.

During the course of its investigation into the natural gas futures market, Mr. Donohoe voluntarily appeared for an interview with the Senate Subcommittee.  The Senate

---

[3]     In connection with a motion to dismiss, a complaint is deemed to include "any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Harrison v. Rubenstein*, No. 02 Civ. 9356, 2007 WL 582955, at *10 (S.D.N.Y. Feb. 26, 2007) (citations omitted).  Because Plaintiffs specifically referenced and relied upon in their Complaint all of the documents cited in and attached to this memorandum of law, this Court may consider them without converting this motion into a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

3

Subcommittee has since requested neither additional information from, nor interviews of, Mr.

Donohoe. Furthermore, the Senate Subcommittee did not even discuss Mr. Donohoe in the 135-

page report of its investigation, which included a lengthy discussion of Amaranth's natural gas

futures trading. *See generally* Permanent Subcomm. On Investigations, Staff of the S. Comm.

On Homeland Sec. & Governmental Affairs, 110th Cong., Report on Excessive Speculation in

the Natural Gas Market (June 25, 2007), *available at*

http://hsgac.senate.gov/_files/REPORTExcessiveSpeculationintheNaturalGasMartket.pdf.

      Similarly, Mr. Donohoe provided joint testimony before the CFTC and the FERC

in connection with their inquiries. The CFTC has not requested any additional information from

Mr. Donohoe, and did not name him as a defendant in the complaint it ultimately filed alleging

*attempted* market manipulation against certain persons. Indeed, of the three government

agencies investigating Amaranth's collapse, only the FERC, in a misguided attempt to exert what

it mistakenly believes is its recently granted jurisdiction, has taken any action against Mr.

Donohoe, *i.e.*, naming him as a party in its OSC. [4]

      Relying almost exclusively on the results of these three government

investigations, Plaintiffs have brought this action against numerous defendants, including Mr.

Donohoe. However, despite having access to the fruits of the government's efforts (*e.g.*, the

Senate Subcommittee's report, the CFTC Complaint and the FERC OSC) while crafting and

subsequently amending their Complaint, Plaintiffs still fail to allege facts sufficient to sustain a

---

[4]    Indeed, the CFTC has been granted leave to intervene in *Amaranth Advisors LLC, et al. v. FERC*, 07-1491 (D.C. Circuit), the pending appeal of the FERC's assertion of jurisdiction over the futures market trading at issue here. The CFTC seeks to reconcile the FERC's asserted authority with the Congressional mandate that the CFTC possesses exclusive jurisdiction with respect to futures transactions executed on designated contract markets such as the NYMEX.

valid claim against Mr. Donohoe. The *78-page, 271-paragraph* complaint contains only *17* references to Mr. Donohoe. *See generally* Compl. These scattered references do not amount to allegations of manipulative conduct on the part of Mr. Donohoe nor do they demonstrate that Mr. Donohoe had knowledge of the purported market manipulation scheme. Rather, the allegations simply show Mr. Donohoe fulfilling his duties as an execution trader. Simply doing one's job, in the absence of any specific allegations that one violated the CEA, does not state a valid claim.

## ARGUMENT

I.    **THE HEIGHTENED PLEADING STANDARDS OF RULE 9(B) APPLY TO PLAINTIFFS' PURPORTED CLAIMS UNDER THE CEA**

A.    **Standard for a Market Manipulation Claim Under the Commodity Exchange Act**

Where, as here, a complaint sounds in fraud, the heightened pleading standards of Rule 9(b) apply. *See, e.g.*, *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *4-5 (S.D.N.Y. June 28, 2007) (applying Rule 9(b) to a claim of market manipulation under the CEA); *cf. ATSI v. Schaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("[A] complaint alleging securities fraud must satisfy Rule 9(b)."). [5] Plaintiffs must, therefore, plead with *specificity*: (i) the manipulative acts performed; (ii) which defendants performed

