UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE: AMARANTH NATURAL GAS
COMMODITIES LITIGATION

MASTER FILES  NO.
07 Civ. 6377 (SAS)
ECF Case

This Document Relates To:

ALL ACTIONS
------------------------------------------------------------------X

## DEFENDANTS JAMES DELUCIA'S AND ALX ENERGY, INC.'S
## MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS
## PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT

STEVEN R. GOLDBERG (SG2825)
Attorney for defendants
DELUCIA and ALX ENERGY, INC.
One North End Avenue, Suite 1107
New York, New York 10282
Tele. No.: 212-845-5100
Fax No.:  212-845-5102

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………..………………………………………………............…..ii

PRELIMINARY STATEMENT................................................................................................1

REASONS FOR DISMISSAL................................................................................................4

ARGUMENT...............................................................................................................................6

POINT I

PLAINTIFFS' COMPLAINT IS INSUFFICIENT UNDER EITHER RULE 9 (B) OR
RULE 8 TO MAKE OUT A CLAIM AGAINST THE ALX DEFENDANTS FOR AIDING
AND ABETTING. ..…...........................................................................................................7

    A. RULE 9(b) APPLIES TO THE UNDERLYING CLAIM.............................................7

    B. RULE 9 (b) APPLIES TO THE AIDING AND ABETTING CLAIM..........................8

    C. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED KNOWLEDGE AND
    INTENT.......................................................................................................................8

    D. EVEN UNDER RULE 8 (a) (2) THE COMPLAINT FAILS TO ADEQUATELY
    ALLEGE AIDING AND ABETTING.............................................................................11

POINT II

PLAINTIFFS' COMPLAINT IS INSUFFICIENT UNDER EITHER RULE 9(b) OR
RULE 8 TO MAKE OUT A CLAIM AGAINST ALX FOR UNJUST ENRICHMENT.....17

POINT III

THE ALLEGATIONS FO THE COMPLAINT AS TO THE UNDERLYING
MANIPULATION SCHEME ARE INSUFFICIENTLY PLEADED UNDER RULES 9(b)
OR 8(a)......................................................................................................................................19

CONCLUSION…......................................................................................................................21

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page(s)</u>

**Armstrong v. McAlphin**
699 F. 2d 79, (2d cir. 1983)..............................................................................................8

**Asahi Glass Co. v. Pentech Pharmaceuticals, Inc**
289 F.Supp.2d 986, (N.D.Ill.2003)....................................................................................5

**ATSI Commissions, Inc. v. Schaar Fund, Inc**
493 F.3d 87 (2d Cir.2007).............................................................................................6,7

**Bell Atlantic v. Twombley**
550 U.S._____, 127 S.Ct. 1955, 1966 (2007).............................................................6,12

**Blue Chip Stamps v. Manor Drug Stores**
421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).........................................................5

**CFTC v. Johnson**
408 F. Supp. Ed 259 (S.D. Tex. 2005).................................................................................8

**Daves v. Hawaiian Dredging Co**
114 F.Supp. 643, (D. Hawai 1953).......................................................................................5

**Decker v. Massey-Ferguson, Ltd**
681 F.2d 111, (2nd Cir, 1982)............................................................................................21

**DiVittorio v. Equidyne Extraative Indus., Inc.**
822 F.2d, 1242, (2d Cir, 1987............................................................................................12

**Dolmetta v. Uintah Nat'l Corp**
712 F.2d 15, (2d Cir.1983)..................................................................................................17

**Dura Pharmaceuticals, Inc. v. Broudo**
544 U.S. 336, 125 S. Ct. 1627, 161 L.Ed.2d 577 (2005)......................................................5

**Forex v. Bank of China**
528 F.Supp.2d 419, (S.D.N.Y. 2007)..................................................................................8,9

**Granite Parners, L.P. v. Bear Stearns & Co. Inc**
17 F.Supp.2d 275, (S.D.N.Y.1998).....................................................................................18

**Gristede's Food, Inc. v. Unkechauge Nation**
532 F.Supp.2d 439, (S.D.N.Y.2007)..................................................................................18

**Gross v. Diversified Mortgage Investors**
431 F. Supp. 1080, (S.D.N.Y.,1977), aff'd, 636 F.2d 1201 (2d Cir., 1980)..................................21

**Iqbal v. Hasty**
490 F.3d 143, (2d Cir.2007)..........................................................................................6

**In re Crude Oil Commodity Litig.,**
No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................6,7,17,19,20

**In re Natural Gas Commodity Litigation**
358 F. Supp. 2d 336, (S.D.N.Y. 2005)..........................................................................7,19,20

**In re Richardson Sec., Comm. Fut. L. Rep**
Comm. Fut. L. Rep CCH ¶ 21,145, (CFTC 1981).........................................................................8

**JP Morgan Chase Bank v. Winnick**
406 F.Supp.2d 247, (S.D.N.Y. 2005)...............................................................................9

**Kaye v. Grossman**
202 F.3d 611, (2d Cir.2000)........................................................................................17

**Krause v. Forex Exch. Market, Inc**
356 F.Supp.2d 332, (SDNY 2005)......................................................................................8

**Lerner v. Fleet Bank N.A**
459 F.3d 273, (2d Cir.2006)...........................................................................................9

**Lightfoot v. Union Carbide Corp**
110 F.3d 898, (2d Cir. 1997)........................................................................................19

**Madonna v. United States**
878 F.2d 62, (2d Cir, 1989)........................................................................................21

