# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                                                 :
                                                                 :
                                                                 :
IN RE: AMARANTH NATURAL GAS                                      :
COMMODITIES LITIGATION                                           :   ECF Case
                                                                 :
This Document Relates to:                                        :   Case No.: 07 Civ. 6377 (SAS)
                                                                 :
ALL ACTIONS                                                      :
                                                                 :
                                                                 :
                                                                 :
-----------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF BRIAN HUNTER'S AND MATTHEW DONOHOE'S MOTIONS TO DISMISS THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT

**KOBRE & KIM LLP**

Michael S. Kim
Matthew I. Menchel
Leif T. Simonson
800 Third Avenue
New York, New York 10022
Telephone: 212.488.1200
Facsimile: 212.488.1220

*Attorneys for Brian Hunter*

**SIMPSON THACHER & BARTLETT LLP**

Mark J. Stein
Joshua A. Levine
Brijesh P. Dave
425 Lexington Avenue
New York, New York 10017-3954
Telephone: 212.455.2000
Facsimile: 212.455.2502

*Attorneys for Matthew Donohoe*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS AND ALLEGATIONS ............................. 2

ARGUMENT ......................................................................................................... 5

I.    THE MANIPULATION CLAIM (COUNT I) SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM .............................................. 5

II.   PLAINTIFFS FAIL TO ALLEGE MR. HUNTER'S AND MR.
DONOHOE'S MANIPULATIVE INTENT WITH THE REQUISITE
PARTICULARITY ................................................................................. 5

      A.   Plaintiffs Do Not Adequately Allege Motive ................................. 6

      B.   Plaintiffs Do Not Allege Facts Constituting Strong Circumstantial
Evidence Of Intent To Manipulate As To Mr. Hunter ................... 7

      C.   Plaintiffs Do Not Allege Facts Constituting Strong Circumstantial
Evidence Of Intent To Manipulate As To Mr. Donohoe ............... 11

III.  PLAINTIFFS FAIL TO ALLEGE ANY SPECIFIC MANIPULATIVE
ACTS AS TO MR. DONOHOE WITH SUFFICIENT PARTICULARITY ....... 14

IV.  PLAINTIFFS SIMILARLY FAIL TO STATE A CLAIM AGAINST MR.
HUNTER AND MR. DONOHOE FOR SECONDARY LIABILITY ................. 15

      A.   Plaintiffs Fail To Allege That Either Mr. Hunter or Mr. Donohoe
"Aided and Abetted" the Alleged Violation ................................. 15

      B.   Plaintiffs Lack Standing To Bring A Claim For "Control Person"
Liability and For Alleged Violations of CFTC Rule 166.3 ............ 17

      C.   Plaintiffs Do Not Allege The Requisite Elements of An Agency
Relationship For Purposes of Liability Under Section 2(a)(1)(B) ........... 18

V.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST
ENRICHMENT ................................................................................... 19

VI.  PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION OF THE
CEA EVEN UNDER THE MORE LIBERAL RULE 8 PLEADING
STANDARD ......................................................................................... 20

VII. THE COMPLAINT SHOULD BE DISMISSED AS TO MR. HUNTER FOR
LACK OF PERSONAL JURISDICTION ........................................... 21

VIII.  ARGUMENTS IN AMARANTH ADVISORS L.L.C. ET AL.'s
       MEMORANDUM OF LAW ARE INCORPORATED BY REFERENCE ......... 24

CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

### CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ................................ 6

*B.H. Papasan v. Allain*, 478 U.S. 265 (1986) ................................ 20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) ................................ 23

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................ 16, 20, 21

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975) ................................ 22

*Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d. Cir. 2004) ................. 19, 21

*Compudyne v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006) ................................ 19

*Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 706 F. Supp. 221 (S.D.N.Y. 1989) ................................ 14

*Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753 (7th Cir. 2007) ................................ 13

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485 (S.D.N.Y. 1987) ................................ 22

*In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 782 F. Supp. 1382 (D. Ariz. 1991) ................................ 12

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................ 6

*In re Crude Oil Commodity Litig.*, No. 06 Civ. 9356, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................ 6, 11, 14, 20

*In re Indiana Farm Bureau Coop. Ass'n*, C.F.T.C. No. 75-14, 1982 WL 30249 (C.F.T.C. Dec. 17, 1982) ................................ 5

*In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004) ................................ 16, 21

*Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332 (S.D.N.Y. 2005) ................................ 16

*Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir. 1972) ................ 22

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ................................ 13

*Marchese v. Nelson*, 809 F. Supp. 880 (D. Utah 1993) ................................ 12, 15

*Martes v. USLIFE Corp.*, 927 F. Supp. 146 (S.D.N.Y. 1996) ................................ 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................. 21

*Modica v. Modica*, 791 N.Y.S.2d 134 (2d Dep't 2005) ................................................ 19

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109
    (2d Cir. 2007) ............................................................................................... 22, 23

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ........................................................ 6

*S.E.C. v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) .............................................. 22

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ............................... 5

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ..................... 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ...................... 7

*Zucco Partners LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201 (D. Or. 2006) ........... 13

## STATUTES

Commodity Exchange Act, 7 U.S.C. §§ 1 to 27f (2008) ........................................ passim

## RULES

Rule 166.3, 17 C.F.R. § 166.3 (2008) ................................................................... 17

## OTHER AUTHORITIES

Permanent Subcomm. On Investigations, Staff of S. Comm. On Homeland Sec. &
    Governmental Affairs, 110th Cong., Report on Excessive Speculation in the
    Natural Gas Market (June 25, 2007) ............................................................... 4

Pursuant to Federal Rules of Civil Procedure ("Rules") 8, 9(b), 12(b)(2), and 12(b)(6),
Defendants Brian Hunter and Matthew Donohoe respectfully submit this memorandum of law in
support of their motions to dismiss the Corrected Consolidated Class Action Complaint ("the
Complaint").[1]

## PRELIMINARY STATEMENT

This entire Complaint should be dismissed as to both Mr. Hunter and Mr. Donohoe. Mr.
Hunter, as Amaranth's "head natural gas trader," is alleged to have played a different role in the
supposed "manipulation" scheme than Mr. Donohoe, as an "execution trader." In neither case,
however, have Plaintiffs adequately pleaded a claim for market manipulation in violation of the
Commodity Exchange Act, 7 U.S.C. §§ 1 to 27f (2008), ("CEA") or under any of their various
ancillary theories of liability.

Notwithstanding the length of the Complaint (79 pages, 271 paragraphs), the extensive
public record to which Plaintiffs have had access—including a 135-page Senate Subcommittee
report, a complaint filed by the Commodities and Futures Trading Commission ("CFTC") and an
Order to Show Cause ("OSC") issued by the Federal Energy Regulatory Commission
("FERC")—and the numerous opportunities Plaintiffs have been provided to correct
deficiencies, Plaintiffs fail to allege that either defendant committed a single act constituting
manipulation. Plaintiffs allege only that Mr. Hunter directed open-market trades that were
indisputably not fictitious or otherwise deceptive, and that Mr. Donohoe executed these trades at
Mr. Hunter's direction. However, as the Second Circuit has recently held, merely taking large
positions and making large trades does not constitute market manipulation. Moreover, with

---

[1]    Messrs. Hunter and Donohoe certify that, pursuant to Rule III.B of the Honorable Shira
A. Scheindlin's Individual Rules and Procedures, letters were sent by their respective
counsel to counsel for Plaintiffs stating their intention to file motions to dismiss based on
the arguments set forth herein.

respect to Mr. Donohoe, simply following trading instructions without more—particularly where, as here, the alleged primary activity is wholly lawful—does not constitute a violation of the CEA. In addition, Plaintiffs' allegations fail to create a "strong inference" that either Mr. Hunter or Mr. Donohoe acted with manipulative intent.

Plaintiffs' remaining claims for secondary liability and unjust enrichment should also be dismissed. The claims for secondary liability suffer from several fatal defects; as to the purported control person claim, for example, there simply is *no* private cause of action for such a claim under the CEA.[2] Plaintiffs' "unjust enrichment" claim is equally deficient because Plaintiffs have not alleged, *inter alia*, a quasi-contractual relationship sufficient to assert a claim for unjust enrichment.

Finally, the Complaint should be dismissed as to Mr. Hunter for lack of personal jurisdiction.

## STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Plaintiffs seek damages for an alleged scheme to "manipulate" the price of NYMEX natural gas futures contracts. Plaintiffs allege that the Amaranth Defendants (defined to include both Mr. Hunter and Mr. Donohoe, as well as several Amaranth entities) accomplished this "manipulation" by (i) trading "millions of contracts" and "amassing increasingly large, unprecedented natural gas contract positions" (¶ 2a);[3] (ii) engaging in "self-fulfilling prophecy manipulative acts whereby the size of Amaranth's positions . . . cause[d] increasing amounts of

---

[2]    It is notable that Plaintiffs even bring a control person claim against Mr. Donohoe notwithstanding the fact that they also allege he was the agent of Mr. Hunter and Amaranth. An agent cannot control his principal. The fact that Plaintiffs ignore such a basic principle underscores that they have clearly adopted an inappropriate "kitchen sink" approach to pleading.

[3]    Citations to "¶" are to the corresponding paragraph in the Complaint.

2

artificiality" (¶ 2(b)); (iii) "ma[king] large trades" (¶ 2(c)); (iv) "slamm[ing] the close" (¶ 2(e));

(v) conspiring with others to "otherwise manipulate natural gas prices" (¶ 2(f)); and (vi)

"engaging in systemic as well as episodic other manipulative conduct" (¶ 2(g)). Plaintiffs also

allege that the Amaranth Defendants "concealed their manipulative trading from regulators and

market participants." ¶ 2(d). Plaintiffs do not allege fictitious trading or any other conduct that

could have deceived the market—only open-market trading at prevailing market price.

*Brian Hunter*: Mr. Hunter is alleged to have been the "head natural gas trader at

Amaranth." Mr. Hunter is a Canadian citizen (¶ 30) and was an employee of a Canadian entity

(¶ 28). He resided in Canada during the entire Class Period (*see* ¶ 30) and is not alleged to have

committed a single act within the United States. Although Mr. Hunter is alleged to have

"directed macro strategy" (¶ 31), the trades alleged to have been involved in that strategy are not

inherently fictitious or deceptive (or even at non-market prices), but rather are simply "large."

*Matthew Donohoe:* Mr. Donohoe joined the natural gas trading team in 2005 as an

"execution trader." At the time, Mr. Donohoe had only three-and-a-half years of experience in

derivatives trading. He had no other relevant work experience, and no experience handling a

book anywhere near as large or complex as that traded by Mr. Hunter. Not surprisingly, Mr.

Donohoe's role as an execution trader at Amaranth was largely mechanical: he executed trades in

order to implement Mr. Hunter's trading strategy. *See* ¶ 31.

In the first half of 2007, the Senate Permanent Subcommittee on Investigations ("Senate

Subcommittee") conducted an extensive investigation of any potential wrongdoing in connection

with Amaranth's collapse in fall of 2006. *See* ¶ 22. The CFTC and FERC each performed

similar inquiries.

3

During the Senate Subcommittee's investigation into the natural gas futures market, Mr. Donohoe voluntarily appeared for an interview. The Senate Subcommittee has since requested neither additional information from, nor interviews of, Mr. Donohoe. Furthermore, the Senate Subcommittee did not even discuss Mr. Donohoe in the 135-page report of its investigation, which included a lengthy discussion of Amaranth's natural gas futures trading.[4]

Similarly, Mr. Donohoe provided testimony before the CFTC and the FERC in connection with their simultaneous inquiries. The CFTC has not requested any additional information from Mr. Donohoe, and did not name him as a defendant in the complaint it ultimately filed alleging *attempted* market manipulation against certain persons. *See* ¶ 5(a). Indeed, of the three government agencies investigating Amaranth's collapse, only the FERC, in a misguided attempt to exert what it mistakenly believes is its recently granted jurisdiction, has taken any action against Mr. Donohoe, *i.e.*, naming him as a party in its OSC. *See* ¶ 5(b).[5]

Relying almost exclusively on the results of these three government investigations, Plaintiffs brought this action against numerous defendants, including Mr. Donohoe. However, despite having had access to the fruits of the government's efforts (*e.g.*, the Senate Subcommittee's report, the CFTC Complaint and the FERC OSC) while crafting and subsequently amending their Complaint, Plaintiffs have still failed to allege facts sufficient to sustain valid claims. The *78-page, 271-paragraph* complaint contains only *17* references to Mr.

