# EXHIBIT 8

FORM D

*126 3142*

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549



03031349

FORM D

NOTICE OF SALE OF SECURITIES
PURSUANT TO REGULATION D,
SECTION 4(6), AND/OR
UNIFORM LIMITED OFFERING EXEMPTION

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0076 |
| Expires: | May 31, 2005 |
| Estimated average burden hours per form | .................1.00 |

| SEC USE ONLY | |
|---|---|
| Prefix | Serial |
| DATE RECEIVED | |

Name of Offering ( ☐ check if this is an amendment and name has changed, and indicate change.)
Amaranth International Limited (the "Issuer")

Filing Under (Check box(es) that apply): ☐ Rule 504   ☐ Rule 505   ☒ Rule 506   ☐ Section 4(6)   ☐ ULOE
Type of Filing: ☒ New Filing   ☐ Amendment

**A. BASIC IDENTIFICATION DATA**

1.   Enter the information requested about the issuer

*SEP 09 2003*

Name of Issuer ( ☐ check if this is an amendment and name has changed, and indicate change.)
Amaranth International Limited

| Address of Executive Offices (Number and Street, City, State, ZIP Code) | Telephone Number (Including Area Code) |
|---|---|
| c/o M.Q. Services Ltd., Chancery Hall, 52 Reid Street, Hamilton HM 12, Bermuda | 441-295-9294 |
| Address of Principal Business Operations (Number and Street, City, State, ZIP Code) (if different from Executive Offices)    same as above | Telephone Number (Including Area Code) same as above |

Brief Description of Business
Seeks to achieve superior risk-adjusted returns through relative value, event-driven, directional and hybrid strategies

Type of Business Organization
☐ corporation        ☐ limited partnership, already formed        ☒ other (please specify): Bermuda Company
☐ business trust     ☐ limited partnership, to be formed

PROCESSED

|  | Month | Year | | |
|---|---|---|---|---|
| Actual or Estimated Date of Incorporation or Organization: | 0 1 | 9 8 | ☒ Actual | ☐ Estimated |

SEP 10 2003

Jurisdiction of Incorporation or Organization: (Enter two-letter U.S. Postal Service abbreviation for State;
CN for Canada; FN for other foreign jurisdiction) | F N |

THOMSON FINANCIAL

**GENERAL INSTRUCTIONS**

**Federal:**
*Who Must File:* All issuers making an offering of securities in reliance on an exemption under Regulation D or Section 4(6), 17 CFR 230.501 et seq. or 15 U.S.C. 77d(6).

*When to File:* A notice must be filed no later than 15 days after the first sale of securities in the offering. A notice is deemed filed with the U.S. Securities and Exchange Commission (SEC) on the earlier of the date it is received by the SEC at the address given below or, if received at that address after the date on which it is due, on the date it was mailed by United States registered or certified mail to that address.

*Where to File:* U.S. Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549.

*Copies Required:* Five (5) copies of this notice must be filed with the SEC, one of which must be manually signed. Any copies not manually signed must be photocopies of the manually signed copy or bear typed or printed signatures.

*Information Required:* A new filing must contain all information requested. Amendments need only report the name of the issuer and offering, any changes thereto, the information requested in Part C, and any material changes from the information previously supplied in Parts A and B. Part E and the Appendix need not be filed with the SEC.

*Filing Fee:* There is no federal filing fee.

**State:**
This notice shall be used to indicate reliance on the Uniform Limited Offering Exemption (ULOE) for sales of securities in those states that have adopted ULOE and that have adopted this form. Issuers relying on ULOE must file a separate notice with the Securities Administrator in each state where sales are to be, or have been, made. If a state requires the payment of a fee as a precondition to the claim for the exemption, a fee in the proper amount shall accompany this form. This notice shall be filed in the appropriate states in accordance with state law. The Appendix to the notice constitutes a part of this notice and must be completed.

**ATTENTION**
Failure to file notice in the appropriate states will not result in a loss of the federal exemption. Conversely, failure to file the appropriate federal notice will not result in a loss of an available state exemption unless such exemption is predicated on the filing of a federal notice.

## A. BASIC IDENTIFICATION DATA

2. Enter the information requested for the following:

- Each promoter of the issuer, if the issuer has been organized within the past five years;

- Each beneficial owner having the power to vote or dispose, or direct the vote or disposition of, 10% or more of a class of equity securities of the issuer;

- Each executive officer and director of corporate issuers and of corporate general and managing partners of partnership issuers; and

- Each general and managing partner of partnership issuers.

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☒ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Amaranth International Advisors L.L.C. (the "Portfolio Manager")

Business or Residence Address (Number and Street, City, State, Zip Code)
One American Lane, Greenwich Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☒ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Hoskins, Nicholas J.

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Wakefield Quin, Chancery Hall, 52 Reid Street, Hamilton HM 12 Bermuda

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☒ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Forrest, Roderick

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Wakefield Quin, Chancery Hall, 52 Reid Street, Hamilton HM 12 Bermuda

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Tucker, Peggy

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Wakefield Quin, Chancery Hall, 52 Reid Street, Hamilton HM 12 Bermuda

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Maounis, Nicholas M.

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Winkler, Charles H.

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Jones, Robert

Business or Residence Address (Number and Street, City, State, Zip Code)
c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## B. INFORMATION ABOUT OFFERING

| | | YES | NO |
|---|---|---|---|
| 1. | Has the issuer sold, or does the issuer intend to sell, to non-accredited investors in this offering? ......... | ☐ | ☒ |
| | Answer also in Appendix, Column 2, if filing under ULOE. | | |
| 2. | What is the minimum investment that will be accepted from any individual? ......... $5,000,000* | | |

\* Subject to the discretion of the Directors to lower such amount.

| | | YES | NO |
|---|---|---|---|
| 3. | Does the offering permit joint ownership of a single unit? ......... | ☒ | ☐ |

4. Enter the information requested for each person who has been or will be paid or given, directly or indirectly, any commission or similar remuneration for solicitation of purchasers in connection with sales of securities in the offering. If a person to be listed is an associated person or agent of a broker or dealer registered with the SEC and/or with a state or states, list the name of the broker or dealer. If more than five (5) persons to be listed are associated persons of such a broker or dealer, you may set forth the information for that broker or dealer only.

Full Name (Last name first, if individual)

**not applicable**

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers

(Check "All States" or check individual States) ......................................................... ☐ All States

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers

(Check "All States" or check individual States) ......................................................... ☐ All States

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers

(Check "All States" or check individual States) ......................................................... ☐ All States

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

1.  Enter the aggregate offering price of securities included in this offering and the total amount already sold. Enter "0" if answer is "none" or "zero." If the transaction is an exchange offering, check this box ☐ and indicate in the columns below the amounts of the securities offered for exchange and already exchanged.

| Type of Security | Aggregate Offering Price | Amount Already Sold |
|---|---|---|
| Debt ............................................................................................ | $ | $ |
| Equity .......................................................................................... | $ | $ |
| ☐ Common    ☐ Preferred | | |
| Convertible Securities (including warrants) ............................... | $ | $ |
| Partnership Interests .................................................................. | $ | $ |
| Other (Specify redeemable participating shares (the "Shares")(a) .............................. ) | $5,000,000,000(b) | $1,374,067,258 |
| Total.................................................................... | $5,000,000,000(b) | $1,374,067,258 |

Answer also in Appendix, Column 3, if filing under ULOE.

2.  Enter the number of accredited and non-accredited investors who have purchased securities in this offering and the aggregate dollar amounts of their purchases. For offerings under Rule 504, indicate the number of persons who have purchased securities and the aggregate dollar amount of their purchases on the total lines. Enter "0" if answer is "none" or "zero."

| | Number Investors | Aggregate Dollar Amount of Purchases |
|---|---|---|
| Accredited Investors ................................................................... | 37 | $1,374,067,258 |
| Non-accredited investors ............................................................ | 0 | $0 |
| Total (for filings under Rule 504 only) ...................................... | N/A | $N/A |

Answer also in Appendix, Column 4, if filing under ULOE.

3.  If this filing is for an offering under Rule 504 or 505, enter the information requested for all securities sold by the issuer, to date, in offerings of the types indicated, in the twelve (12) months prior to the first sale of securities in this offering. Classify securities by type listed in Part C - Question 1.

| Type of offering | Type of Security | Dollar Amount Sold |
|---|---|---|
| Rule 505 ...................................................................................... | N/A | $N/A |
| Regulation A ............................................................................... | N/A | $N/A |
| Rule 504 ...................................................................................... | N/A | $N/A |
| Total.............................................................................. | N/A | $N/A |

4.  a. Furnish a statement of all expenses in connection with the issuance and distribution of the securities in this offering. Exclude amounts relating solely to organization expenses of the issuer. The information may be given as subject to future contingencies. If the amount of an expenditure is not known, furnish an estimate and check the box to the left of the estimate.

| | | |
|---|---|---|
| Transfer Agent's Fees ...................................................................... | ☒ | $0 |
| Printing and Engraving Costs............................................................ | ☒ | $10,000 |
| Legal Fees......................................................................................... | ☒ | $60,000 |
| Accounting Fees................................................................................ | ☒ | $10,000 |
| Engineering Fees............................................................................... | ☒ | $0 |
| Sales Commissions (specify finders' fees separately)........................ | ☒ | $0 |
| Other Expenses (identify) Filing Fees ............................................. | ☒ | $20,000 |
| Total ......................................................................................... | ☒ | $100,000 |

(a) The Issuer is offering individual Series of Shares with an independent Net Asset Value
(b) Open-end fund; estimated maximum aggregate offering amount.

