## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION | ) <br> ) <br> ) |
| | ) |
| This Document Relates To: | ) MASTER FILE NO. <br> ) 07 CIV. 6377 (SAS) |
| ALL ACTIONS. | ) <br> ) **ECF Case** |
| | ) <br> ) <br> ) <br> ) |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF DEFENDANTS AMARANTH LLC, AMARANTH INTERNATIONAL LIMITED, AMARANTH CAPITAL PARTNERS LLC, AND AMARANTH PARTNERS LLC TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT

Amelia T.R. Starr (AS 2286)
Sheldon L. Pollock (SP 8696)
Dharma B. Frederick (DF 1821)
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 450-3800

*Counsel to Amaranth LLC*

Herbert S. Washer (HW 2375)
Adam S. Hakki (AH 3561)
Kirsten N. Cunha (KC 0283)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Tel: (212) 848-4000
Fax: (212) 848-7179

*Counsel to Amaranth International Limited*

Dated: July 14, 2008

# TABLE OF CONTENTS

PAGE

I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR MANIPULATION
     (COUNT I) ................................................................................................................ 1

     A.   The Direct Market Manipulation Claim Against the Master Fund Fails .... 3

     B.   The Direct Market Manipulation Claim Against the Feeder Funds Fails ... 4

II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING,
     VICARIOUS LIABILITY, OR CONTROL PERSON LIABILITY
     (COUNT II) .............................................................................................................. 5

     A.   Plaintiffs' Aiding and Abetting Claim Fails ............................................... 5

     B.   Plaintiffs' Vicarious Liability Claim Fails .................................................. 5

     C.   There is No Private Right of Action for Controlling Person Liability ....... 7

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT V) .............. 7

**CONCLUSION** ................................................................................................................... 8

Plaintiffs' opposition ("Opposition" or "Opp.") to the Passive Investment Funds'

Memorandum of Law in Support of their Motions to Dismiss ("Motion" or "Mot.") cannot

disguise the central flaw in the Complaint—that Plaintiffs have not alleged facts that support

their claims against the Passive Investment Funds (or the "Funds").[1]  The Second Circuit

requires a complaint to contain "enough facts to 'nudge [plaintiffs'] claims across the line from

conceivable to plausible.'" Transhorn, Ltd. v. United Techs. Corp., 502 F.3d 47, 50 (2d Cir.

2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  As set forth below

and in the Motion, Plaintiffs have not come close to meeting that requirement with respect to the

Passive Investment Funds, and the Complaint should therefore be dismissed with prejudice.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR MANIPULATION (COUNT I).

The Complaint fails to allege facts sufficient to state a direct manipulation claim, as

demonstrated in the Funds' Motion.[2]  (Mot. 10-13.)  Recognizing this insoluble problem,

Plaintiffs make belated efforts to salvage their claims with new factual allegations[3] and new legal

---

[1] This reply brief is submitted on behalf of all the Passive Investment Funds named as defendants in the Complaint. (Mot. 1 & n.3.)

[2] Plaintiffs' CEA manipulation claim against the Funds is subject to Federal Rule of Civil Procedure 9(b). (Mot. 5-6.)  Indeed, the Opposition underscores the fact that Plaintiffs have alleged a theory of liability in this case that is premised on fraud.  Plaintiffs allege that the Passive Investment Funds and others manipulated the market through "lies to the NYMEX which covered up" their alleged trading misconduct. (Id. at 2.)  The Funds allegedly "made misleading statements to the NYMEX in order to prolong Amaranth's market dominance." (Id. at 40.)  Plaintiffs further characterize the corporate structure adopted by the Passive Investment Funds as "shell company set-ups" (id. at 13), meant to deceive the regulators and markets by preserving a façade of a legal distinctiveness. (Id. at 5.)

[3] Plaintiffs submit a self-serving declaration alleging that the Master Fund "implemented . . . Amaranth's investing and trading strategies" (Declaration of Vincent Briganti, Esq. ("Briganti Decl.") ¶ 16), and also state in their Opposition that the Master Fund "continued to exercise full control over all trading matters during the Class Period." (Opp. 14 n.7 (citing

theories. These efforts are futile.

