# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
           :

IN RE: AMARANTH NATURAL GAS
COMMODITIES LITIGATION      :        **Electronically Filed**

**This Document Relates to:**    :     **Master File No.: 07 Civ. 6377 (SAS)**

**ALL ACTIONS**       :     **Oral Argument Requested**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS
THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT
BY DEFENDANTS AMARANTH ADVISORS L.L.C.,
AMARANTH ADVISORS (CALGARY) ULC,
AMARANTH GROUP INC.,
AMARANTH MANAGEMENT LIMITED PARTNERSHIP,
AND NICHOLAS M. MAOUNIS**


| | |
|---|---|
| WINSTON & STRAWN LLP | HELLER EHRMAN LLP |
| 200 Park Avenue | 7 Times Square |
| New York, New York 10166 | New York, NY 10036 |
| (212) 294-6700 | (212) 832-8300 |
| | |
| *Attorneys for Defendants* | *Attorneys for Defendant* |
| *Amaranth Advisors L.L.C.,* | *Nicholas M. Maounis* |
| *Amaranth Advisors (Calgary) ULC,* | |
| *Amaranth Group Inc., and* | |
| *Amaranth Management Limited Partnership* | |

# TABLE OF CONTENTS

I.      PLAINTIFFS LACK STANDING ON SETTLEMENT PRICE MANIPULATION ........1

II.     PLAINTIFFS HAVE NOT OTHERWISE PLED A MANIPULATION CLAIM AS TO
        AMARANTH ADVISORS .............................................................................................1

        A.    Plaintiffs Have Failed To Plead Intent To Create An Artificial Price ........................1

              1.    Securities Market Manipulation Cases Are Relevant ...........................................2

              2.    Plaintiffs Fail To Plead Sufficient Facts In Support Of Intent To Create An
                    Artificial Price To Satisfy Either Rule 9(b) Or 8(a) ............................................2

        B.    Large Volume Trading Throughout The Class Period Alone Is Not Manipulation
              Under The CEA ...........................................................................................................4

III.    NO MANIPULATION IS PLED AGAINST MR. MAOUNIS, AGI, OR AMLP .............5

        A.    There Are No Facts Alleged Supporting A Primary Manipulation Claim .................5

        B.    A Common Enterprise Claim Is Unavailable And The Alter Ego Claim Fails ..........6

IV.     PLAINTIFFS' SECONDARY LIABILITY CLAIMS FAIL.............................................7

V.      THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED ...................................8

## I.    PLAINTIFFS LACK STANDING ON SETTLEMENT PRICE MANIPULATION

Plaintiffs cite no case that confers standing to bring a claim based on manipulation of settlement prices under the CEA.[1]  Moreover, Plaintiffs fail to distinguish meaningfully *Vitanza v. Bd. of Trade of City of New York*, No. 00 CV 7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002), which holds that there is no private right of action for manipulation of a settlement price. *See* Mem. at 8-9.  Plaintiffs' proffered distinction, that *Vitanza* concerned manipulation of settlement prices of non-expiring instead of expiring contracts, fails because, as Plaintiffs concede, any settlement price is "not the price at which a contract actually trades."  (Opp. at 37 n.32).  Thus, Plaintiffs lack standing for their settlement price claim.

## II.    PLAINTIFFS HAVE NOT OTHERWISE PLED A MANIPULATION CLAIM AS TO AMARANTH ADVISORS

### A.    Plaintiffs Have Failed To Plead Intent To Create An Artificial Price

Plaintiffs do nothing to show that the Complaint alleges facts to support any of the requisite four elements for CEA manipulation under either Rule 9(b)[2] or Rule 8(a) as to the other manipulation claim—that the "Amaranth Defendants" manipulated 72 NG contacts throughout the seven-month Class Period.  In particular, they allege no facts about Amaranth Advisors' intent to cause artificial prices in all 72 NG contracts throughout the Class Period.[3]  On this

---

[1] Capitalized terms not defined have the same meaning as in Amaranth Advisors, AGI, AMLP and Mr. Maounis' Memorandum of Law dated June 23, 2008 [Docket No. 106] ("Mem.").

[2] Plaintiffs' argument that Rule 9(b) does not apply flies in the face of the clear language from the Second Circuit that "[b]ecause a claim for market manipulation is a claim for fraud, it must be plead with particularity under Rule 9(b)."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (citations omitted).

