UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Oral Argument Requested<br><br>MASTER FILE NO. 07 Civ. 6377 (SAS)<br>[rel. 07 Civ. 7592 (SAS), 07 Civ. 7181 (SAS), 07 Civ. 7943 (SAS)] |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE JPMORGAN
DEFENDANTS' AMENDED MOTION TO DISMISS**

Mark F. Pomerantz
Eric S. Goldstein
Daniel J. Toal
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A. and J.P. Morgan Futures Inc.*

## TABLE OF CONTENTS

Page

Preliminary Statement ...........................................................................................................1

Argument ................................................................................................................................2

I. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST JPMORGAN FOR
   AIDING AND ABETTING UNDER THE CEA ...................................................2

   A. Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan *Knew*
      Amaranth Intended to Manipulate the Market for Natural Gas Futures .................3

   B. Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan Intended
      to Assist Amaranth's Alleged Market Manipulation ...............................................6

   C. Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan
      Committed Any Act in Furtherance of Amaranth's Alleged Market
      Manipulation ............................................................................................................7

II. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST
    ENRICHMENT AGAINST JPMORGAN ...............................................................8

III. PLAINTIFFS FAIL TO PLEAD ANY ALLEGATIONS SPECIFIC TO JPMC
     OR JPMCB ...............................................................................................................8

Conclusion ..............................................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Connolly* v. *Havens*,
 763 F. Supp. 6 (S.D.N.Y. 1991)..........................................................................................6

*Damato* v. *Hermanson*,
 153 F.3d 464 (7th Cir. 1998) ...........................................................................................3, 7

*In re Crude Oil Commodity Litig.*,
 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. Jun. 28, 2007)...................................3

*Ross* v. *Bolton*,
 639 F. Supp. 323 (S.D.N.Y. 1986) ....................................................................................6

*Rudd* v. *KeyBank, N.A.*,
 2006 WL 212096 (S.D. Ohio Jan. 25, 2006) .....................................................................8

*U.S. Commodity Futures Trading Commission* v. *Amaranth Advisors, L.L.C.*,
 --- F. Supp. 2d ----, 2008 WL 2123323 (S.D.N.Y. May 21, 2008).................................2-3

*Weber* v. *E.D. & F. Man, Int'l*,
 No. 97 C. 7518, 1999 WL 35326 (N.D. Ill. Jan. 13, 1999) ............................................7-8

OTHER AUTHORITIES

FERC Order to Show Cause ........................................................................................................4

Fed. R. Civ. P. 8(a) .......................................................................................................................8

Fed. R. Civ. P. 9(b) ...................................................................................................................2, 8

Defendants JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, N.A. ("JPMCB"), and J.P. Morgan Futures Inc. ("JPMFI") (collectively, "JPMorgan") submit this reply memorandum of law in further support of their amended motion to dismiss.

**Preliminary Statement**

In their brief in opposition to JPMorgan's motion to dismiss, plaintiffs confirm that their Complaint fails adequately to plead a claim against JPMorgan for: (i) aiding and abetting Amaranth's alleged effort to manipulate prices for natural gas futures and options on NYMEX in violation of the Commodities Exchange Act ("CEA"), or (ii) unjust enrichment.

Plaintiffs' aiding and abetting claim against JPMorgan fails for a host of reasons. First, plaintiffs fail to identify any factual allegations in their Complaint indicating that anyone at JPMorgan *knew* that Amaranth intended to create artificial prices in the market for natural gas futures and options. Plaintiffs do not allege a single conversation in which anyone at JPMorgan purportedly acquired such knowledge. They do not identify a single document that advised anyone at JPMorgan of Amaranth's allegedly manipulative plans. They do not point to anyone at JPMorgan who suspected—let alone concluded—that Amaranth's natural gas trades were part of a scheme to create artificial prices for natural gas futures. Plaintiffs allege only that JPMFI, as Amaranth's clearing broker, had access to information about Amaranth's natural gas futures contracts and its trading activity. As a matter of law and logic, however, the mere fact that JPMFI had access to Amaranth's natural gas positions and trades provides no plausible basis for concluding that it therefore knew Amaranth was intent on market manipulation.

Second, plaintiffs fail to identify any factual allegations in their Complaint from which it can be inferred that JPMorgan intended to assist Amaranth in its allegedly manipulative plans. As to this element of an aiding and abetting claim, plaintiffs allege only that JPMFI earned commissions for clearing Amaranth's natural gas trades and interest on Amaranth's

required margin balances. But the unremarkable fact that JPMFI received compensation for providing professional services to Amaranth provides no plausible basis for inferring that JPMFI intended to assist in market manipulation. To the contrary, plaintiffs fail to allege any manner in which the compensation of JPMorgan or any of its employees hinged on the success of Amaranth's allegedly manipulative scheme and therefore fail to allege facts from which an unlawful motive may be inferred.

