UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. 07 civ. 6377 (SAS) |

**COMBINED REPLY MEMORANDUM OF LAW OF DEFENDANTS
TFS ENERGY FUTURES, LLC, ALX ENERGY, INC., AND JAMES DELUCIA IN
SUPPORT OF THEIR RESPECTIVE APRIL 28, 2008 MOTIONS TO DISMISS**


                                      Karl Geercken (KG-5897)
                                    Craig Carpenito (CC-1686)
                                    Amber Wessels (AW-2322)
                                    ALSTON & BIRD LLP
                                    90 Park Avenue
                                    New York, New York 10016
                                    Tel: (212) 210-9400
                                    Fax: (212) 210-9444

                                    *Attorneys for Defendant TFS Energy
                                    Futures, LLC*


                                    Steven R. Goldberg (SG-2825)
                                    One North End Avenue, Suite 1107
                                    World Financial Center
                                    New York, New York 10282
                                    Tel: (212) 845-5100
                                    Fax: (212) 845-5102

                                    *Attorney for Defendants ALX and
                                    DeLucia*

**PRELIMINARY STATEMENT**

Plaintiffs do not contest most of the arguments made in the Floor Brokers' joint brief in support of their motions to dismiss.[1] Instead, they merely restate their conclusory allegations and seek to rescue their deficient claims by contending that the Floor Brokers had a duty to investigate simple orders to sell contracts. New York courts do not impose that duty and have expressly refrained from doing so.

**PLAINTIFFS' ALLEGATIONS AGAINST TFS**

As the Floor Brokers' opening brief pointed out, the 78-page, 271-paragraph Complaint only directly references TFS three times – each time in a definitional section of the Complaint. The remainder of the Complaint only includes general and undifferentiated allegations against the collective Floor Brokers. Plaintiffs' 71-page opposition brief similarly ignores TFS: it refers to TFS only *once*. And that lone reference is to a single paragraph in the Federal Energy Regulatory Commission's Order to Show Cause and Notice of Proposed Penalties against Amaranth (the "FERC OSC"). **Significantly, after thorough investigation, neither FERC nor, separately, the CFTC ever charged TFS with any wrongdoing.** Indeed, the FERC OSC's sole mention of TFS is in paragraph 94, which merely alleges that Amaranth placed separate orders with three floor Brokers – TFS, ALX, and Gotham – to sell contracts in the last eight minutes of trading on April 26, 2006. Moreover, a closer look at the paragraph and its footnotes reveals that TFS sold less than one-sixth – 500 out of 3,044 – of the contracts that Amaranth sold on that day. FERC OSC ¶94, fn 152. Plaintiffs' claim against TFS appears to be based on *one* order to sell *a small portion* of Amaranth's contracts at the end of *one* trading day.

---

[1] Capitalized terms not defined herein are defined in the Floor Brokers' principal brief dated June 23, 2008.

As a matter of law, this level of activity cannot meet the standard necessary to support a claim for aiding and abetting manipulation. *SEC v. Masri*, 523 F. Supp. 2d 361, 375 (S.D.N.Y. 2007).

## PLAINTIFFS' ALLEGATIONS AGAINST ALX & DELUCIA

The insufficiency of Plaintiffs' "vinnie" arguments (para. 112 of the complaint) was the centerpiece of ALX'S motion to dismiss. Since Plaintiffs have failed to explain the relevance of that innocuous email to the Court, the action must be dismissed against ALX. It is more than telling that Plaintiffs have simply ignored it in their brief.

Even had Plaintiffs offered sufficient evidence under Rules 8 or 9 to state a claim against ALX Energy, LLC, no effort has been made by Plaintiffs in their opposition brief to justify claims against defendant, James DeLucia. Plaintiffs' brief mentions him only twice[2] in footnotes – the first time to introduce him (Pltf's brief, p. 1, fn. 3), and the second time to state another floor broker's opinion[3] that he was "executing Amaranth's order in such a way that it was clear DeLucia was 'more concerned with executing trades than with obtaining good prices.' FERC OSC at ¶ 69." Although relying on the FERC OSC for the allegation, Plaintiffs do not address the fact that neither the FERC (nor the CFTC) thought it fitting to name DeLucia or any floor broker in their actions, the very actions upon which Plaintiffs expressly base their claims.

There is no argument or allegation to suggest DeLucia's knowledge of manipulation or intention to aid and abet any scheme. It merely shows a broker under pressure in the last half hour of the settlement day doing his best to execute a client's order and avoid delivery.

As no factual argument was made in the Complaint which might raise a reasonable inference of intent or knowledge of any attempted or actual manipulation on his part, and no

---

[2] This is not surprising as the complaint only mentioned him four times (paras. 8, 35, 114 and 123). Presuming, for the sake of this motion, the truth of his being Amaranth's chief floor broker at NYMEX, it would have been odd if he had not been given some of the orders to fill.

