UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
:
IN RE: AMARANTH NATURAL GAS       :
COMMODITIES LITIGATION            :   ECF Case
                                  :
This Document Relates to:         :   Case No.: 07 Civ. 6377 (SAS)
                                  :
ALL ACTIONS                       :
                                  :
                                  :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
BRIAN HUNTER'S AND MATTHEW DONOHOE'S
MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT**

| **KOBRE & KIM LLP** | **SIMPSON THACHER & BARTLETT LLP** |
|---|---|
| Michael S. Kim | Mark J. Stein |
| Matthew I. Menchel | Joshua A. Levine |
| 800 Third Avenue | Brijesh P. Dave |
| New York, New York 10022 | 425 Lexington Avenue |
| Telephone: 212.488.1200 | New York, New York 10017-3954 |
| Facsimile: 212.488.1220 | Telephone: (212) 455-2000 |
|  | Facsimile: (212) 455-2502 |
| *Attorneys for Brian Hunter* | *Attorneys for Matthew Donohoe* |

Defendants Brian Hunter and Matthew Donohoe respectfully submit this Reply Memorandum of Law in further support of their Memorandum of Law in support of their Motion to Dismiss ("Memorandum") Plaintiffs' Complaint ("the Complaint").

## ARGUMENT

**I.   PLAINTIFFS FAIL TO ALLEGE MANIPULATIVE INTENT AS TO MR. HUNTER**

To prove manipulative intent under Fed R. Civ. P. 9(b), Plaintiffs must allege either (1) motive and opportunity to commit the manipulation or (2) strong circumstantial evidence of the requisite state of mind. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290-291 (2d Cir. 2006). Plaintiffs' Complaint fails to sufficiently allege either requirement.[1]

**A.   Plaintiffs Do Not Allege Motive As to Mr. Hunter.**

Plaintiffs do not deny that they fail to allege that Mr. Hunter (or Mr. Donohoe for that matter) benefited from the alleged manipulation in "some concrete and personal way." *Novak v. Kansas*, 216 F.3d 300, 307 (2d Cir. 2000); s*ee* Opp. at 41-42. Instead, they cite *In re Hohenberg Bros. Co.,* 1977 WL 13562 (C.F.T.C.) and *Cargill, Inc. v. Hardin*, 452, F.2d 1154 (8th Cir. 1971) for the proposition that a 'profit motive' is not required. Opp. at 42. *Hohenberg,* however, did not analyze whether motive was one of the two means of inferring specific intent under 9(b); rather, the court addressed whether a profit motive was itself an *element* of the manipulation claim. *Hohenberg,* 1977 WL 13562 at *8. *Cargill* is equally unavailing because it focuses not on profit *motive*, but on whether the defendant actually had to *make* a profit. 452, F.2d at 1163.

**B.   Plaintiffs Fail to Allege Facts Constituting Strong Circumstantial Evidence of Intent as to Mr. Hunter.**

Plaintiffs' Opposition utterly fails to address how, given the "plausible nonculpable

---

[1]   As detailed in the Memorandum, Plaintiffs have failed to allege manipulative conduct as to Mr. Hunter.

explanations" offered by Mr. Hunter, his conduct gives rise to a "strong inference" of manipulative intent under the standard enunciated by the Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* – U.S. –, 127 S.Ct. 2499, 2510 (2007). In determining whether allegations give rise to a "strong inference," *Tellabs* directs courts to engage in a "comparative inquiry" with the opposing inference.[2] 127 S.Ct. at 2509. For an inference to be strong, "a reasonable person [must] deem [it] cogent and ***at least as compelling*** as any opposing inference one could draw from the facts alleged." *ATSI Communications v. Shaar, 493 F.3d 87, 99* (2d Cir. 2007) (*quoting Tellabs,* 127 S.Ct. at 2510) (emphasis in the original).

Plaintiffs make no effort – beyond merely alleging in a conclusory manner that Mr. Hunter had manipulative intent – to counter ***any*** of Mr. Hunter's reasonable explanations for the IMs and trades. Indeed, as discussed more fully in the Memorandum, when the IMs are read in context and in their entirety – rather than selectively edited and cited piecemeal – they do not give rise to any inference of intent, let alone a "strong" one. Plaintiffs' inferences – created as they are mostly from out-of-context and partial quotes of IMs – are not "cogent and at least as compelling" as Mr. Hunter's. *See ATSI Communications*, 493 F.3d at 99.

