UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN RE: AMARANTH NATURAL GAS
COMMODITIES LITIGATION

This document relates to All Actions.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:

:

:

:

:

Master File No: 07 Civ. 6377 (SAS)

ECF Case

Oral Argument Requested

Original Filed Under Seal Pursuant
To Protective Order Entered
8/13/2008

## [REDACTED] DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

David E. Mollón
Steven M. Schwartz
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700

Stephen J. Senderowitz
Kristen V. Grisius
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants
Amaranth Advisors L.L.C., Amaranth Advisors
(Calgary) ULC, Amaranth Partners LLC and
Amaranth Capital Partners LLC*

Peter C. Neger
Theo J. Robins
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000

Geoffrey F. Aronow
BINGHAM McCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000

*Attorneys for Defendant Nicholas Maounis*

Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendant Amaranth LLC*

Michael S. Kim
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
(212) 488-1200

*Attorneys for Defendant Brian Hunter*

Mark J. Stein
Joshua A. Levine
Brijesh P. Dave
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

*Attorneys for Defendant Matthew Donohoe*

Steven R. Goldberg
One North End Avenue, Suite 1201
New York, NY 10282
(212) 845-5100

*Attorney for Defendants
ALX Energy, Inc. and James DeLucia*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Procedural History and Factual Background .......................................................... 4

    A.    Procedural History ..................................................................................... 4

    B.    Factual Background .................................................................................... 6

Argument ................................................................................................................. 7

    I.    GENERAL STANDARDS FOR CLASS CERTIFICATION
        UNDER RULE 23 ....................................................................................... 7

    II.    PLAINTIFFS' PROPOSED CLASS DOES NOT MATCH
        THEIR MANIPULATION THEORIES AND, THUS,
        IT SHOULD NOT BE CERTIFIED .......................................................... 10

    III.    PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY OR
        ADEQUACY REQUIREMENTS FOR CLASS CERTIFICATION ................. 11

        A.    Typicality ....................................................................................... 11

        B.    Adequacy ........................................................................................ 18

    IV.    PLAINTIFFS HAVE NOT ESTABLISHED PREDOMINANCE .................... 21

Conclusion ............................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................................7, 11, 21

*Angel Music, Inc. v. ABC Sports, Inc.,*
  112 F.R.D. 70 (S.D.N.Y. 1986)................................................................................ 14

*Centurions v. Ferruzzi Trading Int'l, S.A.*
  No. 89 C 7009, 1994 WL 114860 (N.D. Ill. Jan. 7, 1993) ...................... 11, 19, 20, 21

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007).......................................................................................... 14

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006)....................................................................................12, 15

*Fogarazzo v. Lehman Bros., Inc.,*
  No. 03 Civ. 5194, 2009 WL 2390244 (S.D.N.Y. Aug. 4, 2009)........................ 12, 21, 23, 24

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982)...................................................................................................... 8

*In re Alstom SA Sec. Litig.,*
  253 F.R.D. 266 (S.D.N.Y. 2008)................................................................................ 14

*In re Amaranth Natural Gas Commodities Litig.,*
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ...................................................................4, 5, 11

*In re Amaranth Natural Gas Commodities Litig.,*
  612 F. Supp. 2d 376 (S.D.N.Y. 2009) ........................................................................ 4, 5

*In re Crude Oil Commodity Litig.,*
  No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ........................................ 15

*In re Energy Transfer Partners Natural Gas Litig.,*
  No. 4:07-CV-3349, 2009 WL 2633781 (S.D. Tex. Aug. 26, 2009)................................16, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009)......................................................................................10, 11

*In re Fosamax Prods. Liab. Litig.,*
  248 F.R.D. 389 (S.D.N.Y. 2008)................................................................................ 11

*In re Initial Pub. Offering Sec. Litig.,*
  No. 21 MC 92, 2009 WL 1649704 (S.D.N.Y. June 10, 2009).......................................*passim*

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Natural Gas Commodities Litig.*,
    231 F.R.D. 171 (S.D.N.Y. 2005) .......................................................................... 9

*In re NYSE Specialists Sec. Litig.*,
    No. 03 Civ. 8264, 2009 WL 1683349 (S.D.N.Y. June 5, 2009) ....................................18, 21

*In re Sumitomo Copper Litig.*,
    182 F.R.D. 85 (S.D.N.Y. 1998)...........................................................................9, 10, 20

*In re Sumitomo Copper Litig.*,
    194 F.R.D. 480 (S.D.N.Y. 2000) .......................................................................... 9

*Kohen v. PIMCO*,
    244 F.R.D. 469 (N.D. Ill. 2007) .......................................................................... 9

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) .......................................................................... 23

*Miles v. Merrill Lynch & Co.*,
    471 F.3d 24 (2d Cir. 2006)...........................................................................*passim*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d. Cir. 2001)...........................................................................23, 24, 25

*Premium Plus Partners, L.P. v. Davis*,
    No. 04 C 1851, 2008 WL 3978340 (N.D. Ill. Aug. 22, 2008) .................................19, 20, 21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)...........................................................................7, 8, 22

### STATUTES AND RULES

7 U.S.C. § 25(a)(1)(D)...........................................................................................15

Federal Rule of Civil Procedure 23 ...................................................................................*passim*

Defendants[1] respectfully submit this joint memorandum of law in opposition to Plaintiffs'

motion for class certification under Federal Rule of Civil Procedure ("Rule") 23.[2]

## Preliminary Statement

Plaintiffs seek to certify a class consisting of *every* purchaser and *every* seller of *every*

natural gas futures contract traded on the New York Mercantile Exchange ("NYMEX") during

the seven-month Proposed Class Period[3] even though Plaintiffs are not asserting (and cannot

assert) that *every* such contract was manipulated.[4]   Thus, the Proposed Class does not match

Plaintiffs' own theories of manipulation.   Plaintiffs, therefore, cannot satisfy Rule 23's

requirements by a preponderance of the evidence.   Plaintiffs cannot satisfy their burden to prove

typicality without specifying the contracts allegedly manipulated.   Plaintiffs cannot satisfy their

burden to prove adequacy without identifying the affected contracts because, depending on the

precise claims, there are conflicts among the Plaintiffs.   Plaintiffs cannot satisfy their burden to

prove predominance and superiority when their experts provide no methodology to ascertain

injury or causation with respect to Defendants' alleged manipulation of unspecified contracts.

