UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MASTER FILE NO. 07 Civ. 6377 (SAS)<br><br>**ECF Case** |

### PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

### REDACTED VERSION

**LOVELL STEWART HALEBIAN LLP**
Christopher Lovell (CL 2595)
Gary S. Jacobson (GJ 2481)
Ian T. Stoll (IS 3424)
61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900
(212) 719-4677 (fax)

**LOWEY DANNENBERG COHEN
   & HART, P.C.**
Vincent Briganti (VB 1497)
Geoffrey M. Horn (GH 4179)
White Plains Plaza
1 North Broadway, 5th Floor
White Plains, NY 10601
(914) 997-0500
(914) 997-0035 (fax)

**LOUIS F. BURKE, P.C.**
Louis F. Burke (LB 4686)
Leslie Wybiral (LW 0629)
460 Park Avenue, 21st Floor
New York, NY 10022
(212) 682-1700
(212) 808-4280 (fax)

*Co-Lead Counsel for Plaintiffs*

*Additional Counsel for Plaintiffs on Signature Page*

**<u>ERRATA</u>**

| Page | Text | Correction |
|---|---|---|
| Page 5, fn. 4 | "June 2006" | "June 2007" |

# TABLE OF CONTENTS

Page

POINT I    Plaintiffs Have Proved That The Four Subparagraphs of FRCP Rule 23(a) Are Satisfied..................................................................................................2

A.    FRCP Rule 23(a)(1) and 23(a)(2):  Defendants Concede That Plaintiffs Have Satisfied These Requirements............................................. 2

B.    FRCP 23(a)(3):  Plaintiffs Have Proved That Typicality Has Been Satisfied.................................................................... 2

    1.    Defendants Effectively Concede The Plaintiffs Make The Same Legal Claims And Their Injury Arises From The Same Unitary Course Of Conduct As The Claims Of All Class Members .......... 2

    2.    Contrary To Defendants' Attempt To Engraft A New Requirement On Rule 23(a)(3), Plaintiffs Need Not Also Prove Injury At This Point ........................................................................................ 3

    3.    Even If Proof of Injury Were Required (Which It Clearly Is Not), The Uncontested Proof Is That Plaintiffs Transacted In NYMEX Futures Contracts The Prices of Which Defendants Intentionally Manipulated ............................................................. 5

    4.    Plaintiffs Need Not Show Net Injury For Standing ....................... 7

C.    23(a)(4):  Plaintiffs Have Also Proved The Adequate Representation Part of FRCP Rule 23(a)(4) ...................................................... 8

    1.    Defendants Expressly Concede That The Adequate Counsel Representation Portion of FRCP 23(a)(4) is Satisfied................... 8

    2.    Defendants Do Not Contest And Have Made A Record Showing That The Named Plaintiffs Will Fulfill Their Primary Function: To Monitor Class Counsel And Act As Fiduciaries For The Class....................................................................................... 8

    3.    Defendants' Novel "Optimal Start Date" Conflict Argument Is Defeated By The Evidentiary Record Showing That There Was No Conflict Here Concerning The Start Date of The Class Period ............................................................................................. 9

i

4.      This Evidentiary Record Suggests There Will Be No
        Conflict In The Future ................................................................. 10

5.      The Law, Which Has Overwhelmingly Rejected Buyer-Seller
        and "Optimal" Recovery Conflicts, Also Supports The
         Absence of Conflict ..................................................................... 10

6.      If the Evidence of Conflict Changes, Subclasses May Be
        Created ......................................................................................... 11

7.      Defendants' Optimal Start Date Conflict Is Based On Counter-
        Factual Assumptions..................................................................... 11

POINT II        Plaintiffs Have Proved That Common Questions of Law and Fact Predominate
                Under FRCP Rule       23(b)(3)............................................................................. 12

        A.      Defendants Fail To Contest Almost All of Plaintiffs' Evidence That
                Common Class-Wide Proof Will Be Used To Establish That Defendants'
                Conduct Moved Prices To Artificial Levels ............................................. 12

