UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
IN RE: AMARANTH NATURAL GAS COMMODITIES
LITIGATION

MASTER FILE
NO. 07-CV-6377 (SAS)

This Document Relates to:     ALL ACTIONS
-------------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

I. INTRODUCTION ...................................................................................................... 2

II. BACKGROUND ........................................................................................................ 3

    A. Plaintiffs' Claims Against The Floor Broker Defendants ...................................... 3

    B. The Settlement Agreement ..................................................................................... 3

        1. The Class ................................................................................................................ 4

        2. The Consideration to Plaintiffs and The Class ......................................... 4

        3. The Release ............................................................................................................ 5

III. ARGUMENT............................................................................................................... 5

    A. Preliminary Approval Should Be Granted Because The Proposed Settlement Is Fair, Reasonable, Adequate And Falls Well Within "The Range Of Possible Approval" ................................................................................................ 5

        1. The Legal Standards Governing Preliminary Approval ........................... 5

        2. The Settlement Was Achieved In Good Faith And Was The Result of Arm's Length Bargaining Between Highly Experienced And Capable Counsel ................................................................................................ 6

        3. The Proposed Settlement Has Already Benefited The Class and Will Continue To Benefit The Class......................................................... 7

            a. The Complexity, Expense And Likely Duration Of The Litigation ............................................................................................ 8

            b. The Reaction Of The Class To The Settlement .............................. 8

            c. The Stage Of The Proceedings And The Amount Of Discovery Completed........................................................................ 8

            d. The Risks Of Establishing Liability, Damages And Maintaining The Class Action Through Trial ............................... 9

|   |   |   |   |
|---|---|---|---|
|   |   | e. The Ability Of The Defendants To Withstand A Greater Judgment and The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation | 9 |
|   | B. | The Proposed Notice Plan Was Recently Approved By The Court As "The Best Notice Practicable Under The Circumstances" | 10 |
|   |   | 1. The Legal Standards Governing Notice | 10 |
|   |   | 2. The Proposed Notice Plan | 11 |
|   |   | 3. The Proposed Form of Notice | 12 |
|   | C. | The Class and Class Counsel | 13 |
|   |   | 1. The Class | 13 |
|   |   | 2. Class Counsel | 13 |
| CONCLUSION |   |   | 14 |

# TABLE OF AUTHORITIES

**Cases**

*Bano v. Union Carbide Corp*, 273 F.3d 120 (2d Cir. 2001) .............................................................. 5

*Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) ...................... 7

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ....................................................... 8

*D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ................................................................ 6

*In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. at 386 ............................................. 7

*In re Amaranth Natural Gas Commodities Litig.*, 587 F.Supp.2d at 531 .................................. 3, 9

*In re Global Crossing Securities and ERISA Litig.,* 255 F.R.D. 436 (S.D.N.Y. .......................... 13

*In re Initial Public Offering Securities Litig.,* 226 F.R.D. 186 (S.D.N.Y. 2005) ......................... 10

*In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) .............................. 6

*In re Sumitomo Copper Litigation,* 74 F.Supp.2d 393 (S.D.N.Y. 1999) ........................................ 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ............................ 6, 11, 13

**Statutes**

7 U.S.C. §1 *et seq*............................................................................................................................ 3

**Rules**

Fed. R. Civ. P. ............................................................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 10, 11

Fed. R. Civ. P. 23(e) ....................................................................................................................... 5

Fed. R. Civ. P. 23(e)(1) ................................................................................................................. 10

**Other Authorities**

Jerry W. Markham, *Manipulation of Commodity Futures Prices – The Unprosecutable Crime*, 8 Yale J. on Reg. 281 (1991) .......................................................................................................... 8

*Manual for Complex Litigation* (Fourth) §21.63 (2004) ................................................................ 6

Plaintiffs[1] respectfully submit this memorandum and the accompanying declaration of Christopher Lovell, Esq. ("Lovell Declaration") in support of their motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the Stipulation and Agreement of Settlement ("Settlement")[2] executed by Plaintiffs and Defendants ALX Energy, Inc., James DeLucia ("Floor Broker Defendants") and non-party Vincent Rufa.[3]

### PRELIMINARY STATEMENT

On December 16, 2011, the Court entered an Order that, *inter alia*, granted preliminary approval of the $77.1 million settlement between Plaintiffs and the Amaranth Defendants[4], certified a Class for settlement purposes, appointed Class Counsel[5], approved the notice program and forms of notice to the Class and set deadlines leading to a fairness hearing. Docket No. 368.  On December 19, the Court granted Plaintiffs' letter request to hold in abeyance the sending of the Class notice required by the Court's December 16 Order so that Plaintiffs could finalize and submit for preliminary approval their settlement with the Floor Broker Defendants so that notice of such Settlement could efficiently and economically be combined with notice of Plaintiffs' settlement with the Amaranth Defendants.  See Docket No. 369.