---

[5]    Cases interpreting the securities laws are applicable in evaluating claims under the CEA. *See Miller v. N.Y. Produce Exchange*, 550 F.2d 762, 769 n.4 (2d Cir. 1947) (in context of alleged manipulation claim under Section 9 of the CEA the court applied the reasoning of securities cases); *Mormels v. Girofinance, S.A.*, 544 F. Supp. 815, 817 n.8 (S.D.N.Y. 1982) ("Securities cases and principles are used as persuasive aids to interpretation of the CEA."); *see also Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 111 (2d Cir. 1986) (materiality standard for fraud is the same for securities and commodities).

them; (iii) when the acts were performed; (iv) the effect the acts had on the market; and (v) that the defendants acted with the requisite intent. *In re Crude Oil*, 2007 WL 1946553, at *6. [6]

As such, Plaintiffs must specifically allege the particular manipulative acts that *Mr. Donohoe* performed—simply "lumping" him together with other defendants is not enough. *See id.* ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement."). Plaintiffs have not identified Mr. Donohoe's allegedly manipulative acts, and accordingly have not met their burden under Rule 9(b).

Similarly, Plaintiffs must allege facts that give rise to a *strong inference* that Mr. Donohoe acted with the requisite intent: either that he intended to manipulate the market or, in the context of the purported aiding and abetting claim, that he had knowledge of the principal's intent to violate the CEA and intended to further that violation. *Id.* at *8 (noting that although Rule 9(b) provides that intent may be averred generally, a "strong inference" of fraud must be shown); *id.* at *7 ("[O]ur adoption of a heightened pleading standard in the context of the claims presented herein is in conformity with the direction of the Court [in *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S. Ct. 2499 (2007)]."); *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004) ("[T]o recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective."). Conclusory allegations or unwarranted deductions of fact do not give

---

[6] Section II of Amaranth Advisors L.L.C.'s and Amaranth Advisors (Calgary) ULC's memorandum of law in support of their motion to dismiss is incorporated herein by reference.

rise to a strong inference of intent, *see Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 137 (2d Cir. 2004) (affirming dismissal of derivative suit where shareholders failed to meet all pleading requirements), and a plaintiff cannot group plead intent. *See In re Crude Oil*, 2007 WL 1946553, at *6; *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) ("[T]he group pleading doctrine has no effect on the PSLRA's scienter requirement. . . . It does not permit plaintiffs to presume the state of mind of those defendants at the time the alleged misstatements were made.").

**B.    Plaintiffs Do Not Allege Any Specific Manipulative Acts by Mr. Donohoe**

Plaintiffs attempt to satisfy the requirement that they plead with specificity the manipulative acts performed by Mr. Donohoe by (i) imputing the alleged activities of other Defendants to Mr. Donohoe and (ii) alleging that Mr. Donohoe carried out his responsibilities as an execution trader, *i.e.*, he implemented Mr. Hunter's trading strategy. Plaintiffs' attempt is unavailing.

In paragraphs 63-98 and 121-146 of the Complaint, Plaintiffs assert that Amaranth held and traded large positions in NYMEX's natural gas futures contracts. Putting aside the fact that legitimate trading, even in large quantities, is not in and of itself manipulative conduct, nowhere in the 60 pages of text do Plaintiffs identify what manipulative acts, if any, Mr. Donohoe performed. In the absence of such specific allegations, Plaintiffs' market manipulation claim cannot survive. *See Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing plaintiffs' CEA claim under Rule 9(b) where "[t]he amended complaint simply sa[id] nothing about [the defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation of the [CEA].").