**Makor Issues & Rights, Ltd. v. Tellabs**
437 F.3d 588 (7th Cir, 2005)........................................................................................17

**M'Baye v. New Jersey Sport Production, Inc.**
2007 WL 431881, (SDNY); 8 N.Y.2d 204, 215 (2007)..................................................................19

-iii-

**Neitzke v. Williams**
490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)................................................................12

**Papasan v. Allain**
478 U.S. 265, 106 S.Ct 2932, 92 L.Ed.2d 209 (1986)..................................................................12

**Primaver Familienstiftung v. Askin**
173 F.R.D. 115, (S.D.N.Y. 1997)..................................................................................................10

**Reading International, Inc. V. Oaktree Capital Management LLC**
317 F.Supp.2d 301, (S.D.N.Y. 2003)........................................................................................18,19

**Sanjuan v. American Bd. Of Psychiatry and Neurology**
40 F.3d 247, (C.A.7 1994).............................................................................................................12

**Securities Investor Protection Corp. v. BDO Seidman, LLP**
222F.3d 63, (2d Cir.2000)...............................................................................................................6

**Shields v. City Trust Bancorp Inc**
25 F.3d 1124, (1994)......................................................................................................................10

**Sperry v. Crompton Corp**
8 N.Y.2d 204, (2007)......................................................................................................................19

**State Farm Mut. Auto. Ins. Co. v. Kalika**
No. 04 Civ 4631 2007 WL 4326920 (E.D.N.Y. Dec 7, 2007)........................................................17

**Swierkiewicz v. Sorema N.A**
534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).....................................................................12

**Tellabs, Inc. v. Makor Issues & Rights Ltd**
127 S.Ct. 2499 (2007)...............................................................................................................11,17

**Three Crown Ltd. P'ship v. Caxton Corp**
817 f. Supp. 1033, (S.D.N.Y., 1993).............................................................................................12

**Wexner v. First Manhattan Co.,**
902 F. 2d 169, (2d Cir,1990)........................................................................................................12

**STATUTES**
7 U.S.C. § 9......................................................................................................................................7

7 U.S.C. § 13b..................................................................................................................................7

7 U.S.C. § 13(a)......................................................................................................................7

7 U.S.C. § 25(a)......................................................................................................................7

7 U.S.C. § 22(a)(1)..................................................................................................................8

7 U.S.C. § 25 (a)(1).................................................................................................................8

Fed. R. Civ. P. 8.............................................................................................4,5,6,7,11,12,17,21

Fed. R. Civ. P. 8(a)..................................................................................................................2

Fed. R. Civ. P. 8 (a)(2).........................................................................................................5,11

Fed. R. Civ. P. 9 (b).............................................................................2,4,5,7,8,11,17,20,21

Fed. R. Civ. P. 12 (b) (6)....................................................................................2,6,12,21

Commodity Exchange Act § 6(c)............................................................................................7

Commodity Exchange Act § 6(d)............................................................................................7

Commodity Exchange Act § 9(a)............................................................................................7

Commodity Exchange Act § 22(a)..........................................................................................7

## TREATISE
5 Wright & Miller § 1216.....................................................................................................5,12

## OTHER AUTHORITIES
Commodity Futures Trading Commission v. Amaranth Advisors, LLC, et. al.
(District Court, S.D.N.Y. - Index No. 07 CIV 6682)..............................................1,12,20


Federal Energy Regulatory Commission Order to Show Cause and
Notice of Proposed Penalties........................................................................1,13,15,20

United States Senate Permanent Subcommittee on Investigations Report.................1,13

## PRELIMINARY STATEMENT

The allegations contained in plaintiffs' corrected consolidated class action complaint

(hereinafter "Complaint") are derived from and based on the contents of (1) a Commodities

Futures Trading Commission ("CFTC") complaint filed against  several of the Amaranth

defendants (This former complaint is entitled "Commodity Futures Trading Commission v.

Amaranth Advisors, LLC, et. al. (District Court, SDNY- Index No. 07 CIV 6682) (hereinafter

referred to as the "CFTC Complaint") may be viewed on the CFTC website at

http://www.cftc.gov/stellent/groups./public/@lrenforcementactions/documents/legalpleading/enf

amaranthcompalint072507.pdf) ; (2) a Federal Energy Regulatory Commission ("FERC") Order

to Show Cause and Notice of Proposed Penalties (hereinafter referred to as the "FERC OSC")

filed against several of the Amaranth defendants (The FERC complaint may be viewed on the

FERC website at

 http://www.ferc.gov/EventCalendar/Files/20070726084235-IN07-26-000.pdf) ; and (3) the

United States Senate Permanent Subcommittee on Investigations ("Senate subcommittee") report

which may be viewed at

http://hsgac.senate.gov/_files/REPORTExcessiveSpeculationintheNaturalGasMarket.pdf

Plaintiffs filed the within lawsuit against ALX ENERGY, INC. and its principal, JAMES

DELUCIA (collectively herein "ALX" or "ALX Defendants") without having a legally

cognizable claim or a factual basis, attempting to exploit bits and pieces of a structured

government investigations.  It is significant however, that neither the CFTC FERC or the Senate

subcommittee, after completing comprehensive investigations including the thorough review of

all relevant documents and after conducting numerous depositions, including those of the

defendants herein, have filed any claim (either through a formal complaint or through its

1

administrative authority) against the ALX Defendants. In fact, the Senate subcommittee does not even mention the ALX Defendants in its findings.