---

[4]     *See generally* Permanent Subcomm. On Investigations, Staff of S. Comm. On Homeland Sec. & Governmental Affairs, 110th Cong., Report on Excessive Speculation in the Natural Gas Market (June 25, 2007), *available at* http://hsgac.senate.gov/_files/ REPORTExcessiveSpeculationintheNaturalGasMartket.pdf, cited at ¶ 4.

[5]     The misguided nature of the FERC's jurisdictional claim is underscored by the fact that the CFTC sought to (and has been granted leave to) intervene in *Amaranth Advisors LLC, et al. v. FERC*, 07-1491 (D.C. Cir.) to address the scope of its exclusive jurisdiction over the futures market trading at issue here.

Donohoe. *See generally* Complaint. These scattered references do not amount to well-pleaded allegations of manipulative conduct as to Mr. Donohoe. Nor do they demonstrate Mr. Donohoe had knowledge of any purported market manipulation scheme. Rather, they simply show Mr. Donohoe fulfilling his duties as an execution trader. Simply doing one's job, in the absence of any specific allegations that one violated the CEA, does not state a valid claim.

## ARGUMENT

### I.  THE MANIPULATION CLAIM (COUNT I) SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Count One of the Complaint merely alleges that the Amaranth Defendants took large positions and made large trades. Such conduct—which involves no deception as to the natural interplay of supply and demand and does not create an "artificial" price—does not constitute manipulation under clear Second Circuit law, *see* Section II of Amaranth Advisors L.L.C., et al.'s memorandum of law in support of their motion to dismiss ("Amaranth Advisors Br."),[6] and Count One accordingly should be dismissed.

### II.  PLAINTIFFS FAIL TO ALLEGE MR. HUNTER'S AND MR. DONOHOE'S MANIPULATIVE INTENT WITH THE REQUISITE PARTICULARITY

Because Rule 9(b) applies to this manipulation claim, *see* Amaranth Advisors Br., Section II.C.1.a, Plaintiffs must state with particularity facts giving rise to a "strong inference" that the defendant acted with the required state of mind. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Accordingly, Plaintiffs must allege: (1) that the defendants had both motive and opportunity to commit the manipulation or (2) strong circumstantial evidence that the defendant had the requisite state of mind. *Id.* Here, that requisite state of mind is "*specific* intent" to effect an artificial price. *In re Indiana Farm Bureau Coop. Ass'n*, C.F.T.C.

---

[6]     Amaranth Advisors Br., Section II is incorporated herein by reference.

No. 75-14, 1982 WL 30249, at *4-5 (C.F.T.C. Dec. 17, 1982) (emphasis added). Conclusory allegations or unwarranted deductions of fact do not give rise to a strong inference of intent,[7] and a plaintiff may not group plead intent.[8] Plaintiffs do not come close to satisfying these requirements.

### A.    Plaintiffs Do Not Adequately Allege Motive

To establish intent by demonstrating motive, it is necessary to allege facts that demonstrate the defendant would "benefit[] in some concrete and personal way" from the alleged scheme. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Moreover, allegations of "incentive compensation" are insufficient to establish motive.[9]

Here, Plaintiffs allege only that the "Amaranth Defendants had an extraordinary financial motive to manipulate NYMEX natural gas futures and options contract prices." ¶ 176. Such an allegation—undifferentiated among defendants—is grossly insufficient as a matter of law. There is simply no allegation that either Mr. Hunter or Mr. Donohoe would themselves benefit in *any* way from the alleged scheme, let alone in a "concrete and *personal* way." As with the rest of the Complaint, Plaintiffs' lumping of defendants and making gross generalizations fail to satisfy applicable pleading requirements. *See In re Crude Oil*, 2007 WL 1946553, at *6.

---

[7]    *See In re Crude Oil Commodity Litig.*, No. 06 Civ. 9356, 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007) (noting that claims of fraud may not be based on "speculation and conclusory allegations"; rather, the complaint must "adduce specific facts supporting a *strong inference* of fraud").

[8]    *See id.* at *6; *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) ("[T]he group pleading doctrine has no effect on the PSLRA's scienter requirement. . . . It does not permit plaintiffs to presume the state of mind of those defendants at the time the alleged misstatements were made.").

[9]    *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.").

**B.**    **Plaintiffs Do Not Allege Facts Constituting Strong Circumstantial Evidence Of Intent To Manipulate As To Mr. Hunter**

Notwithstanding the fact that the Plaintiffs allege that the purported manipulative scheme spanned seven months, the only allegations that even touch upon Mr. Hunter's intent relate solely to the alleged manipulation of the NYMEX settlement price on three particular expiration days. *See* ¶¶ 100-146. As to these allegations, Plaintiffs have cobbled together bits and pieces from various instant messages ("IMs") in an effort to suggest manipulative intent. However, as discussed below, the actual IMs (which the Complaint incorporates by reference[10]) provide *no* inference of manipulative intent, let alone the requisite "strong inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2510 (2007). As such, Plaintiffs have failed to make the requisite showing and their claim must be dismissed.

1.    February 24, 2006

Plaintiffs' case for February is premised on the notion that Mr. Hunter and the other Amaranth Defendants intended to depress the NYMEX settlement prices to benefit certain larger short swap positions held by Amaranth on "ICE and elsewhere." ¶¶ 103, 105. Yet Plaintiffs do not actually allege that Mr. Hunter was even aware of such positions. Indeed, the alleged short swap positions are—quite noticeably—never once mentioned in the IMs Plaintiffs cite. Moreover, Plaintiffs cite no evidence demonstrating that Mr. Hunter ever once instructed Mr. Donohoe to sell futures at *anything other than the market price*. Such an instruction is noticeably absent from precisely where one would expect it to be: Mr. Hunter's alleged instruction to Mr. Donohoe to "make sure we have lots of futures to sell [market on close] tomorrow." ¶ 106.

---

[10]    *See* ¶ 106 n.5. For the convenience of the Court, we attach them hereto as Exhibit A ("Ex. A").

Indeed, the *full* text of the conversation referenced in paragraph 106, which Plaintiffs fail to quote, supports a far more plausible inference: that Mr. Hunter's selling futures during the closing range was part of a new, legitimate trading strategy (what Mr. Hunter later allegedly referred to as an "expiriment" [sic], *see* ¶ 105, designed to respond to "big changes" observed in the marketplace during the close of trading on February 23. Such a reading—a trader reacting to changing market conditions—is far more plausible than Plaintiffs' speculative theory. In fact, the alleged instruction was given shortly after Mr. Donohoe's observation "rallying here" and Mr. Hunter's immediately following comment "PBN trading 13.5 for size H.J [March/April spread]." Ex. A, AALLC_REG0684055.

The IMs cited in Paragraph 111 likewise support the more plausible inference that Mr. Hunter was responding to unusual market behavior in the options contracts. Mr. Hunter informed Mr. Glover that the reason he had "4000 to sell MoC" was "all from options yestrday [sic]." Ex. A, AALLC_REG0684227. As a result, Mr. Hunter decided to experiment to see whether Amaranth could make a profit on the futures. *Id.* ("[S]o we'll see *what the floor has /* bit of an expiriment [sic] mainly." (emphasis added)).

Mr. Hunter's and Mr. Donohoe's February 24, 2006 IM exchange also provides no inference of manipulative intent. As is clear from the IM, the conversation relates to a price curve (*i.e.*, an estimate of where contract prices would ultimately settle), which Mr. Hunter had just sent Mr. Donohoe. *See* Ex. A, AALLC_REG0704932. The message states in part:

> Mr. Hunter: what do you think?
> Mr. Hunter: of this curve?[11]
> Mr. Donohoe: h[March natural gas futures contract] will settle lower . . . and h/j
>     [March/April contract spread] wider . . . nice . . .
> Mr. Hunter: I am flexing here

---

[11]     Plaintiffs omit the initial two lines of this instant message exchange in the excerpt that they cite. ¶ 116.

Mr. Donohoe: looking preety [*sic*] bang on. . . . we already mimiced. . . lol . . . rrrrrrr
Mr. Hunter: hahahahaha
Mr. Donohoe: 2nd best. . . sept/oct last year still the best

This IM exchange, at most, suggests that Mr. Hunter and Mr. Donohoe were happy with market results. Such unremarkable observations do not give rise to any inference, much less a *strong* inference, that Mr. Hunter illegitimately *caused* those results through *manipulation*. Furthermore, given the context, it is clear the statements refer to Amaranth's profit and loss *for the month*, and *not* to any alleged manipulative scheme performed that day during the closing range.

The various other inferences Plaintiffs ask this Court to make are likewise insufficient. For example, Plaintiffs conclusorily assert that Mr. Hunter's statement that he was waiting until 2:20 to sell futures (¶ 115) evidences his intent to manipulate prices. The myriad IMs cited by Plaintiffs, however, demonstrate many legitimate reasons why Mr. Hunter may have waited to sell during the closing range, not the least of which is that he predicted higher prices. *See, e.g.*, Ex. A, AALLC_REG0684227 ("Sandy and RBI bidding the H"); Ex. A, AALLC_REG0684264 ("did you hear Merrill bought 10k 8.00 calls?"). Similarly, Plaintiffs grossly mischaracterize Mr. Hunter's comment: "just need H [March] to get smashed on settle / then day is done." ¶ 109. Neither this comment nor any other cited by Plaintiffs suggests that Mr. Hunter intended *to cause* the price of that contract to drop. Nor can this or any other comment fairly be read as an "instruction" to "smash" the settlement price. ¶ 113.

    2.    <u>March 29, 2006</u>

With respect to March 29, Plaintiffs allege nothing more than that Amaranth "held a large long position in the April 2006 contract prior to the settlement period, and proceeded to sell it [market on close] during the close . . . ." ¶ 122. Plaintiffs cite no IMs and provide no factual allegations to support the proposition that the purpose of the sales was to depress the settlement

price. Plaintiffs do not even allege that Mr. Hunter played any role in this expiry.[12]

        3.    <u>April 26, 2006</u>

Plaintiffs again fail to allege that Mr. Hunter instructed anyone to sell futures at below market prices in connection with the April expiry. Although Plaintiffs allege that Mr. Hunter was concerned about buy-side pressure stemming from the trading activity of Centaurus Advisors LLC, ¶ 131-133, at most this allegation supports the conclusion that Mr. Hunter was attempting to predict market forces on commodity prices—a perfectly legitimate concern for a trader. Nowhere is there a suggestion that Mr. Hunter planned to do anything improper.

Likewise, Plaintiffs' allegations that Defendants "waited to sell" and placed orders to sell in the last eight minutes of the close, *see* ¶¶ 134-144, evidence no manipulative or unlawful intent. The order tickets belie the claim that Mr. Hunter sought to depress prices; they contain no instruction to sell the futures at anything other than prevailing market price. ¶ 139 & n.17. Furthermore, Plaintiffs' contention that "there is no legitimate explanation or business justification" for the instruction to wait to sell, ¶ 142; *see also* ¶ 139, has no basis in reality. It is logical to wait to sell when you expect prices to rise. This is how traders make money. To the extent Mr. Hunter believed Centaurus Energy would be "running the market up on the close," Ex. A, A_CFTC032875, as Plaintiffs suggest, it only makes sense that he would have "waited to sell" to take advantage of the expected price increase.

---

[12]    Plaintiffs' allegation that "FERC found that Amaranth manipulated the settlement price of the April 2006 contract," ¶ 126, is flatly false. The Commission has made no such finding, and the Staff has actually recommended that the matter be tried first before the Commission does so. *See* Commission Enforcement Staff's Brief Addressing Issues For Trial or a Ruling and in Opposition to Motion for Summary Disposition at 1, *Amaranth Advisors L.L.C. et al.*, Docket No. IN07-26-000 (Mar. 18, 2008), *available at* http://www.ferc.gov/docs-filing/elibrary.asp.

**C.**  **Plaintiffs Do Not Allege Facts Constituting Strong Circumstantial Evidence Of Intent To Manipulate As To Mr. Donohoe**

With respect to Mr. Donohoe, Plaintiffs' attempt to allege manipulative intent is similarly devoid of merit and rests on the following fatally flawed foundation:

- a collection of isolated excerpts from IMs, stripped of their context, many of which did not even involve Mr. Donohoe; and

- an unwarranted deduction of fact, namely, that because Mr. Donohoe placed certain trade orders in his role as an execution trader, he must have been aware of the purported market manipulation scheme.

**1.**  The Instant Messages Plaintiffs Cite Do Not Support A *Strong* Inference of Manipulative Intent Against Mr. Donohoe

The IMs Plaintiffs cite do not support a strong inference that Mr. Donohoe intended to manipulate the market. As a preliminary matter, Mr. Donohoe *was not even a party* to many of the IMs selectively cited by Plaintiffs, including the IMs by which Plaintiffs hope to establish that Defendants designed a market manipulation scheme. For example, the February 23, 2006 IM in which Mr. Hunter refers to "a bit of an expiriment" [*sic*] is between Mr. Hunter and Bart Glover, *not Mr. Donohoe. See* ¶¶ 105, 111.