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

b.  Enter the difference between the aggregate offering price given in response to Part C - Question 1 and total expenses furnished in response to Part C - Question 4.a.  This difference is the "adjusted gross proceed proceeds to the issuer."

$4,999,900,000

5.      Indicate below the amount of the adjusted gross proceeds to the issuer used or proposed to be used for each of the purposes shown.  If the amount for any purpose is not known, furnish an estimate and check the box to the left of the estimate.  The total of the payments listed must equal the adjusted gross proceeds to the issuer set forth in response to Part C – Question 4.b above.

| | Payments to Officers, Directors, & Affiliates | Payments to Others |
|---|---|---|
| Salaries and fees.......................................................................... | ☒ $0 | ☒ $0 |
| Purchase of real estate................................................................. | ☒ $0 | ☒ $0 |
| Purchase, rental or leasing and installation of machinery and equipment ...... | ☒ $0 | ☒ $0 |
| Construction or leasing of plant buildings and facilities................... | ☒ $0 | ☒ $0 |
| Acquisition of other businesses (including the value of securities involved in this offering that may be used in exchange for the assets or securities of another issuer pursuant to a merger) ................................................................ | ☒ $0 | ☒ $0 |
| Repayment of indebtedness .......................................................... | ☒ $0 | ☒ $0 |
| Working capital ............................................................................ | ☒ $0 | ☒ $0 |
| Other (specify):  Margin for the speculative trading of futures, contracts options and permissible portfolio investments | ☒ $0 | ☒ $4,999,900,000 |
| | ☒ $0 | ☒ $0 |
| Column Totals ............................................................................. | ☒ $0 | ☒ $4,999,900,000 |
| Total Payments Listed (column totals added) ................................ | | ☒ $4,999,900,000 |

## D. FEDERAL SIGNATURE

The issuer has duly caused this notice to be signed by the undersigned duly authorized person.  If this notice if filed under Rule 505, the following signature constitutes an undertaking by the issuer to furnish to the U.S. Securities and Exchange Commission, upon written request of its staff, the information furnished by the issuer to any non-accredited investor pursuant to paragraph (b)(2) of Rule 502.

| Issuer (Print or Type) | Signature | Date |
|---|---|---|
| Amaranth International Limited | | August  08,  2003 |
| Name of Signer (Print or Type) | Title of Signer (Print or Type) | |
| Nicholas J. Hoskins | Vice President of the Issuer | |

---

**ATTENTION**

**Intentional misstatements or omissions of fact constitute federal criminal violations.  (See 18 U.S.C. 1001).**

## E. STATE SIGNATURE

1.  Is any party described in 17 CFR 230.262 presently subject to any of the disqualification provisions of such rule?    YES    NO
    Not applicable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐    ☐
    *See Appendix, Column 5, for state response.*

2.  The undersigned issuer hereby undertakes to furnish to any state administrator of any state in which this notice is filed, a notice on Form D (17 CFR 239.500) at such times as required by state law.  **Not applicable.**

3.  The undersigned issuer hereby undertakes to furnish to the state administrators, upon written request, information furnished by the issuer to offerees.  **Not applicable.**

4.  The undersigned issuer represents that the issuer is familiar with the conditions that must be satisfied to be entitled to the Uniform Limited Offering Exemption (ULOE) of the state in which this notice is filed and understands that the issuer claiming the availability of this exemption has the burden of establishing that these conditions have been satisfied.  **Not applicable.**

The issuer has read this notification and knows the contents to be true and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

| Issuer (Print or Type)<br><br>Amaranth International Limited | Signature | Date<br><br>August 08, 2003 |
|---|---|---|
| Name (Print or Type)<br><br>Nicholas J. Hoskins | Title (Print or Type)<br><br>Vice President of the Issuer | |

*Instruction:*
Print the name and title of the signing representative under his signature for the state portion of this form.  One copy of every notice on Form D must be

# EXHIBIT 9

FORM D



05068113

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

FORM D

**NOTICE OF SALE OF SECURITIES**
**PURSUANT TO REGULATION D,**
**SECTION 4(6), AND/OR**
**UNIFORM LIMITED OFFERING EXEMPTION**

| OMB APPROVAL |
|---|
| OMB Number:  3235-0076 |
| Expires:  May 31, 2005 |
| Estimated average burden |
| hours per form ...................... 1.00 |

| SEC USE ONLY | |
|---|---|
| Prefix | Serial |
| DATE RECEIVED | |

Name of Offering (☐ check if this is an amendment and name has changed, and indicate change.)
Amaranth International Limited (the "Issuer")

Filing Under (Check box(es) that apply):  ☐ Rule 504  ☐ Rule 505  ☒ Rule 506  ☐ Section 4(6)  ☐ ULOE
Type of Filing:  ☐ New Filing  ☒ Amendment

### A. BASIC IDENTIFICATION DATA

1. Enter the information requested about the issuer

Name of Issuer (☐ check if this is an amendment and name has changed, and indicate change.)
**Amaranth International Limited**

| Address of Executive Offices | (Number and Street, City, State, ZIP Code) | Telephone Number (Including Area Code) |
|---|---|---|
| c/o Dundee Leeds Management Services Ltd., 129 Front Street, Hamilton HM 12 Bermuda | | (441) 294-6881 |

| Address of Principal Business Operations | (Number and Street, City, State, ZIP Code) | Telephone Number (Including Area Code) |
|---|---|---|
| (if different from Executive Offices)  c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich, Connecticut 06831 | | (203) 422-3300 |

Brief Description of Business
**Seeks to achieve superior risk-adjusted returns through relative value, event-driven, directional and hybrid strategies.**

Type of Business Organization
☐ corporation  ☐ limited partnership, already formed  ☒ other (please specify): Bermuda Company
☐ business trust  ☐ limited partnership, to be formed

Actual or Estimated Date of Incorporation or Organization:  Month `0` `1`  Year `9` `8`  ☒ Actual  ☐ Estimated
Jurisdiction of Incorporation or Organization: (Enter two-letter U.S. Postal Service abbreviation for State:
CN for Canada; FN for other foreign jurisdiction) `F` `N`

**PROCESSED**
OCT 03 2005
THOMSON FINANCIAL

## GENERAL INSTRUCTIONS

*Federal:*
*Who Must File:* All issuers making an offering of securities in reliance on an exemption under Regulation D or Section 4(6), 17 CFR 230.501 et seq. or 15 U.S.C. 77d(6).

*When to File:* A notice must be filed no later than 15 days after the first sale of securities in the offering. A notice is deemed filed with the U.S. Securities and Exchange Commission (SEC) on the earlier of the date it is received by the SEC at the address given below or, if received at that address after the date on which it is due, on the date it was mailed by United States registered or certified mail to that address.

*Where to File:* U.S. Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549.

*Copies Required:* Five (5) copies of this notice must be filed with the SEC, one of which must be manually signed. Any copies not manually signed must be photocopies of the manually signed copy or bear typed or printed signatures.

*Information Required:* A new filing must contain all information requested. Amendments need only report the name of the issuer and offering, any changes thereto, the information required in Part C, and any material changes from the information previously supplied in Parts A and B. Part E and the Appendix need not be filed with the SEC.

*Filing Fee:* There is no federal filing fee.

*State:*
This notice shall be used to indicate reliance on the Uniform Limited Offering Exemption (ULOE) for sales of securities in those states that have adopted ULOE and that have adopted this form. Issuers relying on ULOE must file a separate notice with the Securities Administrator in each state where sales are to be, or have been made. If a state requires the payment of a fee as a precondition to the claim for the exemption, a fee in the proper amount shall accompany this form. This notice shall be filed in the appropriate states in accordance with state law. The Appendix to the notice constitutes a part of this notice and must be completed.

---

**ATTENTION**

**Failure to file notice in the appropriate states will not result in a loss of the federal exemption. Conversely, failure to file the appropriate federal notice will not result in a loss of an available state exemption unless such exemption is predicated on the filing of a federal notice.**

---

NY1 5761227v.1

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

SEC 1972 (6-02)  1 of 8

## A. BASIC IDENTIFICATION DATA

2.   Enter the information requested for the following:

- Each promoter of the issuer, if the issuer has been organized within the past five years;

- Each beneficial owner having the power to vote or dispose, or direct the vote or disposition of, 10% or more of a class of equity securities of the issuer;

- Each executive officer and director of corporate issuers and of corporate general and managing partners of partnership issuers; and

- Each general and managing partner of partnership issuers.