A further symptom of this same problem is Plaintiffs' decision to ignore arguments raised by the Funds on issues ranging from challenges to Plaintiffs' standing to their right to bring a private action under certain CEA provisions. As a result, these arguments are conceded and the underlying claims must be dismissed. See S.D.N.Y. Local Civ. R. 7.1(a) ("[A]ll motions and oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied on in . . . opposition to the motion.") (emphasis added); Broad v. DKP Corp., 97 Civ. 2029, 1998 U.S. Dist. LEXIS 12942, *6 (S.D.N.Y. Aug. 19, 1998).[4]

All of these pleading failures and de facto concessions are unsurprising when viewed in context. The CFTC had an opportunity to bring an action against the Funds, with the additional advantage of being able to assert theories of liability under the CEA unavailable to private plaintiffs. Although the CFTC sued the trading adviser and another individual in connection with the same trading at issue in this matter, it opted not to bring in its action against the Funds. (Mot. 1-2.) The CFTC's decision not to pursue the Funds, and not to assert certain claims such as Sections 6(c), 6(d)[5] or 13(b), available only to the CFTC, is consistent with the precedent

_____

September 9, 2006 Agreement between Amaranth LLC and JP Morgan Chase Bank, N.A., a document not referenced in the Complaint and not attached to the Opposition).) These allegations cannot be considered. They are not included, and, in fact, are contradicted by the Complaint, which states that Advisors "was the entity that directed the investments and employed the natural gas traders." (Compl. ¶ 22 (emphasis added).) See Automated Salvage Transp. v. Wheelabrator Envtl. Sys., 155 F.3d 59, 67 (2d Cir. 1998) (on a motion to dismiss, consideration "is limited to facts stated on the face of the complaint and in documents appended to [or incorporated in] the complaint").

[4] The Funds assert that Plaintiffs lack standing to press a claim based on manipulation of settlement prices. (Mot. 10.) The Funds join Advisors' Reply brief on this point in its entirety. Advisors' Reply Memorandum ("Advisors' Reply") at 1.

[5] Plaintiffs do not address the Funds' argument that there is no private right of action under CEA Sections 6(c) and 6(d). (Mot. 9 n.9.) Therefore, this argument is conceded.

2

rejecting liability for passive investment funds (Id. at 17). Plaintiffs' expansive view of liability
here was not adopted by the CFTC, has been rejected by regulators and courts, and should also
be rejected in the instant case.

## A.   The Direct Market Manipulation Claim Against the Master Fund Fails

Plaintiffs' direct manipulation claim against the Master Fund fails. Plaintiffs concede
that the Master Fund is nothing more than a passive investment pool that did not perform any
trading. (Compl. ¶¶ 23, 63, 245.) It delegated all trading decisions to the Advisor. Thus, it
cannot be held liable for directly manipulating the market. (Mot. 10-13.)

Plaintiffs try to avoid this undisputed fact by relying upon Kohen v. Pac. Inv. Mgmt. Co.
LLC, 244 F.R.D. 469 (N.D. Ill 2007), but that effort is unavailing.[6]  In Kohen, plaintiffs alleged
that the mutual funds were not independent; rather, they were "controlled" and "managed" by the
trading adviser. Id. at 481. In contrast, Plaintiffs have alleged exactly the opposite relationship:
that the Master Fund controls the trading adviser.[7] (Compl. ¶¶ 23, 26, 27, 255.) Per Plaintiffs'
own allegations, a direct manipulation claim is not cognizable because the trading adviser's
intent cannot be imputed to the Master Fund. Rather, to survive, Plaintiffs must allege that the
Master Fund willfully caused the artificial price. See Kohen, 244 F.R.D. at 481. This they have
not done. Serving as a nominal repository for assets and receiving a letter is not enough to infer
that the Master Fund was aware of or caused manipulative trading (Mot. 5, 11-13), particularly

---

[6] "Other important decisions" (Opp. 42 n.35) cited by Plaintiffs are equally inapposite
because they stand for a proposition not relevant here: that fund entities may be held liable where
the trading adviser owns or controls the fund entities. See, e.g., SEC v. Haligiannis, 470 F. Supp.
2d 373, 378-79 (S.D.N.Y. 2007); Trial Motion, Memorandum and Affidavit, S.E.C. v. Credit
First Fund, LP, 2005 WL 5714987, No. CV05-8741-DSF (C.D. Cal. Dec. 15, 2005).