[3] Contrary to Plaintiffs' assertion, 'ability to create an artificial price' is an element of CEA manipulation.  *See, e.g., In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 507 (S.D.N.Y. 2004); Mem. at 9, 23-25.  *In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998), on which Plaintiffs rely, dealt with class certification, not whether CEA manipulation had been pled.  Indeed, Plaintiffs concede that 'ability' is "subsumed" under the elements of manipulation.  (Opp. at 36 n.31).

issue, as with the other issues raised by Defendants' motions, the Opposition advances "facts" not alleged in the Complaint, including 14 new exhibits. But a plaintiff cannot "amend [his] complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).[4] In attempting to do so, however, Plaintiffs tacitly admit that, after six versions, their Complaint remains inadequate.

### 1.    Securities Market Manipulation Cases Are Relevant

In asking the Court to ignore securities manipulation cases cited by Defendants, Plaintiffs absurdly argue that securities laws countenance "some" manipulation of prices, and that the proper function of the securities markets is not as dependent as the futures markets on participants believing they are getting non-"artificial" prices when they trade. (Opp. at 24). Plaintiffs' distinctions are contradicted by case law. For instance, in stating the pleading standards for securities manipulation, the Second Circuit cited a CEA manipulation case and specifically noted it as such. *ATSI*, 493 F.3d at 102 (citing *CFTC v. Bradley*, 408 F. Supp. 2d 1214, 1222 (N.D. Okla. 2005)). Indeed, the Second Circuit has recognized that courts and Congress have accepted the analogy between futures and securities cases due to "the common legislative objective of insuring fair dealing for investors." *Leist v. Simplot*, 638 F.2d 283, 298 n.14 (2d Cir. 1980), *aff'd*, 456 U.S. 353 (1982).[5] Thus, securities cases, including *ATSI*, apply.

### 2.    Plaintiffs Fail To Plead Sufficient Facts In Support Of Intent To Create An Artificial Price To Satisfy Either Rule 9(b) Or 8(a)

Plaintiffs ask the Court to infer intent to create an artificial price in all 72 NG contracts

---

[4] *See also Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 n.3 (S.D.N.Y. 2000) (refusing to consider exhibits to motion to dismiss response brief not "attach[ed], incorporate[d] by reference, or rel[ied] upon" in the complaint).

[5] S*ee also In re Natural Gas*, *supra*, 358 F. Supp. 2d at 344 n.5 ("it makes little sense to apply case law articulating standards applicable to allegations of market manipulation only when the allegations concern claims under the securities laws").

throughout the Class Period, simply from the size of Amaranth Advisors' positions as detailed in the PSI Report.  But Plaintiffs notably omit that the PSI Report **never** found that Amaranth Advisors manipulated the natural gas futures market.  Indeed, in a joint statement on June 24, 2008, the PSI majority and minority staffs clarified that "[t]he 2006 and 2007 PSI reports focused on the role of excessive speculation in U.S. commodity markets; **neither report contained any findings on whether traders manipulated crude oil or natural gas prices**."[6]  The PSI undoubtedly recognized the distinction between having an impact on markets by trading large positions (even "excessive speculation"), and "illegal manipulative conduct," which requires intentionally causing artificial prices.  *See In re Indiana Farm Bureau Coop., Ass'n, Inc.*, No. 75-14, 1982 WL 30249, at *4-5 (CFTC Dec. 17, 1982).

Moreover, Plaintiffs' reliance on a single case, *In re Global Minerals & Metals Corp.*, No. 99-11, 1999 WL 1023586, at *1 (CFTC Nov. 12, 1999), to infer intent from market dominance alone, is misplaced.  (Opp. at 39).  *In re Global* does not hold that a dominant position is "conclusive evidence of manipulative intent."  Instead, it merely states that defendants' control of the copper cash market (*i.e.,* the physical market) **combined with** its large positions could be indicative of intent or ability to manipulate prices **in a cornering case**.  *Id.* at *1, n.7.  As the court went on to state: "Indeed, all successful cornering cases have involved a manipulator who dominated the futures market *in addition to the cash market*."  *Id.* (emphasis added).  Neither Amaranth Advisors nor any other Defendant dealt in physical natural gas, and thus could not have "cornered" the market.[7]

---

[6] *Joint Analysis Prepared by Majority and Minority Staffs of the S. Perm. Subcomm. on Investigations*, 110th Cong., at 11 (June 24, 2008) (Mollón Dec. Ex. A) (emphasis added).