Third, plaintiffs fail to identify any factual allegations in their Complaint sufficient to establish that JPMorgan provided substantial assistance to Amaranth in its purported plans to manipulate prices for natural gas futures. Plaintiffs allege only that JPMorgan cleared trades for Amaranth and "financed" Amaranth's natural gas trading by loaning it money on margin, although the Complaint is silent on the alleged magnitude, timing or terms of any such loans. In all events, as a matter of law, JPMFI's performance of the ordinary and routine functions of a clearing broker provides no basis for holding JPMorgan liable for the alleged misdeeds of Amaranth.

Nor do plaintiffs point to any factual allegations in the Complaint sufficient to salvage their makeweight unjust enrichment claim. Plaintiffs concededly have not identified any quasi-contractual relationship with any JPMorgan entity or any possessory interest in any property that any JPMorgan entity allegedly received unjustly. These pleading defects are fatal.

### Argument

### I.
### PLAINTIFFS FAIL TO STATE A CLAIM AGAINST
### JPMORGAN FOR AIDING AND ABETTING UNDER THE CEA[1]

---

[1] For the reasons discussed in JPMorgan's opening brief, plaintiffs' claims that JPMorgan "concealed [Amaranth's] manipulative trading from regulators and market participants," is precisely the type of claim to which courts have applied Rule 9(b). *See U.S. Commodity Futures Trading Commission* v. *Amaranth Advisors, L.L.C.*, --- F. Supp. 2d ----, 2008 WL

2

A. **Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan *Knew* Amaranth Intended to Manipulate the Market for Natural Gas Futures**

It is axiomatic that plaintiffs must allege facts showing that JPMorgan "had knowledge of [Amaranth's] intent to commit a violation of the Act." *See Damato v. Hermanson*, 153 F.3d 464, 472-73 (7th Cir. 1998). Plaintiffs' opposition brief fails to identify any factual allegations in the Complaint that would suffice to establish that JPMorgan knew Amaranth purportedly was bent on market manipulation. Plaintiffs do not allege that Amaranth told anyone at JPMorgan of its alleged plans to manipulate the market. They do not allege that anyone at JPMorgan had access to the instant messages or other communications in which Brian Hunter of Amaranth allegedly revealed to certain traders and floor brokers his reasons for trading during the settlement period. (Compl. ¶¶ 106-12.) Nor do plaintiffs allege that anyone at JPMorgan somehow learned of Amaranth's supposedly manipulative plans from other sources. Plaintiffs instead invite the conclusion that someone at JPMorgan—although they never say who—must have understood that Amaranth intended to manipulate the market because Amaranth's trading and positions in the natural gas market, to which JPMorgan had access, could not have been thought to have had a legitimate commercial purpose. (*See* Opp. Br. at 58-59 (arguing that JPMorgan "had to be aware" of Amaranth's alleged manipulation).) These allegations are not sufficient to establish that anyone at JPMorgan had actual knowledge of Amaranth's allegedly manipulative plans. *See Damato*, 153 F.3d at 472.

The mere fact that JPMorgan had access to Amaranth's natural gas futures trades and positions does not remotely establish that anyone at JPMorgan *knew* that Amaranth intended to manipulate the market. In fact, plaintiffs acknowledge that NYMEX itself had access to

---

2123323, at *7 (S.D.N.Y. May 21, 2008); *In re Crude Oil Commodity Litig.*, 06 Civ. 6677 (NRB), 2007 WL 1946553, at *5 (S.D.N.Y. Jun. 28, 2007).

3

Amaranth's natural gas futures trades and positions on NYMEX—the exchange that Amaranth allegedly manipulated—but Amaranth's acquisition and maintenance of those positions clearly never caused NYMEX to conclude that Amaranth intended to manipulate the market. (*See, e.g.*, Compl. ¶¶ 164-65 (alleging that NYMEX told Amaranth its positions totaled more than 51% of the open interest).) Even after the fact, the CFTC and FERC brought claims for attempted or actual market manipulation only with respect to Amaranth's trades during the last half hour of trading on three or fewer days, but neither alleged that Amaranth's acquisition or maintenance of large positions at any other time reflected an intent to manipulate the market.[2] Accordingly, as courts have consistently recognized, neither large trades nor large positions provide a plausible basis for inferring that anyone at JPMorgan knew that Amaranth allegedly intended to manipulate the market so as to induce artificial prices for natural gas futures.