[3] Plaintiffs incorrectly make one participant into "participants" (pltf's brief, p. 64, fn. 52).

allegation was made which might tend to raise an inference as to unjust enrichment on his part either, there was plainly little Plaintiffs could say about him.[4]

## ARGUMENT

I. **Plaintiffs Concede That the Floor Brokers Knew Nothing About Amaranth's Non-NYMEX Positions.**

As the Floor Brokers argued in their opening brief, the Complaint is devoid of any allegation that the Floor Brokers knew of Amaranth's positions with ICE or other OTC markets (which is critical to the alleged scheme), or even knew of orders Amaranth placed with other NYMEX floor brokers, OTC trading desks, or on other exchanges. *See* Floor Brokers' opening brief at pp. 11-12 and 18-21. Plaintiffs not only fail to rebut this point, they even admit that "JPMFI *alone* had full access to all of Amaranth's natural gas trading positions" and that "[o]utside of Amaranth, *only the JPM Defendants* were aware of" Amaranth's holdings on other exchanges and Amaranth's manipulation of the NYMEX prices to benefit these other holdings. Plaintiffs' Brief, pp. 17-18 (emphasis added). The Floor Brokers simply cannot be held liable for aiding and abetting Amaranth's complex manipulative scheme where Plaintiffs have not alleged knowledge by the Floor Brokers of Amaranth's other positions and its detailed strategies. *See* Floor Brokers' opening brief at pp. 11-12 and 18-21.[5]

II. **The Floor Brokers Had No Duty to Question the End of the Day Trades**

As a matter of law, Floor Brokers have no duty to monitor or question their customers regarding their trading orders, absent knowledge of manipulation by their customers. (*See* cases

---

[4] Plaintiffs do not and cannot rely on the allegation merely that DeLucia is "chairman or chief executive officer of ALX"). *Meyer v. Holley*, 537 U.S. 280, 286 (2003).

[5] Plaintiffs, as expected, have argued vociferously that Rule 8(a)'s pleading standards apply to their claims. The Floor Brokers strongly disagree. *See* Floor Broker's opening brief, pages 13-17. Under any pleading standard, Plaintiffs' aiding and abetting allegations against the Floor Brokers are grossly deficient.

3

collected at pages 12-13 of the Floor Brokers' principal brief.) Tellingly, Plaintiffs have not attempted to discuss or distinguish *even one* of these many cases. Instead, Plaintiffs' have cited to inapposite cases where brokers: 1) knew of the manipulative conduct because of the patently fraudulent nature of the order; and 2) actively participated in manipulation. Plaintiffs cannot salvage their case against Floor Brokers by creating a non-existent duty to investigate trades based solely on size and/or timing.[6]

Significantly, Plaintiffs appear to have overlooked the important holding of *SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007) – one of the very cases cited in Plaintiffs' brief – where the court rejected liability for a broker in a factual situation closely analogous to Plaintiffs' claims against the Floor Brokers. The court there examined alleged "marking the close" trading of securities, and held that knowledge of the manipulation could not be imputed to the broker based solely on the broker's placing of the orders at issue, even where there was a very large order for a thinly traded stock in the final ten minutes of the trading day. 523 F. Supp. 2d at 375. The court concluded that **"to hold otherwise would be to put brokers at risk of liability for market manipulation every time they executed a sizeable order in a thinly traded stock at the end of the day."** *Id.* (emphasis added). *Masri*, in fact, in a tightly reasoned opinion, found that securities trading "is heaviest just before the market closes," Moreover, *Masri*, as a

---

[6]Commodities trading is dependent upon speed of transaction. In general, if floor brokers had to employ lawyers on the floor and had to investigate each transaction, the transactions would be delayed, thereby depriving the client of the very speed they look for in using floor brokers, incurring the attendant costs and adversely affecting the liquidity of the markets – as markets will move while this so-called investigation has to be done for each transaction.

4

matter of law, held that end-of-day transactions, by themselves, were not actionable as market manipulation.[7]

Thus, Plaintiffs seek precisely the same result that the *Masri* court condemned. They are seeking to hold TFS liable based on a non-existent duty to question a single sell order placed on a single day that constituted less than 1/6 of the contracts sold by Amaranth during that day. Floor brokers who simply execute orders to buy or sell shares could not operate if the courts imposed such a duty to question legal, legitimate orders during the busiest time of the day. Similarly, Plaintiffs seek to hold in the ALX Defendants who, on April 26, 2006, at eight minutes prior to the close were simply given a market order without any instructions to delay execution. What possible notice could this give to the ALX Defendants other than that its client needed to get out of its position before delivery was required. *See* CFTC Complaint in Amaranth I at p.14, and FERC OSC at para. 94.

The sole case on which Plaintiffs hang their hat in an attempt to impose a duty on Floor Brokers to investigate is an inapposite one involving illegal wash trades that are suspicious on their face. *In re Three Eight Corp.*, CFTC No. 88-33, Comm. Fut. L. Rep. P 25,749, 1993 WL 212489 (C.F.T.C. June 16, 1993), an enforcement proceeding regarding paired or matched transactions (also known as "wash sales"), includes dicta regarding the floor brokers' duties in

---

[7] It must also be noted that marking the close in securities markets may occur every day because the price of the securities is set every day; because prices are set once a month in the commodities market, marking the close can only happen once a month. The difference is important because even when the SEC's settlement orders (on consent and without Article III court review) held marking the close sufficient to find manipulation, they did so when it was done day after day for weeks or months. *See* cases cited in *SEC v. Masri*, 523 F. Supp. 2d at p. 370.

regards to wash sales.[8] Because the illegality of a wash trade is obvious from the content of the order that the floor broker receives, courts charge the broker with knowledge of the manipulation. *Id.* No such trades have been alleged here.