## II. THE COMPLAINT FAILS TO ALLEGE INTENT OR CONDUCT AS TO MR. DONOHOE

The Memorandum laid bare the Complaint's fatal flaws as to Mr. Donohoe: (1) the failure to allege that Mr. Donohoe even ***knew*** about the purported manipulative scheme and (2) the failure to allege a ***single*** manipulative act by Mr. Donohoe. The Opposition does nothing to address these fatal defects. Instead, Plaintiffs likely – and mistakenly – hope that the Court will

---

[2] While the Supreme Court was specifically addressing the "strong inference" standard of the PSLRA, the standard applies equally to the "strong inference" standard of Rule 9(b). *S.E.C. v. Collins & Aikman Corp.*, 524 F.Supp.2d 477 (S.D.N.Y. 2007) (the PSLRA's "strong inference" requirement for pleading scienter "also applies to all actions brought in this Circuit that are governed by Rule 9(b)").

overlook the Complaint's glaring deficiencies due to the sheer volume of paper filed in this matter. The Court should not countenance Plaintiffs' attempt at obfuscation as it would reward them for their impermissible group pleading tactics and inflict an injustice on Mr. Donohoe.

> A. **There Is Not a *Single* Allegation in the Complaint that Mr. Donohoe Knew of the Alleged Manipulation Scheme Nor Is There A Single Allegation From Which Manipulative Intent Can Be Inferred**

As detailed in the Memorandum, there is not a ***single*** allegation that Mr. Donohoe knew of the purported market manipulation scheme. Plaintiffs do not dispute this in the Opposition. Rather, they argue that manipulative intent can be inferred from conduct. Even assuming that to be true, their claims against Mr. Donohoe should still be dismissed because ***they have not pled a single allegation*** that would support an inference of manipulative intent. Rather, all they have alleged is that Mr. Donohoe performed his routine duties as an execution trader, *i.e.*, that he executed trades per a trading strategy devised by Mr. Hunter.[3] Simply doing one's job, without more, does not constitute a violation of the CEA.[4]

The cases Plaintiffs cite simply serve to drive home this point. In *Ellison v. American Image Motor Co.*, 36 F. Supp. 2d 628, 643 (S.D.N.Y. 1999), for instance, the court dismissed the

---

[3] *See e.g.*, Compl. ¶ 106 ("On February 23, 2006 . . . Defendant Hunter told Defendant Donohoe in an IM: 'make sure we have lots of futures to sell MoC tomorrow.'[3] Defendant Hunter thus *instructed* Defendant Donohoe to buy a large number of March 2006 contracts before the close the next day . . ."). In addition, as discussed fully in the Memorandum, the IMs in which Messrs. Hunter and Donohoe participated show nothing but typical and legitimate trading discussions between them; there is not a single suggestion in this IM conversation, or any other, that Hunter instructed Donohoe to sell the futures at less than prevailing market price on NYMEX.

[4] *See Marchese v. Nelson*, 809 F. Supp. 880, 889 (D. Utah 1993) (finding that defendant did not have an intent to defraud where he "closely followed his superior's advice when conveying the value of the account"); *In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 782 F.Supp. 1382, 1390 (D. Ariz. 1991) (finding that defendant could not be liable even for aiding and abetting an alleged 10b-5 violation where "[t]he entire record shows only that [the defendant] followed operational instructions.").

3

fraud claim against one set of defendants for: (i) insufficiently alleging scienter, (ii) failing to allege any manipulative act on their part, and (iii) aggregating the defendants "without differentiating what conduct is attributable to each." 36 F. Supp. 2d at 639. These are precisely the deficiencies that warrant the dismissal of Plaintiffs' claims here. Furthermore, the court's decision in *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107, 111 (2d Cir. 1998) is consistent with this conclusion because it was based on the premise that the defendant's intent was adequately pleaded. *Id.*[5] [6]

### B. There Is Not A *Single* Allegation of Manipulative Conduct

Similarly, the Plaintiffs have not alleged that Mr. Donohoe committed any manipulative acts. Instead, they have merely alleged that as an execution trader Mr. Donohoe executed trades. For the reasons discussed above, this is insufficient.

### III. PLAINTIFFS' ANCILLARY CLAIMS SHOULD DISMISSED

Plaintiffs' ancillary liability claims are equally meritless.

- *Aiding and abetting:* The two lines Plaintiffs devote to this purported claim in no way explain how it can be sustained when the Complaint fails to plead that either Messrs. Hunter or Donohoe had the requisite intent or performed the requisite conduct.