Even if the Proposed Class somehow matched Plaintiffs' manipulation theories, Plaintiffs

have not satisfied the typicality or adequacy requirements of Rule 23(a).   During the Proposed

Class Period, 80 different NYMEX natural gas futures contracts and hundreds of different

futures contract spreads were traded.   Nowhere do Plaintiffs articulate which specific contracts

---

[1]  The Defendants remaining in this action are Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Partners LLC, Amaranth Capital Partners LLC, Amaranth LLC, Nicholas Maounis, Brian Hunter, Matthew Donohoe, ALX Energy, Inc. and James DeLucia.

[2]  Plaintiffs consist of John F. Special, Gregory H. Smith, Roberto Calle Gracey and Alan Martin. Dax Partners LP ("Dax") was named as a proposed class representative but has dismissed its claims pursuant to a stipulation of the parties that was "so ordered" by this Court.

[3]  Capitalized terms not otherwise defined in this preliminary statement are defined below.

[4]  As discussed *infra*, the claim that every contract was manipulated was previously dismissed.

and spreads allegedly were manipulated.  Without any specificity as to the contracts at issue, Plaintiffs cannot meet their burden to establish typicality or even standing because they fail to present sufficient evidence that they were injured by the alleged manipulation.

In addition, Plaintiffs cannot adequately represent the Proposed Class because there are significant intra-class conflicts as a result of each Plaintiffs' optimal start date of the alleged manipulation as discussed in the accompanying affidavit of Dr. Atanu Saha ("Saha Aff."). ███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████[5] Plaintiffs do not address these and the many other conflicts that exist among putative class members, much less demonstrate by a preponderance of the evidence that they adequately represent the Proposed Class.

Moreover, Plaintiffs have not established predominance or superiority under Rule 23(b). Plaintiffs' experts have failed to articulate any methodology for determining which, if any, traders were injured by the alleged manipulation and how any such injury could be ascertained and quantified on a class-wide basis.  Indeed, Plaintiffs' experts acknowledge that the commodity market is a zero-sum game, *i.e.*, for each trader who loses money in the market, there

---

[5] Additional examples of such intra-class conflicts are detailed in the Saha Affidavit.

is a corresponding trader who makes money.  Over the course of the Proposed Class Period, the natural gas futures trading by Amaranth Advisors[6] ███████████████████   Thus, as Plaintiffs' experts concede, other natural gas futures traders **profited** on their trading in this same period.  Those traders did not suffer any injury and have no standing, yet those very traders are among the putative class members that Plaintiffs seek to represent.

It is not surprising that neither Plaintiffs nor their experts can describe any purported injury or explain how one could make an injury assessment on a class-wide basis.  This case is not the typical securities class action involving alleged misrepresentations and then corrective disclosures causing a change in the price of a single stock.  This is not even a typical commodities class action involving a limited set of allegedly manipulated contracts.  Over the course of the Proposed Class Period, not only were 80 different natural gas futures contracts traded on NYMEX, but there was trading of hundreds of different spreads, *i.e.*, trading based on the price differential between two different futures contracts (*e.g.*, March 2007 vs. April 2007), as well as seasonal (*e.g.*, winter vs. spring) and calendar (*e.g.*, 2008 vs. 2009) spreads.  Further, there was trading of options, swaps, and natural gas derivatives on exchanges other than NYMEX, such as the Intercontinental Exchange ("ICE"), and bi-lateral over-the-counter trading.  Finally, many traders, ███████████████ purchased and sold NYMEX natural gas futures contracts in order to hedge against fluctuations in the price of physical natural gas.  Therefore, to assess the injury, if any, suffered by Plaintiffs and other putative class members, it will be necessary to analyze their trading in each of these contracts, spreads, options, swaps, over-the-counter positions, ICE positions and physical positions, including the relationships between the positions in each of those markets on an individualized basis.  Plaintiffs' experts have not

---

[6] All of the trading at issue was conducted by Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC which together are referred to herein as "Amaranth Advisors."

proposed any methodology for doing this on a class-wide basis.  Nor have Plaintiffs' experts articulated how they will account for class members with conflicting interests based on opposing trading positions if any contracts are found to have been manipulated.  These failures prevent Plaintiffs from satisfying both the predominance and superiority requirements of Rule 23(b).

Finally, this is not a situation where further discovery will help Plaintiffs.  This action has been pending for almost three years; Plaintiffs have filed eight different complaints; this Court has ruled on two rounds of motions to dismiss; Plaintiffs have received almost two million pages of document discovery, including NYMEX trade data; Plaintiffs have relied extensively on the detailed pleadings from other actions brought against certain Defendants by the Commodity Futures Trading Commission ("CFTC") and the Federal Energy Regulatory Commission ("FERC"); Plaintiffs have virtually every deposition transcript from the CFTC and FERC actions; and Plaintiffs have filed a motion for class certification with affidavits from two experts. If, notwithstanding receiving all of this data, Plaintiffs cannot allege a certifiable class (and, as demonstrated below, they cannot), further discovery and time will not make any difference.

## Procedural History and Factual Background

The procedural history and factual background of this case are detailed in this Court's October 6, 2008 and April 27, 2009 decisions and thus will not be repeated at length here.  *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008); 612 F. Supp. 2d 376 (S.D.N.Y. 2009).  We provide a brief summary necessary to place Defendants' opposition to Plaintiffs' class certification motion in proper context.