CONCLUSION........................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 8

*Bafa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52 (2d Cir. 2000) ................... 8

*Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 316 (5th Cir. 2005) .......................................... 14

*Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319 (S.D.N.Y.2004) ................................. 11

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ......................................................... 4

*Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194,
    2009 WL 2390244 (S.D.N.Y. Aug. 4, 2009) ................................................................... *passim*

*Hnot v. Willis Group Holdings Ltd.*, 241 F.R.D. 204 (S.D.N.Y. 2007)......................................... 15

*In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008)...................................................... 10

*In re Amaranth Natural Gas Commodities Litig.,*
    *587 F. Supp.* 2d 513 (S.D.N.Y. 2008)................................................................................. 6

*In re Anthony J DiPlacido*, CFTC No. 01-23 2008 WL 48312 (CFTC Nov 5, 2008) .................. 7

*In re Indiana Farm Bureau Coop. Ass'n Inc.*,
    CFTC No. 75-14 1982 WL 30249 (CFTC Dec. 17, 1982) ......................................................... 7

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009)......................................... 3

*In re Int'l Business Machines Corporate Sec. Litig.*, 163 F.3d 102 (2d Cir. 1998)...................... 12

*In re Marine Hose Antitrust Litig.*,
    2009 U.S. Dist. LEXIS 71020 (S.D. Fla. July 31, 2009)......................................................... 13

*In re Nortel Networks Corp. ERISA Litigation*,
    No. 3:03-md-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ....................................... 10

*In re NYSE Specialists Sec. Litig.*,  260 F.R.D. 55 (S.D.N.Y. 2009) ....................................... 11, 15

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................. 15

*In The Matter of Brian Hunter*, Docket No. IN07-23-004 ............................................................ 6

*Kohen v. Pacific Inv. Management Co. LLC*, 71 F.3d 672 (7th Cir. 2009) .............................. 7, 11

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) .............................................. 13

*Mansfield v. Air Line Pilots Ass'n Intern.*,
   No. 06 C 6869, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009) .................................................. 11

*Newman v. RCN Telecom Services, Inc.,* 238 F.R.D. 57 (S.D.N.Y.2006).................................. 3, 4

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ............... 15

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008).................................................................................................. 14, 15

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................................... 5

**Rules**

Fed.R.Civ.P. 23 ...................................................................................................................... *passim*

**Other Authorities**

Advisory Committee Notes....................................................................................................... 8

August 19, 2009 hearing transcript at p. 531. Available at:
   http://elibrary.FERC.gov/idmws/file_list.asp?accession_num=20090819-4012. ..................... 6

**<u>Introduction and Limitation of The Class Definition</u>**

Plaintiffs respectfully submit this memorandum and the accompanying reply affirmations of Professor Christopher Gilbert ("Gilbert Reply Aff.") and Charles Satterfield ("Satterfield Reply Aff.") to demonstrate that it is appropriate to certify this action as a class action on behalf of the following, more narrowly defined class:

> All persons, corporations and other legal entities (other than Defendants, their employees, affiliates and co-conspirators) who purchased or sold, between February 16, 2006 and September 28, 2006 ("Class Period"), New York Mercantile Exchange ("NYMEX") natural gas futures contracts (including miNY Henry Hub natural gas futures contracts) expiring in March, April, May, June, July, August, September, October, November or December 2006, or January, February, March or April 2007.[1]

This definition of the Class has been restricted in accordance with Defendants' argument that the class definition was too broad.  Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Opp.") pp. 10-11.

REDACTED

---

[1] Whenever the terms "NYMEX natural gas futures contracts" or "natural gas futures contracts" are used it includes the miNY Henry Hub natural gas futures contracts.