Plaintiffs have now finalized their Settlement with the Floor Broker Defendants and respectfully request preliminary approval thereof and further request that notice of the

---

[1] "Plaintiffs" refers to Roberto Calle Gracey, John Special, Gregory Smith, and Alan Martin.
[2] A copy of the Settlement Agreement and its exhibits are attached hereto to the Declaration of Christopher Lovell, Esq. ("L.Decl.") as Exhibit 1.  Capitalized terms herein are defined in the Settlement Agreement.
[3] Vincent Rufa is a former clerk of Defendant ALX Energy, Inc.
[4] "Amaranth Defendants" refers to Amaranth LLC, Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Partners LLC, Amaranth Capital Partners LLC, Nicholas M. Maounis, Brian Hunter, and Matthew Donohoe
[5] "Class Counsel" refers to Lovell Stewart Halebian Jacobson LLP, Lowey Dannenberg Cohen & Hart, P.C., and Louis F. Burke, P.C.

Settlement to the Class be combined with notice of Plaintiffs' settlement with the Amaranth Defendants.

## I.     INTRODUCTION

Plaintiffs reached an agreement in principle with the Floor Broker Defendants on June 6, 2011 after more than four years of litigation.  The Settlement was finalized and executed on December 22, 2011.  Under the terms of the Settlement, the Floor Broker Defendants have agreed to provide substantial cooperation to Plaintiffs for the benefit of the Class, including up to 35.5 hours of interview time with Class Counsel, the production of all non-privileged documents relating to the Action in their possession and other cooperation.  See II.B.3 *infra* (detailing the cooperation).

The settlement negotiations between Plaintiffs and the Floor Broker Defendants were strictly at arm's length, in good faith, and absolutely free of any collusion.  Lovell Declaration at ¶4.  The cooperation provided by the Floor Broker Defendants helped Plaintiffs to obtain the $77.1 million settlement with the Amaranth Defendants.  Furthermore, the Floor Broker Defendants' continuing obligation to provide cooperation will further benefit Plaintiffs as they pursue their claims against the JP Morgan Defendants.[6]

Accordingly, Plaintiffs, on behalf of themselves and the Class, respectfully move the Court to grant preliminary approval of the Settlement and enter the [Proposed] Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, and Approving the Proposed Form and Program of Notice To The Class ("Scheduling Order") attached as Exhibit 1-A to the Lovell Declaration.

At the fairness hearing, Plaintiffs will request the entry of a final order and judgment

---

[6] "JP Morgan Defendants" refers to J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A. and J.P. Morgan Futures Inc.  Plaintiffs' claims against the JP Morgan Defendants were dismissed on October 6, 2008.  See Docket No. 47.

2

(substantially in the form of Exhibit 1-B to the Lovell Declaration) dismissing the action and retaining jurisdiction for the implementation and enforcement of the Settlement.

## II. BACKGROUND

### A. Plaintiffs' Claims Against The Floor Broker Defendants

In this Action, Plaintiffs allege that the defendants manipulated or are otherwise responsible for the manipulation of certain New York Mercantile Exchange ("NYMEX") natural gas futures contracts during February 16, 2006 through September 28, 2006 ("Class Period") which caused artificial prices in violation of the Commodity Exchange Act, 7 U.S.C. §1 *et seq*. ("CEA").[7] Defendants have denied and continue to deny the claims against them.

During the Class Period, Defendant ALX Energy Inc. acted as the Amaranth Defendants' primary NYMEX natural gas floor broker. Defendant James DeLucia was the President of ALX. Non-party Vincent Rufa was a clerk at Defendant ALX Energy Inc. during the Class Period and took orders relating to the execution of NYMEX natural gas futures on the Amaranth Defendants' behalf.