7

Additionally, in those few instances where there is a specific allegation as to Mr. Donohoe's conduct, all Plaintiffs have alleged is that Mr. Donohoe carried out his responsibilities as an execution trader. Specifically, Plaintiffs allege that Mr. Hunter "*instructed* Defendant Donohoe to buy a large number of March 2006 contracts before the close the next day so that Amaranth would have 'lots' of contracts to sell [during the close]," and that Mr. Donohoe "carried out Defendant Hunter's *instructions* . . . ." Compl. ¶¶ 106, 108, 113 (emphasis added)[7]; *see also* Compl. ¶¶ 136-141 (Hunter advising Calhoun that he is waiting to sell and Donohoe placing an order implementing that trading strategy). Thus, Plaintiffs' allegations of manipulative conduct simply boil down to Mr. Donohoe carrying out his responsibilities as an execution trader, *i.e.,* implementing trading strategy and communicating with Mr. Hunter regarding the same. An execution trader executing trades does not, without more, constitute manipulative conduct. *See Marchese v. Nelson*, 809 F. Supp. 880, 889 (D. Utah 1993) (finding that defendant did not have an intent to defraud where he "closely followed his superior's advice when conveying the value of an account").

## II.   PLAINTIFFS FAIL TO ALLEGE MR. DONOHOE'S MANIPULATIVE INTENT WITH THE REQUISITE PARTICULARITY

Plaintiffs' CEA claim likewise fails because they do not allege that Mr. Donohoe acted with the requisite intent to manipulate the natural gas market. Plaintiffs must plead specific facts showing that Mr. Donohoe "had both motive and opportunity" or must "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Crude Oil*, 2007 WL 1946553, at *8. Plaintiffs have failed to do so.

---

[7]    The text of other relevant allegations is quoted *infra*, Section II.A, pp. 9-11.

When Plaintiffs' 271-paragraph complaint is distilled to its essence, their attempt to allege that Mr. Donohoe acted with manipulative intent rests on the following, flawed foundation:

- a collection of isolated excerpts from instant messages, stripped of their context, many of which did not even involve Mr. Donohoe;

- conclusory allegations of financial motive that, as with the other allegations in the complaint, attempt to lump Mr. Donohoe in with the other so-called Amaranth Defendants; and

- an unwarranted deduction of fact, namely that, because Mr. Donohoe placed certain trade orders in his role as an execution trader, he must have been aware of the purported market manipulation scheme.

### A.    The Instant Messages Plaintiffs Cite Do Not Support A *Strong* Inference of Manipulative Intent

Plaintiffs attempt to demonstrate that Mr. Donohoe acted with intent by selectively citing to the instant messages appended to the CFTC Complaint and referenced in the FERC OSC.  However, these messages do not support a strong inference that Mr. Donohoe intended to manipulate the market.

As a preliminary matter, Mr. Donohoe *was not even a party* to many of the instant messages selectively cited by Plaintiffs, including the instant messages by which Plaintiffs hope to establish that Defendants designed a market manipulation scheme.  For example, the February 23, 2006 instant message in which Mr. Hunter refers to "a bit of an expiriment" [*sic*] is between Mr. Hunter and Bart Glover, *not Mr. Donohoe.  See* Compl. ¶¶ 105, 111.

Similarly, the instant message cited in paragraph 109, in which Mr. Hunter states that he would "just need H [the March 2006] contract to get smashed on settle then day is done," is between Messrs. Calhoun and Hunter, *not Mr. Donohoe.  See* Dave Aff. Ex. 1 (CFTC Complaint Exhibits).  Even if these instant messages were sufficient to establish intent as to other

9

Defendants, they are not, as a matter of law, sufficient to establish intent as to Mr. Donohoe.  *See*
*In re Crude Oil*, 2007 WL 1946553, at *6 ("In situations where multiple defendants are alleged
to have committed fraud, the complaint must specifically allege the fraud perpetrated by each
defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

Moreover, those instant messages cited in the Complaint to which Mr. Donohoe
was a party in no way demonstrate that he intended to manipulate the markets.  Rather, as
acknowledged by Plaintiffs in their Complaint, the instant messages show Mr. Donohoe simply
carrying out his ordinary duties as an execution trader:

- "On February 23, 2006 . . . Defendant Hunter told Defendant Donohoe in an
  instant message: 'make sure we have lots of futures to sell MoC [market on
  close] tomorrow.'  Defendant Hunter thus *instructed* Defendant Donohoe to buy a
  large number of March 2006 contracts before the close the next day so that
  Amaranth would have 'lots' of contracts to sell 'MoC,' that is, during the close."
  Compl. ¶ 106 (emphasis added).