The facts alleged in plaintiffs' Complaint with respect to the ALX Defendants further re-confirm the lack of wrongdoing by the ALX Defendants. At best, plaintiffs allege no more than that ALX complied with its legal duty as floor brokers to execute orders placed by its customers in accordance with the terms of those orders and in the best interest of its customers. The ALX Defendants join in the arguments raised by all other defendants in their respective motions to dismiss as they are applicable to the ALX Defendants. Accordingly, the Complaint should be dismissed pursuant to F.R.C.P. 8(a), 9(b) and 12(b)(6).

The Complaint, as lengthy as it is, does not add any facts to the allegations contained in either the CFTC Complaint or FERC OSC. It is bereft of any facts upon which a reasonable inference might be had supporting the plaintiffs' bare conclusions that the ALX Defendants knowingly aided and abetted a market manipulation scheme (third cause of action) or was unjustly enriched by it (fifth cause of action). The Complaint simply parroted the CFTC Complaint and the FERC OSC and added defendants (described by the plaintiffs as the "Floor Defendants" which includes the ALX Defendants) without asserting a factual basis to support such claims upon which relief may be granted.

The few allegations addressed to the ALX Defendants- all of which are derived directly or indirectly from the CFTC Complaint or the FERC OSC are as follows:

- that Amaranth was ALX's largest client;

- that ALX was Amaranth's chief floor broker for natural gas at NYMEX;

2

- that an ALX employee named Vincent Rufa had an unspecified social relationship with unspecified Amaranth employees and visited them in Canada at some unspecified time;

- that one of the Amaranth defendants stated in an e-mail to another Amaranth defendant that he was going to inform a person, identified only as "[V]innie," of Amaranth's unspecified "long position and intentions" on or about a settlement date [1];

- that ALX executed trades for Amaranth when Amaranth was over its position limits; and

- that ALX executed some of Amaranth's trades on a day that plaintiffs allege Amaranth "Slammed the Close".

None of these allegations, taken as true for the purposes of the ALX Defendants' motion to dismiss, is in any way unusual or indicative of knowledge or intent of any wrongdoing by the ALX defendants. Although the plaintiffs have gone to great lengths to draft a seventy-five page complaint consisting of two hundred and seventy one allegations, the Complaint claims, almost as an afterthought, that the Floor Defendants "aided and abetted" the Amaranth Defendants because they provided the service required of their job as floor brokerage entities in accordance with the rules of the New York Mercantile Exchange, Inc. ("NYMEX") and, consequently, the Floor Defendants were "unjustly enriched." These claims are made without alleging the facts to support their claims.

The plaintiffs alleged a claim of "aiding and abetting" without any specific allegation of factual wrongdoing by the ALX Defendants. The plaintiffs alleged a claim of "unjust enrichment" despite admitting that the ALX Defendants, as a floor brokerage entity, were paid a

commission per transaction (and nothing additional). The Complaint makes no factual allegations which support a claim that the ALX Defendants were enriched at all at plaintiffs' (or the putative class members') expense. Nor can ALX be said to have any substantial relationship with any of the plaintiffs or class members which would make it subject to an unjust enrichment claim.

Finally, as this case is based solely on manipulative trading claims similar to a claim in fraud, the standard of particularity in pleading for plaintiff is heightened    (F.R.C.P. 9(b)), and the complaint, although voluminous, cannot satisfy that standard. Even were the less strict standard in F.R.C.P. 8 applied, plaintiffs' pleading falls short.

## REASONS FOR DISMISSAL

The Complaint should be dismissed against the ALX Defendants for the following reasons:

1) The allegations are insufficient as a matter of law to sustain an underlying market manipulation violation.

2) Assuming, *arguendo,* an underlying violation, there are no factual allegations indicating that the ALX Defendants had any knowledge of the manipulation, intended to further it, or did further its manipulative elements. Moreover, actionable "motivation" cannot be established merely by alleging a desire for gain except under extraordinary circumstances not found here, and, allegations relating to "opportunity" must be more than the defendants doing merely their job.

3) Assuming, *arguendo,* an underlying violation, there are no factual allegations supporting the claim that ALX, a floor brokerage entity, which is paid per transaction

---

[1] As will be shown in detail below, these allegations are all speculation even assuming the Vinnie

4

by its customer (whether it won or lost on its trade), was unjustly enriched at plaintiffs' expense.

4) Assuming, *arguendo,* an underlying violation, there are no factual allegations supporting the assertion that ALX had any substantial relationship with any plaintiff as would be necessary to sustain a claim for unjust enrichment.

5) The allegations of the Complaint do not state with sufficient particularity the circumstances constituting market manipulation or ALX's alleged role in it as required by F.R.C.P. 9(b).

6) The allegations of the Complaint do not show plaintiff's entitlement to relief against ALX as required by F.R.C.P. 8(a)(2).

Although it is the ALX Defendant's position that this case is governed by F.R.C.P. 9(b), it is respectfully submitted that even if Rule 8 is deemed to be applicable, groundless claims must not be permitted to survive a motion to dismiss, thereby compelling an innocent party to defend itself through extensive discovery or force innocent parties into settlement positions. As the Supreme Court recently noted:

> "We alluded to the practical significance of the Rule 8 entitlement requirement in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with ' "a largely groundless claim" ' be allowed to ' "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Id.,* at 347, 125 S.Ct. 1627 (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, ' "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." ' 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.,* 114 F.Supp. 643, 645 (D.Hawai *1953)); see also* Dura, supra, *at 346, 125 S.Ct. 1627;*Asahi Glass Co. v. Pentech Pharmaceuticals, Inc., *289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ('[S]ome threshold of plausibility must be*

referred to in the IM actually was Vincent Rufa of ALX.

> crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase')."

*Bell Atlantic v. Twombley,* 550 U.S. ___, 127 S.Ct. 1955, 1966 (2007).[2]

For the reasons stated, the court should dismiss all counts against the ALX defendants, as no recasting of the plaintiffs conclusory allegations can make out a valid claim against these defendants.

## ARGUMENT

In determining a Rule 12(b)(6) motion, the court should accept as true all well pleaded allegations in the complaint and draw all reasonable inferences in favor of plaintiff. *In re Crude Oil Commodity Litigation,* No. 06 Civ. 6677, 2007 WL 1946553, *3 (S.D.N.Y., June 28, 2007) (*In re Crude Oil*), citing, *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000).

It is axiomatic that a class action suit of this complexity will be extraordinarily expensive, time consuming and exacting. The ALX  Defendants, a relatively small business compared to the Amaranth defendants and the J.P. Morgan defendant, should be protected from these burdens of discovery where the plaintiffs cannot make out a fair claim against them, particularly as the allegations merely state that the ALX Defendants did  that which floor brokers are required  to do – execute trades for their clients within the parameters of the order placed by the clients – and where the allegations of  knowledge and intent are so vaporous as to be non-existent.

---

[2] Although *Bell Atlantic* is an anti-trust case, its language concerning Rule 8 has been determined to apply to cases involving Rule 8, generally. See, ATSI *Communications, Inc.  v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, fn 2 (2d Cir. 2007)("We have declined to read *Twombly's* flexible "plausibility standard" as relating only to antitrust cases. *See Iqbal v. Hasty,* 490 F.3d 143, 158 (2d Cir. 2007).* "Some of [*Twombly's* ] language relating generally to Rule 8 pleading standards seems to be so integral to the rationale of the Court's parallel conduct holding as to constitute a necessary part of that holding." *Id.*").

6

## I.    PLAINTIFFS' COMPLAINT IS INSUFFICIENT UNDER EITHER RULE 9(B) OR RULE 8 TO MAKE OUT A CLAIM AGAINST THE ALX DEFENDANTS FOR AIDING AND ABETTING.

### a. Rule 9(b) applies to the underlying claim

In order that plaintiff may prove its claims against the ALX Defendants for aiding and abetting (third count) and unjust enrichment (fifth Count), Plaintiffs must first make out a claim under its first count against Amaranth for alleged violation of the Commodity Exchange Act ("CEA") sections 6(c), 6(d), 9(a) and 22(a), 7 U.S.C. §§ 9, 13b, 13(a) and 25(a), upon which the secondary claims against the ALX Defendants rest. These underlying claims presented by the Plaintiffs sound in market manipulation.

Where the basis of the market manipulation claim is of the type "classically associated with fraud," as in this case (the Amaranth defendants are repeatedly charged with "concealment" (2, 149, 150, 234-5)[3], "fraudulent concealment" (236), "secret" (71, 214, 234) and related terms), it must satisfy both F.R.C.P. Rule 8 as well as the heightened F.R.C.P. Rule 9(b) pleading standard applicable to fraud claims. *In re Crude Oil, supra at \*5, In re Natural Gas Commodity Litigation*, 358 F. Supp. 2d 336, 342 (S.D.N.Y. 2005) ("*In re Natural Gas II*"). See also *ATSI Commissions, supra.*

Although these standards as they apply to the ALX Defendants will be discussed below, for the sake of brevity, the ALX Defendants hereby join in the moving papers of the Amaranth defendants and the other Floor Broker defendants and incorporate such portions of those moving papers which address the issue of the applicability of the heightened Rule 9(b) pleading standard.

---

**b. Rule 9(b) applies to the aiding and abetting claim.**

Plaintiffs allege in their third count that the floor broker defendants knowingly aided and abetted the violations of the CEA alleged in the complaint (knowing of Amaranth's manipulations of NYMEX natural gas futures prices) and willfully intended to assist these manipulations to cause the price of NYMEX natural gas contracts to be artificial during the Class Period, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. §25(a)(1).

Where Rule 9(b) applies to the underlying charge, it applies to the aiding and abetting charges as well, *Armstrong v. McAlpin*, 699 F. 2d 79, 92 (2d cir. 1983); *Krause v. Forex Exch. Market, Inc.*, 356 F.Supp.2d 332, 338 (SDNY 2005), *Forex v. Bank of China*, 528 F.Supp.2d 419, 425 (S.D.N.Y. 2007).

Yet, as parsimonious as the complaint was with respect to alleging facts in support of the underlying claims against the Amaranth defendants, it is far more so with respect to its claim that ALX aided and abetted a scheme by the Amaranth defendants.

**c. Plaintiffs have not adequately alleged knowledge and intent.**

In order to make out a claim for aiding and abetting, the plaintiffs must allege facts tending to show the requisite knowledge of the underlying scheme and the specific intent to aid the malfeasors. See, *In Re Richardson Sec.*, Comm. Fut. L. Rep. (CCH), para 21,145, at para. 24,642-646 (CFTC 1981), *Krause v. Forex Exch. Market, Inc., supra; CFTC v. Johnson*, 408 F. Supp. 2d 259 (S.D. Tex. 2005).