Similarly, the IM cited in paragraph 109, in which Mr. Hunter states that he would "just need H [the March 2006] contract to get smashed on settle then day is done," is between Mr. Calhoun and Mr. Hunter, *not Mr. Donohoe. See* Ex. A, AALLC_REG0684186. As such, they are clearly insufficient to establish *any* inference of intent as to Mr. Donohoe (and fail to establish an inference of intent as to Mr. Hunter, as discussed above). *See In re Crude Oil*, 2007 WL 1946553, at *6 (rejecting "lumping" of multiple defendants).

Moreover, those IMs cited in the Complaint to which Mr. Donohoe was a party in no way demonstrate that he intended to manipulate the markets. Rather, as Plaintiffs acknowledge, the IMs show Mr. Donohoe simply carrying out his ordinary duties as an execution trader:

11

- "On February 23, 2006 . . . Defendant Hunter told Defendant Donohoe in an IM: 'make sure we have lots of futures to sell MoC [market on close] tomorrow.' Defendant Hunter thus *instructed* Defendant Donohoe to buy a large number of March 2006 contracts before the close the next day so that Amaranth would have 'lots' of contracts to sell 'MoC,' that is, during the close." ¶ 106 (emphasis added).

- "Thus . . . Defendant Donohoe *advised* Defendant Hunter via an IM at 12:22 P.M. that Amaranth was now long 3,111 contracts and *asked* whether he should buy more. Defendant Hunter responded in the negative, stating 'that should be enough.'" ¶ 108 (emphasis added).

- The same is true for the telephone conversation between a Gotham broker and Mr. Donohoe referenced in paragraph 141 of Complaint, in which Mr. Donohoe places an order with Gotham. Plaintiffs' allegations in the preceding paragraphs make it clear that Mr. Donohoe was simply acting consistent with his instructions to wait to sell. *See, e.g.*, ¶ 136 ("Also early in the closing range on April 26, 2006, Defendant Mr. Hunter stated to an Amaranth trader, Matthew Calhoun, 'we are wa[i]ting to sell.'").

That Mr. Donohoe performed the routine functions of an execution trader by simply buying and selling pursuant to a trading strategy he did not devise is not sufficient to create a strong inference of intent. *See Marchese v. Nelson*, 809 F. Supp. 880, 889 (D. Utah 1993) (finding that defendant did not have an intent to defraud where he "closely followed his superior's advice when conveying the value of an account"); *In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 782 F. Supp. 1382, 1390 (D. Ariz. 1991) (finding that defendant could not be liable even for aiding and abetting an alleged 10b-5 violation where "[t]he entire record shows only that the [the defendant] followed operational instructions").

Finally, as discussed above, Mr. Hunter's and Mr. Donohoe's February 24, 2006 IM exchange does nothing more than suggest that Mr. Donohoe was happy with market results. This is insufficient to establish manipulative intent.

## 2.    The Contention that Mr. Donohoe "Must Have Known" of the Alleged Scheme is Insufficient as a Matter of Law

Given the paucity of their specific allegations as to Mr. Donohoe, Plaintiffs likely hope that the Court will infer that he knew (or should have known) of the purported "manipulative

scheme" based on the allegations that, in his role as an execution trader, Mr. Donohoe placed

certain trades. While Plaintiffs may be entitled to reasonable inferences derived from well-

pleaded allegations, what Plaintiffs seek is not a reasonable inference, but rather a major and

unwarranted inferential leap to which Plaintiffs are not entitled and which the Court should not

make.[13] Indeed, the only reasonable inference to which Plaintiffs' allegations give rise is that

Mr. Donohoe was not aware of any supposed fraudulent scheme. For example, there is no

suggestion in the IMs that Plaintiffs cite or in the gigabytes of documents reviewed by the CFTC

or FERC that Mr. Donohoe knew of any purported scheme. Notably, the CFTC did not bring an

action against Mr. Donohoe, and FERC's ill-advised OSC does not reference a single IM or

other communication in which Mr. Donohoe was advised of any alleged scheme. Similarly, the

135-page report of the Senate Subcommittee does not even discuss Mr. Donohoe, let alone

suggest that he was guilty of any wrongdoing.

In short, the allegations of the Complaint not only fail to give rise to an inference that Mr.

Donohoe knew of any purported manipulative scheme, but instead suggest the exact opposite:

that Mr. Donohoe in fact *did not know* of any alleged scheme. *See Higginbotham v. Baxter Int'l*

*Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) (ruling that allegations did not support a strong inference

of scienter where Plaintiffs' failure to substantiate fraud actually supported an inference that

management did not know of the fraud).

---

[13]   *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005) (noting that
"[c]onclusions of law or unwarranted deductions of fact are not admitted" on a motion to
dismiss (internal quotation marks omitted); *Zucco Partners LLC v. Digimarc Corp.*, 445
F. Supp. 2d 1201, 1208 (D. Or. 2006) (rejecting "he must have known" type allegations).

13

### III.   PLAINTIFFS FAIL TO ALLEGE ANY SPECIFIC MANIPULATIVE ACTS AS TO MR. DONOHOE WITH SUFFICIENT PARTICULARITY

Under Rule 9(b),[14] Plaintiffs must also plead with *specificity*:  (i) the manipulative acts performed; (ii) which defendants performed them; (iii) when the acts were performed; (iv) the effect the acts had on the market; and (v) that the defendants acted with the requisite intent.  *In re Crude Oil*, 2007 WL 1946553, at *6.  As such, Plaintiffs must specifically allege the particular manipulative acts that Mr. Donohoe performed—simply "lumping" him together with other Defendants is not enough.[15]

Plaintiffs' attempt to plead manipulative acts performed by Mr. Donohoe with specificity by (i) imputing the alleged activities of other Defendants to Mr. Donohoe and (ii) alleging that Mr. Donohoe carried out his responsibilities as an execution trader, *i.e.*, that he implemented Mr. Hunter's trading strategy, is unavailing.  In paragraphs 63-98 and 121-146 of the Complaint, Plaintiffs assert only that "Amaranth" held and traded large positions in NYMEX's natural gas futures contracts.  Putting aside the fact that legitimate trading, even in large quantities, is not in and of itself manipulative conduct, nowhere in the 60 pages of text do Plaintiffs identify what manipulative acts, if any, Mr. Donohoe performed.  In the absence of such specific allegations, Plaintiffs' market manipulation claim cannot survive.[16]

---

[14]   Rule 9(b) applies for the reasons stated in Amaranth Advisors Br., Section II.C.1.a.

[15]   *See also In re Crude Oil*, 2007 WL 1946553, at *6 ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

[16]   *See Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing plaintiffs' CEA claim under Rule 9(b) where "[t]he amended complaint simply sa[id] nothing about [the defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation of the [CEA]." (emphasis added)).  As to these allegations, ¶¶ 63-98, 121-126, 150-68, the Complaint similarly fails to identify

14

In those few instances with a specific allegation as to Mr. Donohoe's conduct, all that Plaintiffs have alleged is that Mr. Donohoe carried out his responsibilities as an execution trader. Specifically, Plaintiffs allege that Mr. Hunter "*instructed* Defendant Donohoe to buy a large number of March 2006 contracts before the close the next day so that Amaranth would have 'lots' of contracts to sell [during the close]," and that Mr. Donohoe "carried out Defendant Hunter's *instructions* . . . ." ¶¶ 106, 108, 113 (emphasis added);[17] *see also* ¶¶ 136-141 (Mr. Hunter advising Calhoun that he is waiting to sell and Mr. Donohoe placing an order implementing that trading strategy). Plaintiffs' allegations that Mr. Donohoe simply carried out his responsibilities as an execution trader by implementing trading strategy and communicating with Mr. Hunter, without more, are insufficient under Rule 9(b). *See Marchese*, 809 F. Supp. at 889.

## IV.    PLAINTIFFS SIMILARLY FAIL TO STATE A CLAIM AGAINST MR. HUNTER AND MR. DONOHOE FOR SECONDARY LIABILITY

For the reasons articulated above, Plaintiffs have not adequately pleaded a primary violation, and thus it is axiomatic that their secondary liability claims must fail. Plaintiffs' secondary liability claims also should dismissed for the following reasons.

### A.    Plaintiffs Fail To Allege That Either Mr. Hunter or Mr. Donohoe "Aided and Abetted" the Alleged Violation

Plaintiffs seek to hold Mr. Hunter and Mr. Donohoe liable for "aiding and abetting" the purported primary manipulation violation. *See, e.g.,* ¶¶ 251-254. To state an aiding and abetting claim under the CEA, Plaintiffs must prove that the defendant: (1) had knowledge of the principal's intent to violate the CEA, (2) intended to further that violation, and (3) lent

---

what, if any, specific acts constituting manipulation were performed by Mr. Hunter and therefore fails to satisfy Rule 9(b) as to him for this reason as well.

[17]    The text of other relevant allegations is quoted *supra*, Section II.C.1, pp. 11-12.

substantial assistance to the primary violator in committing the primary violation. *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004). Furthermore, Rule 9(b) applies to Plaintiffs' aiding and abetting claim, *see Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005), and thus Plaintiffs must allege with particularity "facts that give rise to a strong inference of fraudulent intent."

### 1.    Plaintiffs Have Not Alleged That Mr. Hunter "Aided and Abetted"

To the extent Plaintiffs' "aiding and abetting" claim against Mr. Hunter refers to the alleged manipulation of the settlement prices of the March and May contracts (the only acts where Mr. Hunter is specifically alleged to have participated), the allegations fail to establish that Mr. Hunter had the requisite intent, for all the reasons described above. Plaintiffs' factual allegations fail to give rise to the inference that Mr. Hunter purposefully sought to manipulate the price, or that he intended to help someone else do so.

To the extent the claim refers to the broader alleged scheme to manipulate the price of the natural gas futures contracts (*i.e.*, ¶¶ 63-98, 150-168) or the alleged manipulation of the settlement price of the April contract, ¶¶ 121-126, such a claim utterly fails to allege a ***single fact*** to support either that Mr. Hunter had the requisite intent or that he actually provided any "substantial assistance." Thus, the claim amounts to impermissible conclusory group pleading, insufficient even under Rule 8, let alone Rule 9(b). *Cf. Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (holding, in the antitrust context, that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

### 2.    Plaintiffs Have Not Alleged That Mr. Donohoe "Aided and Abetted"

As is clear from the preceding discussion, Plaintiffs fail to allege that Mr. Donohoe had knowledge of a principal's intent to violate the CEA. The IMs Plaintiffs rely on, to which Mr. Donohoe is not a party or which simply show his performance of routine duties, do not support

an inference, let alone a strong inference, that he was aware of anyone's alleged intent to violate the CEA. Nor can Plaintiffs show that Mr. Donohoe intended to aid in such a violation. Even assuming, *arguendo*, that Mr. Donohoe had knowledge of another's purported intent to violate the CEA, Plaintiffs have failed to allege with the requisite specificity that Mr. Donohoe intended to further the alleged violation. Finally, Plaintiffs' failure to specify the acts that Mr. Donohoe supposedly committed in furtherance of the principal's objective to violate the CEA is also fatal to their claim.

**B.  Plaintiffs Lack Standing To Bring A Claim For "Control Person" Liability and For Alleged Violations of CFTC Rule 166.3**

For the reasons articulated more fully in Section II.C of the memorandum of law submitted by Amaranth L.L.C., et al., Plaintiffs lack standing to bring a "control person" claim under either Section 13(b) of the Commodity Exchange Act, 7 U.S.C. § 13c(b) (2008), or Rule 166.3, 17 C.F.R. § 166.3 (2008). *See* ¶ 255. Under Section 13(b), the law is clear that such actions may only be "brought by the Commission." 7 U.S.C. § 13c(b). And there is no private right of action for failure to supervise pursuant to Rule 166.3. Furthermore, the Rule is not applicable, as Mr. Hunter and Mr. Donohoe are not alleged to be (and are not) "Commission registrant[s]." 17 C.F.R § 166.3 (requiring that "[e]ach Commission registrant . . . must diligently supervise").

Moreover, even if there were a private cause of action for control person liability under the CEA, Plaintiffs have clearly failed to plead that Mr. Donohoe was a control person. Indeed, Plaintiffs' very allegations make clear that Mr. Donohoe was not a control person. Rather, Mr. Donohoe, per the Complaint, was an agent of the Amaranth Defendants and Mr. Hunter. ¶ 31.