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☒ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Amaranth International Advisors L.L.C. (the "Trading Advisor")**

Business or Residence Address (Number and Street, City, State, Zip Code)
**One American Lane, Greenwich Connecticut 06831**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☒ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Hoskins, Nicholas J.**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Wakefield Quin, Chancery Hall, 52 Reid Street, Hamilton HM 12 Bermuda**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☒ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Forrest, Roderick**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Wakefield Quin, Chancery Hall, 52 Reid Street, Hamilton HM 12 Bermuda**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Bedford, Robin**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Dundee Leeds Management Services Ltd., 129 Front Street, Hamilton HM 12 Bermuda**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Maounis, Nicholas M.**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Winkler, Charles H.**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831**

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
**Jones, Robert**

Business or Residence Address (Number and Street, City, State, Zip Code)
**c/o Amaranth International Advisors L.L.C., One American Lane, Greenwich Connecticut 06831**

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## B. INFORMATION ABOUT OFFERING

|  |  | YES | NO |
|---|---|---|---|
| 1. | Has the issuer sold, or does the issuer intend to sell, to non-accredited investors in this offering? ............................................ | ☐ | ☒ |

Answer also in Appendix, Column 2, if filing under ULOE.

2. What is the minimum investment that will be accepted from any individual? .......................................................... **$5,000,000\***

\*     Subject to the discretion of the Directors to lower such amount.

|  |  | YES | NO |
|---|---|---|---|
| 3. | Does the offering permit joint ownership of a single unit? ................................................................ | ☒ | ☐ |

4. Enter the information requested for each person who has been or will be paid or given, directly or indirectly, any commission or similar remuneration for solicitation of purchasers in connection with sales of securities in the offering. If a person to be listed is an associated person or agent of a broker or dealer registered with the SEC and/or with a state or states, list the name of the broker or dealer. If more than five (5) persons to be listed are associated persons of such a broker or dealer, you may set forth the information for that broker or dealer only.

Full Name (Last name first, if individual)

**Not Applicable**

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States).......................................................... ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States).......................................................... ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States).......................................................... ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

1. Enter the aggregate offering price of securities included in this offering and the total amount already sold.
   Enter "0" if answer is "none" or "zero." If the transaction is an exchange offering, check this box ☐ and
   indicate in the columns below the amounts of the securities offered for exchange and already exchanged.

| Type of Security | Aggregate Offering Price | Amount Already Sold |
|---|---|---|
| Debt ................................................................................ | $ | $ |
| Equity .............................................................................. | $ | $ |
| ☐ Common    ☐ Preferred | | |
| Convertible Securities (including warrants) ................................ | $ | $ |
| Partnership Interests ........................................................ | $ | $ |
| Other (Specify _redeemable participating shares (the "Shares")(a)_ ....................) | $10,000,000,000(b) | $5,254,535,289.98 |
| Total.................................................................................. | $10,000,000,000(b) | $5,254,535,289.98 |

Answer also in Appendix, Column 3, if filing under ULOE.

2. Enter the number of accredited and non-accredited investors who have purchased securities in this offering
   and the aggregate dollar amounts of their purchases. For offerings under Rule 504, indicate the number of
   persons who have purchased securities and the aggregate dollar amount of their purchases on the total lines.
   Enter "0" if answer is "none" or "zero."

| | Number Investors | Aggregate Dollar Amount of Purchases |
|---|---|---|
| Accredited Investors ........................................................ | 232 | $5,254,535,289.98 |
| Non-accredited investors .................................................. | 0 | $0 |
| Total (for filings under Rule 504 only) ............................ | N/A | $N/A |

Answer also in Appendix, Column 4, if filing under ULOE.

3. If this filing is for an offering under Rule 504 or 505, enter the information requested for all securities sold
   by the issuer, to date, in offerings of the types indicated, in the twelve (12) months prior to the first sale of
   securities in this offering. Classify securities by type listed in Part C - Question 1.

| Type of offering | Type of Security | Dollar Amount Sold |
|---|---|---|
| Rule 505 ......................................................................... | N/A | $N/A |
| Regulation A ................................................................... | N/A | $N/A |
| Rule 504 ......................................................................... | N/A | $N/A |
| Total................................................................. | N/A | $N/A |

4. a. Furnish a statement of all expenses in connection with the issuance and distribution of the securities in
   this offering. Exclude amounts relating solely to organization expenses of the issuer. The information may
   be given as subject to future contingencies. If the amount of an expenditure is not known, furnish an
   estimate and check the box to the left of the estimate.

| | | |
|---|---|---|
| Transfer Agent's Fees ........................................................ | ☒ | $0 |
| Printing and Engraving Costs .............................................. | ☒ | $10,000 |
| Legal Fees ....................................................................... | ☒ | $60,000 |
| Accounting Fees............................................................... | ☒ | $10,000 |
| Engineering Fees .............................................................. | ☒ | $0 |
| Sales Commissions (specify finders' fees separately) .............. | ☒ | $0 |
| Other Expenses (identify) _Filing Fees_ ............................... | ☒ | $20,000 |
| Total ............................................................................... | ☒ | $100,000 |

(a) The Issuer is offering individual Series of Shares with an independent Net Asset Value to each investor.
(b) Open-end fund; estimated maximum aggregate offering amount.

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

b. Enter the difference between the aggregate offering price given in response to Part C - Question 1 and total expenses furnished in response to Part C - Question 4.a. This difference is the "adjusted gross proceed proceeds to the issuer."

$9,999,900,000

5. Indicate below the amount of the adjusted gross proceeds to the issuer used or proposed to be used for each of the purposes shown. If the amount for any purpose is not known, furnish an estimate and check the box to the left of the estimate. The total of the payments listed must equal the adjusted gross proceeds to the issuer set forth in response to Part C – Question 4.b above.

| | Payments to Officers, Directors, & Affiliates | Payments to Others |
|---|---|---|
| Salaries and fees............................................................................ | ☒ $0 | ☒ $0 |
| Purchase of real estate.................................................................... | ☒ $0 | ☒ $0 |
| Purchase, rental or leasing and installation of machinery and equipment................ | ☒ $0 | ☒ $0 |
| Construction or leasing of plant buildings and facilities........................... | ☒ $0 | ☒ $0 |
| Acquisition of other businesses (including the value of securities involved in this offering that may be used in exchange for the assets or securities of another issuer pursuant to a merger)........................... | ☒ $0 | ☒ $0 |
| Repayment of indebtedness................................................................ | ☒ $0 | ☒ $0 |
| Working capital.............................................................................. | ☒ $0 | ☒ $0 |
| Other (specify): <u>Margin for the speculative trading of futures, contracts options and permissible</u> <u>portfolio investments</u> | ☒ $0 | ☒ $9,999,900,000 |
| | ☒ $0 | ☒ $0 |
| Column Totals............................................................................... | ☒ $0 | ☒ $9,999,900,000 |
| Total Payments Listed (column totals added)............................ | ☒ $9,999,900,000 | |

## D. FEDERAL SIGNATURE

The issuer has duly caused this notice to be signed by the undersigned duly authorized person. If this notice if filed under Rule 505, the following signature constitutes an undertaking by the issuer to furnish to the U.S. Securities and Exchange Commission, upon written request of its staff, the information furnished by the issuer to any non-accredited investor pursuant to paragraph (b)(2) of Rule 502.

| Issuer (Print or Type)<br><br>**Amaranth International Limited** | Signature | Date<br><br>September 29, 2005 |
|---|---|---|
| Name of Signer (Print or Type)<br><br>**Robin Bedford** | Title of Signer (Print or Type)<br><br>**Secretary of the Issuer** | |

---

**ATTENTION**

**Intentional misstatements or omissions of fact constitute federal criminal violations. (See 18 U.S.C. 1001).**

**EXHIBIT 10**

1358324

FORM D

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM D

NOTICE OF SALE OF SECURITIES
PURSUANT TO REGULATION D,
SECTION 4(6), AND/OR
UNIFORM LIMITED OFFERING EXEMPTION

PROCESSED
SEP 1 2 2005
THOMSON
FINANCIAL

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0076 |
| Expires: | May 31, 2005 |
| Estimated average burden hours per form | 1.00 |

| SEC USE ONLY | |
|---|---|
| Prefix | Serial |

Name of Offering ( ☐ check if this is an amendment and name has changed, and indicate change.)
Amaranth Capital Partners LLC (the "Issuer")

05065940

Filing Under (Check box(es) that apply):  ☐ Rule 504  ☐ Rule 505  ☒ Rule 506  ☐ Section 4(6)  ☐ ULOE
Type of Filing:  ☒ New Filing   ☐ Amendment

### A. BASIC IDENTIFICATION DATA

1. Enter the information requested about the issuer

Name of Issuer ( ☐ check if this is an amendment and name has changed, and indicate change.)
Amaranth Capital Partners LLC

| Address of Executive Offices    (Number and Street, City, State, ZIP Code) | Telephone Number (Including Area Code) |
|---|---|
| c/o Amaranth Advisors L.L.C., One American Lane, Greenwich, Connecticut  06831 | 203-422-3300 |
| Address of Principal Business Operations    (Number and Street, City, State, ZIP Code) (if different from Executive Offices)    same as above | Telephone Number (Including Area Code) same as above |

Brief Description of Business    To invest, reinvest and trade in global securities employing a wide range of relative value, event-driven, directional and hybrid and other strategies.