[7] Although the Plaintiffs include a catch-all argument that every defendant was both a
controlling person and controlled by every other defendant (Compl. ¶¶ 238-39), the thrust of
their argument is that the Funds were principals and Advisors their agent. (Id. ¶ 23.)

given Plaintiffs' concession that the Funds were uninvolved in trading decisions. (Compl. ¶ 22.)

This is consistent with decisional law in the Second Circuit that a defendant cannot be held liable for direct violation of the CEA unless it acted to manipulate the markets. See In re Natural Gas Commodity Litig., 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) (plaintiffs "must specify what manipulative acts were performed [and] which defendants performed them" among other facts).[8] To the extent that Kohen implies the contrary, it cannot be relied upon.

**B. The Direct Market Manipulation Claim Against the Feeder Funds Fails**

Plaintiffs do not have standing to allege a direct manipulation claim against the Feeder Funds because they have alleged none of the four requisite relationships under Section 22. (Mot. 8-9.) Plaintiffs concede this point but suggest that, because the Feeder Funds "worked in concert and [were] a common enterprise" with other Defendants, who allegedly satisfy Section 22, the Feeders also satisfy this condition. (Opp. 47.) However, the CEA requires each Defendant to have one of the four enumerated relationships. 7 U.S.C. § 25(a)(1); (Mot. 8).

Even assuming that Plaintiffs survived the standing hurdle, they do not articulate a credible direct manipulation argument. Instead, they resort to the circular observation that because all "Amaranth Defendants" (which include the Feeder Funds) "acted in concert," the Feeder Funds "acted together" to share in the manipulation. (Opp. 46.) This violates both Rule 8 and Rule 9(b).[9] Plaintiffs' only other argument, that Maounis' manipulative intent can be

---

[8] The Kohen court failed to apply Rule 9(b). Kohen, 244 F.R.D. at 481. In the Second Circuit, Rule 9(b) applies to CEA market manipulation claims. (Mot. 6.)

[9] Plaintiffs cite CEA Section 13(a), 7 U.S.C. § 13c(a), for the first time, to support the contention that they need not establish specific intent to manipulate the market. (Opp. 46.) However, Plaintiffs did not allege violations in their Complaint based on Section 13(a), and cannot now seek to recover under such theory. In any event, Section 13(a) does not create a private judicial right action. See In re Lake States Commodities, Inc., 936 F. Supp. 1461, 1467 (N.D. Ill. 1996) (finding no private right of action under Section 13(a), which is meant to "empower the CFTC, the public agency entrusted with enforcing the CEA" to act).

4

imputed to the Funds (Compl. ¶ 29), fails because Plaintiffs allege <u>no</u> facts to support this "veil piercing" theory. (Mot. 20; Advisors' Reply at 7.)

Indeed, Plaintiffs' attempt to cast the structure of all the Funds as indicative of manipulative activity fails. Almost every investment pool, from the most complicated hedge funds to the mutual funds held in an investor's 401(k) plan, adopts a similar structure vis-à-vis its investment adviser. See generally Goldstein v. SEC, 451 F.3d 873, 875 (D.C. Cir. 2006); (Mot. 2). Thus, Plaintiffs cannot replace their obligation to allege actual facts with negative inferences regarding manipulative intent based solely on the Funds' corporate form.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING, VICARIOUS LIABILITY, OR CONTROL PERSON LIABILITY (COUNT II).