[7] The cases cited to support that "Courts have repeatedly rejected … that significant cash supplies are needed to manipulate" (Opp. at 35 n.29) are inapposite.  *See Bd. of Trade of City of Chicago v. Olsen*, 262 U.S. 1 (1923) (regarding constitutionality of the Futures Trading Act); *Frey v.*

Finally, although Plaintiffs correctly state that manipulative intent can be inferred from "uneconomic" conduct, they have not pled such conduct merely by asserting that Defendants purchased futures contracts at "historically high" prices. "Uneconomic conduct" requires allegations such as defendants selling at a lower price than could have been obtained elsewhere, not a disagreement as to whether buying at a "historically high price" was a smart trade. *See Indiana Farm Bureau*, 1982 WL 30249, at *5 ("a clear line between lawful and unlawful activity is required in order to ensure that innocent trading activity not be regarded with the advantage of hindsight as unlawful manipulation").

Accordingly, the Complaint lacks sufficient facts to support the requisite intent to satisfy the plausibility standards of *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955 (2007), let alone Rule 9(b), with respect to Plaintiffs' claim for manipulation of 72 NG contracts.

### B. Large Volume Trading Throughout The Class Period Alone Is Not Manipulation Under The CEA

Plaintiffs argue that large volume trading alone is manipulative conduct. To the extent Plaintiffs rely on Judge Chin's ruling in the CFTC's action against Amaranth Advisors, (Opp. at 20), that decision is contrary to Second Circuit authority in *ATSI*, and addressed allegations of intent as to *attempted* manipulation of two settlement prices of *two specific* contracts on *two specific* days based on large volume trading in the settlement period.[8] Indeed, virtually all of Plaintiffs' alleged "examples" of conduct purportedly evidencing intent relate only to those two

---

*CFTC*, 931 F.2d 1171, 1177 (defendants did not manipulate the futures market even with their substantial long position and large holding of cash wheat); *Great Western Food Distribs., Inc. v. Brannan*, 201 F.2d 476, 478-79 (7th Cir. 1953) (defendants possessed and controlled the deliverable supply of eggs by purchasing and holding large quantities of "cash" eggs).

[8] *See CFTC v. Amaranth Advisors, L.L.C.*, No. 07 Civ. 6682, 2008 WL 2123323 (S.D.N.Y. May 21, 2008); *CFTC v. Amaranth Advisors, L.L.C.*, No. 07 Civ. 6682, 2008 U.S. Dist. LEXIS 45638 (S.D.N.Y. June 10, 2008). The CFTC only alleged *attempted* manipulation as to two of the three dates in Plaintiffs' settlement price manipulation claims, which Plaintiffs lack standing to bring.

- 4 -

settlement periods.  Judge Chin did not address a claim like that of Plaintiffs', based only on the assertion of large positions in 72 different NG contracts throughout a seven-month period.

Plaintiffs rely only on one other case, *CFTC v. Enron*, H-03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004).  (Opp. at 20).  In *Enron*, however, the CFTC did not simply allege large trading, but deceptive conduct, including a conspiracy among traders to "bid up" prices and time trades, with one trader agreeing to cover another trader's losses incurred from carrying out the scheme.  *Id.* at *2, 7.  No such deceptive conduct has been alleged by Plaintiffs.[9]

Accordingly, Plaintiffs fail to cite any case holding that open-market trading alone—the only conduct alleged as to the Class Period manipulation claim—states a CEA manipulation claim.  Indeed, the jury instructions on which Plaintiffs rely state, "it is lawful ... to hold substantial long positions in ... futures."  *Minpeco S.A. v. Hunt*, No. 81 Civil 7619, at 16717 (S.D.N.Y. Aug. 15, 1988) (Opp. Ex. 1).  Plaintiffs' claim flies in the face of the well-accepted market principle that legitimate trading will affect prices in an efficient market; thus manipulation requires the intent to create artificial prices.  *See CFTC v. Delay*, No. 05 CV 5026, 2006 WL 3359076, at *3 (D. Neb. Nov. 17, 2006) (finding no manipulation under the CEA because it is not a violation to engage in lawful conduct with the intent of affecting prices).[10]

## III.     NO MANIPULATION IS PLED AGAINST MR. MAOUNIS, AGI, OR AMLP

### A.     There Are No Facts Alleged Supporting A Primary Manipulation Claim

Plaintiffs' arguments regarding Mr. Maounis, AGI, and AMLP and their supposed

---

[9] As interpreted by Plaintiffs, *Enron* is *sui generis* and inconsistent with the Second Circuit's decision in *ATSI*, as well as the other cases cited by Amaranth Advisors.  *See* Mem. at 20-23.