Equally unavailing is plaintiffs' suggestion that someone at JPMorgan must have known that Amaranth was intent on market manipulation because JPMFI knew that Amaranth "was violating NYMEX position limits." NYMEX itself knew that Amaranth had violated these position limits and yet clearly did not consider such infractions suggestive of market manipulation. Even setting aside that plaintiffs allege no facts indicating that anyone at JPMorgan believed Amaranth to be engaged in market manipulation, it defies logic to suggest, as plaintiffs apparently attempt, that Amaranth's occasional violations of position limits revealed to some unidentified person at JPMorgan that Amaranth had hatched a plan to manipulate the

---

[2] Unlike most cases at the motion to dismiss stage, plaintiffs here had access to, and have relied on, several investigations conducted after Amaranth's collapse. This material includes: (1) the Report of the U.S. Senate Permanent Subcommittee on Investigations, dated June 25, 2007 (*see, e.g.*, Compl. ¶¶ 4, 160-64, 167, 175, 201); (2) the July 2007 CFTC complaint (*see, e.g.*, Compl. ¶ 5(a)); and (3) the July 2007 FERC Order to Show Cause (*see, e.g.*, Compl. ¶ 5(b)). JPMorgan was not implicated in any way in the Subcommittee Report, nor was it named in the CFTC complaint or the FERC Order to Show Cause.

market, but that NYMEX—the entity charged with regulating and ensuring the integrity of the market—remained oblivious.

Plaintiffs also fail to address the inadequacies of their argument that someone at JPMFI "must have known" that Amaranth intended to manipulate the market because NYMEX and CFTC requested information about Amaranth's trading positions in August 2006, six months into the proposed class period. Contrary to the characterization in the plaintiffs' opposition brief, however, the factual allegations in the Complaint do not claim that Amaranth, NYMEX or the CFTC told anyone at JPMorgan that Amaranth was under investigation at all, let alone for suspected market manipulation. Plaintiffs thus fail to identify any factual allegations indicating that suspected market manipulation by Amaranth motivated the NYMEX or CFTC requests for information about Amaranth's trading positions, much less that any such suspicion was communicated to JPMFI. (JPM Br. at 13-14.)

Neither have plaintiffs addressed in their opposition brief how allegations that JPMFI knew Amaranth had reduced positions on NYMEX and increased similar positions on ICE establish that JPMFI knew Amaranth intended to manipulate the market. Plaintiffs instead simply reiterate their conclusory allegation that JPMorgan increased Amaranth's ICE limits, and "secretly" cleared Amaranth's trades on ICE "to evade CFTC and NYMEX scrutiny." (Opp. Br. at 61.) But there were no secrets here. To the contrary, as the Complaint acknowledges, on August 23, 2006, when NYMEX sought information about Amaranth's positions on ICE, JPMorgan readily provided it. (Compl. ¶ 207.) Moreover, as the Complaint also concedes, it is commonplace for traders to maintain positions on both NYMEX and ICE, and traders base their decisions about which exchange to use based on a variety of factors. (Compl. ¶ 60.) As a result, there was nothing inherently suspicious about Amaranth's maintenance of positions on ICE.

5

And, in all events, the Complaint does not allege any manner in which Amaranth supposedly used its ICE positions to manipulate prices for natural gas futures on NYMEX, the exchange that is the subject of plaintiffs' Complaint. To the contrary, it is undisputed that Amaranth lost $600 million after it complied with NYMEX's request that it refrain from executing large orders on NYMEX or ICE on August 29, 2006, the last day of trading in the September 2006 contract. (JPM Br. at 14-15.) This hardly supports plaintiffs' assertion that Amaranth's trading on NYMEX and ICE in August 2006 revealed to JPMorgan that Amaranth intended to manipulate the market.

Plaintiffs' reiteration of its remaining allegations also fails to provide a plausible basis for concluding that anyone at JPMorgan knew that Amaranth purportedly was bent on market manipulation. Courts repeatedly have rejected claims that clearing brokers should be deemed to know the purpose of their clients' transactions.[3]

## B. Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan Intended to Assist Amaranth's Alleged Market Manipulation

In its effort to establish that someone at JPMorgan intended to assist Amaranth in its alleged plan to engage in market manipulation, plaintiffs seemingly concede that JPMorgan's receipt of compensation for providing normal clearing services does not suffice. Plaintiffs instead contend that intent to assist in Amaranth's alleged manipulative scheme can be "inferred from conduct for purposes of CEA manipulation." (Opp. Br. at 62.) Plaintiffs fail to point to a single act by anyone at JPMorgan, however, that would provide any basis for inferring intent to further Amaranth's allegedly manipulative plan. Indeed, the Complaint charges only that JPMorgan cleared trades for Amaranth and purportedly "financed" Amaranth's trading. As a

---

[3] See, e.g., Connolly v. Havens, 763 F. Supp. 6, 11 (S.D.N.Y. 1991); Ross v. Bolton, 639 F. Supp. 323, 326-27 (S.D.N.Y. 1986).