The remaining cases that Plaintiffs cite are similarly inapposite, as: 1) the floor brokers at issue in those cases traded for their own account and actively contributed to the manipulative scheme for their own personal gain; and 2) the cases are disciplinary actions rather than civil litigation. *In re DiPlacido*, CFTC No. 01-23, Comm. Fut. L. Rep. P 29866, 2004 WL 2036910 at **4-6 (C.F.T.C. Sept. 14, 2004) (disciplining floor broker who actively engaged in planning the manipulation, and noting his overwhelming personal misconduct, including "repeatedly violat[ing] bids and offers and execut[ing] transactions outside of the prevailing prices"[9]; *In re Henner,* 30 Agric. Dec. 1151 (1961) (disciplining floor broker who traded for his own account and manipulated the price of a commodity for his own benefit). Here, in contrast, while the CFTC's exhaustive investigation into the Amaranth trades has resulted in a civil litigation, the litigation does *not* include the floor brokers, and the CFTC has **not** brought any disciplinary actions against either of the Floor Brokers in connection with the Amaranth trades.[10]

---

[8] Wash sales and matched orders are types of fictitious sales that are expressly illegal under 15 U.S.C. §78i(a)(1). Each involves an order to buy and sell identical quantities of securities at nearly the same time, and the manipulative intent of each transaction is readily apparent from the structure of the order. *SEC v. Masri*, 523 F. Supp. 2d at 366-67, *In re Three Eight Corp.* 1993 WL 212489.

[9] *DiPlacido* is important for another reason, which Plaintiffs have avoided discussing. The court therein specifically makes note of the fact that "[i]n comparison to other NYMEX energy futures contracts, such as natural gas or crude oil, the market for PV and COB futures contracts in 1998 was small and illiquid." Thus, while DiPlacido, a trader, through gross misconduct, was able to move the thin markets he traded in, in contrast the Natural Gas market is large and liquid, making Plaintiffs' arguments even less plausible.

[10] It is also relevant that the Complaint also does not allege any violations of NYMEX rules by the Floor Brokers.

### III.   Plaintiffs' Unjust Enrichment Claim Fails Because There Is No Nexus Between the Putative Class and the Floor Brokers and Because Plaintiffs Have Not Stated Facts Alleging the Elements of the Claim.

Plaintiffs' citation to nineteenth and early twentieth century cases and articles notwithstanding, presently "[u]njust enrichment under New York Law falls under the umbrella of quasi-contract" *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298, 300 (S.D.N.Y. 1999).  New York courts therefore must dismiss unjust enrichment cases for failure to state a claim where the complaint does not allege a contractual or quasi-contractual relationship between plaintiffs and defendants. *Reading International, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003); *Redtail Leasing, Inc. v. Belezza,* No. 95-cv-5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997); *In re Motel 6 Sec. Litig.*, Nos. 93-cv-2183 and 93-cv-2866, 1997 WL 154011, at *7 (S.D.N.Y. April 2, 1997).

Plaintiffs contend that they have cured this deficiency by alleging that commodities trading is a zero-sum endeavor, pursuant to which "defendants'" realized gains are equal to the Plaintiffs' losses.  While this argument may be applicable to Amaranth, it is certainly not the case with respect to the Floor Brokers.  The Floor Brokers earn small commissions on each trade pursuant to a set fee schedule which has no relationship whatsoever to gains or losses.  Accordingly, payments to the Floor Brokers have no link whatsoever to any losses that may have been suffered by Plaintiffs, as alleged here.  Plaintiffs' unjust enrichment claims against the Floor Brokers are therefore deficient and should be dismissed.  *See* Floor Brokers main brief at pages 20-21.

### CONCLUSION

Accordingly, all of the Plaintiffs' claims against the Floor Brokers should be dismissed in their entirety.  Further, because the problems with the Complaint are substantive, as

demonstrated above and in the Floor Brokers' prior submission, any additional pleading would be futile. Therefore, the Complaint should be dismissed without leave to replead.

Dated: July 14, 2008
     New York, New York

          Respectfully submitted,
          ALSTON & BIRD, LLP


          By: /s/ Karl Geercken_____
          Karl Geercken (KG-5897)
          Craig Carpenito (CC-1686)
          Amber Wessels (AW-2322)
          90 Park Avenue
          New York, NY 10016
          (212) 210-9400
          (212) 210-9444 (fax)

          *Attorneys for Defendant TFS Energy Futures, LLC*


          /s/ Steven R. Goldberg_____
          Steven R. Goldberg (SG-2825)
          One North End Avenue, Suite 1107
          World Financial Center
          New York, New York 10282
          (212) 845-5100

          *Attorney for Defendants ALX and DeLucia*

LEGAL02/30845501v1