- *Unjust Enrichment*: It is well settled that a claim for unjust enrichment requires a relationship between Plaintiff and Defendant. Similarly well settled is the proposition that the purportedly ill-gotten benefit be specific and direct. Plaintiffs' contrived arguments of "zero sum endeveavor[s]," Opp. 67, and group

---

[5] *Kohen v. Pacific Inv. Mgmt. Co., LLC*, 244 F.R.D. 469 (N.D. Ill. 2007) and *In re Indiana Farm Bureau Cooperative Assoc. Inc.*, CFTC No. 75-14, 1982 WL 30249 (1982) similarly are distinguishable because the "conduct of the accused" that formed part of the "totality of the circumstances" was indisputably knowing conduct in furtherance of a manipulative scheme. In contrast, Plaintiffs here have only alleged that Mr. Donohoe performed his routine duties as an execution trader, nothing more. This is not indisputably knowing conduct.

[6] As detailed in the Memorandum, Plaintiffs have failed to allege motive and opportunity or strong circumstantial evidence of the requisite state of mind.

enrichment are unsupported by the law and unavailing.

- *Agency and Control Claims*: With respect to Mr. Hunter, Plaintiffs concede that the Complaint alleges no facts other than that Mr. Donohoe "effected" Mr. Hunter's trading strategies on the March expiry." [7] Opp. at 51, 54. As to Mr. Donohoe, in support of their agency, *i.e.*, respondeat superior claim, Plaintiffs concede that Mr. Donohoe was an agent. A plain reading of the relevant statute indicates it covers principals, not agents. Similarly, with respect to the control person claim, the Complaint and Opposition make clear that Mr. Donohoe was an agent, and it is axiomatic that an agent cannot control its principal.[8]

## IV. THE COMPLAINT IS SO DEVOID OF WELL PLEADED ALLEGATIONS OF MANIPULATIVE CONDUCT AND MANIPULATIVE INTENT THAT IT IS DOOMED TO FAIL UNDER EITHER RULE 9(B) OR RULE 8

As detailed in the Memorandum and in the Memoranda and Reply Memoranda of Co-Defendants, Rule 9(b) should apply to the instant matter. However, even if Rule 8 applied, the Complaint should be dismissed as to Messrs. Donohoe and Hunter. With respect to Mr. Hunter, all Plaintiffs have alleged is that Amaranth took large positions and made large trades. As discussed more fully in the Memorandum, this is not manipulative conduct. Moreover, Plaintiffs fail to sufficiently allege specific intent under Rule 8 as they fail to address (or even mention) why, when the purported manipulative scheme spanned seven months, the only specific factual allegations arguably relating to Mr. Hunter's intent cover only two settlement periods. Indeed, if one were to adopt the Plaintiffs' theory as to Mr. Hunter's intent, then any attempt to sell a large number of contracts in a given settlement period—regardless of the existence of

---

[7] To the extent the secondary liability claims against Mr. Hunter refer to the alleged manipulation of the March and May contracts, as discussed in detail in the Memorandum, the allegations fail to establish that Hunter had the requisite intent and fail to state a claim.

[8] The Complaint at Paragraph 31 reads "Donohoe acted as Defendant Hunter's agent, and as an agent of Amaranth . . . ." Plaintiffs' Opposition in this regard states that Mr. Donohoe was the execution trader who effected Mr. Hunter's trading strategies which were devised under Mr. Maounis's supervision. This further highlights the fact that Mr. Donohoe was an agent, not a control person

5

legitimate business reasons—leads to an inference of manipulative intent for trading activity spanning many months.

With respect to Mr. Donohoe, the Complaint does not contain a *single* allegation from which intent can be inferred nor does it contain a *single* allegation of manipulative conduct. A Complaint so barren of well-pled allegations must be dismissed under any standard.[9]

V.   **ARGUMENTS IN AMARANTH ADVISORS L.L.C., ET AL.'S REPLY MEMORANDUM OF LAW ARE INCORPORATED BY REFERENCE**

In addition to the arguments set forth above, Plaintiffs' purported claims also fail for the reasons put forth in Sections I, II, and III of Advisors L.L.C., at al.'s reply memorandum of law in further support of their motion to dismiss, which are incorporated herein by reference.

VI.   **PLAINTIFFS FAIL TO ESTABLISH THIS COURT HAS PERSONAL JURISDICTION OVER MR. HUNTER**

Plaintiffs do not allege facts sufficient to establish this Court's personal jurisdiction over Mr. Hunter. Plaintiffs do not dispute that their Complaint neither alleges that Mr. Hunter: (1) committed a single act within the United States; nor (2) was present here at any time during the class period. They simply rely on Judge Chin's recent decision in *CFTC v. Amaranth Advisors, LLC., et al.,* – F.Supp.2d –, 2008 WL 2123323 (S.D.N.Y. May 21, 2008) ("*CFTC Case*")[10] for

---

[9]   *See 380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199 (S.D.N.Y. 2008) (inadequate pleading of scienter leads to dismissal of security action as to two defendants under Rule 8(a)), *Harris v. Finch, Pruyn & Co.*, 2008 U.S. Dist. LEXIS 39033 (N.D.N.Y. 2008) (dismissing an ERISA action under Rule 8(a) where defendant is insufficiently mentioned in the complaint).