## A.     Procedural History

Plaintiffs' Corrected Consolidated Class Action Complaint (the "Original Complaint") alleged two types of manipulation: (a) "slam the close" manipulation of the settlement price for

the March, April and May 2006 NYMEX natural gas futures contracts during the last 30 minutes of trading for such contracts (the "Settlement Period") on February 24, March 29 and April 26, 2006, respectively (the "Settlement Period Manipulation Claim") and (b) "class period" manipulation (the "Class Period Manipulation Claim") of every single NYMEX natural gas futures contract traded from February 16, 2006 through September 28, 2006 (the "Proposed Class Period"). This Court granted Defendants' motion to dismiss the Class Period Manipulation Claim, denied the motion as to the Settlement Period Manipulation Claim and granted Plaintiffs leave to replead. *See Amaranth*, 587 F. Supp. 2d 513.[7]

The operative Corrected First Amended Consolidated Class Action Complaint (the "Amended Complaint") repeated the allegations in the Original Complaint, and added new allegations regarding the alleged manipulation of spreads (the "Spread Manipulation Claim"). Defendants moved to dismiss certain of the claims in the Amended Complaint.[8] In response, Plaintiffs focused entirely on their Spread Manipulation Claim, abandoning the previously dismissed Class Period Manipulation Claim. This Court denied Defendants' motion to dismiss the Spread Manipulation Claim. *See Amaranth*, 612 F. Supp. 2d 376. Plaintiffs now seek certification of a single class for both the Settlement Period Manipulation Claim and the Spread Manipulation Claim consisting of:

> All persons, corporations and other legal entities (other than Defendants, their employees, affiliates and co-conspirators) who purchased or sold New York Mercantile Exchange ("NYMEX") natural gas futures contracts (including miNY Henry Hub natural gas futures contracts), between February 16, 2006 and September 28, 2006.

---

[7] This Court also dismissed various claims based on theories of secondary liability as well as all claims against certain defendants named in the Original Complaint.

[8] On this Court's instruction, Defendants did not seek dismissal of claims, such as the Settlement Period Manipulation Claim, previously sustained by this Court.

(the "Proposed Class") (Pl. Mem. at 2).   There are four proposed class representatives—Roberto Calle Gracey, Alan Martin, Gregory H. Smith and John F. Special.

**B.**   **Factual Background**

Amaranth Advisors served as investment advisors to Amaranth LLC, a multi-strategy hedge fund with ███████████████████████████ (the "Master Fund").   Amaranth Advisors actively traded in, among other things, the natural gas futures and swaps markets.   The Master Fund suffered substantial losses in September 2006, caused by dramatic price movements in the natural gas market.   As a result, the Master Fund is "winding down" its business and making distributions to its feeder funds which, in turn, are making distributions to their investors. Therefore, Amaranth Advisors has not actively traded on NYMEX since September 2006.

Plaintiffs' allegations of manipulation are limited to Amaranth Advisors' trading of natural gas futures contracts on NYMEX.   However, a determination of the impact of the alleged manipulation, if any, on the Plaintiffs and other putative class members will necessitate an analysis of their trading in other natural gas markets.   We, therefore, summarize each below.

1.   The NYMEX Natural Gas Futures Market

A natural gas futures contract is an agreement to buy or sell a specific quantity of natural gas at a specific date in the future.   NYMEX offers natural gas futures contracts for delivery in the next month, and in each of the following 71 consecutive months.   Thus, on every trading day, there are 72 natural gas futures contracts available for trading.   The Proposed Class Period covers seven months during which 80 different natural gas futures contracts were traded on NYMEX. NYMEX also provides for natural gas spread and options trading and ClearPort swaps.   In addition, there are miNY NYMEX natural gas futures contracts that are one-quarter the size of the standard contract.

2.      Other Natural Gas Futures Markets

The over-the-counter market involves transactions that are privately negotiated and financially-settled.  ICE is an exchange for trading natural gas derivatives similar to NYMEX futures contracts.  Other electronic platforms and bulletin boards also facilitate trading.

3.      The Physical Natural Gas Market

The physical natural gas market involves the actual purchase, sale and transfer of physical quantities of natural gas.  Wholesale natural gas users, such as industrial users or local distributors, purchase natural gas for immediate delivery or for a fixed amount of gas to be delivered in a specified month or months.  These trades can occur through exchanges or other electronic platforms or bulletin boards, through phone brokers or by direct, bilateral negotiations.

In addition to the variety of natural gas instruments that are traded (futures, options, swaps, etc.), these differing natural gas markets lead to a variety of trading strategies.  One involves arbitrage between two markets such as NYMEX and ICE.  A trader may take one position on NYMEX and a contrary position on ICE seeking to benefit from price differentials between the two markets.  Traders engage in hedging such that any loss on NYMEX positions may be offset by a gain on hedge positions.  Thus, the determination of whether any Plaintiff was injured by the alleged manipulation will require an assessment of all such trading positions and strategies.  Plaintiffs' experts fail to propose any methodology to accomplish this essential task.

**Argument**

I.      **GENERAL STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23**

Plaintiffs bear the burden of establishing the requirements for class certification.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  Each element under Rule 23 must be satisfied by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div.*

7

*Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2009 WL 1649704, at *6 (S.D.N.Y. June 10, 2009) ("*In re IPO*").

Accordingly, Plaintiffs must demonstrate by a preponderance of the evidence that:

(1)     the class is so numerous that joinder of all members is impractical;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Further, Plaintiffs must satisfy one of three requirements under Rule 23(b).  Plaintiffs rely solely on Rule 23(b)(3) and thus they must establish by a preponderance of the evidence that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

This Court must conduct a "rigorous analysis" and "may certify a class only after making determinations that each of the Rule 23 requirements has been met."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 41 (2d Cir. 2006).  In *Miles*, the Second Circuit significantly increased the evidentiary burden on plaintiffs seeking to certify a class.  It is no longer sufficient for a plaintiff to make "some showing" that Rule 23's requirements have been met.  *Miles*, 471 F.3d at 40.  Rather, the Second Circuit imposed a heightened evidentiary burden on plaintiffs who wish to represent a class to ensure a "definitive assessment" of each of Rule 23's requirements, including through the weighing of conflicting evidence.  *Id.* at 41.  This heightened evidentiary standard applies to evaluating an expert's proposed methodology on class certification issues.  *Id.* at 40-42.  Remarkably, Plaintiffs ignore

the heightened standards enunciated in *Miles*.  Indeed, Plaintiffs make only one reference to the *Miles* decision, and the substance of their motion is based on pre-*Miles* standards and case law.