REDACTED

.[2]

**POINT I      Plaintiffs Have Proved That The Four Subparagraphs of FRCP Rule 23(a) Are Satisfied**

    **A.      FRCP Rule 23(a)(1) and 23(a)(2):  Defendants Concede That Plaintiffs Have Satisfied These Requirements**

Defendants fail to dispute that Plaintiffs' factual submissions satisfy FRCP Rule 23(a)(1) numerosity and Rule 23(a)(2) commonality.  Def. Opp. *passim*; pp. 11 fn. 10, 18 fn. 19.

    **B.      FRCP 23(a)(3):  Plaintiffs Have Proved That Typicality Has Been Satisfied**

        **1.      Defendants Effectively Concede That Plaintiffs Make The Same Legal Claims And Their Injury Arises From The Same Unitary Course Of Conduct As The Claims Of All Class Members**

Defendants concede that typicality under Rule 23(a)(3) requires that Plaintiffs' and each class member's claim arise from the same course of events and that Plaintiffs and each class member make similar legal arguments to prove such claim.  Def. Opp. p. 11.

Defendants do not contest the following.  Plaintiffs have established that their claim and each class member's claim arises from transacting NYMEX natural gas contracts at the artificial prices caused by Amaranth's same unitary course of conduct.  Defendants' conduct built up increasingly dominant natural gas positions through an illicit pattern of what have now been shown (and not contested) to be repeated manipulative trades, as well as illicit patters of

---

[2]      REDACTED

*In re Amaranth Natural Gas Commodities Litigation*, 612 F.Supp.2d 376, 387.

violating position limits, telling lies, and evading regulatory directives.  *Compare* Pl. Br. pp. 16-19 and Satterfield Decl. ¶¶24, 31, 34-39 *with* Def. Opp. *passim*.

Defendants also do not contest that Plaintiffs and all class members make the same legal claims and the same legal arguments (a) for a primary violation of manipulation, and (b) for various forms of secondary liability for such manipulation.  *Compare* Pl. Br. p. 6 *with* Def. Opp. *passim*.

Thus, Defendants have effectively conceded that the requirements of Rule 23(a)(3) are satisfied here.

> **2.      Contrary To Defendants' Attempt To Engraft A New Requirement On Rule 23(a)(3), Plaintiffs Need Not Also Prove Injury At This Point**

Instead of attempting to contest Plaintiffs' foregoing showing, Defendants try to engraft a new requirement to Rule 23(a)(3), *i.e.*, that it now requires a plaintiff also to prove her injury.  Def. Opp. pp. 11-13.  Specifically, Defendants assert that Plaintiffs have failed to satisfy Rule 23(a)(3) typically supposedly because Plaintiffs have presented "…insufficient evidence that they were injured as a result of the alleged manipulation and, absent such injury, the typicality requirement of Rule 23(a)(3) cannot be satisfied."  Def. Opp. p. 12.

In support of their proposed new standard, Defendants rely on a single quote that appears in this Court's prior decisions in *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009) ("*IPO*") and *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194, 2009 WL 2390244 at *2 (S.D.N.Y. Aug. 4, 2009) ("*Fogarazzo*"):  "[a] lack of typicality may be found in cases where the named plaintiff 'was not harmed by the [conduct] he alleges to have injured the class.'"  Def. Opp. pp. 11-12.  The above quotation cited in both *In re IPO* and *Fogarazzo* is actually from *Newman v. RCN Telecom Services, Inc.*, 238 F.R.D. 57 (S.D.N.Y. 2006).  In *Newman*, Judge Marrero held that "[t]o satisfy the typicality prong and thus warrant class certification, [plaintiff]

Newman must demonstrate that the **alleged harm** he suffered under GBL §349 is the **same harm** the proposed class is **alleged** to have suffered." *Newman*, 238 F.R.D. at 64 (emphasis supplied).[3]

In *IPO*, this Court held that Rule 23(a)(3) typicality was satisfied on the basis that "the class representatives '**allege** that they were harmed in the same unitary scheme as the rest of the class.'" *IPO*, 260 F.R.D. at 96 (emphasis supplied). Thus, in *IPO*, there was analysis of the allegations, not **proof** of injury. Similarly, in *Fogarazzo*, this Court found that the plaintiffs had satisfied Rule 23(a)(3) typicality and held that:

> Plaintiffs have also demonstrated by the preponderance of the evidence satisfaction of the typicality and adequacy of representation requirements. The claims of proposed class representatives…arise from the same event or course of misconduct as other class members and are based on the same legal theory.