Plaintiffs alleged that during the Class Period the Floor Broker Defendants had knowledge of, and provided substantial assistance to, the Amaranth Defendants' alleged manipulation of NYMEX natural gas prices in violation of Section 22(a)(1) of the CEA. See Complaint, Docket No. 155 at ¶¶505-509. The Floor Broker Defendants' motions to dismiss Plaintiffs' aiding and abetting claim was denied. See *In re Amaranth Natural Gas Commodities Litig.*, 587 F.Supp.2d 513, 541-45 (S.D.N.Y. 2009).

---

[7] The background of the Action, the detailed allegations of Plaintiffs' Complaint and the full procedural history herein are all set forth in Plaintiffs' December 13, 2011 motion papers that sought preliminary approval of Plaintiffs' settlement with the Amaranth Defendants. See Docket No. 365 at pp. 3-5.

B.  **The Settlement Agreement**

The Settlement Agreement includes the following material terms.

1.  **The Class**

The proposed Class set forth below is the same Class preliminarily certified by this Court on December 16, 2011 for purposes of Plaintiffs' settlement with the Amaranth Defendants.

> All persons (other than Defendants, their employees, affiliates and co-conspirators), who satisfy any one of the following conditions:
>
> (1) Purchased, between February 16, 2006 and September 28, 2006 ("Class Period"), New York Mercantile Exchange ("NYMEX") natural gas futures contracts[8] for December 2006, January 2007, February 2007, or March 2007 either (i) to liquidate prior to September 1, 2006, a short[9] position in the contract, or (ii) as a long[10] position in such contract which was not liquidated until after May 10, 2006;
>
> (2) Purchased, during the Class Period, a NYMEX natural gas futures contract for March 2006, April 2006, May 2006, June 2006, July 2006, August 2006, September 2006, October 2006, or November 2006 ("the 2006 Contracts") or April 2007 as a long position in such contract, and liquidated such position after May 10, 2006;
>
> (3) Purchased a 2006 Contract as a long position in such contract, held such a position as of the start of or acquired such a position during any of the following time periods, and sold all or a portion of such position during or after the end of such time period and on or prior to September 28, 2006. *Time Periods*: (i) 2:00 p.m.-2:30 p.m. on February 24; (ii) 2:00 p.m.-2:30 p.m. on March 29; or (iii) 2:00 p.m.-2:30 p.m. on April 26, 2006.

*Compare* Lovell Declaration Exhibit 1-A at ¶2 *with* Docket No. 368 at ¶2.

2.  **The Consideration to Plaintiffs and The Class**

---

[8] In this class definition, the terms "NYMEX natural gas futures contracts" or "natural gas futures contracts" include the miNY Henry Hub natural gas futures contracts.

[9] As used in this class definition, a short position in a given contract expiration (*e.g.,* March 2006) means a position in which the class member's open sales of that expiration exceed the class member's open purchases of that expiration. This is so regardless of whether the short position is a standalone position or is part of a spread with a long position in a different contract expiration.

[10] As used in this class definition, a long position in a given expiration (*e.g.*, April 2006) means a position in which the class member's open purchases of that expiration exceed the class member's open sales of that contract expiration. This is so regardless of whether the long position is a standalone position or is part of a spread with a short position in a different contract expiration (*e.g.,* March 2006).

Pursuant to the terms of the Settlement Agreement, the Floor Broker Defendants and non-party Rufa (a former clerk of Defendant ALX) have agreed to provide the following substantial cooperation to Plaintiffs for the benefit of the Class.

Defendant DeLucia has agreed to make himself available for up to 22.5 hours of interview time with Class Counsel. Settlement Agreement Section 3(a). Defendants DeLucia and ALX have further agreed provide all non-privileged documents in their possession or control relating to the Action and to provide up to 6 additional hours of interview time relating to issues surrounding such documents. *Id*. Section 3(b). Finally, non-party Rufa has agreed to sign affidavits reflecting truthful testimony, appear at trial to testify truthfully and make himself available for up to 7 hours of interview time with Class Counsel. *Id*. Section 3(c).

Defendant DeLucia has already provided several hours of interview time to Class Counsel.

### 3. The Release

In exchange for the foregoing consideration, Plaintiffs and the Class have agreed to release and discharge the Floor Broker Defendants from any and all claims against them in any way related to transactions involving or relating to NYMEX natural gas futures contracts for the months of March 2006 through April 2007 during the Class Period as set forth in Section 5 of the Settlement Agreement.