- "Thus . . . Defendant Donohoe *advised* Defendant Hunter via an instant message
  at 12:22 P.M. that Amaranth was now long 3,111 contracts and asked whether he
  should buy more.  Defendant Hunter responded in the negative, stating 'that
  should be enough.'"  Compl. ¶ 108 (emphasis added). [8]

That Mr. Donohoe performed the routine functions of an execution trader by
simply buying and selling pursuant to a trading strategy he did not devise is not sufficient to
create a strong inference of intent.  *See Marchese*, 809 F. Supp. at 889; *In re Am. Continental
Corp./Lincoln Sav. & Loan Sec. Litig.*, 782 F. Supp. 1382, 1390 (D. Ariz. 1991) (finding that

---

[8]     The same is true for the telephone conversation between a Gotham broker and Mr.
Donohoe referenced in paragraph 141 of Complaint, in which Mr. Donohoe places an
order with Gotham.  Plaintiffs' allegations in the preceding paragraphs make it clear that
Mr. Donohoe was simply acting consistent with his instructions to wait to sell.  *See, e.g.*,
Compl. ¶ 136 ("Also early in the closing range on April 26, 2006, Defendant Hunter
stated to an Amaranth trader, Matthew Calhoun, 'we are wa[i]ting to sell.'").

defendant could not be liable even for aiding and abetting an alleged 10b-5 violation where "[t]he entire record shows only that the [the defendant] followed operational instructions").

Finally, Messrs. Hunter's and Donohoe's February 24, 2006 instant message exchange does nothing to alter this conclusion. In this electronic conversation, as he regularly did, Mr. Hunter sent Mr. Donohoe a price curve estimating where futures contract prices would ultimately settle based on the trading that day. *See* Dave Aff. Ex 2. The message as excerpted by Plaintiffs provides in part:

> Hunter: what do you think?
>
> Hunter: of this curve?[9]
>
> Donohoe: h[March natural gas futures contract] will settle lower . . . and h/j
>
> [March/April contract spread] wider . . . nice . . .
>
> Hunter: I am flexing here
>
> Donohoe: looking preety [*sic*] bang on. . . . we already mimiced. . . lol. . .  rrrrrrrr
>
> Hunter: hahahahaha
>
> Donohoe: 2nd best. . . sept/oct last year still the best

This instant message exchange, at most, suggests that Mr. Donohoe was happy with their trading performance. Such unremarkable observations do not give rise to any inference, much less a *strong* inference, of manipulative intent.

## B.   The Contention that Mr. Donohoe "Must Have Known" of the Alleged Scheme is Insufficient as a Matter of Law

Given the paucity of their specific allegations with respect to Mr. Donohoe, Plaintiffs likely hope that the Court will infer that he knew (or should have known) of the

---

[9]    Plaintiffs omit the initial two lines of this instant message exchange in the excerpt that they cite. Compl. ¶116.

11

purported manipulative scheme based on the allegations that, in his role as an execution trader, Mr. Donohoe placed certain trades. The Court should not make this major and unwarranted inferential leap.

While Plaintiffs may be entitled to reasonable inferences derived from well-pleaded allegations, what Plaintiffs seek is not a reasonable inference, but rather an unwarranted deduction of fact to which Plaintiffs are not entitled and which the Court should not credit. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005) (noting that "[c]onclusions of law or unwarranted deductions of fact are not admitted" on a motion to dismiss (internal quotation marks omitted)); *Zucco Partners LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1208 (D. Or. 2006) (rejecting "he must have known" type allegations).