---

[3] Numbers in parentheses represent paragraphs in the complaint.

The knowledge must be actual, rather than constructive. *Forex, supra* at p. 426, citing, *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292 (2d Cir.2006), quoting, *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005).

No factual allegations concerning ALX's purported knowledge were made. In fact, during the alleged class period, which covers a six months, there are only two distinct references to the ALX defendants; February 24, 2006 and April 26, 2006.

In each instance, the ALX defendants, as one of several floor brokers to have received orders from Amaranth, executed the customer order in accordance with the customer instructions.[4]

Plaintiffs' Complaint contains an allegation that defendant Hunter told another defendant that defendant Hunter intended to advise someone named "[V]innie" of Amaranth's "long positions and intentions" (Compl. Para 112). This allegation cannot even be fairly described as *constructive* knowledge of manipulative behavior.

Further, it is not alleged that the information was actually conveyed to Vinnie, or that anyone even intended to tell DeLucia, who was the executing broker on the trading floor; and, more important, why it would be of any moment had it been done. *Supra.*

Finally, the placing of an order (which by definition requires disclosing the quantity to be either purchased or sold) with a floor brokerage operation is a prerequisite to having any trade executed and without more, does not cause the floor broker to "have knowledge of manipulative behavior."

---

[4] This Court is respectfully referred to the CFTC Complaint which describes in detail the transactions on February 24 and April 26. The CFTC Complaint makes it clear that the ALX Defendants role was limited to executing customer orders on NYMEX placed, in what appeared to the ALX Defendants, in the ordinary course of business.

There are no allegations concerning ALX's knowledge of Amaranth's positions with ICE or other OTC markets, which is critical to the alleged scheme, or even what orders Amaranth placed with other NYMEX floor brokers or other exchanges or OTC trading desks.

As the Complaint is void of any specific verifiable allegations against the ALX Defendants, Plaintiff has sought to make allegations of motivation and opportunity by alleging that ALX's motivation may be found in making substantial commissions from Amaranth and opportunity may be found in its executing orders on settlement day. Neither suffices.

Ordinary economic motives are insufficient to support the *scienter* element of an aiding and abetting claim. "On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations." *Shields v. CityTrust Bancorp, Inc.,* 25 F.3d 1124, at 1130 (1994); *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 127-128 (S.D.N.Y. 1997).

In order for economic motivations to be sufficient, they must be extraordinary such as in *Primavera Familienstiftung,* where the facts included earning:

> " . . . extremely high fees, including special commissions, on the sale of "toxic" securities to ACM. They needed to make these sales to ACM because ACM was one of the few buyers of these risky instruments, and their sale was essential to making a profit on any given CMO offering. The Brokers needed ACM to continue purchasing these securities to perpetuate and expand the Brokers' market for CMOs. ACM would not have been able to continue purchasing these instruments if the investors had been told the truth about them, so the Brokers had a motive to assist in the perpetration of the fraud. Such allegations of motive are sufficient to infer not only knowledge of fraud, but an intent that the fraud continue.

No such extraordinary facts are alleged here, merely that "Amaranth, as one of the largest traders on NYMEX, generated substantial revenue for the Floor Broker Defendants in the form of commissions." (224). Leaving aside for the moment the use of the purely relative term

10

"substantial", the facts here merely describes ordinary economic motivation. Consequently, under Rule 9(b) and even under Rule 8, plaintiffs' allegations are insufficient.

Although case law is not available with respect to interpretation of the meaning of "opportunity" in this context, by analogy to that of "motivation" it must be something more than ordinary economic opportunity. Here, ALX, a floor brokerage entity, is charging a fixed commission[5] for executing trades on behalf of its customer, which is its ordinary manner of earning income. That in itself cannot be deemed to be an "opportunity" in this context so as to substitute for the scienter requirement.

Moreover, the Complaint alleges that the manipulative aspect of Amaranth's scheme in dominating the market was in maintaining a large short position on the ICE Exchange, while it allegedly slammed the close on the NYMEX market creating artificial prices resulting in a profit from its outstanding ICE short position.[6] There are no allegations at all that the ALX Defendants, one of several floor broker operations used by Amaranth at NYMEX, had any knowledge of these strategies, assuming them to be true. Indeed, there is no logical reason that Amaranth would need or desire to so inform one of its floor brokers of them.

See also, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) holding that a complaint will survive only if a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

### d. Even under Rule 8(a)(2) the Complaint fails to adequately allege aiding and abetting

Even if Rule 8 were to apply to the instant action, plaintiffs' allegations are still insufficient to state a cause of action as the allegations are almost pure speculation and

---

[5] There are no allegations that the ALX commission charge was increased for these specific transactions.

conclusions couched, improperly, as facts. In *Bell Atlantic Corp, Supra,* 127 S.Ct., at 1964-1965

(2007), the Supreme Court dismissed the action on Rule 8 grounds holding, in part:

> ". . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, *ibid.;Sanjuan v. American Bd. of Psychiatry and
> Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide
> the "grounds" of his "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action will
> not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209
> (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal
> conclusion couched as a factual allegation"). Factual allegations must be enough
> to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller,
> Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter
> Wright & Miller) ("[T]he pleading must contain something more ... than ... a
> statement of facts that merely creates a suspicion [of] a legally cognizable right of
> action"),[FN3] on the assumption that all the allegations in the complaint are true
> (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N. A.,* 534 U.S. 506,
> 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319,
> 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) . . . . (footnote omitted).