An agent, by definition, cannot control its principal.[18]

### C.    Plaintiffs Do Not Allege The Requisite Elements of An Agency Relationship For Purposes of Liability Under Section 2(a)(1)(B)

Plaintiffs also improperly seek to hold Mr. Hunter and Mr. Donohoe secondarily liable through an agency theory of liability under Section 2(a)(1)(B). *See* ¶ 255. Section 2(a)(1)(B) provides: "The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person." 7 U.S.C. § 2(a)(1)(B) (2008).

As to Mr. Hunter, to the extent that Plaintiffs are alleging that some hypothetical violator—other than Mr. Donohoe—"act[ed] for" Mr. Hunter, Plaintiffs have utterly failed to support such a claim with a single factual allegation. Such a conclusory allegation surely fails under Rule 8, much less under the applicable Rule 9(b). To the extent that Plaintiffs are alleging that Mr. Donohoe "act[ed] for" Mr. Hunter, even assuming Plaintiffs' allegations otherwise satisfied the requirements of Section 2(a)(1)(B), Plaintiffs fail to allege a single act by Mr. Donohoe (other than with respect to the expiries of the March and May contracts). As to the March and May expiries, the allegations fail to state a claim for reasons demonstrated above.

As to Mr. Donohoe, it is obvious from the text of Section 2(a)(1)(B) that it is designed to hold a principal liable for the acts of his agent. Mr. Donohoe is not a principal. Moreover,

---

[18]    Plaintiffs' summary allegation that Mr. Donohoe, along with "Defendants Amaranth Advisors, Amaranth LLC, Amaranth Management, Amaranth Group, Amaranth International, Amaranth Partners, Amaranth Capital Partners, Amaranth ULC, Maounis [and] Mr. Hunter . . . controlled the Amaranth Defendants" cannot save their purported control person claim. Not only is it a boilerplate allegation with no factual underpinning whatsoever, but it also is contradicted by other allegations of the Complaint.

Plaintiffs have not alleged that Mr. Donohoe committed *any* manipulative acts and as such liability cannot attach to Mr. Donohoe irrespective of the applicability of Section 2(a)(1)(B).

## V.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT

As more fully discussed in Section IV of the memorandum of law submitted by Defendant Amaranth Advisors L.L.C., et al., Plaintiffs' claim for unjust enrichment is meritless. In order to state a claim for unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff. *Briar-patch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Plaintiffs' claim fails for the following reasons:

*First*, the Complaint alleges *no relationship at all* between either Mr. Hunter or Mr. Donohoe and Plaintiffs, let alone one that rises to the level of a contractual or quasi-contractual relationship. *See Compudyne v. Shane*, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (dismissing unjust enrichment claim where plaintiffs did not allege they were counterparties to any of the allegedly unlawful trades);

*Second*, the Complaint fails to allege the specific benefit that either Mr. Hunter or Mr. Donohoe received that he should not retain because it allegedly belongs to Plaintiffs. *See Martes v. USLIFE Corp.*, 927 F. Supp. 146, 149 (S.D.N.Y. 1996); and

*Third*, as discussed above, the Complaint contains no well-pleaded allegations of wrongdoing on the part of Mr. Hunter and Mr. Donohoe.

Furthermore, Plaintiffs' request for a constructive trust also must be denied based on their failure to demonstrate:  (1) a confidential or fiduciary relationship; (2) a promise; (3) transfer in reliance on the promise; and (4) unjust enrichment. *See Modica v. Modica*, 791

N.Y.S.2d 134 (2d Dep't 2005) (affirming lower court's dismissal of constructive trust claim

where the plaintiffs could not show a promise, transfer in reliance, or unjust enrichment).

## VI.  PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION OF THE CEA EVEN UNDER THE MORE LIBERAL RULE 8 PLEADING STANDARD

Even under Rule 8's more liberal pleading standard, which does not apply here, Plaintiffs

fail to allege sufficiently that Mr. Hunter and Mr. Donohoe:  (1) possessed an ability to influence

market prices; (2) caused an artificial price; and (3) specifically intended to cause an artificial

price.  *In re Crude Oil*, 2007 WL 1946553, at *3.  Plaintiffs' Complaint cannot survive a

12(b)(6) motion on the strength of conclusory allegations and boilerplate assertions.[19]

Furthermore, as the Supreme Court recently made clear, Plaintiffs must allege facts sufficient "to

raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  The Complaint

must set forth "plausible" grounds for relief; simply setting forth facts consistent with a potential

cause of action is not enough.  *Id.* at 1966-68.

As a preliminary matter, and as discussed in Section I, *supra*, allegations that Defendants

took large positions and made large trades are insufficient under any pleading standard.  In

addition, and as to Mr. Donohoe, Plaintiffs at best allege that he:  (1) performed his routine

duties as an execution trader; (2) communicated with Mr. Hunter in connection with the same;

and (3) greeted news of good market results with a degree of exuberance.  These are normal,

daily activities of an execution trader; they do not establish a factual predicate underlying a

market manipulation claim because they do not "plausibly suggest[]" that Mr. Donohoe violated

the CEA in any way.  *Id.* at 1966.  Instead, they are analogous to the "parallel conduct and . . .

---

[19]    *See B.H. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (citations omitted)).

bare assertion of conspiracy" allegations that the Supreme Court in *Twombly* found insufficient to state a claim. *Id.* Accordingly, Plaintiffs' claim that Mr. Donohoe violated the CEA is deficient and warrants dismissal, regardless of which pleading standard applies.[20]

Nor do Plaintiffs' aiding and abetting and unjust enrichment claims survive the Rule 8 pleading standard. Plaintiffs fail to allege sufficiently that Mr. Hunter or Mr. Donohoe "(1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective." *In re Natural Gas*, 337 F. Supp. 2d at 511. They similarly fail to plead facts sufficient to support a claim that either Mr. Hunter or Mr. Donohoe was enriched at Plaintiffs' expense under such circumstances that he should in equity compensate the Plaintiffs. *Briar-patch Ltd.*, 373 F.3d at 306.

## VII. THE COMPLAINT SHOULD BE DISMISSED AS TO MR. HUNTER FOR LACK OF PERSONAL JURISDICTION

The Complaint also should be dismissed as to Mr. Hunter under Rule 12(b)(2) because Plaintiffs fail to allege facts sufficient to establish this Court's personal jurisdiction over Mr. Hunter. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-68 (2d Cir. 1996) (holding that plaintiff must demonstrate that defendant had sufficient "minimum contacts" with the forum such that subjecting him to the court's jurisdiction comports with "traditional notions of fair play and substantial justice").

Mr. Hunter, a Canadian citizen, ¶ 30, was an employee of a Canadian entity. ¶ 28. He resided in Canada during the entire Class Period. *See* ¶ 30. *Mr. Hunter is not alleged to have*

---

[20]     Mr. Hunter likewise submits that, even under a more liberal Rule 8 standard, the allegations of manipulation relating to all but the March and May expiries would fail, as they do not specifically allege that he actually committed any particular act or that he had the requisite manipulative intent.

*committed a single act within the United States, and is not alleged even to have been present here at any time during the Class Period.*

Presumably, Plaintiffs will attempt to argue that the alleged effect on the price of NYMEX natural gas futures contracts caused by Mr. Hunter's purportedly large trades and positions form the basis for jurisdiction. This argument is insufficient. The Second Circuit has warned that the principle of "causing effects" within the forum is one that "must be applied with caution, particularly in an international context." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972). Furthermore, "[N]ot every causal connection between action abroad and ultimate injury to American investors will suffice" for personal jurisdiction purposes. *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 1000 (2d Cir. 1975)). Rather, as courts have held, "there must be a significant causal relation between defendant's jurisdictional contacts and plaintiffs' cause of action." *Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 488 (S.D.N.Y. 1987).

With rare exceptions discussed below, Plaintiffs do not even allege that their claims arise from trades made or positions taken on a U.S. exchange. *See Unifund SAL*, 910 F.2d at 1033 (finding jurisdiction over foreign defendant who traded shares of a U.S. corporation that were traded exclusively on a *U.S. exchange*). They instead allege that Mr. Hunter somehow affected the price of the NYMEX contracts by his allegedly large trades and positions in undifferentiated "net futures equivalents," which, according to Plaintiffs, include a variety of financial instruments that do not trade on the physical floor of a United States exchange, but instead are traded electronically on the Internet-based "IntercontinentalExchange" ("ICE") by participants located anywhere in the world. *See* ¶ 72; *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 110 (2d Cir. 2007).

Thus, other than by alleging some effect in the United States, Plaintiffs have not actually connected Mr. Hunter's trades and positions in "net futures equivalents" to the United States. Indeed, trades on the Internet-based ICE trading market are actually cleared in the *United Kingdom*, not in the United States. *Id.* at 112 ("While ICE cannot clear trades itself, it contracts with the London Clearing House ('LCH') to do so."). This purported "contact" with the United States is too attenuated to form the basis of personal jurisdiction. We are unaware of any case finding personal jurisdiction in such circumstances.

While Plaintiffs do allege certain trades and positions specifically in NYMEX futures contracts, these NYMEX trades and positions do not create jurisdiction. The majority of these alleged NYMEX trades relate to an alleged scheme to depress the NYMEX settlement price on three occasions by selling large amounts of NYMEX futures during the closing period. *See ¶¶* 100-146. However, such NYMEX trading cannot form the basis of specific jurisdiction over Mr. Hunter because the alleged manipulation of the settlement price cannot form the basis of Plaintiffs' cause of action under the CEA. As described in greater detail above and in Section I of the memorandum of law submitted by Defendant Amaranth Advisors L.L.C., et al., Section 22(a) of the CEA does *not* provide a private cause of action based on manipulation of the NYMEX settlement price. *See* 7 U.S.C. § 25 (2008). Thus, since Plaintiffs do not have a cause of action arising out of these NYMEX trades, they cannot form the basis for specific jurisdiction. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (Where "the claim arises out of, or relates to, the defendant's contacts with the forum"—*i.e.*, specific jurisdiction—minimum contacts exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there.").

23

Finally, Plaintiffs also allege certain specific trades and positions in the January 2007 and the March 2007 NYMEX futures contracts, which purportedly caused price effects on those contracts. *See* ¶¶ 96-98. Similarly, Plaintiffs also allege certain NYMEX positions in excess of NYMEX position limits and accountability levels. *See* ¶¶ 150-168. However, Plaintiffs do not allege that any of them were actually purchasers of those contracts, as required by Section 22, 7 U.S.C. § 25(a)(1)(D).

## VIII. ARGUMENTS IN AMARANTH ADVISORS L.L.C. ET AL.'S MEMORANDUM OF LAW ARE INCORPORATED BY REFERENCE

In addition to the arguments set forth above, Plaintiffs' purported claims also fail for the reasons put forth in Sections I, II, III(A), (C), and (D), IV, V, and VI of the memorandum of law submitted by Amaranth Advisors L.L.C., et al., which are incorporated herein by reference.

24

## CONCLUSION

For the foregoing reasons, we respectfully submit that the Complaint should be dismissed with prejudice as to Mr. Hunter and Mr. Donohoe.