Type of Business Organization
☐ corporation          ☐ limited partnership, already formed          ☒ other (please specify):  Limited Liability Company
☐ business trust       ☐ limited partnership, to be formed

Actual or Estimated Date of Incorporation or Organization:  Month [1][2]  Year [0][0]   ☒ Actual   ☐ Estimated
Jurisdiction of Incorporation or Organization: (Enter two-letter U.S. Postal Service abbreviation for State;
CN for Canada; FN for other foreign jurisdiction) [D][E]

## GENERAL INSTRUCTIONS

**Federal:**
*Who Must File:*  All issuers making an offering of securities in reliance on an exemption under Regulation D or Section 4(6), 17 CFR 230.501 et seq. or 15 U.S.C. 77d(6).

*When to File:*  A notice must be filed no later than 15 days after the first sale of securities in the offering.  A notice is deemed filed with the U.S. Securities and Exchange Commission (SEC) on the earlier of the date it is received by the SEC at the address given below or, if received at that address after the date on which it is due, on the date it was mailed by United States registered or certified mail to that address.

*Where to File:*  U.S. Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549.

*Copies Required:*  Five (5) copies of this notice must be filed with the SEC, one of which must be manually signed.  Any copies not manually signed must be photocopies of the manually signed copy or bear typed or printed signatures.

*Information Required:*  A new filing must contain all information requested.  Amendments need only report the name of the issuer and offering, any changes thereto, the information requested in Part C, and any material changes from the information previously supplied in Parts A and B. Part E and the Appendix need not be filed with the SEC.

*Filing Fee:*  There is no federal filing fee.

**State:**
This notice shall be used to indicate reliance on the Uniform Limited Offering Exemption (ULOE) for sales of securities in those states that have adopted ULOE and that have adopted this form.  Issuers relying on ULOE must file a separate notice with the Securities Administrator in each state where sales are to be, or have been made.  If a state requires the payment of a fee as a precondition to the claim for the exemption, a fee in the proper amount shall accompany this form.  This notice shall be filed in the appropriate states in accordance with state law. The Appendix to the notice constitutes a part of this notice and must be completed.

### ATTENTION
Failure to file notice in the appropriate states will not result in a loss of the federal exemption.  Conversely, failure to file the appropriate federal notice will not result in a loss of an available state exemption unless such exemption is predicated on the filing of a federal notice.

NY1 5758801v.1

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

SEC 1972 (6-02)  1 of 8

## A. BASIC IDENTIFICATION DATA

2.  Enter the information requested for the following:

- Each promoter of the issuer, if the issuer has been organized within the past five years;

- Each beneficial owner having the power to vote or dispose, or direct the vote or disposition of, 10% or more of a class of equity securities of the issuer;

- Each executive officer and director of corporate issuers and of corporate general and managing partners of partnership issuers; and

- Each general and managing partner of partnership issuers.

| Check Box(es) that Apply: | ☒ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☒ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Amaranth Advisors L.L.C. (the "Manager")

Business or Residence Address (Number and Street, City, State, Zip Code)
One American Lane, Greenwich, Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Maounis, Nicholas M.

Business or Residence Address (Number and Street, City, State, Zip Code)
One American Lane, Greenwich, Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Winkler, Charles H.

Business or Residence Address (Number and Street, City, State, Zip Code)
One American Lane, Greenwich, Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☒ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)
Jones, Robert

Business or Residence Address (Number and Street, City, State, Zip Code)
One American Lane, Greenwich, Connecticut 06831

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

| Check Box(es) that Apply: | ☐ Promoter | ☐ Beneficial Owner | ☐ Executive Officer | ☐ Director | ☐ General and/or Managing Partner |
|---|---|---|---|---|---|

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## B. INFORMATION ABOUT OFFERING

|   |   | YES | NO |
|---|---|---|---|
| 1. | Has the issuer sold, or does the issuer intend to sell, to non-accredited investors in this offering? ............................... | ☐ | ☒ |
|   | Answer also in Appendix, Column 2, if filing under ULOE. | | |
| 2. | What is the minimum investment that will be accepted from any individual? ...................................................... | \$5,000,000* | |

\*    Subject to the discretion of the Manager to lower such amount.

|   |   | YES | NO |
|---|---|---|---|
| 3. | Does the offering permit joint ownership of a single unit? | ☒ | ☐ |

4.    Enter the information requested for each person who has been or will be paid or given, directly or indirectly, any commission or similar remuneration for solicitation of purchasers in connection with sales of securities in the offering.  If a person to be listed is an associated person or agent of a broker or dealer registered with the SEC and/or with a state or states, list the name of the broker or dealer.  If more than five (5) persons to be listed are associated persons of such a broker or dealer, you may set forth the information for that broker or dealer only.

Full Name (Last name first, if individual)

Not Applicable

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States) .................................................................................................. ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States) .................................................................................................. ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

Full Name (Last name first, if individual)

Business or Residence Address (Number and Street, City, State, Zip Code)

Name of Associated Broker or Dealer

States in Which Person Listed Has Solicited or Intends to Solicit Purchasers
(Check "All States" or check individual States) .................................................................................................. ☐ All States

| [AL] | [AK] | [AZ] | [AR] | [CA] | [CO] | [CT] | [DE] | [DC] | [FL] | [GA] | [HI] | [ID] |
| [IL] | [IN] | [IA] | [KS] | [KY] | [LA] | [ME] | [MD] | [MA] | [MI] | [MN] | [MS] | [MO] |
| [MT] | [NE] | [NV] | [NH] | [NJ] | [NM] | [NY] | [NC] | [ND] | [OH] | [OK] | [OR] | [PA] |
| [RI] | [SC] | [SD] | [TN] | [TX] | [UT] | [VT] | [VA] | [WA] | [WV] | [WI] | [WY] | [PR] |

(Use blank sheet, or copy and use additional copies of this sheet, as necessary.)

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

1.  Enter the aggregate offering price of securities included in this offering and the total amount already sold. Enter "0" if answer is "none" or "zero." If the transaction is an exchange offering, check this box ☐ and indicate in the columns below the amounts of the securities offered for exchange and already exchanged.

| Type of Security | Aggregate Offering Price | Amount Already Sold |
|---|---|---|
| Debt | $0 | $0 |
| Equity | $0 | $0 |
| ☐ Common   ☐ Preferred | | |
| Convertible Securities (including warrants) | $0 | $0 |
| Partnership Interests | $0 | $0 |
| Other (Specify) Limited Liability Company Interests | $1,000,000,000 | $181,350,184.71 |
| Total | $1,000,000,000 | $181,350,184.71 |

Answer also in Appendix, Column 3, if filing under ULOE.

2.  Enter the number of accredited and non-accredited investors who have purchased securities in this offering and the aggregate dollar amounts of their purchases. For offerings under Rule 504, indicate the number of persons who have purchased securities and the aggregate dollar amount of their purchases on the total lines. Enter "0" if answer is "none" or "zero."

| | Number Investors | Aggregate Dollar Amount of Purchases |
|---|---|---|
| Accredited Investors | 42 | $181,350,184.71 |
| Non-accredited investors | 0 | $0.00 |
| Total (for filings under Rule 504 only) | N/A | $N/A |

Answer also in Appendix, Column 4, if filing under ULOE.

3.  If this filing is for an offering under Rule 504 or 505, enter the information requested for all securities sold by the issuer, to date, in offerings of the types indicated, in the twelve (12) months prior to the first sale of securities in this offering. Classify securities by type listed in Part C - Question 1.

| Type of offering | Type of Security | Dollar Amount Sold |
|---|---|---|
| Rule 505 | N/A | $N/A |
| Regulation A | N/A | $N/A |
| Rule 504 | N/A | $N/A |
| Total | N/A | $N/A |

4.  a.  Furnish a statement of all expenses in connection with the issuance and distribution of the securities in this offering. Exclude amounts relating solely to organization expenses of the issuer. The information may be given as subject to future contingencies. If the amount of an expenditure is not known, furnish an estimate and check the box to the left of the estimate.

| | | |
|---|---|---|
| Transfer Agent's Fees | ☒ | $0 |
| Printing and Engraving Costs | ☒ | $0 |
| Legal Fees | ☒ | $35,000 |
| Accounting Fees | ☒ | $0 |
| Engineering Fees | ☒ | $0 |
| Sales Commissions (specify finders' fees separately) | ☒ | $0 |
| Other Expenses (identify)  filing fees | ☒ | $10,000 |
| Total | ☒ | $45,000 |

(a)  Open-end fund; estimated maximum aggregate offering amount.

## C. OFFERING PRICE, NUMBER OF INVESTORS, EXPENSES AND USE OF PROCEEDS

b.  Enter the difference between the aggregate offering price given in response to Part C - Question 1 and total expenses furnished in response to Part C - Question 4.a. This difference is the "adjusted gross proceed proceeds to the issuer."