### A. Plaintiffs' Aiding and Abetting Claim Fails

Plaintiffs do not challenge the Funds' argument regarding the failure of the aiding and abetting claims. Instead, they repeat the same legal conclusion, that "[e]ach Amaranth Defendant allegedly knew about, worked to further, and intended to further Amaranth's manipulation." (Opp. 66.) This is not enough to survive a motion to dismiss. Accordingly, Plaintiffs have abandoned their aiding and abetting claim and it should be dismissed.

### B. Plaintiffs' Vicarious Liability Claim Fails

Plaintiffs' vicarious liability claim should be dismissed pursuant to Rule 9(b) or, in the alternative, Rule 8(a).[10] The Funds' Motion identifies critical facts showing that Plaintiffs have not alleged an agency relationship (Mot. 16-17), including that: (1) the Funds never

---

[10] Plaintiffs' argument that their vicarious liability claim is not subject to Rule 9(b) because there is no fraud "with regard to the agency relationship" is undercut by their statement—in the same sentence—that "the entire enterprise engaged in manipulation." (Opp. 50 n.41.) If it is the case that the entire Amaranth "enterprise" was a sham, then it must be the case that the relationship among the Amaranth entities, agency or otherwise, sounds in fraud. Plaintiffs agree that when the agency relationship sounds in fraud, it is subject to Rule 9(b). (Opp. at 50 n.41.)

acknowledged that Advisors would be their agent, nor did Advisors consent to being Funds'
agent for the trading activity (Mot. 16); (2) the Funds did not exercise control over Advisors or
other Defendants; and (3) Advisors was the sole entity that "directed" the investments. (Id.) The
Feeder Funds are merely investors in the Master Fund, which even further attenuates the
relationship with Advisors. (Id. at 17.) Plaintiffs' only response—alleging a legal conclusion
that Advisors was an agent of all the "Amaranth Defendants"—is not enough to prevent
dismissal. (Opp. 51.) "[V]ague assertions of agency . . . do not put defendants on notice of the
claims against them, or enable them to prepare a defense." Kolbeck, 923 F. Supp. at 570.[11]

    Conceding that they cannot allege facts indicating that the Funds exercised control over
Advisors (Opp. 51), Plaintiffs try a variety of approaches to avoid the necessity of alleging
control. First, Plaintiffs claim that the delegation of control from the Funds to Advisors actually
"militates in favor of the imposition of vicarious liability" under the "managerial agent" doctrine.
(Id. at 52.) The Funds are not liable under the "managerial agent" theory—a claim never alleged
in the Complaint—because the concept is inapplicable. Indeed, in all of Plaintiffs' "managerial
agent" cases (id. at 52-54 & n.42), there was no dispute as to whether the party in question was
an agent. The only question was whether the agent was sufficiently highly placed such that
punitive damages could be awarded against the principal for the agent's conduct. Therefore,
these cases provide no guidance in determining whether the Funds retained Advisors as its agent.

---

[11] As established in In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152 (D. Mass
2002), broad allegations based on sharing an associational name do not state a vicarious liability
claim. Plaintiffs misrepresent the facts in their attempt to distinguish Lernout on grounds that in
that matter "there was an express disclaimer of agency in the agreement between the entities."
(Opp. 50 n.41.) Here, the Master Fund's relationship with Advisors is governed by an agreement
between the Fund and Advisors, conveniently omitted as an exhibit to the Briganti declaration,
which expressly provides that "[f]or all purposes … [Amaranth Advisors] shall be an
independent contractor and not an employee or dependent agent of the [Amaranth LLC]."