[10] Plaintiffs' claim that Amaranth Advisors traded in a manner that benefited its position is simply descriptive of legal market conduct.  *See Indiana Farm Bureau*, 1982 WL 30249, at *5. Also, Plaintiffs' claim that somehow Amaranth caused "multiple types of artificial prices," is unsupported by any factual or legal analysis.  (Opp. at 39).  Indeed, Plaintiffs' "three charter functions" analysis is an invention of their imagination.  (Opp. at 22-23, 34).

manipulative acts do not even meet *Twombly's* plausibility standard, much less Rule 9(b).  First, as to Mr. Maounis, Plaintiffs dress up their original claims that he was the founder, CEO, and CIO of various entities with the unsurprising particulars that he raised capital, could hire and fire, was a partner or managing member of some Amaranth entities, or was involved in setting overall strategy and allocating risk capital.  (Opp. at 13, 14, 45).  But none of these allegations connect Mr. Maounis to the trading at issue.  Plaintiffs' attempt to create a factual issue by stating Mr. Maounis made "trading decisions" fails, as the claim lacks any allegations in support.  ¶ 73; Opp. at 14, 44; *Twombly*, 127 S. Ct. at 1965 (the right to "relief requires more than labels and conclusions"); *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002). Plaintiffs cannot hide behind the vagueness of this allegation to maintain a claim.[11]

As to AMLP and AGI, Plaintiffs do not dispute that neither AMLP, a holding company, nor AGI, a non-trading service provider, conducted or directed any trading, let alone the trading at issue.  *See* Mem. at 9-10.  Thus, Plaintiffs' manipulation claim as to AMLP and AGI fails.

### B.    A Common Enterprise Claim Is Unavailable And The Alter Ego Claim Fails

Plaintiffs fail to address Defendants' argument that the Complaint does not properly meet the strict elements required for seeking to pierce the corporate veil, and instead invoke the "Common Enterprise" doctrine (which they call the "single entity" theory).  That doctrine, however, is limited to regulatory actions, not private actions.  *See Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 957-958 (1986) (noting that *FERC* may disregard "corporate

---

[11] If Plaintiffs mean to suggest (without any factual support) that Mr. Maounis, AGI, or AMLP were involved in the actual alleged manipulative NG trading decisions, then Plaintiffs are also susceptible to a motion under Rule 11, because no good faith basis exists for such allegations.

entities … when used to subvert clear legislative intent.") (citations omitted).[12]

Moreover, Plaintiffs' failure to allege a single fact connecting AGI, AMLP, or Mr. Maounis to the trading decisions at issue precludes their alter ego claim.  Whatever the pleading standard, a plaintiff must allege facts to show that the corporate form was abused with respect to the *transactions at issue* and that the purported domination was *used to commit the fraud or wrong* against the plaintiff that resulted in his or her injury.  *See Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997) ("corporate veil [may] not be pierced in the absence of a showing that … the control and breach of duty proximately caused the injury").  Plaintiffs utterly fail to meet these basic requirements for piercing the corporate veil.  *See EED Holdings v. Palmer Johnson Acquis. Corp.*, 228 F.R.D. 508, 512-513 (S.D.N.Y. 2005) (a conclusory allegation of causation is insufficient to state a veil piercing claim, even under Rule 8(a)).[13]

## IV.    PLAINTIFFS' SECONDARY LIABILITY CLAIMS FAIL

Plaintiffs all but abandon their aiding and abetting claims, citing no case law and merely referring to the Complaint's conclusory allegations.  Plaintiffs do not respond to Defendants' arguments that they are not alleged to have the requisite knowledge or intent to aid and abet any manipulation, nor do they explain how Defendants substantially assisted any manipulation.  *See* Mem. at 25-28.  Moreover, Plaintiffs do not dispute that they lack standing to bring either a claim under § 13(b) or for failure to supervise liability under CFTC Rule 166.3.