matter of law, these allegations provide an insufficient basis for inferring unlawful conduct because these are no more than the normal and customary functions of a clearing broker.[4]

### C. Plaintiffs' Complaint Fails Adequately To Allege That JPMorgan Committed Any Act in Furtherance of Amaranth's Alleged Market Manipulation

Plaintiffs argue that JPMorgan provided "intentional assistance" to Amaranth by "continuing to carry, clear and finance JP Morgan's [sic] positions, trading volume, slam the close trades, etc." and by "secretly execut[ing] and carr[ying] a substantial portion of Amaranth's ICE natural gas positions in order to evade CFTC and NYMEX scrutiny." (Opp. Br. at 61-62.) Again, when distilled, these allegations merely assert that JPMFI acted as Amaranth's clearing broker. As such, the allegations are insufficient to establish that JPMorgan committed an overt act in furtherance of Amaranth's manipulation.

Plaintiffs also fail to provide any support for their conclusory allegations that JPMorgan "finance[d] Amaranth's natural gas trading" and enabled Amaranth to continue its manipulation using "money borrowed on margin from JPMorgan at a time when the JPMorgan Defendants knew of and facilitated such manipulative scheme." (Compl. ¶ 217.) The Complaint is devoid of any factual allegations sufficient to establish the existence, let alone the magnitude, of these purported loans. (JPM Br. at 19-20.)

Although Plaintiffs reassert that JPMFI "secretly executed and carried a substantial portion of Amaranth's ICE natural gas positions," (Opp. Br. at 61), plaintiffs are still unable to point to any facts indicating that JPMFI did anything other than provide "routine professional services." (JPM Br. at 20-21.) Indeed, plaintiffs now argue that JPMorgan allegedly assisted in the enterprise by "us[ing] its unprecedented knowledge **not** to stop the

---

[4] *See, e.g., Weber v. E.D. & F. Man, Int'l.*, No. 97 C. 7518, 1999 WL 35326, at *4 (N.D. Ill. Jan. 13, 1999) (dismissing CEA aiding and abetting claim where plaintiffs failed to bridge the gap between knowledge and intent); *see also Damato*, 153 F.3d at 472 n.10.

manipulation." (Opp. Br. at 61.) The law, however, is clear that a *failure* to act cannot constitute an affirmative or overt act under the CEA. *See e.g., Weber*, 1999 WL 35326, at *4.

## II.
## PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST JPMORGAN

Plaintiffs are unable to identify any quasi-contractual relationship with JPMorgan or identify any possessory interest they had in the "property" JPMorgan allegedly received unjustly. Plaintiffs fail to cite to a single case in which a claim of unjust enrichment survived where there was an absence of such a relationship or where a plaintiff failed to assert a possessory interest. (Opp. Br. at 66-68.) Plaintiffs' unjust enrichment claim therefore fails as a matter of law.

## III.
## PLAINTIFFS FAIL TO PLEAD ANY ALLEGATIONS SPECIFIC TO JPMC OR JPMCB

Plaintiffs do not dispute that they "attempt to lump together" the JPMorgan defendants, but claim they are entitled to do so under Rule 8(a). (Opp. Br. at 62.) Not so. Whether analyzed under Rule 8(a) or 9(b), it is still incumbent upon plaintiffs to plead facts establishing a basis for relief against each defendant. *See Rudd* v. *KeyBank, N.A.*, No. C2-05-CV-0523, 2006 WL 212096, at *3 (S.D. Ohio Jan. 25, 2006) (dismissing complaint pursuant to Rule 8(a) where plaintiffs made identical allegations against all of the defendants because, among other things, allegations failed to give fair notice to defendants). Plaintiffs' failure to plead any factual allegations against JPMC or JPMCB requires dismissal of both entities.

### Conclusion

For the foregoing reasons, we respectfully submit that the claims against JPMorgan should be dismissed in their entirety and with prejudice.

Dated: New York, New York
      July 14, 2008

                              PAUL, WEISS, RIFKIND, WHARTON &
                              GARRISON LLP

                              By: /s/ Mark F. Pomerantz
                                  Mark F. Pomerantz
                                  (mpomerantz@paulweiss.com)
                                  Eric S. Goldstein
                                  (egoldstein@paulweiss.com)
                                  Daniel J. Toal
                                  (dtoal@paulweiss.com)

                                  1285 Avenue of the Americas
                                  New York, NY 10019-6064
                                  (212) 373-3000
                                  (212) 757-3990

                                *Attorneys for Defendants JPMorgan Chase & Co.*
                                *JPMorgan Chase Bank, N.A. and J.P. Morgan*
                                *Futures, Inc.*