[10]  Mr. Hunter's original Memorandum was filed on April 28, 2008, weeks before Judge Chin issued his opinion on May 21, 2008. When consolidating Mr. Hunter's original memorandum with Mr. Donohoe's, Mr. Hunter inadvertently failed to address the recently decided CFTC Case which was not, contrary to Plaintiffs' accusation, intentional. In any event, as discussed *infra*, the CFTC case is not applicable. Moreover, Plaintiffs' claim that the CFTC Case estopps Mr. Hunter from making a claim in this case is unsupported by the very case they cite, *In re Ski Train in Kaprun Austria. See* 499. F. Supp. 2d 437, 444 (S.D.N.Y. 2007) (chiding plaintiffs for claiming that a previous

the proposition that this Court has personal jurisdiction over Mr. Hunter. Plaintiffs' reliance on the CFTC Case is misplaced; its holding is inapplicable to the claims alleged here, and, moreover, the case was wrongly decided.

The claims in the CFTC Case concerned a very narrow scope of conduct, namely that Mr. Hunter and others attempted to depress the NYMEX settlement price by selling large amounts of NYMEX future contracts during the settlement period for the months of February and April of 2006. Unlike those claims, however, the bulk of Plaintiffs' claims arise from trades in "net futures equivalents," a category defined by Plaintiffs to include financial instruments traded electronically on a non-U.S. exchange by participants located anywhere in the world. The Court in the CFTC Case did not find Mr. Hunter's personal jurisdiction based on this type of extra-territorial conduct. Plaintiffs do not dispute (because they cannot) that they have connected Mr. Hunter's trades and positions in "net futures equivalents" to the United States.

Moreover, the attempted manipulation of NYMEX settlement prices—the only conduct alleged and addressed by the Court in the CFTC Case—cannot form the basis of jurisdiction over Mr. Hunter in this case because the CEA does not provide a *private* cause of action based on the manipulation of the NYMEX settlement price.[11] Thus, the holding in the CFTC Case is not applicable to the action brought before this Court. Even if it were, Judge Chin's holding concerning Mr. Hunter's personal jurisdiction is, respectfully, incorrect as it is based on a flawed analysis. The CEA provides for nationwide service of process. 7 U.S.C. §13a-1(e). While

---

decision by the same court denying a 12(b)(2) personal jurisdiction motion was "virtually identical" and noting that plaintiffs' claim was "just as "disingenuous as it was unavailing for it glosses over a stark and critical distinction" that the plaintiffs were not the same in both cases).

[11]   See Amaranth Advisors L.L.C., et al.'s memorandum of law in support of its motion to dismiss pages 8-9 for further discussion on why the CEA does not provide a private cause of action.

Judge Chin noted that the law of the forum does not apply when a "federal statute explicitly provides for nationwide service of process," *Amaranth Advisors*, 2008 WL 2123323 *5, he nevertheless mistakenly applied New York's long arm-statute, N.Y. C.P.L.R. § 302(a), and its related case law.  Judge Chin should have assessed whether the Constitutional requirements of due process were met.  *Metropolitan Life Ins. Co. v. Robertson-Coco Corp.,* 84 F.3d 560, 568 (2nd Cir. 1996).  Had that analysis been done, we respectfully submit that there is not "a significant causal relation between [Mr. Hunter's] jurisdictional contacts and [the CFTC's] cause of action" to satisfy due process requirements.  *See e.g.*, *Huang v. Sentinel Go's Sec.*, 657 F. Supp. 485, 488 (S.D.N.Y. 1987).

Dated:  New York, New York

July 14, 2008

| KOBRE & KIM LLP | SIMPSON THACHER & BARTLETT LLP |
|---|---|
| By:  /s/ Matthew I. Menchel_____ | By:  /s/ Mark J. Stein_____ |
| Michael S. Kim | Mark J. Stein |
| Matthew I. Menchel | Joshua A. Levine |
| Leanne A. Bortner | Brijesh P. Dave |
| 800 Third Avenue | 425 Lexington Avenue |
| New York, New York 10022 | New York, N.Y. 10017-3954 |
| Tel: 212.488.1200 | Telephone: (212) 455-2000 |
| Fax: 212.488.1220 | Facsimile:  (212) 455-2502 |
| *Attorneys for Brian Hunter* | *Attorneys for Matthew Donohoe* |

8