Specifically, Plaintiffs rely heavily on two pre-*Miles* decisions—*In re Natural Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005) and *In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998) and 194 F.R.D. 480 (S.D.N.Y. 2000).  It is clear, however, that the decision to certify a class in each of those cases was based on the more lenient standards applicable prior to *Miles*.  In *Natural Gas*, the Court expressly refused to address the issue of who may have been injured by the alleged manipulation because that analysis would require "impermissibly inquiring into the merits of Plaintiffs' complaint."  *Natural Gas*, 231 F.R.D. at 180.  Further, in assessing the sufficiency of plaintiffs' expert's report, the Court in *Natural Gas* applied the now rejected standard that an expert's methodology suffices if it is not so "fatally flawed" as to be inadmissible as a matter of law.  *Id.* at 182.  But, that is no longer the applicable standard.  Indeed, the Court in *Miles* expressly rejected the analysis in *Natural Gas*.  *See Miles*, 471 F.3d at 40-42; s*ee also Kohen v. PIMCO*, 244 F.R.D. 469, 478 n.2 (N.D. Ill. 2007) ("The standard relied upon by the *In re Natural Gas Commodities* court to determine whether plaintiffs had adequately alleged Rule 23's requirements has since been overruled.") (citing *Miles*).

Further, *Miles* makes clear that when deciding class certification motions, district courts are no longer permitted to accept factual allegations in the complaint as true but rather must make factual findings necessary to determine whether Plaintiffs have satisfied Rule 23's requirements.  *See Miles*, 471 F.3d at 40-41.  As the Second Circuit stated, "there are often factual disputes in connection with Rule 23 requirements" and these "must be resolved with

findings." *Id.* at 40.   This underscores the impropriety of Plaintiffs' reliance on *Sumitomo* because that Court assumed allegations to be true.  *See Sumitomo*, 182 F.R.D. at 88.[9]

Following *Miles*, this Court "must assess all of the relevant evidence admitted at the class certification stage" and must resolve factual disputes necessary to a determination of whether the Rule 23 requirements have been met even if a factual issue overlaps or is identical to an issue on the merits.  *See Miles*, 471 F.3d at 41-42; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34-35 (2d Cir. 2009).   Plaintiffs must do more than prove that it is "conceivable" that they satisfy each of Rule 23's requirements; they must actually satisfy them.  *See Flag*, 574 F.3d at 38-39.  Plaintiffs have completely failed to meet the Second Circuit's legal standard.

## II.   PLAINTIFFS' PROPOSED CLASS DOES NOT MATCH THEIR MANIPULATION THEORIES AND, THUS, IT SHOULD NOT BE CERTIFIED

Plaintiffs seek to certify a class consisting of every purchaser and every seller of every NYMEX natural gas futures contract traded during the Proposed Class Period.   Plaintiffs, however, do not assert that the price of every such contract was manipulated.  In fact, Plaintiffs recognize that the only claims that survived dismissal relate to three settlement dates and spreads.  Yet, they made no attempt to narrow their Proposed Class which is radically overbroad.

For example, the Settlement Period Manipulation Claim asserts that Defendants manipulated downward the settlement price for three expiring NYMEX natural gas futures contracts, the March, April and May 2006 contracts, on three specific days, February 24, March 29 and April 26, 2006.  As Defendants pointed out in their first motion to dismiss, ███

███████████     the settlement price is not the actual price at which any contract

---

[9] Here, Dr. Gilbert, Plaintiffs' primary expert, stated in his affirmation that he assumed the allegations in the Amended Complaint to be true.  (Gilbert Aff. ¶ 3).  ███████████████████████ ███████████████████████████████     This is insufficient because Dr. Gilbert must rely on evidence, not naked allegations.  Excerpts of the deposition testimony cited in this memorandum are annexed to the affidavit of Steven M. Schwartz submitted herewith.

trades. ███████████████ Accordingly, this Court permitted the Settlement Period Manipulation Claim to survive solely because Plaintiffs alleged that the manipulation of the settlement price for the three specific contracts altered the price of other NYMEX natural gas futures contracts. *See Amaranth*, 587 F. Supp. 2d at 537-38. Following that decision, Plaintiffs filed their Amended Complaint and the instant motion for class certification. But nowhere have Plaintiffs or their experts set forth which specific contracts contained artificial prices as a result of the alleged manipulation of the three settlement prices. The same problem exists with respect to the Spread Manipulation Claim. Nowhere do Plaintiffs or their experts specify which contract spreads allegedly were manipulated. Thus, Plaintiffs' overbroad Proposed Class does not comport with their own theories of liability. This alone compels denial of class certification. *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 397 (S.D.N.Y. 2008).

## III. PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY OR ADEQUACY REQUIREMENTS FOR CLASS CERTIFICATION[10]

### A. Typicality[11]

To satisfy the typicality requirement under Rule 23(a)(3), Plaintiffs must establish by a preponderance of the evidence that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendants' liability." *Flag*, 574 F.3d at 35 (quotation omitted). Critically, there is a lack of typicality if the named plaintiff "was not harmed by the [conduct] he alleges to have injured the class." *In re IPO*, 2009

---

[10] Defendants do not dispute that Plaintiffs satisfy the numerosity and commonality requirements of Rule 23(a). As discussed in Section IV below, however, the common questions do not predominate over individual issues and thus Plaintiffs fail to satisfy Rule 23(b)(3).

[11] The typicality, adequacy and predominance standards under Rule 23 overlap and thus factual and legal arguments applicable to one element should be considered with respect to each of the others. *See Amchem,* 521 U.S. at 623 n.18; *Centurions v. Ferruzzi Trading Int'l, S.A.*, No. 89 C 7009, 1994 WL 114860, at *17 n.9 (N.D. Ill. Jan. 7, 1993).

WL 1649704, at *6 (citation omitted); *see Fogarazzo v. Lehman Bros., Inc.,* No. 03 Civ. 5194, 2009 WL 2390244, at *2 (S.D.N.Y. Aug. 4, 2009). Plaintiffs present insufficient evidence that they were injured as a result of the alleged manipulation and, absent such injury, the typicality requirement of Rule 23(a)(3) cannot be satisfied. Indeed, without evidence of injury, Plaintiffs lack standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).

1.   Plaintiffs Have Not Established Injury

Plaintiffs plead that "[c]ommodity futures trading is a zero sum endeavor." (Am. Compl. ¶ 10). ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Thus, the Proposed Class profited from the alleged manipulation because, as a whole, the other NYMEX natural gas futures traders, all of which are putative class members, made the billions of dollars that Amaranth Advisors lost during the Proposed Class Period. (Saha Aff. ¶¶ 5-6).