*Fogarazzo*, 2009 WL 2390244 at *6. Contrary to Defendants' supposed requirement that Plaintiff must prove her injury, this Court, in both *Fogarazzo* and *In re IPO*, looked at the nature of plaintiffs' claims and the type of harm alleged to find Rule 23(a)(3) typicality. This Court did not find, require, or address actual proof of injury.

Relatedly, Defendants cite to *Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) and assert that "without evidence of injury, Plaintiffs lack standing." Def. Opp. p. 12. However, far from any requirement that Plaintiffs must put forth "evidence of injury" to establish standing,

---

[3] In *Newman*, the proposed class consisted of those persons who relied upon defendant's representations and were thereby induced to purchase defendant's internet service. *Newman*, 238 F.R.D. at 64. However, based on plaintiff Newman's deposition testimony, defendant RCN made a showing that plaintiff Newman did not rely on (or even recall) any representation by defendant as to the speed of defendant's internet service when he purchased such service. *Id.* Thus, based on the foregoing evidence, the court held that "Newman is therefore atypical of the proposed class in that the reasons stated in his deposition for subscribing to RCN's Internet services are different from those stated in the class description." *Id.*

In stark contrast to the fact record in *Newman*, Defendants here have made no showing to rebut Plaintiffs' demonstration that they have been harmed by transacting at the artificial price caused by Defendants' alleged manipulation.

*Denney* expressly holds that "for purposes of determining standing, we 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party' (*i.e.,* the class members)." *Denney*, 443 F.3d at 263, *citing Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Thus, Defendants' own authority does not require Plaintiffs to present evidence of injury in order to satisfy Rule 23(a)(3) typicality.  Rather, such authority holds that Plaintiffs need only demonstrate that the **alleged** harm they suffered (transacting at the artificial prices caused by Defendants' manipulation) is the same type of alleged harm the proposed class suffered. Plaintiffs' claims are typical under Rule 23(a)(3).

      **3.**      **Even If Proof of Injury Were Required (Which It Clearly Is Not), The Uncontested Proof Is That Plaintiffs Transacted In NYMEX Futures Contracts The Prices of Which Defendants Intentionally Manipulated**

Defendants have submitted evidence showing that each of the named Plaintiffs both purchased and sold NYMEX natural gas contracts expiring between March 2006 and April 2007.[4]  *Compare* Saha Aff. ¶¶16-26 *with* Satterfield Reply Aff. ¶¶4-6.  Plaintiffs transacted in such NYMEX contracts:

(a) AFTER Amaranth had established what the U.S. Senate Permanent Sub-Committee On Investigations found to be (and Amaranth has not contested) was Amaranth's "dominant" position in natural gas futures contracts (Comp. ¶¶4, 234);

---

[4]                        REDACTED

(b)                                            REDACTED

;

(c)                                            REDACTED

Defendant Hunter testified in *In The Matter of Brian Hunter*, FERC Docket No. IN07-23-004, as follows:

> "Q:  So if there's correlation and the prompt month, which is – let's say in our example it's May, what's happening generally to the price for the futures contracts in all those other months?
>
> A: Generally, they will follow May lower, and sometimes at different speeds. But generally, if the front goes down, in this case May, the other -- all the other contracts will go down with it…".[5]

In other words, in manipulating one NYMEX natural gas contract's price, Amaranth manipulated all seventy-two contract prices.  *See* Gilbert Reply Aff ¶24.  Here, the uncontested proof shows that all the named Plaintiffs transacted in the affected NYMEX contracts after Plaintiffs have proved that Amaranth's manipulative transactions had begun.  *In re Amaranth Natural Gas Commodities Litig.,* 587 F. Supp. 2d 513, 534 (S.D.N.Y. 2008) ("[even a] legitimate transaction combined with an improper motive is commodities manipulation").  Moreover, the transactions and positions here were illegitimate (not legitimate) positions because they were dominant positions that violated position limits, were maintained by lies to the market and the regulators, and were accompanied by Amaranth's purposeful evasion of exchange scrutiny and directives. *See* Comp. ¶¶ 33, 152, 158-67.