### III. ARGUMENT

#### A. Preliminary Approval Should Be Granted Because The Proposed Settlement Is Fair, Reasonable, Adequate And Falls Well Within "The Range Of Possible Approval"

##### 1. The Legal Standards Governing Preliminary Approval

The settlement of a class action requires court approval. *Compare* Fed. R. Civ. P. 23(e)

(settlements in class actions require "…the court's approval") *with Bano v. Union Carbide Corp*, 273 F.3d 120, 129-30 (2d Cir. 2001) (there is an overriding public interest in settling and quieting litigation, particularly class actions).

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*"); *see also Manual for Complex Litigation* (Fourth) §21.63 (2004). When a court considers preliminary approval of a class action settlement, it must "…make a preliminary evaluation of the fairness of the settlement…" prior to ordering notice of the settlement be sent to the class. *NASDAQ*, 176 F.R.D. at 102. A court should grant preliminary approval where:

> …the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.

*Id*.

In conducting the foregoing inquiry, courts generally consider two types of evidence: (1) the negotiating process leading up to the settlement and (2) the settlement's substantive terms. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). After preliminary approval has been granted, notice is then sent to members of the class, including notice of a "fairness hearing" where class members and the parties to the settlement may be heard before the court grants final approval of the settlement. *NASDAQ*, 176 F.R.D. at 102.

### 2. The Settlement Was Achieved In Good Faith And Was The Result of Arm's Length Bargaining Between Highly Experienced And Capable Counsel

A class action settlement is entitled to a presumption of fairness, adequacy and reasonableness when "…there were arm's length negotiations between experienced counsel

after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) *cert. denied*, 544 U.S. 1044 (2005) ("*Wal-Mart*"). The Settlement negotiations were strictly at arm's length and free of collusion. Lovell Declaration at ¶4. The parties here have been represented by highly experienced and capable counsel.

Before the Settlement was executed, Class Counsel undertook a diligent and thorough investigation of the factual and legal issues posed by this litigation—including, for example, reviewing more than two million pages of documentary evidence and taking or defending twenty-nine fact and expert depositions.

In light of their prior experience in complex class actions generally and commodity futures manipulation litigation in particular, their knowledge of the strengths and weaknesses of Plaintiffs' claims against the Floor Broker Defendants, the risks associated with the Floor Broker Defendants' ability to satisfy a judgment, the expert analyses they received, and their assessment of the Class's likely recovery following trial and appeal, Class Counsel concluded that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class. *Compare Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("[a] substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement") *with In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. at 386 ("I [] find plaintiffs' counsel to be 'qualified, experienced and able to conduct the litigation.'").

> 3. **The Proposed Settlement Has Already Benefited The Class and Will Continue To Benefit The Class**

In evaluating a proposed settlement's substantive terms at the preliminary approval stage, courts often consider the following "*Grinnell* factors" even though at least one of these factors (*i.e.*, the reaction of the class to the settlement) was clearly designed with final approval

7

in mind:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

### a. The Complexity, Expense And Likely Duration Of The Litigation

The complexity of this commodity futures manipulation class action is reflected in the many fully-briefed motions and numerous opinions in the four and one-half years since the original complaint was filed. *Compare* Docket No. 365 at pp. 4-5 (citing numerous motions and decisions in the Action) *with* Jerry W. Markham, *Manipulation of Commodity Futures Prices – The Unprosecutable Crime*, 8 Yale J. on Reg. 281 (1991) (claims for manipulation in violation of the CEA are notably complex and difficult to prove) and *In re Sumitomo Copper Litigation,* 74 F.Supp.2d 393, 397 (S.D.N.Y. 1999) (Pollack, J.) (same). The proposed Settlement eliminates these complexities and the substantial additional expenses that would accompany years of continued litigation.

### b. The Reaction Of The Class To The Settlement

After the Class has been provided notice of the Settlement, Plaintiffs will address the Class's reaction in their motion seeking final approval.

### c. The Stage Of The Proceedings And The Amount Of Discovery Completed

The stage of the proceedings are extremely advanced and a substantial amount of discovery has been completed. Before the time the Settlement was finalized, almost four years of extensive fact discovery had come to a close, twenty-nine depositions had occurred, over two

8

million documents had been reviewed, Plaintiffs had served six merits expert reports, Defendants had begun to depose Plaintiffs' six experts, and the Court had scheduled a conference in order to, among other things, set a summary judgment briefing schedule.  See Docket No. 365 at pp. 3-5.