Indeed, the only reasonable inference to which Plaintiffs' allegations give rise is that Mr. Donohoe was never advised of the purported fraudulent scheme. For example, there is no suggestion in any of the instant messages that Plaintiffs cite or in the gigabytes of documents reviewed by the CFTC or FERC that Mr. Donohoe knew of the purported scheme. Notably, the CFTC did not bring an action against Mr. Donohoe, and FERC's ill-advised OSC does not reference a single instant message or other communication in which Mr. Donohoe was advised of the alleged scheme. Similarly, the 135-page report of the Senate Subcommittee does not even discuss Mr. Donohoe, let alone suggest that he was guilty of any wrongdoing, notwithstanding the fact that he voluntarily submitted to an interview with Senate Subcommittee staff in connection with its investigation. [10]

---

[10]  Permanent Subcomm. on Investigations, Staff of the S. Comm. on Homeland Sec. & Governmental Affairs, 110th Cong., Report on Excessive Speculation in the Natural Gas Market (June 25, 2007), *available at* http://hsgac.senate.gov/_files?REPORTExcessiveSpeculationintheNaturalGasMarket.pdf.

12

In short, the allegations of the Complaint not only fail to give rise to an inference that Mr. Donohoe knew of the purported manipulative scheme, but they instead suggest the exact opposite: that Mr. Donohoe in fact *did not know* of the alleged scheme. *See Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) (ruling that allegations did not support a strong inference of scienter where Plaintiffs' failure to substantiate fraud actually supported an inference that management did not know of the fraud).

## C.    Plaintiffs' Allegations of Motive Are Insufficient as a Matter of Law

Plaintiffs' attempt to demonstrate motive and opportunity by alleging that the "Amaranth Defendants had an extraordinary financial motive to manipulate NYMEX natural gas futures and options contract prices" is insufficient as a matter of law. Compl. ¶ 176. It is well-settled that mere allegations of financial gain without more cannot support a strong inference of intent. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir. 1995) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated."); *In re U.S. Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68, 76 n.1 (D.D.C. 2004) ("Courts have routinely rejected the notion that a plaintiff can demonstrate adequate motive and opportunity by pointing to a desire to increase compensation . . . because such a motive can be imputed to all corporate officers.").

Moreover, Plaintiffs' conclusory allegation in no way suggests what, if any, financial motive Mr. Donohoe, an execution trader, would have to manipulate the market. In particular, Plaintiffs do not specify what, if anything, Mr. Donohoe would stand to gain from engaging in market manipulation. As with the rest of the Complaint, Plaintiffs simply, and improperly, lump Mr. Donohoe in with the other Amaranth Defendants. Plaintiffs cannot satisfy

13

their pleading requirements by grouping defendants and making gross generalizations. *See In re Crude Oil*, 2007 WL 1946553, at *6.

### III. PLAINTIFFS SIMILARLY FAIL TO STATE A CLAIM AGAINST MR. DONOHOE FOR AIDING AND ABETTING AND CONTROL PERSON LIABILITY

#### A. Plaintiffs Have Not Alleged with the Requisite Specificity that Mr. Donohoe Had Knowledge of a Principal's Intent to Violate the CEA and Intended to Further That Violation

In order for Plaintiffs' aiding and abetting claim to survive, they must allege with specificity that Mr. Donohoe: "(1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004). As is clear from the preceding discussion, Plaintiffs have not made anything close to the requisite showing.

First, Plaintiffs fail to allege that Mr. Donohoe had knowledge of a principal's intent to violate the CEA. The instant messages Plaintiffs rely on, to which Mr. Donohoe is not a party, or which simply demonstrate that he was performing his routine duties, in no way support a strong inference that Mr. Donohoe was aware of anyone's alleged intent to violate the CEA.