Plaintiffs must prove to the Court that their complaint is backed by specific facts

supporting a "strong inference of fraud". *Three Crown Ltd. P'ship v. Caxton Corp.,*

817 F. Supp. 1033, 1040 n.11 (S.D.N.Y., 1993). However, the fraud allegations "cannot be

based on information and belief" unless the facts are "peculiarly within the opposing party's

knowledge, in which event the allegations must be accompanied by a statement of the facts upon

which the belief is based, " *DiVittorio v. Equidyne Extraative Indus., Inc.,* 822 F.2d, 1242, 1247

(2d Cir, 1987) and even "this exception to the general rule must not be mistaken for license to

base claims on fraud on speculation and conclusory allegations." *Wexner v. First Manhattan

Co., 902 F. 2d 169, 172 (2d Cir, 1990)*

The entire Complaint is alleged on information and belief except as to Para. 271.

However, Complaint at Para. 271 relies primarily and substantially on the CFTC Complaint, the

---

[6] See CFTC complaint at paragraphs 41 and 47.

FERC OSC and the Senate report, none of which contains allegation of wrongdoing against the ALX Defendants.

Specifically, of the two hundred and thirty six purportedly factual allegations contained in the complaint prior to the causes of actions, the ALX Defendants were mentioned directly or referred to as a "floor broker" in only seventeen of them.

Virtually all of the allegations contained in paragraphs 8, 34, 35, 112-114, 123, 143 and 224-227[7] are made up of conclusion, speculation and conjecture stated as facts. The few factual or partially factual allegations contained therein merely identifies ALX, its relationship with Amaranth, describes it carrying out normal and legal duties, albeit in dramatic language, and can be easily summed up as follows:

Defendant James DeLucia ("DeLucia") was ALX's Chairman or Chief Executive Office. (35). ALX was Amaranth's primary NYMEX natural gas floor brokerage firm and Amaranth ALX's largest customers. ALX made substantial money from Amaranth on commission (224). One of ALX's key employees, Vincent Rufa, traveled to Calgary and socialized with Amaranth employees on multiple occasions (34). One Amaranth defendant advised another Amaranth defendant that he was going to tell a person named "[V]innie" about Amaranth's long position.[8] ALX and DeLucia executed a series of orders for Amaranth on the day plaintiffs alleged Amaranth "slammed the close" in the last half hour of a settlement day (8, 113, 123, 143).

None of these "facts," presumed true for the purposes of this motion, is in any manner indicative of any participation by ALX or DeLucia in the alleged Amaranth scheme.

---

[7] A few other paragraphs referring to floor brokers do not refer to ALX. Additionally, paragraph 114 contains a statement of another trader, closely associated with Amaranth, who was alleged to be involved in 26 % of the relevant trades, who thought that the last half hour was a "dramatic sell off. . . [that was] probably more emphatic [than a typical close because of] the speed at which it dropped, 50 cents (114). However, this is merely another conclusion, albeit from the testimony of a third party. Moreover, a "dramatic sell off . . . more emphatic than a typical close" is also not indicative of wrongdoing where a floor broker is directed to execute contracts in the last half hour of a settlement period. It merely describes the situation.

[8] ALX does not concede plaintiffs' completely unsupported conclusion that the Vinnie of the e-mail and Vincent Rufa are one or the same person, but includes it here for completeness sake, and states unequivocally that were it so, it would be meaningless information.

The elongated tenuousness of plaintiffs' argument against ALX and DeLucia is most easily seen in the plaintiffs' insertion of Vincent Rufa into the complaint. Plaintiff alleges that "one of [ALX's] key employees, Vincent Rufa, traveled to Calgary and socialized with Amaranth employees on multiple occasions" (34).

There is no attempt to base the asserted relationship on any fact, or to state when this occurred or how often, or to explain why it merited discussion in the complaint or is indicative of malfeasance for an ALX employee. Plaintiffs do not allege that Rufa socialized with or even knew any of the Amaranth employees who are defendants herein (Hunter, Donohoe and Maounis). No extended discussion is needed to assert the proposition that social associations between firms that do business with each other is commonplace and desirable for them. However, plaintiffs insert at paragraph 112 what they apparently believe the key connecting paragraph:

"In the meantime, Defendant Hunter let Defendant Donohoe know he would be contacting Amaranth's primary NYMEX floor brokerage firm, Defendant ALX, to advise it of Amaranth's long position and intentions. Defendant Hunter told Defendant Donohoe via an instant message that he was "telling vinnie" about Amaranth's long position, referring specifically to Vincent Rufa, one of ALX's phone clerks who had a long-running relationship with Amaranth's traders. The purpose of contacting Defendant ALX (and other Floor Broker Defendants) was to make sure that such brokers knew exactly of Amaranth's intentions so that when it came time to execute the trades, the brokers would have considered, in advance, how to execute the order so as to maximize the intended effect. The Floor Broker Defendants – including Defendant ALX – therefore had knowledge of Amaranth's intent to artificially drive down prices on the close on February 24."