Dated:  New York, New York

June 23, 2008

KOBRE & KIM LLP

By  /s/ Michael S. Kim
    Michael S. Kim (MK-0308)
    michael.kim@kobrekim.com
    Matthew I. Menchel (MM-0675)
    matthew.menchel@kobrekim.com
    Leif T. Simonson (LS-5915)
    leif.simonson@kobrekim.com
    800 Third Avenue
    New York, New York 10022
    Tel: 212.488.1200
    Fax: 212.488.1220

*Attorneys for Brian Hunter*

SIMPSON THACHER & BARTLETT LLP

By  /s/ Mark J. Stein
    Mark J. Stein
    mstein@stblaw.com
    Joshua A. Levine
    jlevine@stblaw.com
    Brijesh P. Dave
    bdave@stblaw.com
    425 Lexington Avenue
    New York, N.Y. 10017-3954
    Telephone: (212) 455-2000
    Facsimile:  (212) 455-2502

*Attorneys for Matthew Donohoe*

25

# EXHIBIT A

From:      windowsadmin@amaranthllc.com
Sent:      Thursday, February 23, 2006 3:13 PM
To:        amaranth.dom@amaranth.digitalsafe.net
Subject:   SUBJECT: CONVERSATION PARTICIPANTS = BHUNTER@AMARANTHLLC.COM;
           MDONOHOE@AMARANTHLLC.COM

IM Network: AOL IM

IM Users:

participant=bhunter@amaranthllc.com "hunteramaranth"
participant=mdonohoe@amaranthllc.com "mjtdonohoe"

IM Dialog:

Thursday, February 23, 2006 3:13:29 PM EST Matthew Donohoe started conversation.
Thursday, February 23, 2006 3:13:29 PM EST Brian Hunter has entered the conversation.
Thursday, February 23, 2006 3:13:29 PM EST Matthew Donohoe: i think that was mother rock
Thursday, February 23, 2006 3:13:38 PM EST Matthew Donohoe: they were buying all the pen
last Thursday, February 23, 2006 3:16:23 PM EST Brian Hunter: vol Thursday, February 23,
2006 3:16:24 PM EST Brian Hunter: 78.50%51.00%50.00%48.75%48.25%48.50%48.75%48.75%48.50%
48.50%50.50%50.50%50.50%50.50%50.50%50.50%50.50%50.50%36.00%38.45%39.50%40.00%40.50%
41.70%30.00%29.00%29.00%29.50%29.75%30.00%30.50%31.50%32.00%33.00%33.25%35.00%27.50%27.00%
27.00%27.00%27.00%27.50%28.00%28.50%
Thursday, February 23, 2006 3:16:27 PM EST Brian Hunter: big changes Thursday, February
23, 2006 3:16:35 PM EST Brian Hunter: don't forget Cathy's marks Thursday, February 23,
2006 3:16:46 PM EST Matthew Donohoe: got them Thursday, February 23, 2006 3:17:13 PM EST
Matthew Donohoe: 13 m hit Thursday, February 23, 2006 3:17:25 PM EST Matthew Donohoe: down
11.5 m Thursday, February 23, 2006 3:17:31 PM EST Matthew Donohoe: total Thursday,
February 23, 2006 3:18:25 PM EST Brian Hunter: I gave you new curve Thursday, February 23,
2006 3:18:32 PM EST Brian Hunter:
7.3007.4307.5967.7317.8647.9448.0158.1109.12710.13410.79910.82610.6048.7548.5548.6248.7098
.7798.7898.8599.46410.02910.41410.39410.2048.1998.0098.0798.1378.2028.2098.2698.8429.4179.
8429.8329.6407.6257.4207.4907.5557.6157.6257.6858.3008.8909.3359.3309.1357.1556.9957.0407.
0907.1407.1257.1757.7458.3158.8958.8858.7107.3207.1007.1807.2057.2457.2307.2707.7408.160
Thursday, February 23, 2006 3:20:53 PM EST Matthew Donohoe: yeah got that Thursday,
February 23, 2006 3:20:59 PM EST Matthew Donohoe: price makes 9m Thursday, February 23,
2006 3:21:19 PM EST Matthew Donohoe: vol losses 20 Thursday, February 23, 2006 3:21:43 PM
EST Brian Hunter: we'll make back alittle off Cathy's optoins Thursday, February 23, 2006
3:21:57 PM EST Brian Hunter: also I want you to mark the put skew in Ca19 puts Thursday,
February 23, 2006 3:22:05 PM EST Matthew Donohoe: sure Thursday, February 23, 2006 3:22:11
PM EST Brian Hunter: 2.5-5.5-ve -,06 cents Thursday, February 23, 2006 3:22:29 PM EST
Matthew Donohoe: neg skes Thursday, February 23, 2006 3:22:42 PM EST Brian Hunter: y
Thursday, February 23, 2006 3:22:50 PM EST Brian Hunter: 2.20 to 5.00 out of the money
strike Thursday, February 23, 2006 3:22:54 PM EST Brian Hunter: 6 cents negative Thursday,
February 23, 2006 3:22:57 PM EST Matthew Donohoe: got it Thursday, February 23, 2006
3:22:58 PM EST Brian Hunter: they are 4 cents right now Thursday, February 23, 2006
3:23:08 PM EST Brian Hunter: Cath'y trades will make mack 6mm Thursday, February 23, 2006
3:23:16 PM EST Brian Hunter: and skew another 2mm Thursday, February 23, 2006 3:23:57 PM
EST Matthew Donohoe: we will loss 4m on adjust to cso Thursday, February 23, 2006 3:23:59
PM EST Matthew Donohoe: right Thursday, February 23, 2006 3:26:38 PM EST Matthew Donohoe:
rallying here Thursday, February 23, 2006 3:26:44 PM EST Matthew Donohoe: 35 bid h`
Thursday, February 23, 2006 3:30:19 PM EST Brian Hunter: new curve Thursday, February 23,
2006 3:30:23 PM EST Brian Hunter:
7.4587.5437.7037.8437.9738.0538.1238.2189.22810.20810.86810.86810.86810.6988.8188.6098.6698.7388
.7988.8188.8939.49810.06810.49110.49110.3218.2218.0368.0868.1468.2018.2268.2918.8569.4169.
8799.8699.6697.6097.4047.4747.5397.5947.6197.6898.2848.8649.3049.2949.1047.1046.926.9657.0
187.0647.0747.1447.7248.3048.8958.8858.7107.3207.1007.1807.2057.2457.2307.2707.7408.160
Thursday, February 23, 2006 3:39:48 PM EST Brian Hunter: PBN trading 13.5 for size H.J

1

Thursday, February 23, 2006 3:39:58 PM EST Brian Hunter: make sure we have lots of futures to sell MoC tomorrow

2

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0584056

From: Michael Malach [mmalach@amaranthllc.com]
Sent: Friday, February 24, 2006 10:23 AM
To: Matthew Calhoun; Matthew Donohoe; Brian Hunter; Brad Basarowich; Peter Geary; Alex Villamil; Adam Glassman
Cc: Energy Operations
Subject: Book2.xls

Attachments: Book2.xls

<<Book2.xls>>

Please see the above concerning our position which agrees with JPMU of short -1729 Nat Gas Mar 06 (NGH6).

Please make sure we are flat by the end of the day today.

Thanks,

Mike

CONFIDENTIAL TREATMENT REQUESTED                    AALLC_REG0672597

From:           windowsadmin@amaranthllc.com
Sent:           Friday, February 24, 2006 12:10 PM
To:             amaranth.dom@amaranth.digitalsafe.net
Subject:        SUBJECT: CONVERSATION PARTICIPANTS = MCALHOUN@AMARANTHLLC.COM;
                BHUNTER@AMARANTHLLC.COM


IM Network: AOL IM

IM Users:

participant=mcalhoun@amaranthllc.com "callifrnication"
participant=bhunter@amaranthllc.com "hunteramaranth"

IM Dialog:

Friday, February 24, 2006 12:10:16 PM EST Matthew Calhoun started conversation.
Friday, February 24, 2006 12:10:16 PM EST Brian Hunter has entered the conversation.
Friday, February 24, 2006 12:10:16 PM EST Matthew Calhoun: very much so Friday, February
24, 2006 12:10:16 PM EST Matthew Calhoun: very much so Friday, February 24, 2006 12:14:43
PM EST Brian Hunter: jv7/xh seems very big Friday, February 24, 2006 12:14:43 PM EST Brian
Hunter: jv7/xh seems very big Friday, February 24, 2006 12:14:45 PM EST Brian Hunter: jv7
is strong Friday, February 24, 2006 12:14:45 PM EST Brian Hunter: jv7 is strong Friday,
February 24, 2006 12:15:10 PM EST Matthew Calhoun: yeah, not many sellers out there
Friday, February 24, 2006 12:15:10 PM EST Matthew Calhoun: yeah, not many sellers out
there Friday, February 24, 2006 12:15:41 PM EST Brian Hunter: that's pushing up the summer
winter Friday, February 24, 2006 12:15:41 PM EST Brian Hunter: that's pushing up the
summer winter Friday, February 24, 2006 12:15:47 PM EST Brian Hunter: and 7/10 Friday,
February 24, 2006 12:15:47 PM EST Brian Hunter: and 7/10 Friday, February 24, 2006
12:15:52 PM EST Brian Hunter: hello...
Friday, February 24, 2006 12:15:52 PM EST Brian Hunter: hello...
Friday, February 24, 2006 12:15:57 PM EST Brian Hunter: sweet Friday, February 24, 2006
12:15:57 PM EST Brian Hunter: sweet Friday, February 24, 2006 12:15:59 PM EST Matthew
Calhoun: lol Friday, February 24, 2006 12:16:00 PM EST Matthew Calhoun: lol Friday,
February 24, 2006 12:16:06 PM EST Matthew Calhoun: pain everywhere Friday, February 24,
2006 12:16:06 PM EST Matthew Calhoun: pain everywhere Friday, February 24, 2006 12:16:28
PM EST Brian Hunter: just need H to get smashed on settle Friday, February 24, 2006
12:16:28 PM EST Brian Hunter: just need H to get smashed on settle Friday, February 24,
2006 12:16:31 PM EST Brian Hunter: then day is done Friday, February 24, 2006 12:16:31 PM
EST Brian Hunter: then day is done Friday, February 24, 2006 12:16:43 PM EST Matthew
Calhoun: OI is huge for Friday, February 24, 2006 12:16:43 PM EST Matthew Calhoun: OI is
huge for Friday, February 24, 2006 12:16:45 PM EST Matthew Calhoun: ld Friday, February
24, 2006 12:16:45 PM EST Matthew Calhoun: ld Friday, February 24, 2006 12:16:48 PM EST
Matthew Calhoun: 33k Friday, February 24, 2006 12:16:48 PM EST Matthew Calhoun: 33k
Friday, February 24, 2006 12:17:48 PM EST Matthew Calhoun: you think c1 holds these gains?
Friday, February 24, 2006 12:17:48 PM EST Matthew Calhoun: you think c1 holds these gains?
Friday, February 24, 2006 12:25:54 PM EST Brian Hunter: yeah Friday, February 24, 2006
12:25:54 PM EST Brian Hunter: yeah Friday, February 24, 2006 12:25:59 PM EST Brian Hunter:
premium stays big Friday, February 24, 2006 12:25:59 PM EST Brian Hunter: premium stays
big Friday, February 24, 2006 12:27:06 PM EST Matthew Calhoun: great day for that spread
sc tar Friday, February 24, 2006 12:27:06 PM EST Matthew Calhoun: great day for that
spread so far Friday, February 24, 2006 12:29:32 PM EST Brian Hunter: eayh Friday,
February 24, 2006 12:29:32 PM EST Brian Hunter: eayh Friday, February 24, 2006 12:29:39 PM
EST Brian Hunter: unwinding jv/xh here is good for us...
Friday, February 24, 2006 12:29:39 PM EST Brian Hunter: unwinding jv/xh here is good for
us...
Friday, February 24, 2006 12:31:20 PM EST Brian Hunter: definitely Friday, February 24,
2006 12:31:20 PM EST Matthew Calhoun: definitely Friday, February 24, 2006 12:33:23 PM EST
Matthew Calhoun: u still have jv7 to sell to me?
Friday, February 24, 2006 12:33:23 PM EST Matthew Calhoun: u still have jv7 to sell to me?

1

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0684188

Friday, February 24, 2006 12:34:13 PM EST Brian Hunter: y Friday, February 24, 2006
12:34:13 PM EST Brian Hunter: y Friday, February 24, 2006 12:37:09 PM EST Matthew Calhoun:
cool Friday, February 24, 2006 12:37:09 PM EST Matthew Calhoun: cool

2

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0684187

From:           windowsadmin@amaranthllc.com
Sent:           Friday, February 24, 2006 1:30 PM
To:             amaranth.dom@amaranth.digitalsafe.net
Subject:        SUBJECT: CONVERSATION PARTICIPANTS = "GLOVERB"; "HUNTER_AMARANTH"


IM Network: Yahoo IM

IM Users:

participant="gloverb"
participant="hunter_amaranth"

IM Dialog:

Friday, February 24, 2006 1:30:02 PM EST gloverb started conversation.
Friday, February 24, 2006 1:30:02 PM EST Brian Hunter has entered the conversation.
Friday, February 24, 2006 1:30:02 PM EST Brian Hunter: IM Administrator: NOTE: This session is
recorded and the recording is the sole property of Amaranth.
Friday, February 24, 2006 1:30:02 PM EST Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Friday, February 24, 2006 1:30:02 PM EST gloverb: you still t hink down Friday, February
24, 2006 1:30:49 PM EST Brian Hunter: Sandy and RBI bidding the K Friday, February 24,
2006 1:30:51 PM EST Brian Hunter: nothing trading Friday, February 24, 2006 1:30:56 PM EST
Brian Hunter: I wonder what will hapen Friday, February 24, 2006 1:31:05 PM EST Brian
Hunter: lots of EFS went through Friday, February 24, 2006 1:31:07 PM EST Brian Hunter: OI
down alot Friday, February 24, 2006 1:31:09 PM EST gloverb: all i am told Friday, February
24, 2006 1:31:15 PM EST gloverb: is it is going to rally hard Friday, February 24, 2006
1:31:21 PM EST gloverb: but guys running on floor Friday, February 24, 2006 1:31:22 PM EST
gloverb: lol Friday, February 24, 2006 1:31:25 PM EST Brian Hunter: We have 4000 to sell
MoC Friday, February 24, 2006 1:31:28 PM EST Brian Hunter: shhhh Friday, February 24, 2006
1:31:36 PM EST gloverb: come on Friday, February 24, 2006 1:31:39 PM EST Brian Hunter: y
Friday, February 24, 2006 1:31:43 PM EST gloverb: unless you are huge bearish Friday,
February 24, 2006 1:31:49 PM EST gloverb: position Friday, February 24, 2006 1:31:54 PM
EST gloverb: why the f would yo do that Friday, February 24, 2006 1:32:16 PM EST Brian
Hunter: so we'll see what the floor has Friday, February 24, 2006 1:32:33 PM EST Brian Hunter: bit
of an expirinent mainly Friday, February 24, 2006 1:32:43 PM EST gloverb: what the f
Friday, February 24, 2006 1:32:46 PM EST gloverb: that is huge Friday, February 24, 2006
1:35:34 PM EST Brian Hunter: I think John and Sempra are sellers too