$999,955,000

5.      Indicate below the amount of the adjusted gross proceeds to the issuer used or proposed to be used for each of the purposes shown.  If the amount for any purpose is not known, furnish an estimate and check the box to the left of the estimate.   The total of the payments listed must equal the adjusted gross proceeds to the issuer set forth in response to Part C – Question 4.b above.

| | Payments to Officers, Directors, & Affiliates | Payments to Others |
|---|---|---|
| Salaries and fees.............................................................................. | ☒ $0 | ☒ $0 |
| Purchase of real estate...................................................................... | ☒ $0 | ☒ $0 |
| Purchase, rental or leasing and installation of machinery and equipment.............. | ☒ $0 | ☒ $0 |
| Construction or leasing of plant buildings and facilities............................. | ☒ $0 | ☒ $0 |
| Acquisition of other businesses (including the value of securities involved in this offering that may be used in exchange for the assets or securities of another issuer pursuant to a merger) ...... | ☒ $0 | ☒ $0 |
| Repayment of indebtedness ................................................................ | ☒ $0 | ☒ $0 |
| Working capital .............................................................................. | ☒ $0 | ☒ $0 |
| Other (specify):  Portfolio Investments | ☒ $0 | ☒ $999,955,000 |
| | ☒ $0 | ☒ $0 |
| Column Totals .............................................................................. | ☒ $0 | ☒ $999,955,000 |
| Total Payments Listed (column totals added)........................................... | ☒ $999,955,000 | |

## D. FEDERAL SIGNATURE

The issuer has duly caused this notice to be signed by the undersigned duly authorized person.  If this notice if filed under Rule 505, the following signature constitutes an undertaking by the issuer to furnish to the U.S. Securities and Exchange Commission, upon written request of its staff, the information furnished by the issuer to any non-accredited investor pursuant to paragraph (b)(2) of Rule 502.

| Issuer (Print or Type)  Amaranth Capital Partners LLC | Signature | Date  9-1-06 |
|---|---|---|
| Name of Signer (Print or Type)  Nicholas M. Maounis | Title of Signer (Print or Type)  President of Amaranth Advisors L.L.C., as Manager | |

---

### ATTENTION

**Intentional misstatements or omissions of fact constitute federal criminal violations.  (See 18 U.S.C. 1001).**



# EXHIBIT 11

THE INTERESTS HAVE BEEN PRIVATELY OFFERED AND CANNOT
BE TRANSFERRED WITHOUT THE CONSENT OF THE MANAGER
AND COMPLIANCE WITH APPLICABLE SECURITIES
LAW EXEMPTIONS.

# AMARANTH PARTNERS LLC

### FIFTH AMENDED AND RESTATED
### LIMITED LIABILITY COMPANY AGREEMENT

Dated as of January 31, 2006

### AMARANTH ADVISORS L.L.C.
### Manager

SDC01642

**FIFTH AMENDED AND RESTATED**
**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**AMARANTH PARTNERS LLC**

This Fifth Amended and Restated Limited Liability Company Agreement ("<u>Agreement</u>") dated as of January 31, 2006, amends and restates the Fourth Amended and Restated Limited Liability Company Agreement of Amaranth Partners LLC (the "<u>Company</u>") dated as of March 1, 2003, as follows:

## ARTICLE I

### ORGANIZATION

Section 1.1   <u>Name; Manager</u>.  The Company shall continue to do business under the name of "Amaranth Partners LLC." Amaranth Advisors L.L.C. (the "<u>Manager</u>") shall continue to act as the manager of the Company.  The Manager may change the name of the Company from time to time, promptly notifying the Members of any such change.

Section 1.2   <u>Purposes</u>.  The Company may engage, directly and indirectly, in all aspects of investing and trading, as well as otherwise participating as an active or passive investor in other investment entities, operating businesses and/or other business enterprises, including those over which no Manager Party (as defined below) has trading or investing authority.  For the avoidance of doubt but not by way of limitation, no limitation is imposed by this Agreement on the investment or trading activities that the Company may employ, and the Company may:  trade, borrow, lend, invest in and sell "short" all manner of Investment Assets (as defined below); sponsor, manage, own interests in and/or participate in domestic and foreign subsidiaries and/or Persons (as defined below); engage in the business of acting as a market maker, broker or dealer in all manner of Investment Assets and other property (and contract rights relating thereto); and transact all other businesses and activities as may be desirable, necessary, advisable or incidental to the Company's business of investing and trading, as the Manager may determine.

Section 1.3   <u>Principal Office; Registered Office; Registered Agent</u>.  The principal office of the Company shall be at One American Lane, Greenwich, Connecticut 06831 or at any other location as the Manager may designate.  The registered office of the Company shall be at such location, and its registered agent for service of process shall be such entity, as is set forth in the Certificate of Formation.  The Manager may change the principal office, the registered office and/or the registered agent of the Company from time to time, promptly notifying the Members of any such change.

Section 1.4   <u>Term</u>.  The term of the Company shall continue until the Company is dissolved and wound up as provided in **Section 5.1.**

Section 1.5   <u>Members</u>.  The Members (other than the Manager), in their capacity as such, shall have only the powers specifically enumerated in this Agreement and shall not have any

-1-

SDC01646

Investment Assets traded in other time zones (whether or not the markets in one or more of such time zones remain closed or have reopened subsequent to such most recent Close of Business). For purposes of determining the deadline for receipt of Capital Contributions to be effective as of the beginning of a particular Accounting Period under Section 3.1, "Close of Business" shall mean the latest time of day that payments may be credited for value on such day by the Company's designated recipient bank. For purposes of determining the effectiveness of a notice under Section 8.2(e), "Close of Business" shall mean 5:00 P.M., local time, in the location where such notice is delivered.

"Code" shall mean the Internal Revenue Code of 1986.

"Company" shall mean Amaranth Partners LLC, the Delaware limited liability company governed by this Agreement. Unless and to the extent that the context otherwise requires, references to the Company shall include references to the Trading Vehicles (or the Company's interests therein, as the case may be).

"Designated Investment Ceilings." See Section 3.11(f).

"Designated Investment Interest" shall mean, with respect to any Member, the interest in a Designated Investment owned by that Member, including all rights and obligations provided under this Agreement.

"Designated Investments." See Section 3.11(a).

"Designated Trader" shall mean each employee of a Manager Party who is a Portfolio Manager or Trader (in each case, as defined below), determined as follows:

(a) Mr. Nicholas Maounis (or his successor or designee, the "Designating Party") shall designate in writing, at any time and from time to time, one employee as the "Portfolio Manager" for each portfolio or sub-portfolio (as determined by the Designating Party) of the Company for which such employee has the overall investment management responsibility. An employee may be designated as the Portfolio Manager of a portfolio as well as of any one or more sub-portfolios of such portfolio even if another employee has significant investment responsibility for a portion of the capital committed to such portfolio and/or sub-portfolios. The extent to which an investment professional's compensation is based on the performance of one or more specific portfolios, sub-portfolios or positions, and the amount and/or form of such investment professional's compensation, are not determinative of such investment professional's status as a Designated Trader.

(b) The Designating Party shall designate in writing, at any time and from time to time, as "Traders" those employees who devote substantially all of their business time to trade execution, as opposed to performing research (quantitative or fundamental), securities lending or borrowing, treasury, risk management, investor relations or other services, including the execution of purchases and sales of Investment Assets.

"Designating Party." See the definition of "Designated Trader."

-5-

SDC01650

"Withdrawal Reserve" shall mean the reserve that may be established in the case of any Withdrawal to cover expenses anticipated to be incurred in liquidating Investment Assets in order to fund such Withdrawal as well as any such other contingencies as the Manager may determine to be associated with such Withdrawal.

Section 1.7  Rules of Interpretation.

(a)  References to articles and sections shall be to sections of this Agreement unless otherwise specified.

(b)  Article and section headings herein have been inserted for convenience of reference only, are not a part of this Agreement and shall not be used in construing this Agreement.

(c)  Unless, and only to the extent that the context otherwise requires, references to "Interest" and "Capital Contribution" shall include both Annual Liquidity Interests and Annual Liquidity Capital Contributions as well as both Four-Year Liquidity Interests and Four-Year Liquidity Capital Contributions.

(d)  The words "include" and "including" and words of similar import when used in this Agreement shall not be limiting but shall rather be deemed to be followed by the words "without limitation."

(e)  Unless the context of this Agreement otherwise requires (i) words using a singular or plural number also include the plural or singular number, respectively, (ii) the terms "hereof," "herein," "hereby" and any derivative thereof or similar words refer to this entire Agreement, (iii) the masculine gender shall include the feminine and neuter genders, (iv) any reference to a Law, agreement or a document shall be deemed to also refer to any amendment, supplement or replacement thereof, and (v) whenever this Agreement refers to a number of days, such number shall refer to calendar days unless such reference specifies business days.

(f)  Terms defined in this Agreement by reference to any other agreement, document or instrument shall have the meanings assigned to them in such agreement, document or instrument whether or not such agreement, document or instrument is then in effect.

(g)  No provision of this Agreement shall be construed in favor of or against any Person by reason of the extent to which any such Person or its Affiliates, employees or counsel participated in the drafting thereof.

ARTICLE II

MANAGEMENT

Section 2.1  Authority of the Manager.

(a)  The Manager shall have full and complete charge of all affairs of the Company.  The management and control of the Company's business and its assets shall rest exclusively with the Manager.  The Manager shall have all of the rights and powers that can be granted to a manager

-14-

SDC01659

under the Act and as otherwise provided by Law, and any action taken on behalf of the Company or any Member by the Manager shall constitute the act of and bind the Company.