In the alternative,[12] Plaintiffs argue that the Funds cite "no" authority for their argument that Section 2(a)(1)(B) requires that it control Advisors. (Opp. 53-54.) This misleading assertion is belied by a review of the Funds' brief (Mot. 16-17), which provides ample authority for the necessity of control. See Cohen v. Standard Bank Inv. Corp. (Jersey) Ltd., No. 97 Civ. 3802, 1998 WL 782024, at **5-6 (S.D.N.Y. Nov. 6, 1998) (Schiendlin, J.) (dismissing complaint for failure to plead facts showing an agency relationship where, inter alia, plaintiff pled "no facts" that Defendant "had control" over the misrepresentations at issue).[13]

## C.    There is No Private Right of Action for Controlling Person Liability

Plaintiffs do not challenge Defendants' argument that Section 13(b) of the CEA and CFTC Rule 166.3 do not provide a private right of action based on control person liability. (Mot. 20-22.) Moreover, Plaintiffs do not dispute that, even if control person liability were a private right of action, they have not adduced a single non-conclusory allegation of control. (Id.) Accordingly, these points are conceded (see supra at 2), and Plaintiffs' controlling person claims against the Funds should be dismissed with prejudice.

## III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT V).

The unjust enrichment claim, to the extent that it is not preempted by the CEA (Mot. 23),

---

[12]  Plaintiffs cannot even get the briefing straight, citing to the original brief filed by the Master Fund instead of the joint brief filed by the Passive Investment Funds on the Court's order. (Opp. 42-54.) Plaintiffs' mistake is symptomatic of their failure to respond to the Funds' arguments. See supra at 2. Plaintiffs have ignored the Funds' brief in favor of group pleading, lumping all Defendants together under the label "Amaranth." (Opp. 1 n.1.) This deficiency is fatal to Plaintiffs' claims against the Funds. (Mot. 6-7.)

[13]  The only case cited by Plaintiffs, CFTC v. Commodities Fluctuations Systems, Inc., 583 F. Supp. 1382 (S.D.N.Y. 1984) (hereinafter, "CFS"), for the proposition that "control" is not a required element to establish agency (Opp. 54), provides no support for their position. CFS merely holds that where a principal does not retain control over an agent, an agency relationship can be found, provided certain other factors evincing an agency relationship are met. CFS, 583 F. Supp at 1384. Here, Plaintiffs have alleged no facts that, in the absence of control, would convert Advisors into the Funds' agent.

7

fails because Plaintiffs do not allege the existence of a "substantive relationship" with the Funds. "An unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant." Reading Int'l v. Oaktree Capital Mgmt., 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003). The Funds had no relationship with Plaintiffs, quasi-contractual or otherwise.

Plaintiffs stress the "zero-sum" nature of the futures market, yet they cite no authority that such a market compels relaxation of the relationship requirement for an unjust enrichment claim. (Opp. 67.) No such authority exists because the futures market hardly differs in its "zero-sum" nature from other contexts in which courts have dismissed such claims. For instance, in Reading Int'l, in an essentially zero-sum competition between the parties in a narrowly-defined market, defendants' allegedly "received profits to which they were not entitled... [a] large portion of which would have gone to [p]laintiffs if not for [defendants'] unlawful conduct." Reading Int'l, 317 F. Supp. 2d at 309, 334. Even still, the court dismissed plaintiffs' unjust enrichment claim due to the lack of a substantive relationship. Id.

In addition, it would be inequitable for the Court to order disgorgement against the Funds because they are not wrongdoers, a requirement that this court has emphasized. (Mot. 24-25.) In a revealing own-goal, Plaintiffs state that, according to the Downe court, "the proper inquiry was the degree of control that the wrongdoer exercised over the accounts in question." (Opp. 68 (emphasis added).) The unjust enrichment claim must therefore be dismissed.

## CONCLUSION

For these reasons, and for those stated in their Motion, the Passive Investment Funds respectfully request that this Court dismiss the Complaint with prejudice.