---

[12]  *See also Gen. Tel. Co. v. United States*, 449 F.2d 846, 855 (5th Cir. 1971) ("the Commission is entitled to look through corporate form and treat the separate entities as one and the same for purposes of regulations").

[13]  Plaintiffs' supposed elaboration of the details of Mr. Maounis's formal control over many aspects of the Amaranth entities' operations by virtue of his position or ownership (*see, e.g.*, Opp. at 12-16) is insufficient to establish the "domination and control" necessary to satisfy the first prong of the veil piercing standard.  Such an "unadorned invocation of dominion and control is simply not enough" to withstand a motion to dismiss, absent specific factual support.  *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

As to agency and control person liability, Plaintiffs argue that they need not allege control to establish agency for a CEA § 2(a)(1)(B) claim because that section imposes "strict vicarious liability." (Opp. at 48-50). Plaintiffs are wrong. Although intent may not be a necessary element, control is essential to a principal-agent relationship under § 2(a)(1)(B). *See* Mem. at 29-33.[14] Plaintiffs fail to allege any facts to support that Amaranth Advisors, AGI, AMLP or Mr. Maounis controlled any relevant Defendant.[15]

## V.    THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Plaintiffs are wrong to assert that unjust enrichment, a quasi-contractual claim, does not require a quasi-contractual relationship, and even if it did, trading in the futures market suffices. (Opp. at 68). There is nothing about the "zero-sum" nature of futures trading that changes the required relationship between a plaintiff and a defendant. Yet Plaintiffs do not allege that they traded with any Defendant, and have pled, at most, that they were trading in the markets at the same time as was Amaranth Advisors, which is insufficient.[16] *See* Mem. at 38-39.

<u>CONCLUSION</u>

Amaranth Advisors, AGI, AMLP and Mr. Maounis respectfully request that this Court dismiss the Complaint with prejudice and grant such other relief it deems just and proper.

---

[14] *CFTC v. Commodities Fluctuation Sys.*, 583 F. Supp. 1382 (S.D.N.Y. 1984), is inapplicable. There, a CFTC Registrant was held liable under CEA § 2(a)(1)(B) for the acts of its registered "associated persons." Importantly, the CFTC Registrant had a duty to supervise their registered associated persons. None of the Defendants are alleged to be or, in fact, were CFTC Registrants.

[15] Besides these shortcomings, Plaintiffs' brief discussion of their control person and agency claims with regard to Mr. Maounis is nonsensical. (Opp. at 54). And simply asserting that Mr. Maounis was the "face" of Amaranth does not make the traders his agents.

[16] Cases Plaintiffs cite are inapposite because a quasi-contractual relationship in those cases was obvious. *See Russo v. Friedman*, 91 Civ. 6913, 1992 WL 196791 (S.D.N.Y. July 31, 1992) (unjust enrichment claim asserted as an alternative to breach of contract claim where the validity of the contract was in dispute); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 655 F.Supp. 436, 353 (S.D.N.Y. 1987) (contractor asserted unjust enrichment claim against subcontractor).

Respectfully Submitted,

Dated: July 14, 2008
New York, New York

WINSTON & STRAWN LLP

By: /s/ David E. Mollón

David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
dmollon@winston.com
sschwartz@winston.com

200 Park Avenue
New York, New York 10166
(212) 294-6700

Stephen J. Senderowitz (*pro hac vice*)
Kristen V. Grisius (*pro hac vice*)
Gretchen A. Vetter (Of Counsel)
ssenderowitz@winston.com
kgrisius@winston.com
gvetter@winston.com

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendants*
*Amaranth Advisors L.L.C.,*
*Amaranth Advisors (Calgary) ULC,*
*Amaranth Group Inc., and*
*Amaranth Management Limited Partnership*

HELLER EHRMAN LLP

Geoffrey F. Aronow (*pro hac vice*)
Thomas S. Kimbrell (*pro hac vice*)
geoffrey.aronow@hellerehrman.com
thomas.kimbrell@hellerehrman.com

1717 Rhode Island Avenue NW
Washington, DC 20016
(202) 912-2000

Richard S. Goldstein (RG-9560)
Andrew Levine (AL-3552)
richard.goldstein@hellerehrman.com
andrew.levine@hellerehrman.com

7 Times Square
New York, New York 10036
(212) 832-8300

*Attorneys for Defendant Nicholas M. Maounis*