████████████████████████████████████████████████████████████

████████████████████████████     ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[12]

An analysis of each Plaintiff's trading further demonstrates the lack of sufficient evidence satisfying the typicality requirement.

---

[12] As discussed in Section IV below, the lack of any such methodology prevents Plaintiffs from satisfying the predominance and superiority requirements of Rule 23(b).

(a)    <u>Martin</u>

█████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████ There is no

allegation that Amaranth Advisors traded the miNY contract.  Further, the miNY contract settles

on a different day than the standard contract.  (Am. Compl. ¶ 59).  Thus, Martin is not typical of

other putative class members.  ████████████████████████████████

████████████  Therefore, he was not injured by any manipulation of spreads.

(b)    <u>Gracey</u>

█████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ Thus, he was not injured by any

spread manipulation.  Gracey simply has no cognizable injury based on the alleged manipulation.

(c)    <u>Smith</u>

█████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

(d)    <u>Special</u>

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████[13]

2.    <u>Lack of Standing</u>

The lack of injury detailed above also compels the conclusion that Plaintiffs lack standing.  "To have standing to sue as a class representative it is essential that a plaintiff…be a part of the class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotation omitted).  "A plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law."  *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 74 (S.D.N.Y. 1986) (citation omitted).  Although a court may certify a class even if a lead plaintiff does not have standing to bring every claim, it is an "irreducible constitutional minimum" of standing that a plaintiff must have suffered an "injury in fact" caused by the challenged conduct.  *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 273 (S.D.N.Y. 2008) (quotation omitted).  Indeed, the

---

[13] ████████████████████████████████████████████████

████████████████████████████████████

very statute Defendants are accused of violating, the Commodity Exchange Act ("CEA"), expressly requires a private plaintiff to have purchased or sold a futures contract and to have suffered "actual damages resulting from" the alleged manipulation of such futures contract. *See* 7 U.S.C. § 25(a)(1)(D). As demonstrated above, Plaintiffs have not made any such showing.

Further, as noted above, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████ This alone compels denial of class certification because "no class may be certified that contains members lacking Article III standing." *Denney*, 443 F.3d at 264.

3.    Plaintiffs' Failure to Articulate Which Contract Prices Were
      Artificial Exacerbates Their Lack of Typicality and Standing

To establish typicality and standing, Plaintiffs must have traded contracts, the prices of which were artificial as a result of Defendants' alleged manipulation of the settlement prices or spreads.[14] Neither Plaintiffs nor their experts have identified which specific contracts were traded at artificial prices, making it impossible for Plaintiffs to meet these requirements.

The Settlement Period Manipulation Claim asserts that Defendants manipulated the settlement price on February 24, March 29, and April 26, 2006, but nowhere do Plaintiffs allege which contract prices were artificial as a result of this alleged manipulation. ████████

████████████████████████████████████████████████████████████████████

████████  ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

--------------------------------------

[14] Plaintiffs acknowledge that an essential element of their manipulation claim is that an artificial price was created by the Defendants.  (Pl. Mem. at 9, 14, 20).  *See In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *3 (S.D.N.Y. June 28, 2007).



The same problem exists, and is more extreme, with respect to the Spread Manipulation Claim.  Neither Plaintiffs nor their experts have articulated which of the hundreds of different spreads traded during the Proposed Class Period allegedly were manipulated.[16]

It is not surprising that Plaintiffs fail to identify any specific contracts or spreads that allegedly were manipulated.  Plaintiffs' case is premised almost entirely on the actions brought against certain Defendants by the CFTC and FERC.  But FERC only alleged manipulation of the settlement price on February 24, March 29, and April 26, 2006.  The CFTC only alleged *attempted* manipulation on two of those days.  Neither agency brought a claim for manipulation of any actual contract price or spread.[17]  Plaintiffs simply do not provide the requisite specificity.

---

[15]  Mr. Satterfield's opinions primarily concern the questions of Defendants' ability to manipulate the NYMEX natural gas futures market and their alleged manipulative intent.  Defendants do not believe Mr. Satterfield is qualified to opine on these issues.   Should a class be certified, Defendants expect to make a *Daubert* motion with respect to Mr. Satterfield.

[16]  The Amended Complaint sets forth a few examples of allegedly manipulated spreads.  Even if this case is limited to those particular spreads, Plaintiffs provide no evidence that they in fact traded those spreads and, thus, they cannot establish standing or typicality.

[17]  Unlike private plaintiffs, the CFTC is not required to have a cognizable injury in order to commence an action for violation of the CEA.  *See In re Energy Transfer Partners Natural Gas Litig.*, No. 4:07-CV-3349, 2009 WL 2633781, at *10 (S.D. Tex. Aug. 26, 2009).  Indeed, the

A recent natural gas futures class action dismissed by the Southern District of Texas is particularly instructive. *See In re Energy Transfer Partners Natural Gas Litig.*, No. 4:07-CV-3349, 2009 WL 2633781 (S.D. Tex. Aug. 26, 2009) ("*ETP*"). In *ETP*, plaintiffs[18] alleged violation of the CEA in connection with natural gas futures trading. The Court dismissed the action for failure to adequately allege manipulative intent and denied the plaintiffs' motion for reconsideration. *Id.* at \*2. Plaintiffs' assertion that defendants' purported manipulation "affected futures prices throughout the month" was insufficient to "raise their allegations above the level required for a plausible private CEA claim." *Id.* at \*11 n.15. This conclusion stemmed from the failure to identify specific contracts that allegedly traded at an artificial price. *Id.*

Although *ETP* was not decided in the context of a class certification motion, the Court's conclusion that as a result of the CEA's requirement that a private plaintiff demonstrate causation and damages, such plaintiff must specify the contracts alleged to have been traded at an artificial price, is directly applicable. Here, Plaintiffs' lack of specificity means that they cannot satisfy typicality or establish standing because they cannot demonstrate an actual injury. Indeed, the higher preponderance of the evidence standard for class certification renders such conclusion even more appropriate than dismissal for failure to state a claim in *ETP*.