---

[5] August 19, 2009 FERC hearing transcript at p. 531.  Available at:
http://elibrary.FERC.gov/idmws/file_list.asp?accession_num=20090819-4012.

Amaranth also argues that there has to be proof at this stage of artificial prices. Def. Opp. pp. 15-7.  This is wrong.  *See supra*.  In intentionally withholding orders until the end of trading and intentionally driving up (and down) prices beyond where the market was at the time, Defendants caused artificial prices.  *Compare*, *In re Anthony J DiPlacido*, CFTC No. 01-23, 2008 WL 48312 at *30 (CFTC Nov. 5, 2008) ("when a price is affected by a factor which is not legitimate, the resulting price is necessarily artificial"), *aff'd sub nom., DiPlacido v. CFTC*, No. 08-5559, 2009 WL 3326624 (2d Cir. Oct. 16, 2009) *with In re Indiana Farm Bureau Coop. Ass'n Inc.*, CFTC No. 75-14 1982 WL 30249 at *39 n. 2 (CFTC Dec. 17, 1982) (if one of the factors that creates the prices is illegitimate, then the resulting price is necessarily artificial).

Because the Plaintiffs transacted at artificial prices, there is a presumption they were injured.  *Kohen v. Pacific Investment Management Co. LLC*, 244 F.R.D. 469, 475-6 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009).[6]  Defendants' expert submissions estimate artificiality and losses for Plaintiffs Special, Calle Gracey and Smith.  Saha Aff. ¶16-25.  This estimate should estop Defendants from also asserting that Plaintiffs have not made a sufficient showing of injury.

### 4.    Plaintiffs Need Not Show Net Injury For Standing

Buying and selling at an artificial price is sufficient injury for standing:

---

[6]  Until fully disclosed or overcome by counteracting manipulative acts, there is an economic presumption that artificiality remains in prices.  *See*, *e.g.*, Kenneth French and Richard Roll, *Stock Return Variance: The Arrival of Information and the Reaction of Traders*, 17 J. Financial Econ. (1986).

REDACTED

Moreover, the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing.

*Denney*, 443 F.3d at 265.  Contrary to Defendants' arguments concerning Plaintiff Martin, Plaintiffs' expert's econometric model may include intra-day changes in price artificiality. Gilbert Aff. ¶¶43(E), 46.

**C.      23(a)(4):  Plaintiffs Have Also Proved The Adequate Representation Part of FRCP Rule 23(a)(4)**

**1.      Defendants Expressly Concede That The Adequate Counsel Representation Portion of FRCP 23(a)(4) is Satisfied**

Defendants expressly concede that the adequate counsel portion of Rule 23(a)(4) is satisfied.  Def. Opp. p. 18, fn. 19.  In contrast, in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-28 (1997), the class counsel were not adequate.

**2.      Defendants Do Not Contest And Have Made A Record Showing That The Named Plaintiffs Will Fulfill Their Primary Function:  To Monitor Class Counsel And Act As Fiduciaries For The Class**

The function of the named plaintiff/class representative is to "protect the interest of the class against the possibly competing interests of the attorneys[.]" *Bafa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); see Advisory Committee Notes to the 1966 Amendments, subdivision (d)(2).  Defendants do not argue that any Plaintiff will fail their "monitor counsel" function.  Def. Opp. *passim*.  On the contrary, Defendants have now made a fact record in which the named Plaintiffs have unanimously testified under Defendants' questioning as follows.  They understand their duties, and are committed to monitoring the activities of class counsel and adequately protecting the best interests of all class members.[7]