### d. The Risks Of Establishing Liability, Damages And Maintaining The Class Action Through Trial

Continuing this complex litigation against the Floor Broker Defendants would entail a lengthy and highly expensive legal battle involving complex legal and factual issues. Plaintiffs expected that the Floor Broker Defendants would move for summary judgment. Even if Plaintiffs survived summary judgment, they would have faced further risks at trial and, to the extent successful at trial, on post-trial motions and then appeal.  Class Counsel would have tried to overcome all the risks of continued litigation, including those risks set forth above.  However, in Class Counsel's judgment, the cooperation provided by the Floor Broker Defendants for the benefit of the Class represents fair and adequate consideration.

### e. The Ability Of The Defendants To Withstand A Greater Judgment And The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation

Plaintiffs believe that it is unlikely that the Floor Broker Defendants would be able to satisfy any substantial judgment herein.  In fact, Plaintiffs understand that Defendant ALX is in the process of winding down its business.  Also, there are additional risks associated with Plaintiffs' aiding and abetting claim against the Floor Broker Defendants that don't exist in claims for primary manipulation.  *In re Amaranth Natural Gas Commodities Litig.*, 587 F.Supp.2d at 531 ("'to recover on an aiding and abetting claim under the CEA, a plaintiff must prove that the defendant (1) had knowledge of the principal's intent to violate the CEA; (2) intended to further that violation; and (3) committed some act in furtherance of the principal's objective.'").  Because of the foregoing complications, it would be difficult for Plaintiffs to obtain and recover a

considerable judgment against the Floor Broker Defendants.

The substantial cooperation provided by the Settlement has already benefited the Class and helped obtain the $77.1 million Settlement against the Amaranth Defendants.  This Court has previously recognized the value of agreements of cooperation:

> [F]rom a pragmatic standpoint, the value of [] willing allies in litigation…is significant. The [settling defendants] know far better than the plaintiff classes precisely what occurred in the [relevant] period . . . and their willingness to open their files and aid plaintiffs in amassing evidence against [non-settling defendants] may ease the plaintiffs' discovery burden enormously.

*In re Initial Public Offering Securities Litig.,* 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (Scheindlin, J.) (footnote omitted).  The Floor Broker Defendants' continuing obligation to provide cooperation pursuant to the Settlement Agreement will further benefit the Class as Plaintiffs pursue their claims against the JP Morgan Defendants.

****

In sum, the proposed Settlement is procedurally and substantively fair, reasonable, adequate and justifies sending notice of the Settlement to the members of the Class.

### B.     The Proposed Notice Plan Was Recently Approved By The Court As "The Best Notice Practicable Under The Circumstances"

#### 1.     The Legal Standards Governing Notice

After a class action settlement has been preliminarily approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  When a class is certified for settlement purposes under Rule 23(b)(3) "…the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In particular, the notice must:

> …clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues,

>or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).

Fed. R. Civ. P. 23(c)(2)(B).

Notice regarding a proposed settlement is adequate under **both** Rule 23 and the Due Process Clause if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and it can "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15.

### 2. The Proposed Notice Plan

Plaintiffs propose the same four-pronged program of notice that the Court recently approved for purposes of Plaintiffs' settlement with the Amaranth Defendants. *Compare* Lovell Declaration Exhibit 1-A ¶¶7-9 *with* Docket No. 368 at ¶¶7-9. The proposed four-pronged program of notice is reasonably calculated to reach all Class members and to reach **more than once** the largest traders in NYMEX natural gas futures contracts during the Class Period.

In short, the proposed program of notice includes:

(1) individual mail notice to the 1,069 largest traders in the Class (whose names and addresses have been obtained by subpoena from the NYMEX);

(2) individual mail notice to all 45 clearing members of the NYMEX[11], and that such notice request that the NYMEX clearing members forward the notice to their customers who transacted in Class Contracts (or provide the names and addresses of such customers to Plaintiffs);

---

[11] Everyone who transacted in NYMEX natural gas futures contracts during the Class Period had to do so through a NYMEX clearing member.

11

(3) notice by publication (a) for two consecutive months in Futures Magazine (which reportedly has 60,000 subscribers and many additional readers who trade commodity futures); (b) on the Futures Magazine website (which reportedly has 13,000 unique visits per month) for one month; (c) for two consecutive months in Stock and Commodities Magazine (which reportedly has 47,000 subscribers); and (d) on the Stock and Commodities Magazine website for one month. Any members of the Class that do not receive notice through direct mail are likely to receive notice through the foregoing publications or through word of mouth; and

(4) notice by the creation of a settlement website that will allow Class members who search the web to learn of the action and of other pertinent matters (including the date of the Fairness Hearing).