Second, given Plaintiffs' failure to establish that Mr. Donohoe even had knowledge of another's intent to violate the CEA, they likewise cannot show that Mr. Donohoe intended to aid in such a violation. In addition, assuming *arguendo* that Mr. Donohoe had knowledge of another's purported intent to violate the CEA, Plaintiffs have failed to allege with the requisite specificity that Mr. Donohoe intended to further the alleged violation.

14

Finally, Plaintiffs' failure to specify those acts that Mr. Donohoe supposedly committed in furtherance of the principal's objective to violate the CEA likewise is fatal to their claim.

**B.     Plaintiffs Have No Right of Action for Control Person Liability**

Plaintiffs' purported claim for control person liability suffers from the most fundamental of defects: there is no private cause of action for control person liability under the CEA. *See Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1069, 1072-73 (S.D.N.Y. 1985); *Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 619 F. Supp. 727, 739 (S.D.N.Y. 1985). As such, this claim fails as a matter of law.

Moreover, even if there were a private cause of action for control person liability under the CEA, Plaintiffs have failed to plead that Mr. Donohoe was a control person. Indeed, Plaintiffs' very allegations make clear that Mr. Donohoe was *not* a control person. Rather, Mr. Donohoe, per the Complaint, was an *agent* of the Amaranth Defendants and Mr. Hunter. *See* Compl. ¶ 31. Plaintiffs' half-hearted attempt to create a control person claim by alleging that Mr. Donohoe, along with "Defendants Amaranth Advisors, Amaranth LLC, Amaranth Management, Amaranth Group, Amaranth International, Amaranth Partners, Amaranth Capital Partners, Amaranth ULC, Maounis [and] Hunter . . . controlled the Amaranth Defendants" is insufficient. Not only is it a boilerplate allegation with no factual underpinning whatsoever, but it also is contradicted by other allegations of the Complaint stating that, as an execution trader, Mr. Donohoe acted as an agent of the Amaranth Defendants and Mr. Hunter. An agent cannot control its principal.

15

IV.   **PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT**

        Plaintiffs' purported third and final claim for unjust enrichment is as meritless as the first two claims.  In order to state a claim for unjust enrichment, a plaintiff must establish: (1) that the defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.  *Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  In addition, the allegedly ill-gotten benefit must be "specific" and "direct."  *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  The facts alleged by Plaintiffs establish none of these elements.

        First, unjust enrichment is a quasi-contractual claim applied where there is a *relationship* of some kind between the parties of such a nature that a court will imply the existence of a contract.  *Gristede's Foods, Inc. v. Unkechauge Nation*, 06-CV-1260, 2007 U.S. Dist. LEXIS 87562, at *40 (S.D.N.Y. Nov. 28, 2007); *Reading Int'l v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003).  Typically, such a relationship is a contractual relationship that failed, or, in the absence of a contractual relationship, a substantive relationship or direct dealings.  *Id.*; *Michele Pommier Models, Inc. v. Benitez*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998).  Here, the Complaint alleges *no relationship at all* between Mr. Donohoe and Plaintiffs, let alone one that rises to the level of a contractual or quasi-contractual relationship.  *Compudyne v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (dismissing unjust enrichment claim where plaintiffs did not allege they were counterparties to any of the allegedly unlawful trades).

Second, the Complaint fails to allege the specific benefit that Mr. Donohoe received that he should not retain because it belongs to Plaintiffs. *Martes v. USLIFE Corp.*, 927 F. Supp. 146 (S.D.N.Y. 1996). Instead, Plaintiffs merely make a vague and generalized reference to financial gains collectively made by the so-called Amaranth Defendants, and do not even demonstrate that such benefit ever belonged to the Plaintiffs in the first place. Such allegations are insufficient as a matter of law. *See In re Bayou*, 472 F. Supp. 2d at 532 (dismissing unjust enrichment claim where plaintiffs did not adequately allege that defendants received money from the plaintiffs).