Although dramatically written to sound like facts, the paragraph contains only one actual alleged fact – that defendant Hunter told defendant Donohoe he intended to tell someone named Vinnie about Amaranth's long position. Vinnie is, of course, a relatively common name. However, even making the same leap that plaintiff does in associating it with Vincent Rufa, and had there actually been a good faith allegation that defendant Hunter contacted him, there would

14

be nothing ominous or wrong about a customer advising a floor broker on "expiration" about the size of any pending or soon to be placed orders. The overall position of the customer does not concern the floor broker nor is there any duty for the floor broker to inquire into such position. The floor broker's duty is to follow the customer's instructions. In particular, trading during the half-hour close in an expiring contract month, the floor broker's only concern is to complete the customer's order as quickly as possible in accordance with the instructions provided. Thus, this conjecture and speculation is neither pertinent nor probative at all as to whether ALX or DeLucia had knowledge of or intent to aid in any CEA violation.

It is the purest speculation to ascribe any meaning to "telling vinnie" in the IM string contained in the FERC OSC (which plaintiffs here merely incorporate by reference to the OSC). See, FERC'S OSC, p. 38 para. 67, fn. 102.[9] Plaintiffs' own conclusions that Hunter intended to advise Vincent Rufa of Amaranth's "long position and intentions" is a giant leap unsupported in any dimension. More important, there is nothing alleged that would in any way indicate to Vincent Rufa, were he the intended person and assuming that a message was actually communicated to him, that a manipulative scheme was underway. In the end, reading paragraph 112 fairly, there are, in fact, no allegations at all which would:

- connect "vinnie" (a common name) of the email with Vincent Rufa of ALX;

- allow an inference that Hunter ever actually contacted anyone named "Vinnie" at all;

---

[9] The entire series of instant messages presented in the order to show cause reads:
"Donohoe: 12:22:03 3111 fut
Hunter: 12:26:17 that should be enough
Hunter: 12:26:23 getting them easy?
Donohoe: 12:26:35 yeah … last 1500 on h/j roll
Donohoe: 12:26:42 vitol gave me 2000
Hunter : 12:32:20 telling Vinnie
Donohoe: 12:32:52 ok no more futures will be traded"

15

- allow an inference that Hunter ever contacted Vincent Rufa, or, did so specifically to tell him about Amaranth's "long position and intentions";

- show why it would be probative of ALX's knowledge or intent, were it actually Vincent Rufa to whom Hunter referred and if an an actual communication was made.

- show how knowing of the long position or "intentions" would in any manner alert ALX as to any malfeasance or violation;

- show how it would benefit Amaranth in any manner to tell a floor broker of its overall strategy, particularly were it doing something improper, when the floor broker had a duty to execute the orders to the best of his ability in any event;

- allow an inference that ALX knew how many other traders were actively trading for Amaranth on the settlement day, what the total size of Amaranth's positions were, whether Amaranth had any positions on at ICE or an electronic exchange or on an ETF, or what Amaranth's strategy was at all.

By not presenting the actual series of messages, and by draping pure conjecture in factual clothes, plaintiffs' paragraph 112 is used to assert facts which simply do not exist. Indeed, based upon the same information, and despite an in-depth investigation of this matter, neither ALX, DeLucia nor Rufa were the subject of the FERC's OSC.

To base a claim merely on the fact that floor brokers and customers exchange information important to them in securing the best trade possible for the customer, is to imply that the ordinary business of NYMEX, a federally regulated exchange, is entirely fraudulent. Communication between futures companies (e.g., floor brokerage entities) and off-floor traders is part and parcel of the business.

A claim based upon speculations of the identity of a person identified only by a common first name, and who is referenced only in a vague sentence fragment as "telling vinnie" cannot stand under any pleading requirement. Accepting all of plaintiffs factual allegations as true, no reasonable inference can be raised that ALX had any knowledge or intent to participate in a violation of the CEA. Thus, the Complaint fails against both the heightened standard of Rule 9(b) and the less strict standard of Rule 8 [10]

## II. PLAINTIFFS' COMPLAINT IS INSUFFICIENT UNDER EITHER RULE 9(b) OR RULE 8 TO MAKE OUT A CLAIM AGAINST ALX FOR UNJUST ENRICHMENT.

In order to succeed on an unjust enrichment claim, "a plaintiff must establish 1) that the defendant benefited; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000), citing, *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983) and cited in *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 Civ 4631, 2007 WL 4326920 *7 (E.D.N.Y. Dec 7 2007).

"The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another." *Id.* (internal citation omitted).

Plaintiffs allege that ALX is a floor broker receiving commissions for executing trades. (224, 225). Any payment to ALX was made by its customer regardless of whether the customer profited or lost on the transaction and regardless of whether it was successful in its strategy or

---

[10] See *Makor Issues & Rights, Ltd. v. Tellabs* 437 F. 3d 588 (7th Cir, 2005) which held allegations of scienter made against one defendant cannot be imputed to all other individual defendants and to proceed beyond the pleading stage, the plaintiff must allege as to each defendant facts sufficient to demonstrate a culpable state of mind." The Supreme Court's decision referenced in the body of this brief did not disturb that ruling. See *Tellabs*, 127 S. Ct., 2499, 2511 @ fn 7. See also *In Re Crude Oil,* 2007 WL 1946553 @ *6.

not. No payment is or can be alleged to have been received by ALX at the expense of the plaintiffs or any member of the class.

"Plaintiffs have also failed to demonstrate that defendants have 'received a benefit of money or property belonging to the plaintiff.'" *Reading International, Inc. v. Oaktree Capital Management LLC*, 317 F.Supp.2d 301, 334 (SDNY 2003), quoting, *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F.Supp.2d 275, 313 (S.D.N.Y.1998).

There is, in fact, no contractual, quasi-contractual or prior course of dealing between ALX and the plaintiffs necessary to maintain an unjust enrichment claim. *Gristede's Food, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 454-455 (SDNY 2007) citing *Reading In'l, supra at ps.* 333-334.