1

CONFIDENTIAL TREATMENT REQUESTED                                    AALLC_REG0684227

From:      windowsadmin@amaranthllc.com
Sent:      Friday, February 24, 2006 2:11 PM
To:        amaranth.dom@amaranth.digitalsafe.net
Subject:   SUBJECT: CONVERSATION PARTICIPANTS = "GLOVERB";
           BHUNTER@AMARANTHLLC.COM

IM Network: Yahoo IM

IM Users:

participant="gloverb"
participant=bhunter@amaranthllc.com "hunter_amaranth"

IM Dialog:

Friday, February 24, 2006 2:10:53 PM EST gloverb started conversation.
Friday, February 24, 2006 2:10:53 PM EST Brian Hunter has entered the conversation.
Friday, February 24, 2006 2:10:53 PM EST gloverb: arent you done Friday, February 24, 2006
2:11:31 PM EST Brian Hunter: no Friday, February 24, 2006 2:11:35 PM EST Brian Hunter:
have alot more to sell Friday, February 24, 2006 2:11:46 PM EST Brian Hunter: waiting until
3:20 Friday, February 24, 2006 2:26:42 PM EST gloverb: well Friday, February 24, 2006
2:26:46 PM EST Brian Hunter: did you hear Merrill bought 10k 8.00 calls?
Friday, February 24, 2006 2:26:52 PM EST Brian Hunter: for today?
Friday, February 24, 2006 2:26:53 PM EST gloverb: wow Friday, February 24, 2006
2:26:55 PM EST Brian Hunter: yeah Friday, February 24, 2006 2:26:59 PM EST Brian Hunter:
tat wored out nicely Friday, February 24, 2006 2:27:00 PM EST gloverb: really Friday,
February 24, 2006 2:27:05 PM EST gloverb: wow Friday, February 24, 2006 2:27:23 PM EST
gloverb: for 3 cent Friday, February 24, 2006 2:28:32 PM EST Brian Hunter: yeah Friday,
February 24, 2006 2:28:35 PM EST Brian Hunter: 3mm Friday, February 24, 2006 2:28:39 PM
EST Brian Hunter: a bit risky...
Friday, February 24, 2006 2:28:46 PM EST Brian Hunter: to miss it by 1.00 Friday, February
24, 2006 2:29:54 PM EST gloverb: higher or lower after close Friday, February 24, 2006
2:30:25 PM EST Brian Hunter: higer Friday, February 24, 2006 2:30:40 PM EST Brian Hunter:
but will scare techies a little Friday, February 24, 2006 2:30:46 PM EST Brian Hunter:
depends on CL and weather Monday Friday, February 24, 2006 2:30:46 PM EST gloverb: i tnnc
lower Friday, February 24, 2006 2:30:48 PM EST gloverb: initally Friday, February 24, 2006
2:30:53 PM EST Brian Hunter: but cals are gong to be bid Friday, February 24, 2006 2:30:53
PM EST gloverb: i mean today Friday, February 24, 2006 2:30:54 PM EST Brian Hunter: with
CL here Friday, February 24, 2006 2:31:17 PM EST Brian Hunter: front will et up unless
jwish starts to widen Friday, February 24, 2006 2:31:25 PM EST Brian Hunter: holy Friday,
February 24, 2006 2:31:24 PM EST Brian Hunter: swb 105 bid v/x on the floor

1

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0684264

From:                windowsadmin@amaranthllc.com
Sent:                Friday, February 24, 2006 2:14 PM
To:                  amaranth.dom@amaranth.digitalsafe.net
Subject:             SUBJECT: CONVERSATION PARTICIPANTS = BHUNTER@AMARANTHLLC.COM;
                     MDONOHOE@AMARANTHLLC.COM


X-ZANTAZ-MESSAGE-DATE: 02/24/2006 19:13:31; 02/24/2006 19:15:11; 02/24/2006 19:15:31;
02/24/2006 19:15:38; 02/24/2006 19:15:47; 02/24/2006 19:15:51; 02/24/2006 19:16:03;
02/24/2006 19:16:34; 02/24/2006 19:16:39; 02/24/2006 19:16:47; 02/24/2006 19:16:52;
02/24/2006 19:16:53; 02/24/2006 19:16:55; 02/24/2006 19:16:59; 02/24/2006 19:17:01;
02/24/2006 19:17:04; 02/24/2006 19:17:12; 02/24/2006 19:17:28; 02/24/2006 19:17:33;
02/24/2006 19:18:09; 02/24/2006 19:18:19; 02/24/2006 19:18:21; 02/24/2006 19:18:25;
02/24/2006 19:18:27; 02/24/2006 19:18:30; 02/24/2006 19:24:06; 02/24/2006 19:24:13;
02/24/2006 19:24:17; 02/24/2006 19:24:26; 02/24/2006 19:24:29; 02/24/2006 19:25:04;
02/24/2006 19:27:50; 02/24/2006 19:27:58; 02/24/2006 19:27:59; 02/24/2006 19:30:04;
02/24/2006 19:30:07; 02/24/2006 19:30:14; 02/24/2006 19:30:21; 02/24/2006 19:30:47;
02/24/2006 19:31:30; 02/24/2006 19:31:37; 02/24/2006 19:31:40; 02/24/2006 19:31:50;
02/24/2006 19:31:53; 02/24/2006 19:31:58; 02/24/2006 19:32:04;  !
02/24/2006 19:32:23; 02/24/2006 19:32:27; 02/24/2006 19:32:34; 02/24/2006 19:32:39;
02/24/2006 19:32:52; 02/24/2006 19:32:59; 02/24/2006 19:33:34; 02/24/2006 19:33:40;
02/24/2006 19:33:43; 02/24/2006 19:34:52; 02/24/2006 19:34:56; 02/24/2006 19:35:14;
02/24/2006 19:35:18; 02/24/2006 19:35:21; 02/24/2006 19:37:54; 02/24/2006 19:38:16;
02/24/2006 19:38:18; 02/24/2006 19:38:21; 02/24/2006 19:38:24; 02/24/2006 19:38:38;
02/24/2006 19:38:41; 02/24/2006 19:38:44; 02/24/2006 19:38:45
X-ZANTAZ-PARTICIPANT-IMNAMES: hunteramaranth; mjtdonohoe
X-ZANTAZ-RECIPIENT-NAME: Brian Hunter; Matthew Donohoe
X-ZANTAZ-PARTICIPANT-IMNAMES: mjtdonohoe; hunteramaranth
X-ZANTAZ-SENDER-NAME: Matthew Donohoe; Brian Hunter
X-ZANTAZ-GUID: E192C6A0-9B22-4C5E-A02C-0BB848C06F355951645696632703
X-ZANTAZ-URL: notused
X-OriginalArrivalTime: 24 Feb 2006 19:40:21.0839 (UTC) FILETIME=[2652C5F0:01C6397A]


IM Network: AOL IM

IM Users:

participant=bhunter@amaranthllc.com "hunteramaranth"
participant=mdonohoe@amaranthllc.com "mjtdonohoe"

IM Dialog:

Friday, February 24, 2006 2:13:31 PM EST Matthew Donohoe started conversation.
Friday, February 24, 2006 2:13:31 PM EST Brian Hunter has entered the conversation.
Friday, February 24, 2006 2:13:31 PM EST Matthew Donohoe: 22 h/j Friday, February 24, 2006
2:13:31 PM EST Brian Hunter: IM Administrator: NOTE: This session is recorded and the
recording is the sole property of Amaranth.
Friday, February 24, 2006 2:13:31 PM EST Matthew Donohoe: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Friday, February 24, 2006 2:15:11 PM EST Brian Hunter: 105 bid v/x Friday, February 24,
2006 2:15:31 PM EST Brian Hunter: nice Friday, February 24, 2006 2:15:38 PM EST Brian
Hunter: Today came together quite nicely.
Friday, February 24, 2006 2:15:47 PM EST Brian Hunter: you can sell Maatt the jv7 Friday,
February 24, 2006 2:15:51 PM EST Brian Hunter: if you haven't done so Friday, February 24,
2006 2:16:03 PM EST Matthew Donohoe: done Friday, February 24, 2006 2:16:34 PM EST Brian
Hunter: we'll hit the rest near the end of this Friday, February 24, 2006 2:16:39 PM EST
Matthew Donohoe: what is fair for calhoun Friday, February 24, 2006 2:16:47 PM EST Matthew
Donohoe: y Friday, February 24, 2006 2:16:52 PM EST Brian Hunter: 65 Friday, February 24,
2006 2:16:53 PM EST Matthew Donohoe: i have h/j to roll Friday, February 24, 2006 2:16:55
PM EST Matthew Donohoe: 450 Friday, February 24, 2006 2:16:55 PM EST Brian Hunter: I am

                                         1

thnking Friday, February 24, 2006 2:16:59 PM EST Matthew Donohoe: could just sell j Friday, February 24, 2006 2:17:01 PM EST Brian Hunter: nothing reslyl moving but H Friday, February 24, 2006 2:17:04 PM EST Matthew Donohoe: if your want Friday, February 24, 2006 2:17:12 PM EST Brian Hunter: your pick Friday, February 24, 2006 2:17:28 PM EST Brian Hunter: 68 jv Friday, February 24, 2006 2:17:33 PM EST Brian Hunter: 66/70 Friday, February 24, 2006 2:18:09 PM EST Matthew Donohoe: 68's done with calhoun Friday, February 24, 2006 2:18:19 PM EST Brian Hunter: maybe leave the j's Friday, February 24, 2006 2:18:21 PM EST Brian Hunter: doen sell them Friday, February 24, 2006 2:18:25 PM EST Brian Hunter: lets roll off more Friday, February 24, 2006 2:18:27 PM EST Brian Hunter: its a good level Friday, February 24, 2006 2:18:30 PM EST Matthew Donohoe: ok Friday, February 24, 2006 2:24:06 PM EST Matthew Donohoe: yo how are the cals holding Friday, February 24, 2006 2:24:13 PM EST Brian Hunter: strong Friday, February 24, 2006 2:24:17 PM EST Matthew Donohoe: just trying to get an estimate for rricky Friday, February 24, 2006 2:24:26 PM EST Brian Hunter: 25 Friday, February 24, 2006 2:24:29 PM EST Brian Hunter: ish Friday, February 24, 2006 2:25:04 PM EST Matthew Donohoe: good Friday, February 24, 2006 2:27:50 PM EST Brian Hunter: stay ong the j Friday, February 24, 2006 2:27:58 PM EST Brian Hunter: we'll be able to sell it better Friday, February 24, 2006 2:27:59 PM EST Matthew Donohoe: ok Friday, February 24, 2006 2:30:04 PM EST Brian Hunter: 7.1507.3507.5207.6577.7927.8747.9458.0409.08210.10410.77410.80110.5798.7298.5298.5998.6848.7548.7648.8349.43910.04910.38910.36910.1798.1447.9548.0248.0828.1478.1548.2148.7729.3329.7579.7479.5557.5407.3357.4057.4707.5307.5407.6008.1958.7659.2109.2059.0107.0306.8706.9156.9657.0157.0007.0507.6208.1908.7708.7608.5857.1956.9757.0557.0807.1207.1057.1457.6158.035 Friday, February 24, 2006 2:30:07 PM EST Brian Hunter: what' do you think? Friday, February 24, 2006 2:30:14 PM EST Brian Hunter: of this curve? Friday, February 24, 2006 2:30:21 PM EST Matthew Donohoe: h will settle lower Friday, February 24, 2006 2:30:47 PM EST Matthew Donohoe: and h/j wider Friday, February 24, 2006 2:31:30 PM EST Matthew Donohoe: nice Friday, February 24, 2006 2:31:37 PM EST Brian Hunter: I am flexing here Friday, February 24, 2006 2:31:40 PM EST Matthew Donohoe: looking preety bang on Friday, February 24, 2006 2:31:50 PM EST Matthew Donohoe: we already miniced Friday, February 24, 2006 2:31:53 PM EST Matthew Donohoe: lol Friday, February 24, 2006 2:31:58 PM EST Matthew Donohoe: rrrrrrrrrrrrrrrrrrr Friday, February 24, 2006 2:32:04 PM EST Brian Hunter: hahahahaha Friday, February 24, 2006 2:32:23 PM EST Matthew Donohoe: 2nd best...sept/oct last year still the best Friday, February 24, 2006 2:32:27 PM EST Matthew Donohoe: oh yeag Friday, February 24, 2006 2:32:34 PM EST Brian Hunter: y Friday, February 24, 2006 2:32:39 PM EST Brian Hunter: where is Calhoun? Friday, February 24, 2006 2:32:52 PM EST Matthew Donohoe: jsut stepped off Friday, February 24, 2006 2:32:59 PM EST Matthew Donohoe: hey red h/j Friday, February 24, 2006 2:33:34 PM EST Brian Hunter: y Friday, February 24, 2006 2:33:40 PM EST Brian Hunter: tighter Friday, February 24, 2006 2:33:43 PM EST Brian Hunter: I lef twider Friday, February 24, 2006 2:34:52 PM EST Matthew Donohoe: 22 h/j Friday, February 24, 2006 2:34:58 PM EST Matthew Donohoe: should pay you a bit more Friday, February 24, 2006 2:35:14 PM EST Brian Hunter: yeah Friday, February 24, 2006 2:35:18 PM EST Brian Hunter: I might adjust a little Friday, February 24, 2006 2:35:21 PM EST Matthew Donohoe: nice and concervative on cals spreads too Friday, February 24, 2006 2:37:54 PM EST Matthew Donohoe: check v/f on the floor Friday, February 24, 2006 2:38:16 PM EST Brian Hunter: where is it on box? Friday, February 24, 2006 2:38:18 PM EST Brian Hunter: any market Friday, February 24, 2006 2:38:21 PM EST Brian Hunter: it was pretty bid Friday, February 24, 2006 2:38:24 PM EST Matthew Donohoe: 165/74 Friday, February 24, 2006 2:38:38 PM EST Matthew Donohoe: i asked and got wider just before close Friday, February 24, 2006 2:38:41 PM EST Brian Hunter: 75 will be settle Friday, February 24, 2006 2:38:44 PM EST Matthew Donohoe: y Friday, February 24, 2006 2:38:45 PM EST Brian Hunter: 105 bid v/x