(b)  The Manager shall be required to devote only such business time and resources to the conduct of the business and affairs of the Company as the Manager may deem necessary or advisable.

(c)  For the avoidance of doubt and without limiting the generality of the powers conferred upon it by Section 2.1(a), the Manager is expressly authorized to do the following for or on behalf of the Company: (i) make all investment and trading decisions with respect to the acquisition and disposition (including short sales) of Investment Assets, and all other manner of investments, including exercising any right of the Company with respect to any Investment Asset; (ii) incur all manner of obligations as well as guarantee the obligations of any other Person; (iii) sign contracts, checks, drafts, and other orders for the payment of Company funds; (iv) own, lease, sell, assign, or otherwise dispose of any assets, property and liabilities on terms and conditions as the Manager may determine; (v) open, maintain, and close one or more accounts (including bank, brokerage, margin and clearing accounts) and enter into arrangements to self-clear transactions with financial and commercial institutions (including clearing and depository institutions); (vi) borrow funds, Investment Assets or other property and utilize any other form of financing or leverage on a secured or unsecured, as well as on a segregated or non-segregated, basis and mortgage, pledge, assign, or otherwise hypothecate any one or more of the Company's properties or assets to secure any such borrowing; (vii) hold Investment Assets in nominee or street name; (viii) lend monies, Investment Assets and other assets or otherwise provide any other form of financing or leverage on a secured or unsecured, as well as on a segregated or non-segregated, basis; (ix) negotiate and enter into all manner of derivatives and other investment, financial and risk management instruments (whether or not exchange-traded), as well as registration rights, placement, selling and financing agreements, private placement and securities purchase agreements, shareholders' agreements, structured products, repurchase agreements, reverse repurchase agreements, securities lending and hypothecation agreements, counterparty agreements, and all other forms of investment, financial and commercial agreements, contracts and undertakings; (x) employ or otherwise engage the services of such agents, brokers, Designated Traders, consultants, advisors, employees and other Service Providers as the Manager deems necessary or advisable and cause the Company to pay such compensation, including performance-based and incentive compensation, to the foregoing as the Manager may determine, subject to Section 2.5(h) and Section 6.1(a)(iii); (xi) commence or defend any litigation involving the Company or the Manager, including a voluntary case under Bankruptcy Law on behalf of the Company, retain legal counsel in connection therewith, and pay from the assets of the Company any and all liabilities and expenses (including attorneys', investigators' and consultants' fees and expenses) incurred in connection therewith; (xii) compromise, settle and/or accept judgments with respect to any claims made by or against the Company; (xiii) obtain, at the Company's expense, insurance for the Company and the Manager Parties; (xiv) enter into, organize, contribute assets to, participate in or otherwise deal with the organization of, and invest in, Trading Vehicles and other Persons (including any other Person in which any Manager Party or Manager Client has an economic interest as an owner, participant or service provider); (xv) register the Company and/or one or more Trading Vehicles (A) as a "broker-dealer" with the Securities and Exchange Commission as well as cause the Company and/or such Trading Vehicle(s) to become members of a national securities exchange, of the

-15-

SDC01660

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

MANAGER

AMARANTH ADVISORS L.L.C.


By: /s/Nicholas M. Maounis
    Name: Nicholas M. Maounis
    Title: President


THE MEMBERS
By: Amaranth Advisors L.L.C.
    Attorney-in-fact


By: /s/Nicholas M. Maounis
    Name: Nicholas M. Maounis
    Title: President

SDC01725

# EXHIBIT 12

BN          Amaranth Founder Maounis to Start New Multistrategy Hedge Fund
            May 10 2008  0:01:00


By Katherine Burton
     May 10 (Bloomberg) -- Nicholas Maounis, the hedge-fund
manager whose Amaranth Advisors LLC collapsed under a record
$6.6 billion loss in 2006, is seeking to start a new firm,
according to a note sent yesterday to his former investors.
     ``Many of you have inquired as to my future plans,''
Maounis wrote. ``I welcome the opportunity to speak with you
personally about my new venture.''
     Maounis plans to open Greenwich, Connecticut-based Verition
Fund Management LLC later this year with more than $200 million,
according to two former investors briefed on the venture.
Clients with money in Amaranth when it shut down won't pay
incentive fees for three years, said the investors, who asked
not to be identified because the fund is private. While the fund
won't charge a management fee, all investors will pay the fund's
expenses.
     Verition, derived from the Latin word for truth, will start
with three strategies: quantitative, which uses computer models
to pick trades; bonds and loans; and special situations,
focusing on convertible bonds issued by companies going through
corporate events such as mergers. Maounis declined to comment.
     Maounis, 44, a former convertible-bond trader, opened
Greenwich-based Amaranth in September 2000 with $600 million.
His goal was to build a firm like Kenneth Griffin's $20 billion
Citadel Investment Group LLC in Chicago, which uses multiple
strategies to trade securities including stocks, bonds,
currencies and commodities. By August 2006, Amaranth's assets
had climbed to about $9.5 billion.


                         Brian Hunter


     In September of that year, bets on natural gas made by
trader Brian Hunter lost about $4.6 billion in one week. By
month's end, the losses had risen to $6.6 billion, the most ever
by a hedge fund, resulting in a 60 percent loss for 2006.
Amaranth investors have received 93 percent of their remaining
money back, the note said.
     Hedge funds, private investment pools, typically charge 2
percent of assets as a management fee and 20 percent of any
profits as an incentive fee.
     Hunter started Solengo Capital Advisors six months after
Amaranth's collapse. The assets were acquired last year by Peak
Ridge Capital Group Inc., a Boston-based private-equity firm,
which hired Hunter to advise its commodity fund. Peak Ridge
Commodity Volatility Fund gained 49 percent in the first
quarter, two investors said last month.

*T
For related news:
For top hedge fund stories: {TNI WWTOP HEDGE <GO>}
For stories on Amaranth: {299516Z US <Equity> CN <GO>}
                    **Bloomberg** - Your definitive source
          If you need help on the BLOOMBERG press the HELP key twice
                     Copyright (c) 2008, Bloomberg, L. P.

```
BN          Amaranth Founder Maounis to Start New Multistrategy Hedge Fund
            May 10 2008  0:01:00
For stories on managers in the news: {TNI WNEWS HEDGE <GO>}

--Editors: Larry Edelman, Matthew Keenan

To contact the reporter on this story:
Katherine Burton in New York at +1-212-617-2335 or
kburton@bloomberg.net

To contact the editor responsible for this story:
Larry Edelman at +1-617-210-4621 or
ledelman3@bloomberg.net
```

**Bloomberg** - Your definitive source
If you need help on the BLOOMBERG press the HELP key twice
Copyright (c) 2008, Bloomberg, L. P.

# EXHIBIT 13

**JPMorgan**

## AMARANTH LLC

### Client Agreement

**JPMorgan**

## Client Agreement

This agreement, dated as of July 8, 2004 (the "Agreement"), supersedes and replaces the Client Agreement dated as of December 11, 2002 between the parties hereto. In consideration of acceptance by J.P. Morgan Futures Inc. ("JPMFI") of an account in the name of Amaranth LLC ("Client") JPMFI and Client agree as follows:

### 1.    Authorization

Client authorizes JPMFI to clear, settle, purchase and sell on behalf of Client, futures contracts, options or any other contracts (either listed or over the counter ("OTC") that convert to an exchange traded product) or instruments in which Client has requested and JPMFI has notified Client that JPMFI is prepared to conduct business. This contract shall include OTC transactions executed through the Intercontinental Exchange In. ("ICE") and cleared by LCH, as well as other transactions including, without limitation products offered by JPMFI, those that are cleared at the NYMEX.

### 2.    Charges

Client shall pay to JPMFI: (a) brokerage and commission charges as agreed upon between Client and JPMFI which may be increased by JPMFI with thirty (30) days prior written notice to Client except where an increase is due to an increase in exchange fees; (b) premiums on any option purchased by JPMFI on behalf of Client; (c) any fees, fines, penalties or other charges imposed by any exchange, clearing organization, governmental agency, self-regulatory organization, or any court of competent jurisdiction on any account opened or transaction executed for Client, except any such charges as may be imposed due to the negligence or willful misconduct of JPMFI, and any tax imposed on any such transaction by any competent authority; (d) the amount of any trading loss that may result from transactions executed by JPMFI on behalf of Client provided that there is no negligence or willful misconduct on the part of JPMFI; (e) interest and service charges on any deficit balances in Client's account with JPMFI at the rates charged by JPMFI, as agreed between JPMFI and Client, which may be increased by JPMFI with thirty (30) days prior written notice to Client ; and (f) any applicable taxes on any of the foregoing.

Such payments shall be made to JPMFI at JPMFI's office at 270 Park Avenue, New York, NY 10017 or at such other place and at such time and in such manner as JPMFI shall notify Client, or by deduction from any funds held by JPMFI on behalf of Client.