8

Dated:  New York, New York
        July 14, 2008

        Respectfully Submitted,

/s/ Amelia T.R. Starr                    /s/ Adam S. Hakki
Amelia T.R. Starr (AS 2286)              Herbert S. Washer (HW 2375)
Sheldon L. Pollock (SP 8696)             Adam S. Hakki (AH 3561)
Dharma B. Frederick (DF 1821)            Kirsten N. Cunha (KC 0283)
DAVIS POLK & WARDWELL                     SHEARMAN & STERLING LLP
450 Lexington Avenue                     599 Lexington Avenue
New York, New York 10017                 New York, New York 10022-6069
Tel: (212) 450-4000                      Tel. (212) 848-4000
Fax: (212) 450-3800                      Fax: (212) 848-7179

*Counsel to Amaranth LLC*                *Counsel to Amaranth International
                                         Limited*

**CERTIFICATE OF SERVICE**

I, Dharma Betancourt Frederick, an attorney admitted to practice in this

District, hereby certify that on July 14, 2008, I caused a true copy of the foregoing Notice

of Motion to Dismiss and the accompanying Memorandum of Law to be served on the

individuals listed on the attached service list by the court's ECF system.

Dated:    New York, New York
          July 14, 2008

                                /s/  Dharma Betancourt Frederick

**SERVICE LIST**

*Counsel for Plaintiffs*

Louis F. Burke
lburke@lfblaw.com
LOUIS F. BURKE, P.C.
460 Park Avenue, 21st Floor
New York, NY 10022
Tel: (212) 682-1700

Vincent Briganti
vbriganti@lowey.com
Geoffrey Milbank Horn
LOWEY DANNENBURG COHEN &
HART, P.C.
White Plains Plaza, Suite 509
One North Broadway
White Plains, NY 10601
Tel: (914) 997-0500

Bernard Persky
bpersky@labaton.com
Gregory S. Asciolla
LABATON SUCHAROW, LLP
140 Broadway
New York, NY 10005
Tel: (212) 907-0700

Christopher Lovell
lshllp@lshllp.com
Ian T. Stoll
LOVELL STEWART HALEBIAN, LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 608-1900

Samuel H. Rudman
srudman@csgrr.com
Robert M. Rothman
COUGHLIN, STOIA, GELLER,
RUDMAN & ROBBINS, LLP
58 South Service Rd., Suite 200
Melville, NY 11747
Tel: (631) 367-1173

Christopher Gray
gray@cjgraylaw.com
CHRISTOPHER J. GRAY PC
460 Park Avenue, 21st Floor
New York, NY 10022
Tel: (212) 838-3221

*Counsel for Defendants*

Stephen Senderowitz
ssendero@winston.com
David E. Mollon
Steven M. Schwartz
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700

*Counsel to Defendants Amaranth Advisors
L.L.C., Amaranth Group, Inc., Amaranth
Partners LLC, Amaranth Capital Partners,
and Amaranth Advisors (Calgary) ULC*

Adam Hakki
ahakki@shearman.com
Kirsten Nelson
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 848-4000

*Counsel to Defendant Amaranth
International*

Michael S. Kim
michael.kim@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200

*Counsel to Defendant Brian Hunter*

Geoffrey F. Aronow
geoffrey.aronow@hellerehrman.com
Andrew Levine
Thomas S. Kimbrell
Richard S. Goldstein
HELLER EHRMAN LLP
1717 Rhode Island Avenue NW
Washington, D.C. 20036-3023
Tel: (202) 912-2000

*Counsel to Defendant Nicholas M. Maounis*

Steven R. Goldberg
sgoldberg@mbfcc.com
One North End Avenue
World Financial Center
11th Floor, Suite 1107
New York, NY 10282-1101
Tel: (212) 845-5100

*Counsel to Defendants James DeLucia and
ALX Energy, Inc.*

Mark J. Stein
mstein@stblaw.com
Heather Shaffer
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000

*Counsel to Defendant Matthew Donohoe*

Daniel J. Toal
dtoal@paulweiss.com
Eric S. Goldstein
Jason H. Wilson
Marguerite S. Dougherty
Mark Floyd Pomerantz
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000

*Counsel to Defendants J.P. Morgan
Chase & Co. and J.P. Morgan Futures,
Inc.*

Alan Kanzer
akanzer@Alston.com
Craig Carpenito
Karl Geercken
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400

*Counsel to Defendant TFS Energy
Futures LLC*