In sum, Plaintiffs have not presented a preponderance of the evidence sufficient to satisfy the typicality requirement of Rule 23(a) or to establish Article III standing.

---

CFTC's action alleged ***attempted*** rather than actual manipulation, a claim which private plaintiffs have no right to assert. FERC's claim concerned the alleged impact of Amaranth Advisors' natural gas futures trading on the physical natural gas market.

[18] Gracey was a proposed class representative in *ETP*, as he is in this case. He was also a class representative in the *Natural Gas* case relied on by Plaintiffs and several other commodity-based class actions. ████████████████████████████████████████████████████████ *See Gracey v. Optiver US LLC et al.*, Case No. 08-CV-6842.

**B.** **Adequacy**

"Adequacy of representation entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *In re IPO*, 2009 WL 1649704, at *6 (citation omitted). The focus is on uncovering conflicts of interest among the plaintiffs and putative class members. *See In re NYSE Specialists Sec. Litig.,* No. 03 Civ. 8264, 2009 WL 1683349, at *8 (S.D.N.Y. June 5, 2009). Plaintiffs cannot adequately represent the Proposed Class due to significant intra-class conflicts.[19]

The Proposed Class includes potentially thousands of traders, all of whom had their own individualized trading strategies and positions in all different natural gas markets throughout the Proposed Class Period. Traders who purchased NYMEX natural gas futures contracts when the prices of those contracts were artificially inflated may have been injured if they did not sell offsetting contracts until after the artificiality had dissipated. However, traders who sold contracts when the prices were artificially inflated actually benefited from the alleged manipulation if offsetting contracts were purchased before the artificiality began. The opposite is true for purchases and sales made at artificially deflated prices. Further, traders whose NYMEX positions served as hedges for physical positions or who were engaged in arbitrage between markets may not have been impacted at all by any manipulation. If they were, it certainly was in a different manner than traders with different strategies and positions. Thus, the interests of the putative class members with regard to which contracts were manipulated, to what extent and when will conflict wildly.

The different impacts of the alleged wrongdoing lead to conflicts that render the Plaintiffs inadequate class representatives, especially given the length of the Proposed Class Period.

---

[19] Defendants do not dispute the adequacy of Plaintiffs' counsel.

Traders who made money at the beginning of the Proposed Class Period will assert that the manipulation started after their profitable transactions.  Conversely, traders who lost money at the beginning of the Proposed Class Period will claim that the manipulation began at the start of the Proposed Class Period.  Depending on their NYMEX positions and the relationship of those positions to holdings in other markets, traders will have different interests in establishing which contracts were manipulated, to what degree and when.  The failure of Plaintiffs to specify which contracts allegedly contained artificial prices exacerbates these conflicts.

A few examples demonstrate these insurmountable conflicts. 

(Saha Aff. ¶¶ 12-29).[20]

In other commodities manipulation cases in which the plaintiff alleged that the defendant caused an artificial price, courts have denied class certification because there were conflicts of interest emanating from differing trading strategies and positions of the putative class members. *See Premium Plus Partners, L.P. v. Davis*, No. 04 C 1851, 2008 WL 3978340 (N.D. Ill. Aug. 22, 2008); *Centurions*, 1994 WL 114860.  In *Premium Plus*, the Court denied class certification due

---

[20] These examples are based on certain assumptions as to the artificial prices discussed in the Saha Affidavit.  Additional examples of intra-class conflicts are detailed in the Saha Aff. ¶¶ 12-29.

to a lack of adequacy citing the fact that the proposed class representative's trading strategy was different from the strategies of other proposed class members.  The Court held that because of such differences, the proposed class representative could not meet its fiduciary obligations to the rest of the putative class members and thus was not an adequate class representative.  *Premium Plus*, 2008 WL 3978340, at *5.  In *Centurions*, the Court denied class certification on adequacy grounds even though a much narrower and more limited class was contemplated than that proposed by Plaintiffs here.  The Court held that when a class "includes traders who started from different positions and traded both long and short . . . [s]uch differences are reflected in significant intra-class conflicts."  *Centurions*, 1994 WL 114860, at *16.  The Court emphasized the fact that, as here, "[p]laintiffs traded at different times, assumed conflicting positions in the market when they traded, and traded on different contracts."  *Id.* at *13.

Plaintiffs fail to address these glaring intra-class conflicts, much less establish by a preponderance of the evidence that they are adequate class representatives.  Instead, Plaintiffs simply state that "differences (or lack of sameness) among class members who purchased, sold or held futures contracts do not equal a conflict much less an unmanageable one."  (Pl. Mem. at 10).  Plaintiffs' heightened burden certainly is not met by their bald, unsupported assertion.  *See Miles*, 471 F.3d at 40-42.  Moreover, this is not a case where the issue is one of intra-class conflict regarding the amount of damages that each putative class member can recover.  *Cf. Sumitomo*, 182 F.R.D. 85.  The nature of the conflicts here lie at the heart of Defendants' alleged liability and Plaintiffs' standing, *i.e.*, whether (and when) any Plaintiff suffered an injury from the alleged manipulation.  In order to demonstrate their individual injuries, Plaintiffs will necessarily have to show that others in the class did not suffer injury.  *See Centurions*, 1994 WL 114860, at *11 (to establish their injury, the named plaintiffs would "need to prove that

Defendants manipulated the market in such a way that other members of the class did not suffer injury"); *Premium Plus*, 2008 WL 3978340, at *5 ("[The named plaintiff], in pursuing a course most beneficial to itself, could in fact present arguments that would undermine the claims of other class members.") (citation omitted).  Accordingly, Plaintiffs have failed to demonstrate by a preponderance of the evidence that they are adequate class representatives.

## IV.   PLAINTIFFS HAVE NOT ESTABLISHED PREDOMINANCE

Even if this Court concludes that each of the four requirements under Rule 23(a), numerosity, commonality, typicality and adequacy, has been satisfied, class certification must be denied unless Plaintiffs establish by a preponderance of the evidence that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  Plaintiffs fail to satisfy both of these requirements.