---

[7]                          REDACTED

**3. Defendants' Novel "Optimal Start Date" Conflict Argument Is Defeated By The Evidentiary Record Showing That There Was No Conflict Here Concerning The Start Date of The Class Period**

REDACTED

REDACTED

REDACTED

**4. This Evidentiary Record Suggests There Will Be No Conflict In The Future**

Because Plaintiffs have already agreed upon a start date for the Class Period that benefits the Class (rather than any of the named Plaintiffs) and have sworn under oath that they are acting to represent the Class, the reasonable inference is that the Plaintiffs are aware of and acting consistent with their duties to the Class.  Reasoning from this evidence of a total absence of any actual conflict, the expectation is that there also will be no future actual conflicts in the prosecution of this action.  *Id.*

**5. The Law, Which Has Overwhelmingly Rejected Buyer-Seller and "Optimal" Recovery Conflicts, Also Supports The Absence of Conflict**

Nor does the law rescue Defendants' conflicts argument from the evidentiary record.  *See* Commodity Exchange Act manipulation cases cited in Plaintiffs' Moving Memorandum; *see also In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276-77  (S.D.N.Y. 2008) (VM) ("Courts have also repeatedly recognized that putative intra-class conflicts relating to the times at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification.") and *In re Nortel Networks Corp. ERISA Litigation*, No. 3:03-md-01537, 2009 WL 3294827, at *11-12 (M.D. Tenn. Sept. 2, 2009):

> Defendants . . . argue that the class members' variance in investment
> patterns creates multiple "optimal breach dates."…. In so arguing, Defendants
> urge the court's adoption of the theory of seller-purchaser conflicts, which
> originates in securities law…[C]ourts have overwhelmingly rejected the seller-
> purchaser conflicts theory as precluding class certification in securities fraud
> cases . . . .[9]

### 6.   If the Evidence of Conflict Changes, Subclasses May Be Created

If, in the future, it becomes clear that intra-class conflicts regarding damages require the

creation of sub-classes, then Class Counsel and the Court will address the issue at that time.  "To

the extent that different formulas may apply to the calculation of any damages suffered . . . this

Court can order certification of appropriate sub-classes at a later juncture within its broad

discretion in arranging the structure of a class action litigation . . . ."  *In re NYSE Specialists Sec.

Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009)(RWS), *citing Constance Sczesny Trust v. KPMG LLP*,

223 F.R.D. 319, 325 (S.D.N.Y. 2004); *accord Kohen v. Pacific Inv. Management Co. LLC*, 71

F.3d 672, 679-680 (7th Cir. 2009) (internal citations omitted).

### 7.   Defendants' Optimal Start Date Conflict Is Based On Counter-Factual Assumptions

REDACTED

---

[9] *Accord*, *Mansfield v. Air Line Pilots Ass'n Intern.*, No. 06 C 6869, 2009 WL 2601296, at *2-3
(N.D. Ill. Aug. 20, 2009)("[T]he fact that some individual plaintiffs would fare better under
alternative theories and that some class members might receive no recovery under one of those
alternatives does not render their claims 'antagonistic or conflicting.' As plaintiffs point out, the
starting point and the common issue of overwhelming importance for every class member is
plaintiffs' contention that [defendants] breached the duty of fair representation. That contention
by plaintiffs unites them, no matter which theory . . . benefits the each individual class member
the most.").

REDACTED                                    *In re Int'l Business Machines*

*Corporate Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (misstatements prior to the class period

may not be complained of in the action).  Plaintiffs have proved FRCP Rule 23(a)(4) adequacy.