The proposed notice plan meets each of the requirements under Rule 23(c)(2)(B), comports with due process and is the best notice practicable under the circumstances.

### 3. The Proposed Form of Notice

The proposed form of notice here is the same as the form of notice recently approved by the Court for purposes of Plaintiffs' settlement with the Amaranth Defendants EXCEPT that such notice has been amended in order to provide the Class with a description of, and their rights with respect to, Plaintiffs' Settlement with the Floor Broker Defendants. *Compare* Exhibit A hereto (combined long form notice) and Exhibit B hereto (combined publication notice) *with* Docket No. 366 Exhibit 1-C and 1-F *passim*.

The amended proposed notice includes, *inter alia*, each of the requirements of Rule 23(c)(2)(B): (i) a description of the action (Lovell Declaration Exhibit 1-A at pp. 3-4); (ii) a definition of the Class (*id*. pp. 4-5); (iii) a description of the class claims, issues and defenses (*id*. pp. 3-4); (iv) a statement that a Class member may enter an appearance through an attorney if the member so desires (*id*. pp. 13-14); (v) a statement that the Court will exclude

from the class any member who requests exclusion (*id*. pp. 2, 13); (vi) the time and manner for requesting exclusion (*id*.); and (vii) a statement concerning the binding effect of a class judgment on class members (*id*. pp. 8, 10).  *Compare* Exhibit A hereto *with* Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice is well organized, written in plain concise language such that it could easily be understood by the average Class member and it fairly apprises the Class of the pendency of the action, the existence of the Settlement, their options under the Settlement, the material terms of the Settlement and how they may obtain a copy of same.  *Compare* Exhibits A and B hereto (combined class notices) *with Wal-Mart*, 396 F.3d at 114-115.

### C.  The Class and Class Counsel

#### 1.  The Class

Rule 23(e) allows only for the settlement "of a certified class."  *Compare* Fed. R. Civ. P. 23(e) *with In re Global Crossing Securities and ERISA Litig.,* 255 F.R.D. 436, 451 (S.D.N.Y. 2004) ("[t]he Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes…").  A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *Id*.

The proposed Class here is the same as the Class recently certified by the Court for purposes of Plaintiffs' settlement with the Amaranth Defendants.  *Compare* Lovell Declaration Exhibit 1-A ¶2 *with* Docket No. 368 at ¶2. Accordingly, the Class satisfies the requirements of Rule 23.

### 2. Class Counsel

Federal Rule of Civil Procedure 23(g)(1) provides that "…a court that certifies a class must appoint class counsel."  Rule 23(g)(1).  Rule 23(g)(2) provides that where, as here, only one application is made seeking appointment as class counsel, "…the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)."  Rule 23(g)(2).

The Court previously found that Class Counsel satisfied the requirements of Rule 23(g) and appointed Class Counsel as counsel for the Class for purposes of Plaintiffs' settlement with the Amaranth Defendants.  See Docket No. 386 at ¶3.  Thus, Class Counsel satisfy the requirements of Rule 23(g).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the [Proposed] Scheduling Order attached as Exhibit 1-A to the Declaration of Christopher Lovell, Esq.

Dated: New York, New York
       December 27, 2011

>                    Respectfully submitted,
>
>                    */s/ Christopher Lovell*
>                    Christopher Lovell
>                    Christopher M. McGrath
>                    **LOVELL STEWART HALEBIAN JACOBSON LLP**
>                    61 Broadway, Suite 501
>                    New York, New York 10006
>                    Telephone:    (212) 608-1900
>                    Facsimile:    (212) 719-4775
>
>                    Vincent Briganti
>                    Geoffrey Horn
>                    **LOWEY DANNENBERG COHEN & HART, P.C.**
>                    White Plains Plaza
>                    1 North Broadway, 5th Floor

White Plains, New York 10601
Telephone:   (914) 733-7221

Louis F. Burke
**LOUIS F. BURKE P.C.**
460 Park Avenue, 21st Floor
New York, New York 10022
Telephone:   (212) 682-1700

*Lead Counsel for Plaintiffs and the Class*

15