Finally, the Complaint contains no well-pleaded allegations of wrongdoing on the part of Mr. Donohoe. For example, there is no indication that Mr. Donohoe knew of the purported manipulative scheme. Thus, it is impossible to argue that Mr. Donohoe was unjustly enriched at the expense of Plaintiffs; this is yet another reason the final cause of action must fail. [11]

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION OF THE CEA EVEN UNDER THE MORE LIBERAL RULE 8 PLEADING STANDARD

Even under Rule 8's more liberal pleading standard, which does not apply here, Plaintiffs fail to allege sufficiently that: (1) Mr. Donohoe possessed an ability to influence market prices; (2) Mr. Donohoe caused an artificial price; and (3) Mr. Donohoe specifically intended to cause an artificial price. *In re Crude Oil*, 2007 WL 1946553, at *3. Plaintiffs' Complaint cannot survive a 12(b)(6) motion on the strength of conclusory allegations and

---

[11]     Plaintiffs' request for a constructive trust also must be denied based on their failure to demonstrate: (1) a confidential or fiduciary relationship; (2) a promise; (3) transfer in reliance on the promise; and (4) unjust enrichment. *See Modica v. Modica*, 791 N.Y.S.2d 134 (2d Dep't 2005) (affirming lower court's dismissal of constructive trust claim where the plaintiffs could not show a promise, transfer in reliance, or unjust enrichment).

17

boilerplate assertions, which is all they have alleged with respect to Mr. Donohoe. *See B.H. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (citations omitted).

Additionally, as the Supreme Court recently made clear, Plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Complaint must set forth "plausible" grounds for relief; simply setting forth facts consistent with a potential cause of action is not enough. *Id.* at 1966-68. At best, Plaintiffs allege that Mr. Donohoe: (1) performed his routine duties as an execution trader; (2) communicated with Mr. Hunter in connection with the same; and (3) greeted news of a good trading performance with a degree of exuberance. These are normal, daily activities of an execution trader; they do not establish a factual predicate underlying a market manipulation claim because they do not "plausibly suggest[]" that Mr. Donohoe, in any way, violated the CEA. *Id.* at 1966. Instead, they are analogous to the "parallel conduct and a bare assertion of conspiracy" allegations that the Supreme Court in *Twombly* found insufficient to state a claim. *Id.* Accordingly, Plaintiffs' claim that Mr. Donohoe violated the CEA is deficient and warrants dismissal, regardless of which pleading standard applies.

Nor do Plaintiffs' aiding and abetting and unjust enrichment claims survive the Rule 8 pleading standard. Plaintiffs fail to allege sufficiently that Mr. Donohoe "(1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." *In re Natural Gas*, 337 F. Supp. 2d at 511. They similarly fail to plead facts sufficient to support a claim that Mr. Donohoe

18

was enriched at Plaintiffs' expense under such circumstances that he should in equity

compensate the Plaintiffs. *Briar-patch Ltd.*, 373 F.3d at 306.

**VI.    ARGUMENTS IN AMARANTH ADVISORS L.L.C.'S AND AMARANTH
ADVISORS (CALGARY) ULC'S MEMORANDUM OF LAW ARE
INCORPORATED BY REFERENCE**

In addition to the arguments set forth above, Plaintiffs' purported claims also fail

for the reasons put forth in Sections I, II, III(A) and (C), IV, and V of Advisors L.L.C.'s and

Amaranth Advisors (Calgary) ULC's memorandum of law in support of their motion to dismiss,

which are incorporated herein by reference.

19

**CONCLUSION**

For the foregoing reasons, we respectfully submit that the Complaint should be dismissed with prejudice as to Mr. Donohoe.


Dated: New York, New York

April 28, 2008

SIMPSON THACHER & BARTLETT LLP


By  /s/ Mark J. Stein_____
    Mark J. Stein
    Joshua A. Levine
    Brijesh P. Dave
    425 Lexington Avenue
    New York, N.Y. 10017-3954
    Telephone: (212) 455-2000
    Facsimile: (212) 455-2502

    *Attorneys for Matthew Donohoe*