To find the possibility in this case of unjust enrichment on the part of the ALX Defendants would be to stretch the meaning of that claim beyond its intended purpose.

Indeed, the Complaint does not even mention the ALX Defendants or any "floor broker defendant" in the paragraphs constituting the unjust enrichment claim (266-271), but lumps them in with all defendants for the first time, in order to avoid applying the elements of the claim to them.

The substantive paragraph of the section (267) is carefully worded, indicating its inability to meet the elements of the claim. It states: "Defendants financially benefited from their unlawful acts. These unlawful acts caused Plaintiffs and other members of the Class to suffer injury, lose money, and transact natural gas contracts at artificial prices." It thereby de-links the allegation of the financial benefit from the injury, which is alleged to have been caused not by the financial benefit, but by the "unlawful acts." Thus, plaintiffs do not even correctly allege the elements of this claim.

18

Even were plaintiffs given leave to amend, it would not benefit them, as ALX's commissions from Amaranth can not be claimed by plaintiffs to be at their expense. Any attempt at finding the ALX Defendants in someway "connected" by virtue of their execution of customer orders in the same market as the alleged wrongdoing is simply "too attenuated to support the claim." *Reading Int'l, Inc.*, 317 F.Supp.2d at 333-34 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir.1997)).

"Allowing plaintiff to maintain such a claim 'would remove the elements of unjust enrichment from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed.'" *Id.* See, also, *M'Baye v. New Jersey Sports Production, Inc.*, 2007 WL 431881, *12 (SDNY); 8 N.Y.2d 204, 215 (2007); *Sperry v. Crompton Corp.*, 8 N.Y.2d 204, 216 (2007).

Thus, plaintiffS cannot state a claim against the ALX Defendants for unjust enrichment, as there is no connection between them, and no benefit by ALX at plaintiffs' (or the class members') expense.

Consequently, this claim should be dismissed.

## III.    THE ALLEGATIONS OF THE COMPLAINT AS TO THE UNDERLYING MANIPULATION SCHEME ARE INSUFFICIENTLY PLEADED UNDER RULES 9(b) OR 8(a).

While plaintiff relies on an abundance of statistics concerning market share and size of positions related to one element of a market manipulation claim -- the ability to influence market prices -- the Complaint is devoid of tangible allegations covering vital elements of a market manipulation claim. See, *In re Crude Oil Litigation*, 2007 WL 1946553, *5, citing, *In re Natural Gas Litigation*, 337 F.Supp.2d 498, 507 (*"In re Natural Gas I"*).

19

To meet the requirements of Rule 9(b) in the context of a market manipulation claim, the plaintiff must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *In re Crude Oil, supra* at *6, citing, *In re Natural Gas II, supra,* 358 F.Supp.2d at 344.

The specificity is most lacking in the ultimate element, the effects of the manipulation, as demonstrated by the lack of any particularity in the section of the complaint entitled "Effects," paragraphs 178-182, which is phrased in a highly conclusive manner and contains no allegations substantiating plaintiffs' claims.

Indeed, no allegations are made at all to demonstrate that any plaintiff or class member lost any money as a result of Amaranth's alleged activities, except in a most vague and conclusive manner in paragraphs 16-21.

Despite all of the allegations made, they merely describe Amaranth seeking to trade in a manner that takes best advantage of the exchanges and rules available to it. Amaranth's alleged violation of size rules was met with its financial demise (169-173). Much of the complaint relies on a "bait and switch" of a CTFC definition of a "large trader" by thereafter substituting the words "manipulative threshold". This is not a term of art and is not used by FERC in its Order to Show Cause or in the CFTC Complaint against Amaranth defendants, including Hunter. Google searches for "manipulative threshold" & commodities (also "& commodity", "& securities" and "& security") returned no hits. It is merely a device by which plaintiffs seek to create a category which does not exist. As a pleaded "fact", it is meaningless.

ALX joins in the arguments raised in the briefs of the co-defendants, which are charged with the underlying counts, as to the insufficiency of plaintiffs' pleading with respect to those claims.

### CONCLUSION

The Second Circuit has observed that "one of the purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs." *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir, 1989) (quoting *Gross v. Diversified Mortgage Investors,* 431 F. Supp. 1080, 1087 (S.D.N.Y., 1977), *aff'd*, 636 F. 2d 1201 (2d Cir., 1980). "Rule 9(b) [fails] in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some wrongdoing". *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 116 (2nd Cir, 1982).

The plaintiffs' action should be dismissed in its entirety against ALX and DeLucia, with prejudice. The Amended Complaint fails to satisfy the Rule 9(b) pleading standards that apply to market manipulation claims in the Second Circuit, as well as the basic notice pleading standard of Rule 8. In addition, no relationship exists between plaintiffs and these defendants which could support an unjust enrichment claim. Moreover, any further permission to amend should not be applied to the claims against these defendants, as no additions or corrections will cure the defects in plaintiffs' Complaint therefore the Complaint allegations as they relate to ALX should be dismissed also on the grounds of Rule 12(b)(6) on the failure to state claim upon which relief can be granted.

Dated: April 28, 2008
        New York, New York

/s/  Steven R. Goldberg
Steven R. Goldberg (SG2825)
Attorney for ALX and DeLucia
One North End Avenue, Suite 1107
 World Financial Center
New York, New York  10282
(212) 845-5100