2

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0704932

From:        windowsadmin@amaranthllc.com
Sent:        Wednesday, April 26, 2006 12:45 PM
To:          amaranth.dom@amaranth.digitalsafe.net
Subject:     SUBJECT: CONVERSATION PARTICIPANTS = DCHASMAN@AMARANTHLLC.COM;
             BHUNTER@AMARANTHLLC.COM

X-ZANTAZ-MESSAGE-DATE: 04/26/2006 16:44:49; 04/26/2006 16:45:12; 04/26/2006 16:45:45;
04/26/2006 16:45:46; 04/26/2006 16:46:29; 04/26/2006 16:47:28; 04/26/2006 16:47:29;
04/26/2006 16:48:03; 04/26/2006 16:48:02; 04/26/2006 16:48:04; 04/26/2006 16:48:05;
04/26/2006 16:48:20; 04/26/2006 16:48:30; 04/26/2006 16:48:31; 04/26/2006 16:48:48;
04/26/2006 16:49:45; 04/26/2006 16:50:04; 04/26/2006 16:50:05; 04/26/2006 16:50:06;
04/26/2006 16:50:07; 04/26/2006 16:50:25; 04/26/2006 16:50:26; 04/26/2006 16:50:28;
04/26/2006 16:50:29; 04/26/2006 16:50:42; 04/26/2006 16:51:00; 04/26/2006 16:50:59;
04/26/2006 16:51:08; 04/26/2006 16:51:07; 04/26/2006 16:51:16; 04/26/2006 16:53:03;
04/26/2006 16:53:17; 04/26/2006 16:53:18; 04/26/2006 16:53:19; 04/26/2006 16:54:36;
04/26/2006 16:54:49; 04/26/2006 16:55:16; 04/26/2006 16:55:17; 04/26/2006 16:55:23;
04/26/2006 16:55:24; 04/26/2006 16:55:29; 04/26/2006 16:55:33; 04/26/2006 16:55:35;
04/26/2006 16:55:34; 04/26/2006 16:55:47; 04/26/2006 16:55:48; !
04/26/2006 16:55:49; 04/26/2006 16:56:10; 04/26/2006 16:56:39; 04/26/2006 16:56:40;
04/26/2006 16:56:41; 04/26/2006 16:57:04; 04/26/2006 16:57:05; 04/26/2006 16:57:10;
04/26/2006 16:58:31; 04/26/2006 16:58:32; 04/26/2006 16:59:10; 04/26/2006 16:59:11;
04/26/2006 17:02:14; 04/26/2006 17:02:15; 04/26/2006 17:03:01; 04/26/2006 17:03:00
X-ZANTAZ-PARTICIPANT-IMNAMES: hunteramaranth; davidchasman2
X-ZANTAZ-RECIPIENT-NAME: Brian Hunter; David Chasman
X-ZANTAZ-PARTICIPANT-IMNAMES: davidchasman2; hunteramaranth
X-ZANTAZ-SENDER-NAME: David Chasman; Brian Hunter
X-ZANTAZ-GUID: 2E1C3D4C-3B31-4D85-B3F1-82CEA2A23F1F111I3036398851880
X-ZANTAZ-URL: notused
X-OriginalArrivalTime: 26 Apr 2006 17:11:35.0013 (UTC) FILETIME=[78B7F950:01C66954]


IM Network: AOL IM

IM Users:

participant=dchasman@amaranthllc.com "davidchasman2"
participant=bhunter@amaranthllc.com "hunteramaranth"

IM Dialog:

Wednesday, April 26, 2006 12:44:49 PM EDT David Chasman started conversation.
Wednesday, April 26, 2006 12:44:49 PM EDT Brian Hunter has entered the conversation.
Wednesday, April 26, 2006 12:44:49 PM EDT David Chasman: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 12:44:49 PM EDT David Chasman: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 12:44:49 PM EDT Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 12:44:49 PM EDT Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 12:44:49 PM EDT David Chasman: hey Wednesday, April 26, 2006
12:44:49 PM EDT David Chasman: hey Wednesday, April 26, 2006 12:45:12 PM EDT Brian Hunter:
hey Wednesday, April 26, 2006 12:45:12 PM EDT Brian Hunter: hey Wednesday, April 26, 2006
12:45:45 PM EDT David Chasman: I'm seeing -40K lots summer rite now Wednesday, April 26,
2006 12:45:46 PM EDT David Chasman: I'm seeing -40K lots summer rite now Wednesday, April
26, 2006 12:46:29 PM EDT Brian Hunter: June puts Wednesday, April 26, 2006 12:46:29 PM EDT
Brian Hunter: June puts Wednesday, April 26, 2006 12:47:28 PM EDT David Chasman: what we
gonna do to protect the winter position ?
Wednesday, April 26, 2006 12:47:29 PM EDT David Chasman: what we gonna do to protect the
winter position ?
Wednesday, April 26, 2006 12:48:03 PM EDT Brian Hunter: sell cal7 and 8 Wednesday, April

Confidential Treatment Requested                                                      A_CFTC032874

26, 2006 12:48:02 PM EDT Brian Hunter: sell cal7 and 8 Wednesday, April 26, 2006 12:48:04 PM EDT Brian Hunter: and H/J Wednesday, April 26, 2006 12:48:05 PM EDT Brian Hunter: and H/J Wednesday, April 26, 2006 12:48:20 PM EDT David Chasman: how much cal7 u gonna dump ? Wednesday, April 26, 2006 12:48:20 PM EDT David Chasman: how much cal7 u gonna dump ? Wednesday, April 26, 2006 12:48:30 PM EDT Brian Hunter: rest of the week Wednesday, April 26, 2006 12:48:30 PM EDT Brian Hunter: rest of the week Wednesday, April 26, 2006 12:48:31 PM EDT Brian Hunter: 14k Wednesday, April 26, 2006 12:48:31 PM EDT Brian Hunter: 14k Wednesday, April 26, 2006 12:48:48 PM EDT Brian Hunter: FYI Arnold is getting scary short into the number tomorrow Wednesday, April 26, 2006 12:48:48 PM EDT Brian Hunter: FYI Arnold is getting scary short into the number tomorrow Wednesday, April 26, 2006 12:49:45 PM EDT David Chasman: how many june puts we got ? Wednesday, April 26, 2006 12:49:45 PM EDT David Chasman: how many june puts we got ? Wednesday, April 26, 2006 12:50:04 PM EDT Brian Hunter: 14k Wednesday, April 26, 2006 12:50:05 PM EDT Brian Hunter: 14k Wednesday, April 26, 2006 12:50:06 PM EDT Brian Hunter: and adding Wednesday, April 26, 2006 12:50:07 PM EDT Brian Hunter: and adding Wednesday, April 26, 2006 12:50:25 PM EDT David Chasman: what u think arnold has ? Wednesday, April 26, 2006 12:50:26 PM EDT David Chasman: what u think arnold has ? Wednesday, April 26, 2006 12:50:28 PM EDT Brian Hunter: we are rolling size into may Wednesday, April 26, 2006 12:50:29 PM EDT Brian Hunter: we are rolling size into may Wednesday, April 26, 2006 12:50:42 PM EDT Brian Hunter: and I am worries that Anold has taken the other side of everything Wednesday, April 26, 2006 12:50:42 PM EDT Brian Hunter: and I am worries that Anold has taken the other side of everything Wednesday, April 26, 2006 12:51:00 PM EDT Brian Hunter: so either he runs it up on the close today and gets short tomorrow Wednesday, April 26, 2006 12:50:59 PM EDT Brian Hunter: so either he runs it up on the close today and gets short tomorrow Wednesday, April 26, 2006 12:51:08 PM EDT Brian Hunter: or has a HUGE view on the nnumber tomorrow Wednesday, April 26, 2006 12:51:07 PM EDT Brian Hunter: or has a HUGE view on the nnumber tomorrow Wednesday, April 26, 2006 12:51:16 PM EDT Brian Hunter: which is goign to be stupid bearish Wednesday, April 26, 2006 12:51:16 PM EDT Brian Hunter: which we think is goign to be stupid bearish Wednesday, April 26, 2006 12:53:03 PM EDT David Chasman: other side of everything meaning buying from everyone else selling - or buying from u Wednesday, April 26, 2006 12:53:03 PM EDT David Chasman: other side of everything meaning buying from everyone else selling - or buying from u Wednesday, April 26, 2006 12:53:17 PM EDT Brian Hunter: no buying may and selling June Wednesday, April 26, 2006 12:53:17 PM EDT Brian Hunter: no buying may and selling June Wednesday, April 26, 2006 12:53:18 PM EDT Brian Hunter: with me Wednesday, April 26, 2006 12:53:19 PM EDT Brian Hunter: with me Wednesday, April 26, 2006 12:54:36 PM EDT David Chasman: does he know what ur up 2 wrt to rolling off length ? Wednesday, April 26, 2006 12:54:36 PM EDT David Chasman: does he know what ur up 2 wrt to rolling off length ? Wednesday, April 26, 2006 12:54:49 PM EDT David Chasman: sorry rolling off short Wednesday, April 26, 2006 12:54:49 PM EDT David Chasman: sorry rolling off short Wednesday, April 26, 2006 12:55:16 PM EDT Brian Hunter: probably Wednesday, April 26, 2006 12:55:17 PM EDT Brian Hunter: probably Wednesday, April 26, 2006 12:55:23 PM EDT David Chasman: anybody selling 1 day calls ? Wednesday, April 26, 2006 12:55:24 PM EDT David Chasman: anybody selling 1 day calls ? Wednesday, April 26, 2006 12:55:29 PM EDT Brian Hunter: I think its more that he thinks its going to get fucked tomorrow Wednesday, April 26, 2006 12:55:29 PM EDT Brian Hunter: I think its more that he thinks its going to get fucked tomorrow Wednesday, April 26, 2006 12:55:33 PM EDT Brian Hunter: that is most lilely Wednesday, April 26, 2006 12:55:35 PM EDT David Chasman: ( other than him ) Wednesday, April 26, 2006 12:55:35 PM EDT David Chasman: ( other than him ) Wednesday, April 26, 2006 12:55:34 PM EDT Brian Hunter: that is most lilely Wednesday, April 26, 2006 12:55:47 PM EDT Brian Hunter: me may try to help it by running the market up on the close Wednesday, April 26, 2006 12:55:47 PM EDT Brian Hunter: me may try to help it by running the market up on the close Wednesday, April 26, 2006 12:55:48 PM EDT David Chasman: well, we'll find out Wednesday, April 26, 2006 12:55:49 PM EDT David Chasman: well, we'll find out Wednesday, April 26, 2006 12:56:10 PM EDT David Chasman: kinda hard to do when ur selling - no ? Wednesday, April 26, 2006 12:56:10 PM EDT David Chasman: kinda hard to do when ur selling - no ? Wednesday, April 26, 2006 12:56:39 PM EDT Brian Hunter: Arnold is the master of moving theclose? Wednesday, April 26, 2006 12:56:39 PM EDT Brian Hunter: Arnold is the master of moving theclose? Wednesday, April 26, 2006 12:56:40 PM EDT Brian Hunter: close Wednesday, April 26, 2006 12:56:41 PM EDT Brian Hunter: close Wednesday, April 26, 2006 12:57:04 PM EDT David