### 3.    Acknowledgments and Understandings

Client understands and acknowledges that:

(a) Any trading recommendations and market or other information communicated to Client by JPMFI are incidental to the provision of services by JPMFI to Client under this Agreement and do not constitute an offer to sell or the solicitation of an offer to buy any futures contracts or options or any commodity underlying any futures contracts or options. Such recommendations and information, although based upon information obtained from sources believed by JPMFI to be reliable, may be incomplete, may not have been verified and may be changed without notice to Client. JPMFI makes no representation, warranty or guarantee as to the accuracy or completeness of any market or other information or trading recommendations furnished to Client or as to the tax consequences of Client's transactions.

(b) JPMFI is a separate and independent corporate entity, distinct from its affiliates (as defined in Section 4(a) of this Agreement). JPMFI shall be free to purchase and sell futures contracts and options

- 2 -

**JPMorgan**

orders and commitments made by JPMFI on Client's behalf. Without prejudice to the foregoing, JPMFI shall have (to the greatest extent permitted by applicable law) all of the rights of a secured party with respect to the property referred to above, and any rights, powers and remedies provided herein shall operate as a variation and extension of any statutory power of sale, application or realization available to JPMFI as a secured party.

Any such liquidation, sale, purchase and/or cancellation may be made at JPMFI's discretion on any exchange or other market or through any clearing organization where such business is transacted, at public auction or at private sale, upon prior notice to Client if reasonable under the circumstances and Client may participate in such sale if applicable, without advertising the same and without prior tender, demand or call upon Client. No prior tender, demand or call from JPMFI of the time and place of such liquidation, sale, purchase and/or cancellation shall be deemed to be a waiver of JPMFI's right to liquidate, sell, purchase and/or cancel as provided herein.

In any transaction described above, JPMFI may sell any property to itself or its affiliates or buy any property from itself or its affiliates. JPMFI may, to the extent permitted by law, purchase the whole or any part thereof free from any right of redemption. In all cases, Client shall remain liable for, and shall pay to JPMFI the amount of, any deficiency in Client's accounts with JPMFI resulting from any transaction described herein above provided that there is no negligence or willful misconduct on the part of JPMFI.

Without triggering an event of default hereunder, upon the occurrence of any of the following events, JPMFI may terminate this Agreement without providing thirty (30) days notice, and accelerate all obligations hereunder, and take such actions as to reduce JPMFI's exposure to Client to zero and without prejudice to JPMFI's ability to exercise in whole or part any of its rights under this Section if: (aa) during any calendar month, the total NAV of the Client declines 20% or more from the total NAV as of immediately preceding calendar month-end; (bb) the NAV of the Client (exclusive of shareholder withdrawals or redemptions) declines 10% or more from the NAV as of immediately preceding calendar month-end; (cc) during any consecutive 12-month period, the total NAV of the Client declines 30% or more from the total NAV as of the beginning of such period; (dd) the Client shall cease to be controlled be its trading Manager, Amaranth Advisors, L.L.C. or an entity controlled by Mr. Nicholas M. Maounis or if Mr. Nicholas M. Maounis ceases to be actively involved in the day-to-day management of the Client.

## 10.  Delivery

If, at any time, Client fails to deliver to JPMFI any property previously sold by JPMFI on Client's behalf, fails to deliver any property in compliance with any contract or in case JPMFI shall be required (whether by reasons of the requirements of any exchange, clearing organization or otherwise) to replace any property theretofore delivered by JPMFI for Client's account with other property of like or equivalent kind or amount, Client authorizes JPMFI in JPMFI's discretion to borrow or to buy any property necessary to make delivery thereof or to replace any such property previously delivered and deliver the same to such purchaser or other party to whom delivery is to be made and JPMFI may subsequently repay the loan thereof with securities purchased or otherwise acquired for Client's account, and Client shall pay JPMFI for any cost, loss and damages which JPMFI may be required to pay thereon and for any cost, loss and damages (including direct costs, losses, penalties, fines and damages) which JPMFI may sustain from JPMFI's inability to borrow or buy any such property.

## 11.  Foreign Currency Transactions

In the event that JPMFI agrees on behalf of Client to enter into any contract on an exchange on which transactions are effected in a currency ("foreign currency") other than the currency provided to JPMFI

-6-

# EXHIBIT 14

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Amaranth LLC · SC 13D · Counsel Corp · On 1/8/04

**Filed On 1/8/04 5:21pm ET · SEC File 5-48086 · Accession Number 1013594-4-8**

Find    in this entire Filing.   Show Docs searched   and every "hit".

Help...   *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On Docs:Pgs | Issuer | Agent |
|-------|-------|--------|--------------------|--------|-------|
| 1/08/04 | Amaranth LLC | SC 13D | 1:9 | Counsel Corp | Kleinberg Kaplan Wo..P C |

---

### General Statement of Beneficial Ownership · Schedule 13D
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: SC 13D | January 8, 2004 | 9 | 33K |

---

### Document Table of Contents

| Page | (sequential) | | (alphabetic) | Top |
|------|-------------|---|-------------|-----|
| 1 | 1st Page | | • Alternative Formats (RTF, XML, et al.) | |
| " | Common Stock | | • Common Stock | |
| 4 | Item 1. Security and Issuer | | • Contracts, Arrangements, Understandings or Relationships With Respect to Securities of the Issuer | |
| " | Item 2. Identity and Background | | • Identity and Background | |
| 5 | Item 3. Source and Amount of Funds or Other Consideration | | • Interest in Securities of the Issuer | |
| " | Item 4. Purpose of Transaction | | • Material to be Filed as Exhibits | |
| 7 | Item 5. Interest in Securities of the Issuer | | • Purpose of Transaction | |
| " | Item 6. Contracts, Arrangements, Understandings or Relationships With Respect to Securities of the Issuer | | • Security and Issuer | |
| " | Item 7. Material to be Filed as Exhibits | | • Source and Amount of Funds or Other Consideration | |

**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**SCHEDULE 13D**
(Rule 13d-101)

**INFORMATION TO BE INCLUDED IN STATEMENTS FILED PURSUANT TO**
RULE 13d-1(a) AND AMENDMENTS THERETO FILED PURSUANT TO RULE 13d-2(a)

(Amendment No. )*

Counsel Corporation
(Name of Issuer)

**Common Stock**
(Title of Class of Securities)

22226R102
(CUSIP Number)

Karl Wachter, Esq.
1 American Lane
Greenwich, Connecticut 06831
Tel: (203) 422-3340
(Name, Address and Telephone Number of Person Authorized
to Receive Notices and Communications)

January 02, 2004
(Date of Event which Requires Filing of this Statement)

   If the filing person has previously filed a statement on Schedule 13G to
report the acquisition which is the subject of this Schedule 13D, and is filing
this schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the
following box [ ].

   Note: Schedules filed in paper format shall include a signed original and
five copies of the schedule, including all exhibits. See Rule 13d-7(b) for other
parties to whom copies are to be sent.

   *The remainder of this cover page shall be filled out for a reporting
person's initial filing on this form with respect to the subject class of
securities, and for any subsequent amendment containing information which would
alter disclosures provided in a prior cover page.

   The information required on the remainder of this cover page shall not be
deemed to be "filed" for the purpose of Section 18 of the Securities Exchange
Act of 1934 ("Act") or otherwise subject to the liabilities of that section of
the Act but shall be subject to all other provisions of the Act (however, see
the Notes).

1. NAME OF REPORTING PERSONS
   I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)
   Amaranth LLC

2. CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
   (a) [ ]
   (b) [x]

3. SEC USE ONLY

4. SOURCE OF FUNDS*
   WC

5. CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS
   REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)    [ ]

6. CITIZENSHIP OR PLACE OF ORGANIZATION
   Cayman Islands

NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH

7. SOLE VOTING POWER
   0

8. SHARED VOTING POWER
   8,576,834

9. SOLE DISPOSITIVE POWER
   0

10. SHARED DISPOSITIVE POWER
    8,576,834

11. AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH
    REPORTING PERSON
    8,576,834

12. CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11)
    EXCLUDES CERTAIN SHARES*    [ ]

13. PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
    17.7%

14. TYPE OF REPORTING PERSON*
    OO

*SEE INSTRUCTIONS BEFORE FILLING OUT!

1.   NAME OF REPORTING PERSONS
     I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)
          Nicholas M. Maounis

2.   CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
     (a) [ ]
     (b) [x]

3.   SEC USE ONLY

4.   SOURCE OF FUNDS*
          OO

5.   CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
     PURSUANT TO ITEMS 2(d) or 2(e) [ ]

6.   CITIZENSHIP OR PLACE OF ORGANIZATION
          United States

NUMBER OF SHARES BENEFICIALLY OWNED BY EACH
REPORTING PERSON WITH

7.   SOLE VOTING POWER
          0

8.   SHARED VOTING POWER
          8,576,834

9.   SOLE DISPOSITIVE POWER
          0

10.  SHARED DISPOSITIVE POWER
          8,576,834

11.  AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH
     REPORTING PERSON
          8,576,834

12.  CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11)
     EXCLUDES CERTAIN SHARES*          [ ]

13.  PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
          17.7%

14.  TYPE OF REPORTING PERSON*
          IN

               *SEE INSTRUCTIONS BEFORE FILLING OUT!

**ITEM 1.  Security and Issuer.**

This statement relates to the common shares, without par value (*"Common Stock"*) of Counsel Corporation (the *"Issuer"*). The Issuer's principal executive office is located at The Exchange Tower, Suite 1300, 130 King Street West, Toronto, Ontario M5X 1E3.