The standard for predominance is "far more demanding" than the commonality requirement.  *See Amchem*, 521 U.S. at 623-24.  The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *See id.*; *In re IPO*, 2009 WL 1649704, at *7.  One of the critical inquiries in assessing the predominance requirement is whether proof of Plaintiffs' entitlement to relief on the merits can be determined on a class-wide basis.  *See Fogarazzo*, 2009 WL 2390244, at *11-12; *NYSE*, 2009 WL 1683349, at *20-22.  Plaintiffs have not met their burden for two reasons.  First, Plaintiffs' experts fail to provide any detail as to how they will ascertain artificiality in prices caused by the alleged manipulation.  Second, they do not propose any methodology by which injury or causation can be established on a class-wide basis.

Dr. Gilbert proposes to use regression analysis and event studies to ascertain price artificiality in NYMEX natural gas futures contracts caused by the alleged manipulation.  Dr. Gilbert has not, however, provided any details regarding the factors he will use to isolate the causal link between the alleged manipulation and the impact on the prices. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

The essence of regression is the relationship between the dependent and independent variables and thus the choice of variables determines the reliability of any model.  Yet, Dr. Gilbert did not specify the variables he will use, or even the universe of potential variables he will consider, in his regression analysis. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ The failure of Dr. Gilbert to specify the variables to be used in his regression analysis makes it impossible for Defendants' expert to critique, or for this Court to assess, the reliability of his methodology or to weigh conflicting expert testimony as mandated by *Miles*.  (Saha Aff. ¶ 30).

Indeed, the Second Circuit recently recognized that at the class certification stage an event study may be rejected if its methodology is unsound or unreliable.  *Teamsters*, 546 F.3d at 207-08 n.15.  By not providing any specifics, Plaintiffs' expert seeks to avoid any examination of the adequacy of his regression analysis.  This is insufficient under *Miles* to demonstrate that the existence of an artificial price can be ascertained on a class-wide basis.[21]

---

[21] Plaintiffs cannot escape their obligations by claiming a need for discovery.  As detailed above, Plaintiffs already have had extensive discovery.  Further, Plaintiffs could have requested any discovery related to class certification that they believed was necessary to meet their burden.

Plaintiffs' failure to satisfy the predominance requirement is even more stark with respect to their obligation to demonstrate that injury and causation can be established on a class-wide basis. Although individual variance in damages will not defeat predominance, if injury and causation cannot be proven on a class-wide basis, then individual issues predominate. *See Fogarazzo,* 2009 WL 2390244, at *12; *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 188-89 (3d Cir. 2001). "The issue is not the calculation of damages but whether or not class members have any claims at all." *Newton,* 259 F.3d at 189.

To meet this requirement, Plaintiffs must articulate a methodology to ascertain injury and causation on a class-wide basis. *See Fogarazzo,* 2009 WL 2390244, at *12; *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 185 (S.D.N.Y. 2008); *see generally In re IPO,* 2009 WL 1649704, at *24. The requirement for such methodology is particularly important in light of the Second Circuit's stricter standards enunciated in *Miles.* It is no longer sufficient that Plaintiffs' expert's methodology is "not fatally flawed"; courts must now weigh conflicting expert evidence. Plaintiffs cannot avoid the heightened standards adopted in *Miles* by having their experts refrain from proposing any specific methodology. Such tactics violate the essence of *Miles.*[22]

In *Newton,* for example, the Third Circuit affirmed denial of class certification because individual issues regarding whether putative class members suffered economic loss from the alleged misconduct predominated over class issues. The Court found that whether a putative class member suffered injury would have to be determined on a trade-by-trade basis and that some class members would have suffered damages but others would have no damages. *Newton,*

---

[22] Defendants recognize that this Court has held that actual application of the proposed methodology may not be required at the class certification stage. *See Fogarazzo,* 2009 WL 2390244, at *11. The Second Circuit has not addressed this issue. Here, no specific methodology even has been proposed by Dr. Gilbert, let alone applied. In *Fogarazzo,* plaintiffs' expert actually proposed a specific methodology for assessing injury. *See id.,* at *11-13.

259 F.3d at 187.  The Third Circuit agreed with the district court that examination of all of the trades "to ascertain whether or not there was injury … meant that individual issues overwhelmed common questions among the class."  *Id.*  As the Court explained in words applicable here, "[b]ecause it is clear that at least some of the plaintiffs have not suffered economic injury, individual questions remain that would have to be adjudicated separately."  *Id.* at 190.

Plaintiffs' expert in *Newton* provided no model to measure injury or damages on a class-wide basis.  *Id.* at 187-88.  ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

Moreover, this case is not like *Fogarazzo* in which "a class member's damages can easily be calculated by determining when she purchased and sold shares."  *Fogarazzo*, 2009 WL 2390244, at *13.  Here, 80 different NYMEX natural gas futures contracts and hundreds of different spreads were traded during the Proposed Class Period.  Each putative class member's trading positions on NYMEX, as well as on other exchanges and in the over-the-counter and physical markets, will have to be analyzed.  Further, each proposed class member's individual trading and hedging strategies will have to be factored into the analysis to determine whether such person was injured by the alleged manipulation and, if so, by how much.  ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████     ████████████████████████████████████

████████████████████████████     As the Third Circuit stated, assessing each individual's specific trading will be a "Herculean task,"  *Newton*, 259 F.3d at 187-88, and cannot be done on a class-wide basis.[23]  Plaintiffs' experts here do not even try.  (Saha Aff. ¶ 31).

As in *Newton*, the analysis here will involve a highly individualized inquiry depending on the specifics of each class member–what contracts were traded, what positions the trader had in other markets, what physical positions the trader had, whether the trader engaged in hedging, etc.  As in *Newton*, Plaintiffs' experts here provided no methodology for measuring injury or causation on a class-wide basis.  As in *Newton*, class certification here should be denied.[24]

### Conclusion

For all the foregoing reasons and those set forth in the accompanying Affidavits, Defendants respectfully request that this Court deny Plaintiffs' motion for class certification and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
        November 13, 2009

---

[23] Plaintiffs' assertion that anyone who lost money on NYMEX natural gas futures trades during the Proposed Class Period should be in the Proposed Class (Pl. Mem. at 25) ignores the requirements of standing, causation and injury, as well as the limited universe of trades covered by the manipulation theories that survived dismissal. ████████████████████████████

████████████████████████████████████████████████
████████████████████████

[24] For the same reasons that Plaintiffs have not satisfied the predominance requirement, they cannot establish superiority.  A critical inquiry in assessing the superiority requirement of Rule 23(b)(3) is whether there will be difficulty managing the case as a class action.  *See In re IPO*, 2009 WL 1649704, at *7.  As discussed above, the question of whether each individual class member suffered an injury cannot be answered on a class-wide basis.  Accordingly, a class action is not a "superior method of adjudication" under Rule 23(b).  *See Newton*, 259 F.3d at 192 ("establishing proof of the plaintiffs' injuries and litigating the defenses available to the defendants would present insurmountable manageability problems") (citation omitted).