**POINT II        Plaintiffs Have Proved That Common Questions of Law and Fact
                  Predominate Under FRCP Rule 23(b)(3)**

> **A.   Defendants Fail To Contest Almost All of Plaintiffs' Evidence That Common
>       Class-Wide Proof Will Be Used To Establish That Defendants' Conduct
>       Moved Prices To Artificial Levels**

REDACTED

.[10]

---

[10]                              REDACTED

REDACTED

REDACTED

R
E

REDACTED

13

REDACTED

REDACTED

[13]   REDACTED

---

[12]                                REDACTED

*See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132 n. 4 (2d Cir. 2001) ("A
*Daubert* motion is typically not made until later stages in litigation, such as in association with a

*Teamsters* nor *Bell* has any application to the proof at class certification that the proposed ultimate merits report is suitable to provide common class wide proof in the circumstances of the case.

Defendants cite to *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) for the proposition that the class should not be certified because individual inquiry is required to determine injury.  Def. Opp. pp. 23-25.  But the claim in *Newton* was **not** market manipulation.  It was whether defendants breached their duty of best execution for plaintiffs' trades.  That issue had to be examined on a trade-by-trade basis because the *Newton* Plaintiffs had the burden to show that the particular order that was entered did not receive the best execution.  That showing could only be made on a trade-by-trade basis before injury could be established.  *Newton*, 259 F.3d at 187-90.  The nature of this market manipulation and the circumstances of this case are the exact opposite of those in *Newton* REDACTED

**CONCLUSION**

The limited class should be certified under Fed.R.Civ.P. Rule 23(b)(3).

---

motion for summary judgment, motion *in limine,* or at trial, and a district court should not postpone consideration of a motion for class certification for the sake of waiting until a *Daubert* examination is appropriate."); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009) (*Daubert* inquiry on class certification is limited to whether or not expert report is admissible to establish requirements of Rule 23); *Hnot v. Willis Group Holdings Ltd*., 241 F.R.D. 204 (S.D.N.Y. 2007) (Lynch, J.) ("the Court may only examine the expert reports as far as they bear on the Rule 23 determination"); *Fogarazzo,* WL 361205 at *2 (S.D.N.Y. Feb. 16, 2005) (Scheindlin, J.).

Dated:  New York, New York
        January 5, 2010

Respectfully submitted,

**LOVELL STEWART HALEBIAN LLP**

By: */s/ Christopher Lovell*
Christopher Lovell (CL 2595)
Gary S. Jacobson (GJ 2481)
Ian T. Stoll (IS 3424)
Christopher M. McGrath (CM 4983)
61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900
(212) 719-4677 (fax)
LOUIS F. BURKE, P.C.

Louis F. Burke (LB 4686)
460 Park Avenue, 21st Floor
New York, NY 10022
(212) 682-1700
(212) 808-4280 (fax)

LOWEY DANNENBERG COHEN
& HART, P.C.

Vincent Briganti (VB 1497)
Geoffrey M. Horn (GH 4179)
White Plains Plaza
1 North Broadway, 5th Floor
White Plains, NY  10601
(914) 997-0500
(914) 997-0035 (fax)

*Co-Lead Counsel for Plaintiffs*

Christopher Gray (CG 0334)
CHRISTOPHER J. GRAY PC
460 Park Avenue, 21st Floor
New York, NY 10022
(212) 838-3221
(212) 508-3695 (fax)

Samuel Rudman
Robert Rothman

16

Fainna Kagan
COUGHLIN, STOIA, GELLER,
RUDMAN & ROBBINS, LLP
58 South Service Rd., Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 (fax)

Bernard Persky (BP 1072)
Gregory S. Asciolla
LABATON SUCHAROW, LLP
140 Broadway
New York, NY 10005
(212) 907-0868
(212) 883-7068 (fax)
*Additional Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 6, 2010, the foregoing ***Plaintiffs' Reply Memorandum of Law in Further Support of their Motion for Class Certification*** was filed and served via the Southern District's ECF system.

Dated:  January 6, 2010

Respectfully,

*/s/ Christopher Lovell*

Christopher Lovell
**Lovell Stewart Halebian LLP**
61 Broadway, Suite 501
New York, New York 10006
T: (212) 608-1900
F: (212) 719-4775

***Attorney for Plaintiffs***