Confidential Treatment Requested

A_CFTC032875

Chasman: well in 90 minutes, we'll find out Wednesday, April 26, 2006 12:57:05 PM EDT
David Chasman: well in 90 minutes, we'll find out Wednesday, April 26, 2006 12:57:10 PM
EDT David Chasman: what's our may pos Wednesday, April 26, 2006 12:57:10 PM EDT David
Chasman: what's our may pos Wednesday, April 26, 2006 12:58:31 PM EDT David Chasman: r u
done selling may yet ?
Wednesday, April 26, 2006 12:58:32 PM EDT David Chasman: r u done selling may yet ?
Wednesday, April 26, 2006 12:59:10 PM EDT Brian Hunter: I think so Wednesday, April 26,
2006 12:59:11 PM EDT Brian Hunter: I think so Wednesday, April 26, 2006 1:02:14 PM EDT
David Chasman: how many we short now ?
Wednesday, April 26, 2006 1:02:15 PM EDT David Chasman: how many we short now ?
Wednesday, April 26, 2006 1:03:01 PM EDT Brian Hunter: 15k Wednesday, April 26, 2006
1:03:00 PM EDT Brian Hunter: 15k

Confidential Treatment Requested

From:        windowsadmin@amaranthllc.com
Sent:        Wednesday, April 26, 2006 1:22 PM
To:          amaranth.dom@amaranth.digitalsafe.net
Subject:     SUBJECT: CONVERSATION PARTICIPANTS = BHUNTER@AMARANTHLLC.COM;
             "TRDRXTRA"

IM Network: Yahoo IM

IM Users:

participant=bhunter@amaranthllc.com "hunter_amaranth"
participant="trdrxtra"

IM Dialog:

Wednesday, April 26, 2006 1:22:07 PM EDT Brian Hunter started conversation.
Wednesday, April 26, 2006 1:22:07 PM EDT trdrxtra has entered the conversation.
Wednesday, April 26, 2006 1:22:07 PM EDT Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:22:07 PM EDT trdrxtra: IM Administrator: NOTE: This session is
recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:22:07 PM EDT trdrxtra: higher or lower Wednesday, April 26,
2006 1:22:08 PM EDT trdrxtra: on close Wednesday, April 26, 2006 1:22:43 PM EDT trdrxtra:
me thinks a tad higher Wednesday, April 26, 2006 1:23:07 PM EDT Brian Hunter: I think John
wants to bid it on close Wednesday, April 26, 2006 1:23:17 PM EDT trdrxtra: and then
bury it tomorrow Wednesday, April 26, 2006 1:23:27 PM EDT Brian Hunter: i am set up that way
Wednesday, April 26, 2006 1:23:27 PM EDT Brian Hunter: I think market is Wednesday, April
26, 2006 1:23:43 PM EDT Brian Hunter: that's why I a touch worried about a lower close
Wednesday, April· 26, 2006 1:23:54 PM EDT trdrxtra: ho just sold 500 Wednesday, April 26,
2006 1:23:59 PM EDT trdrxtra: 7 same days Wednesday, April 26, 2006 1:24:09 PM EDT
trdrxtra: i think Wednesday, April 26, 2006 1:24:11 PM EDT trdrxtra: it was him Wednesday,
April 26, 2006 1:24:24 PM EDT trdrxtra: km Wednesday, April 26, 2006 1:24:27 PM EDT
trdrxtra: any opinion Wednesday, April 26, 2006 1:26:03 PM EDT Brian Hunter: not really
Wednesday, April 26, 2006 1:26:13 PM EDT Brian Hunter: John is long may like crazy
Wednesday, April 26, 2006 1:26:21 PM EDT Brian Hunter: short June like crazy Wednesday,
April 26, 2006 1:26:25 PM EDT Brian Hunter: that's a good indication Wednesday, April 26,
2006 1:26:58 PM EDT trdrxtra: dood Wednesday, April 26, 2006 1:27:01 PM EDT trdrxtra: good
Wednesday, April 26, 2006 1:27:02 PM EDT trdrxtra: i guess Wednesday, April 26, 2006
1:27:35 PM EDT trdrxtra: it is almost too obvious Wednesday, April 26, 2006 1:27:43 PM EDT
trdrxtra: this happened a couple of months ago Wednesday, April 26, 2006 1:27:49 PM EDT
Brian Hunter: I remember Wednesday, April 26, 2006 1:28:00 PM EDT Brian Hunter: we bought
15k june 7.25 puts yesterday Wednesday, April 26, 2006 1:28:10 PM EDT Brian Hunter: so
we'll see how that goes Wednesday, April 26, 2006 1:29:33 PM EDT trdrxtra: holy crap
Wednesday, April 26, 2006 1:31:15 PM EDT trdrxtra: you are not afraid to spend premium
Wednesday, April 26, 2006 1:31:36 PM EDT Brian Hunter: this thing has to giv ein the front
Wednesday, April 26, 2006 1:31:41 PM EDT Brian Hunter: at some point Wednesday, April 26,
2006 1:31:47 PM EDT trdrxtra: pira Wednesday, April 26, 2006 1:31:48 PM EDT Brian Hunter:
if not this month Wednesday, April 26, 2006 1:31:50 PM EDT Brian Hunter: then next
Wednesday, April 26, 2006 1:31:56 PM EDT trdrxtra: said we have to get into shut in levels
Wednesday, April 26, 2006 1:32:00 PM EDT Brian Hunter: coal Wednesday, April 26, 2006
1:32:00 PM EDT trdrxtra: like 91 Wednesday, April 26, 2006 1:32:02 PM EDT Brian Hunter: I
think Wednesday, April 26, 2006 1:32:04 PM EDT Brian Hunter: not shut in Wednesday, April
26, 2006 1:32:04 PM EDT trdrxtra: to spur dmeand Wednesday, April 26, 2006 1:32:09 PM EDT
trdrxtra: 550 Wednesday, April 26, 2006 1:32:12 PM EDT trdrxtra: is coal Wednesday, April
26, 2006 1:32:14 PM EDT trdrxtra: in the east Wednesday, April 26, 2006 1:32:21 PM EDT
Brian Hunter: yeah 5.00 merc Wednesday, April 26, 2006 1:32:25 PM EDT Brian Hunter: long
way Wednesday, April 26, 2006 1:32:44 PM EDT trdrxtra: i bought the 8/7/6 fly Wednesday,
April 26, 2006 1:32:45 PM EDT trdrxtra: in v

1

CONFIDENTIAL TREATMENT REQUESTED

AALLC_REG0593127

From:           windowsadmin@amaranthllc.com
Sent:           Wednesday, April 26, 2006 1:46 PM
To:             amaranth.dom@amaranth.digitalsafe.net
Subject:        SUBJECT: CONVERSATION PARTICIPANTS = DCHASMAN@AMARANTHLLC.COM;
                BHUNTER@AMARANTHLLC.COM


IM Network: AOL IM

IM Users:

participant=dchasman@amaranthllc.com "davidchasman2"
participant=bhunter@amaranthllc.com "hunteramaranth"

IM Dialog:

Wednesday, April 26, 2006 1:45:58 PM EDT David Chasman started conversation.
Wednesday, April 26, 2006 1:45:58 PM EDT Brian Hunter has entered the conversation.
Wednesday, April 26, 2006 1:45:58 PM EDT David Chasman: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:45:58 PM EDT David Chasman: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:45:58 PM EDT Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:45:58 PM EDT Brian Hunter: IM Administrator: NOTE: This
session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 1:45:58 PM EDT David Chasman: seeing anything yet ?
Wednesday, April 26, 2006 1:45:58 PM EDT David Chasman: seeing anything yet ?
Wednesday, April 26, 2006 1:46:52 PM EDT Brian Hunter: not yet Wednesday, April 26, 2006
1:46:52 PM EDT Brian Hunter: not yet Wednesday, April 26, 2006 1:46:57 PM EDT Brian
Hunter: trying to get some back stuff done Wednesday, April 26, 2006 1:46:58 PM EDT Brian
Hunter: trying to get some back stuff done Wednesday, April 26, 2006 2:01:46 PM EDT David
Chasman: bingo Wednesday, April 26, 2006 2:01:46 PM EDT David Chasman: bingo Wednesday,
April 26, 2006 2:02:17 PM EDT Brian Hunter: seems to be that way so far Wednesday, April
26, 2006 2:02:18 PM EDT Brian Hunter: seems to be that way so far Wednesday, April 26,
2006 2:02:25 PM EDT Brian Hunter: defintely buyers Wednesday, April 26, 2006 2:02:25 PM
EDT Brian Hunter: defintely buyers Wednesday, April 26, 2006 2:02:28 PM EDT Brian Hunter:
but we have yet to sell Wednesday, April 26, 2006 2:02:28 PM EDT Brian Hunter: but we have
yet to sell

Confidential Treatment Requested

| | |
|---|---|
| **From:** | windowsadmin@amaranthllc.com |
| **Sent:** | Wednesday, April 26, 2006 2:07 PM |
| **To:** | amaranth.dom@amaranth.digitalsafe.net |
| **Subject:** | SUBJECT: CONVERSATION PARTICIPANTS = "CALLIFRNICATION"; "HUNTERAMARANTH" |

IM Network: AOL IM

IM Users:

participant="callifrnication"
participant="hunteramaranth"

IM Dialog:

Wednesday, April 26, 2006 2:06:30 PM EDT Matthew Calhoun started conversation.
Wednesday, April 26, 2006 2:06:30 PM EDT Brian Hunter has entered the conversation.
Wednesday, April 26, 2006 2:06:30 PM EDT Matthew Calhoun: IM Administrator: NOTE: This session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 2:06:30 PM EDT Matthew Calhoun: IM Administrator: NOTE: This session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 2:06:30 PM EDT Brian Hunter: IM Administrator: NOTE: This session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 2:06:30 PM EDT Brian Hunter: IM Administrator: NOTE: This session is recorded and the recording is the sole property of Amaranth.
Wednesday, April 26, 2006 2:06:30 PM EDT Matthew Calhoun: ja Wednesday, April 26, 2006 2:06:30 PM EDT Matthew Calhoun: ja Wednesday, April 26, 2006 2:06:36 PM EDT Matthew Calhoun: workin hard Wednesday, April 26, 2006 2:06:37 PM EDT Matthew Calhoun: workin hard Wednesday, April 26, 2006 2:06:43 PM EDT Brian Hunter: oh yeah Wednesday, April 26, 2006 2:06:45 PM EDT Brian Hunter: its all good Wednesday, April 26, 2006 2:06:44 PM EDT Brian Hunter: oh yeah Wednesday, April 26, 2006 2:06:46 PM EDT Brian Hunter: its all good Wednesday, April 26, 2006 2:06:52 PM EDT Brian Hunter: we are finally selling h>j's etc... Wednesday, April 26, 2006 2:06:52 PM EDT Brian Hunter: we are finally selling h>j's etc... Wednesday, April 26, 2006 2:06:55 PM EDT Brian Hunter: cals Wednesday, April 26, 2006 2:06:55 PM EDT Brian Hunter: cals Wednesday, April 26, 2006 2:06:58 PM EDT Brian Hunter: we are wating to sell Wednesday, April 26, 2006 2:06:58 PM EDT Brian Hunter: we are wating to sell Wednesday, April 26, 2006 2:07:03 PM EDT Matthew Calhoun: yup Wednesday, April 26, 2006 2:07:04 PM EDT Matthew Calhoun: yup

Confidential Treatment Requested