**ITEM 2.  Identity and Background.**

(a)-(c) and (f) The names of the persons filing this statement on Schedule 13D (the *"Reporting Persons"*) are:

- Amaranth LLC, a Cayman Islands exempted company (*"Amaranth"*), which prior to December 31, 2001 existed as Amaranth L.L.C., a Delaware limited liability company. Amaranth Advisors L.L.C., a Delaware limited liability company, is the trading advisor for Amaranth. Amaranth Advisors (Canada) ULC, a Nova Scotia unlimited liability company (*"Amaranth Advisors (Canada)"*), provides investment management services to Amaranth with respect to the shares of Common Stock owned by Amaranth. Amaranth holds the shares of Common Stock beneficially owned by it.

- Nicholas M. Maounis, an individual and a citizen of the United States (*"Maounis"*). Maounis may be deemed to beneficially own the shares of Common Stock held by Amaranth as a result of being the managing member of Amaranth Advisors L.L.C.

The business address of Amaranth, Amaranth Advisors L.L.C. and Mr. Maounis is One American Lane, Greenwich, Connecticut 06831.

The business address of Amaranth Advisors (Canada) is Canada Trust Tower, BCE Place, Suite 3160, PO Box 216, 161 Bay Street, Toronto, Ontario M5J 2S1.

The principal business of Amaranth is that of a private investment fund engaged in the purchase and sale of securities for its own account.

The principal business of Amaranth Advisors L.L.C. is serving as the trading advisor for Amaranth and other private investment funds.

The principal business of Amaranth Advisors (Canada) is providing investment management services.

The principal business of Mr. Maounis is serving as the managing member of Amaranth Advisors L.L.C.

(d) During the last five years, none of the Reporting Persons has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(e) During the last five years, none of the Reporting Persons has been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

### ITEM 3. Source and Amount of Funds or Other Consideration.

The source and amount of funds used by Amaranth in making its purchases of the shares of Common Stock beneficially owned by the Reporting Persons are set forth below:

| SOURCE OF FUNDS | AMOUNT OF FUNDS |
|---|---|
| Working Capital | $7,704,974.60 |

### ITEM 4. Purpose of Transaction.

With respect to their beneficial ownership of the Common Stock, the Reporting Persons previously filed jointly with Paloma International L.P., a Delaware limited partnership ("Paloma"), and S. Donald Sussman, a citizen of the United States. The Reporting Persons, Paloma and Mr. Sussman jointly filed a Schedule 13D on September 19, 2003, as amended October 1, 2003, as further amended November 12, 2003 (collectively, the "Joint Schedule 13D Filing"). As of January 8, 2004, the Reporting Persons ceased to file jointly with Paloma and Mr. Sussman.

Additionally, on January 2, 2004, Amaranth agreed to purchase from Sunrise Partners Limited Partnership ("Sunrise"), a subsidiary of Paloma, all 6,868,561 shares of Common Stock beneficially owned by Sunrise. Completion of this purchase is subject to certain closing conditions, including the satisfaction of certain regulatory requirements.

The Reporting Persons currently hold their shares of Common Stock for investment purposes only. The Reporting Persons reserve the right to reconsider their investment intentions with respect to the Issuer and may determine, either alone or together with other holders of Common Stock, to exercise the voting rights attached to those shares for the purpose of influencing the control or direction of the Issuer. Depending upon market conditions, the actions taken by the Issuer and other factors that they may deem material, the Reporting Persons may purchase additional shares of Common Stock or other related securities or may dispose of all or a portion of the shares of Common Stock or other related securities that they now beneficially own or may hereafter acquire, and may enter into hedging transactions related to its investment in those securities.

The Reporting Persons previously reported in the Joint Schedule 13D Filing that they each beneficially owned 6% Convertible Unsecured Subordinated Debentures due October 31, 2003 (the *"Debentures"*) issued by the Issuer, which were convertible into shares of Common Stock. The Reporting Persons also previously reported in the Joint Schedule 13D Filing that they had been informed that the Issuer intended to satisfy its obligation to pay the aggregate principal amount payable to the holders of the Debentures on October 31, 2003 by electing to use a right under the trust indenture governing the Debentures to pay the Debentures in Common Stock (the *"Issuer Payment Election"*). The Issuer had indicated that it would satisfy its obligation to pay the principal amount of the Debentures at maturity by delivering 690 shares of Common Stock for each US$1,000 principal amount of Debentures.

On October 31, 2003, the maturity date of the Debentures, the Issuer purported to satisfy its obligation to pay the principal amount of the Debentures at maturity by delivering 690 shares of Common Stock for each US$1,000 principal amount of Debentures.

The information disclosed above (and in the Joint Schedule 13D Filing) with respect to the Issuer Payment Election was provided to the Reporting Persons through a press release by the Issuer on September 9, 2003, the date used by the Reporting Persons as the Event Date of the initial filing of the Joint Schedule 13D Filing. However, the Reporting Persons' use of the September 9, 2003 Event Date in the initial Joint Schedule 13D Filing was without prejudice, since the Reporting Persons did not (and still do not yet) have all of the facts with respect to the Issuer's compliance with the conditions to make the above mentioned payment election.

On September 29, 2003, Amaranth commenced litigation in Ontario, Canada (the "*Litigation*") against the Issuer seeking an order invalidating the share payment notice purportedly delivered to the Debenture holders by the Issuer on September 9, 2003, in connection with the Issuer Payment Election, as well as its legal costs incurred in connection with the Litigation. On October 28, 2003, the Ontario court ruled that Amaranth did not have standing to pursue the Litigation against the Issuer. Amaranth is currently appealing that ruling.

**ITEM 5.  Interest in Securities of the Issuer.**

(a) Amaranth beneficially owns 8,576,834 shares of Common Stock, which represent 17.7% of all of the outstanding shares of Common Stock.

Maounis may be deemed to beneficially own the shares of Common Stock held by Amaranth as a result of being the managing member of Amaranth Advisors L.L.C.

(b) Mr. Maounis has shared power with Amaranth to vote or direct the vote of, and to dispose or direct the disposition of, the shares of Common Stock beneficially owned by Amaranth.

(c) The following transactions were effected by the Reporting Persons since the most recent filing on Schedule 13D:

In a privately negotiated transaction, on January 02, 2004 Amaranth agreed to purchase the 6,868,561 shares of Common Stock owned by Sunrise, a subsidiary of Paloma. This purchase is subject to certain closing conditions including the satisfaction of certain regulatory requirements in Canada. The shares are to be sold at a price of $1.08 per share.

(d) Not applicable.

(e) Not applicable.

**ITEM 6.  Contracts, Arrangements, Understandings or Relationships With Respect to Securities of the Issuer.**

Not applicable.

**ITEM 7.  Material to be Filed as Exhibits.**

Exhibit A - Joint Filing Agreement

**Dates Referenced Herein** *and* **Documents Incorporated By Reference**

| This SC 13D Filing | Date | Referenced On Page | | Other Filings |
|---|---|---|---|---|
| | | First | Last | |
| | 9/9/03 | 6 | 7 | |
| | 9/19/03 | 5 | | SC 13D |
| | 9/29/03 | 7 | | |
| | 10/1/03 | 5 | | SC 13D/A |
| | 10/28/03 | 7 | | |
| | 10/31/03 | 6 | | 4, 3 |
| | 11/12/03 | 5 | | SC 13G/A, SC 13D/A |
| | 12/31/03 | 4 | | 3, 13F-NT, 20-F |
| | 1/2/04 | 1 | 7 | 4 |
| Filed On / Filed As Of | 1/8/04 | 5 | 9 | 4, SC 13D/A |

Top                                                                                         List All Filings

Filing Submission  -  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

*Copyright © 2008 Fran Finnegan & Company All Rights Reserved.*
*www.secinfo.com - Wed, 2 Jul 2008 23:16:08.1 GMT - Privacy - Help*

**EXHIBIT A**

**JOINT FILING AGREEMENT**

    The undersigned hereby agree that the statement on Schedule 13D with respect to the Common Stock of Counsel Corporation dated January 8, 2004, is, and any further amendments thereto signed by each of the undersigned shall be, filed on behalf of each of the undersigned pursuant to and in accordance with the provisions of Rule 13d-1(f) under the Securities Exchange Act of 1934, as amended.

Dated:  January 8, 2004

            AMARANTH LLC
            By: Amaranth Advisors L.L.C.,
               as Trading Advisor

              By: /s/ Nicholas M. Maounis
                  -----------------------
                  Nicholas M. Maounis
                  President

            /s/ Nicholas M. Maounis
            -----------------------
            Nicholas M. Maounis

**SIGNATURES**

After reasonable inquiry and to the best of its knowledge and belief, the undersigned each certifies that the information with respect to it set forth in this statement is true, complete and correct.

Dated:  January 8, 2004

AMARANTH LLC
By: *Amaranth Advisors L.L.C.*,
     as Trading Advisor

By: /s/ *Nicholas M. Maounis*
     ------------------------
          Nicholas M. Maounis
          President

/s/ *Nicholas M. Maounis*
------------------------
     Nicholas M. Maounis