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: _____

David E. Mollon
Steven M. Schwartz

200 Park Avenue
New York, NY 10166
(212) 294-6700
dmollon@winston.com
sschwartz@winston.com

-and-

Stephen J. Senderowitz (*pro hac vice*)
Kristen V. Grisius (*pro hac vice*)
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600

*Attorneys for Defendants Amaranth Advisors L.L.C.,
Amaranth Advisors (Calgary) ULC, Amaranth Capital
Partners LLC and Amaranth Partners LLC*

**BINGHAM McCUTCHEN LLP**

By: _____

Peter C. Neger
Theo J. Robins

399 Park Avenue
New York, NY 10022
(212) 705-7000
peter.neger@bingham.com
theo.robins@bingham.com

-and-

Geoffrey F. Aronow
2020 K Street NW
Washington, DC 2006
(202) 373-6000

*Attorneys for Defendant Nicholas Maounis*

26

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: _____
     David E. Mollón
     Steven M. Schwartz

200 Park Avenue
New York, NY 10166
(212) 294-6700
dmollon@winston.com
sschwartz@winston.com

-and-

Stephen J. Senderowitz (*pro hac vice*)
Kristen V. Grisius (*pro hac vice*)
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600

*Attorneys for Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Capital Partners LLC and Amaranth Partners LLC*

**BINGHAM McCUTCHEN LLP**

By: _____
     Peter C. Neger
     Theo J. Robins

399 Park Avenue
New York, NY 10022
(212) 705-7000
peter.neger@bingham.com
theo.robins@bingham.com

-and-

Geoffrey F. Aronow
2020 K Street NW
Washington, DC 2006
(202) 373-6000

*Attorneys for Defendant Nicholas Maounis*

26

**DAVIS POLK & WARDWELL LLP**

By: _Amelia T.R. Starr_
           Amelia T.R. Starr

450 Lexington Avenue
New York, NY 10017
(212) 450-4000
amelia.starr@davispolk.com

*Attorneys for Defendant Amaranth LLC*

**SIMPSON THACHER & BARTLETT LLP**

By: _____
           Mark J. Stein
           Joshua A. Levine
           Brijesh P. Dave

425 Lexington Avenue
New York, NY 10017
(212) 455-2000
mstein@stblaw.com

*Attorneys for Defendant Matthew Donohoe*

**KOBRE & KIM LLP**

By: _____
           Michael S. Kim

800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com

*Attorneys for Defendant Brian Hunter*

_____
           Steven R. Goldberg

One North End Avenue
Suite 1201
New York, NY 10282
(212) 845-5100
sgoldberglaw@verizon.net

*Attorney for Defendants ALX Energy, Inc. and
James DeLucia*

27

DAVIS POLK & WARDWELL LLP

By: _____
      Amelia T.R. Starr

450 Lexington Avenue
New York, NY 10017
(212) 450-4000
amelia.starr@davispolk.com

*Attorneys for Defendant Amaranth LLC*

SIMPSON THACHER & BARTLETT LLP

By: _____
      Mark J. Stein
      Joshua A. Levine
      Brijesh P. Dave

425 Lexington Avenue
New York, NY 10017
(212) 455-2000
mstein@stblaw.com

*Attorneys for Defendant Matthew Donohoe*

KOBRE & KIM LLP

By: _____
      Michael S. Kim

800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com

*Attorneys for Defendant Brian Hunter*


_____
      Steven R. Goldberg

One North End Avenue
Suite 1201
New York, NY 10282
(212) 845-5100
sgoldberglaw@verizon.net

*Attorney for Defendants ALX Energy, Inc. and
James DeLucia*

27

**DAVIS POLK & WARDWELL LLP**

By: _____
           Amelia T.R. Starr

450 Lexington Avenue
New York, NY 10017
(212) 450-4000
amelia.starr@davispolk.com

*Attorneys for Defendant Amaranth LLC*

**SIMPSON THACHER & BARTLETT LLP**

By: _____
           Mark J. Stein
           Joshua A. Levine
           Brijesh P. Dave

425 Lexington Avenue
New York, NY 10017
(212) 455-2000
mstein@stblaw.com

*Attorneys for Defendant Matthew Donohoe*

**KOBRE & KIM LLP**

By: _____
           Michael S. Kim

800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com

*Attorneys for Defendant Brian Hunter*

_____
           Steven R. Goldberg

One North End Avenue
Suite 1201
New York, NY 10282
(212) 845-5100
sgoldberglaw@verizon.net

*Attorney for Defendants ALX Energy, Inc. and James DeLucia*

27

**DAVIS POLK & WARDWELL LLP**

By: _____
       Amelia T.R. Starr

450 Lexington Avenue
New York, NY 10017
(212) 450-4000
amelia.starr@davispolk.com

*Attorneys for Defendant Amaranth LLC*

**SIMPSON THACHER & BARTLETT LLP**

By: _____
       Mark J. Stein
       Joshua A. Levine
       Brijesh P. Dave

425 Lexington Avenue
New York, NY 10017
(212) 455-2000
mstein@stblaw.com

*Attorneys for Defendant Matthew Donohoe*

**KOBRE & KIM LLP**

By: _____
       Michael S. Kim

800 Third Avenue
New York, NY 10022
(212) 488-1200
michael.kim@kobrekim.com

*Attorneys for Defendant Brian Hunter*

_____
       Steven R. Goldberg

One North End Avenue
Suite 1201
New York, NY 10282
(212) 845-5100
sgoldberglaw@verizon.net

*Attorney for Defendants ALX Energy, Inc. and James DeLucia*

27