# Exhibit A

**IMPORTANT LEGAL NOTICE TO ALL MEMBERS OF THE CLASS
FORWARD TO CORPORATE HEADQUARTERS/LEGAL COUNSEL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION<br><br>This document Relates To:    All Cases | MASTER FILE<br>NO. 07-CV-6377 (SAS) |

**NOTICE OF CLASS ACTION, SETTLEMENTS THEREIN,
2012 HEARING THEREON, AND CLASS MEMBERS' RIGHTS**

*PLEASE READ THIS ENTIRE NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY THE ABOVE CAPTIONED CLASS ACTION LAWSUIT PENDING IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.  THIS NOTICE ADVISES YOU OF YOUR OPTIONS REGARDING THE CLASS ACTION SETTLEMENTS, INCLUDING WHAT YOU MUST DO IF YOU WISH TO SHARE IN THE NET SETTLEMENT FUND.*

*If you are a brokerage firm or trustee through whom New York Mercantile Exchange ("NYMEX") natural gas futures contracts were purchased from February 16, 2006 through September 28, 2006 on behalf of customers that are members of the Class as defined herein in I.C. below, you must provide the name and last known address for such customers to the Settlement Administrator at the address listed in VIII below within two weeks of receiving this Notice.  The Settlement Administrator will cause copies of this Notice to be forwarded to each customer identified at the address so designated.*

This Notice of the pendency of this class action and of the two proposed settlements is being given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court").  The purpose of this Notice is to inform you of your rights in connection with two proposed settlements and the pendency of the above captioned class action ("Action").

In this Action, Plaintiffs allege that defendants manipulated or are otherwise responsible for the manipulation of certain New York Mercantile Exchange ("NYMEX") natural gas futures contracts during February 16, 2006 through September 28, 2006 ("Class Period") which caused artificial prices in violation of the Commodity Exchange Act, 7 U.S.C. §1 *et seq*. ("CEA").  Defendants have denied and continue to deny the claims.

The settling defendants in the Action are Amaranth LLC, Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Group Inc., Amaranth Management Limited Partnership, Amaranth International Ltd., Amaranth International Advisors, L.L.C., Nicholas

1

Maounis, Brian Hunter and Matthew Donohoe (collectively "Amaranth Defendants") and ALX Energy, Inc. and James DeLucia (collectively "Floor Broker Defendants").  Defendants J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A. and J.P. Morgan Futures Inc. (collectively "JP Morgan Defendants") are **not** part of the settlements.

In order to resolve the claims against them, the Amaranth Defendants have agreed to wire transfer (a) $72,400,000 into the Escrow Account[1] within ten (10) business days after entry of the Scheduling Order ("Initial Payment") and (b) $4,700,000 into the Escrow Account within fifteen (15) business days after entry of the Scheduling Order ("Additional Payment").  The foregoing payments, plus all interest earned thereon, constitute the Settlement Fund.

In order to resolve the claims against them, the Floor Broker Defendants have agreed to provide cooperation (including up to 35.5 hours of interviews and other cooperation) to Plaintiffs' counsel for the benefit of the Class.

**Right to Submit a Proof of Claim**.  Members of the Class may be entitled to share in the Net Settlement Fund if they submit a valid and timely Proof of Claim prior to ___, 2012.  *See* III.A. and IV below.  The Proof of Claim is attached.

However, if you are a Member of the Class but do not file a Proof of Claim, you will still be bound by the releases set forth in the settlement agreements if the Court enters an order approving the settlements.  *See* II.B. below.

**Fairness Hearing and Right to Object**.  The Court has scheduled a public hearing on final approval for _____, 2012 ("Final Approval Hearing").  The purpose of the Final Approval Hearing is to determine, among other things, whether the proposed settlements, the Plan of Allocation and the application by Lead Counsel for Class Counsel attorneys' fees and reimbursement of Class Counsel's expenses are fair, reasonable, and adequate.  If you remain in the Class, then you may object to any aspect of the settlements, the Plan of Allocation, Class Counsel's request for attorneys' fees and expenses or any other matters.  *See* III.B. below.  All objections must be made in accordance with the instructions set forth below and must be filed with the Court and served by _____, 2012 or they will not be considered.  *See* III.B below.

**Right to Exclude Yourself From The Class**.  The Court will exclude you from the Class (and thereby the settlements) if you make a written request for exclusion that is received by the Settlement Administrator (Rust Consulting, Inc.) at the address set forth in VIII below on or before ____, 2012. See III.C. below.  If you exclude yourself from the Class you will not be not be entitled to share in the Net Settlement fund or otherwise participate in the settlements or the action.

---

[1]  Unless otherwise stated, capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement dated December 13, 2011.

2

## I.     BACKGROUND OF THE LITIGATION

### A.     The Nature of This Lawsuit

Plaintiffs claimed that the Amaranth Defendants, between February 16, 2006 and September 28, 2006, engaged in or aided and abetted two separate but related manipulations of NYMEX natural gas futures prices.  First, Plaintiffs alleged that the Amaranth Defendants, or some of them, held dominant positions in NYMEX natural gas contracts with delivery months from March 2006 to April 2007 during certain parts of the Class Period and the Amaranth Defendants, or some of them, used these dominant positions to artificially inflate the spread between summer 2006 contracts and winter 2006-2007 contracts.  Plaintiffs also alleged that the Amaranth Defendants manipulated or aided and abetted the manipulation of NYMEX natural gas futures prices by engaging in so-called "slam the close" trades during the last 30 minutes of trading in the March, April and May 2006 contracts for the purpose of driving the price of those contracts lower in order benefit non-NYMEX natural gas positions and further inflate spread prices.  The Amaranth Defendants have consistently and vigorously denied Plaintiffs' claims.

Plaintiffs claimed that the Floor Broker Defendants had knowledge of, and provided substantial assistance to, the Amaranth Defendants' foregoing alleged manipulations of NYMEX natural gas prices in violation of Section 22(a)(1) of the Commodity Exchange Act, 7 U.S.C. §25(a)(1).  The Floor Broker Defendants have consistently and vigorously denied Plaintiffs' claims.

Plaintiffs similarly claimed that the JP Morgan Defendants had knowledge of, and provided substantial assistance to, the Amaranth Defendants' foregoing alleged manipulations of NYMEX natural gas prices in violation of Section 22(a)(1) of the Commodity Exchange Act, 7 U.S.C. §25(a)(1).  The JP Morgan Defendants have consistently and vigorously denied Plaintiffs' claims.

### B.     Procedural History of the Action

On July 12, 2007, Plaintiffs filed an initial class action complaint against Defendants in the United States District Court for the Southern District of New York.  Plaintiffs filed a Consolidated Complaint on February 14, 2008.  Defendants moved to dismiss the Consolidated Complaint on April 28, 2008.  On October 6, 2008, the Court granted in part and denied in part Defendants' motions.  *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008).  The Court dismissed Plaintiffs' aiding and abetting claims against the JP Morgan Defendants.  *Id*.

Plaintiffs filed their 167-page First Amended Consolidated Complaint ("Amended Complaint") on November 26, 2008.  Defendants moved to dismiss the Amended Complaint on January 15, 2009.  On April 27, 2009 the Court granted in part and denied in part Defendants' motions.  *In re Amaranth Natural Gas Commodities Litigation*, 612 F.Supp. 2d 376 (S.D.N.Y. 2009).

On March 25, 2010, the Amaranth Master Fund Board of Directors approved a distribution to investors and employees of Amaranth of $75 million of the remaining $185

3

million it held.  Plaintiffs opposed the transfer and sought pre-judgment attachment of the Master Fund's assets pursuant to Rule 64 of the Federal Rules of Civil Procedure and section 6201 of the New York Civil Practice Law and Rules.  The Court granted Plaintiffs' motion on May 3, 2010 finding that Plaintiffs demonstrated both a probability of success on the underlying merits of the case against Amaranth Advisors and a probability of success in demonstrating that Amaranth Advisors was an "official, agent, or other person" acting for the Master Fund.  *In re Amaranth Natural Gas Commodities Litigation*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010).

Plaintiffs filed a motion to certify the Class on October 15, 2009.  On September 27, 2010, the Court granted Plaintiffs' motion to certify the Class.  *In re Amaranth Natural Gas Commodities Litigation*, 269 F.R.D. 366 (S.D.N.Y. 2010).  On November 16, 2010, the Second Circuit Court of Appeals denied Defendants' interlocutory appeal pursuant to Rule 23(f).  See 10-cv-4110 at Docket No. 43 (2d Cir. 2010).

On June 11, 2011, Plaintiffs filed a separate action against certain of the Amaranth Defendants and others in the Southern District of New York alleging that certain Amaranth Defendants authorized, or were the recipients of transfers, made in violation of New York statutory fraudulent conveyance provisions (the "Fraudulent Conveyance Action").  See *Calle Gracey, et al. v. Maounis, et al.*, 11-cv-4001 (SAS) (S.D.N.Y.).  The Fraudulent Conveyance Action was filed entirely under seal and has been stayed pending approval of the settlement with the Amaranth Defendants.

Fact discovery began shortly after the initial Complaint was filed and ended on June 30, 2011.  Expert discovery began on or around July 10, 2009 and was scheduled to conclude on November 28, 2011.  During fact discovery Defendants produced in excess of two million pages of documents.  And the parties took approximately twenty-five fact and four expert depositions.

The Amaranth Defendants and the Floor Broker Defendants had significant defenses which created real risk that Plaintiffs would not establish liability and, even if they did, would not establish an entitlement to the damages they sought.  Plaintiffs acknowledge that if these risks materialized their impact would have been substantial, and perhaps dispositive.

Plaintiffs expected that the Amaranth Defendants and the Floor Broker Defendants would move for summary judgment.  Even if Plaintiffs survived summary judgment, they would have faced further risks at trial and, to the extent successful at trial, on post-trial motions and then appeal.  Lead Counsel would have tried to overcome all the risks of continued litigation, including those risks set forth above.  However, in Lead Counsel's judgment, the amount to be paid to claiming Class Members from the Settlement Fund represents fair and adequate consideration for claiming Class Members.

Accordingly, Lead Counsel have entered and recommended that the Court approve the proposed Settlement and urge Class Members to file a Proof of Claim.

### C.     The Certified Class

The Class certified by the Court for settlement purposes is defined as: All persons (other than Defendants, their employees, affiliates and co-conspirators), who satisfy any one of the following conditions:

(1) Purchased, between February 16, 2006 and September 28, 2006 ("Class Period"), New York Mercantile Exchange ("NYMEX") natural gas futures contracts[2] for December 2006, January 2007, February 2007, or March 2007 either (i) to liquidate prior to September 1, 2006, a short[3] position in the contract, or (ii) as a long[4] position in such contract which was not liquidated until after May 10, 2006;

(2) Purchased, during the Class Period, a NYMEX natural gas futures contract for March 2006, April 2006, May 2006, June 2006, July 2006, August 2006, September 2006, October 2006, or November 2006 ("the 2006 Contracts") or April 2007 as a long position in such contract, and liquidated such position after May 10, 2006;

(3) Purchased a 2006 Contract as a long position in such contract, held such a position as of the start of or acquired such a position during any of the following time periods, and sold all or a portion of such position during or after the end of such time period and on or prior to September 28, 2006. *Time Periods*: (i) 2:00 p.m.-2:30 p.m. on February 24; (ii) 2:00 p.m.-2:30 p.m. on March 29; or (iii) 2:00 p.m.-2:30 p.m. on April 26, 2006.

## II.   SUMMARY OF THE PROPOSED SETTLEMENTS

### A.   Settlement With The Amaranth Defendants

On behalf of the Class, the Plaintiffs entered into the settlement with Amaranth Defendants on December 13, 2011. The following description of the proposed settlement is only a summary. This description and this entire Notice are qualified in their entirety by the settlement agreement which is on file with the Court at the address indicated in this Notice and is available at the official Settlement website www.amaranthcommoditieslitigation.com.

---

[2] In this class definition, the terms "NYMEX natural gas futures contracts" or "natural gas futures contracts" include the miNY Henry Hub natural gas futures contracts.

[3] As used in this class definition, a short position in a given contract expiration (*e.g.,* March 2006) means a position in which the class member's open sales of that expiration exceed the class member's open purchases of that expiration. This is so regardless of whether the short position is a standalone position or is part of a spread with a long position in a different contract expiration.

[4] As used in this class definition, a long position in a given expiration (*e.g.*, April 2006) means a position in which the class member's open purchases of that expiration exceed the class member's open sales of that contract expiration. This is so regardless of whether the long position is a standalone position or is part of a spread with a short position in a different contract expiration (*e g.,* March 2006).

5

### 1. Amaranth LLC's Payments for the Benefit of the Class

#### a. Class Members' Allowed Claims

The amounts of alleged price artificiality are Plaintiffs' experts' alleged artificiality numbers. The alleged price artificiality numbers are available for review on the Settlement website at www.amaranthcommoditieslitigation.com. All determinations as to the sufficiency of the records shall be made by the Settlement Administrator.

#### b. Amaranth LLC's Potential Right To Reversion

Section 11 of the settlement agreement provides Amaranth LLC with limited rights of reversion available only if the Net Settlement Fund exceeds the sum of the Allowed Claims. Class Members are referred to the Settlement Agreement, particularly Section 11 thereof, for the full terms of Amaranth LLC's reversion rights.

#### c. The Amaranth Defendants' Potential Right To Termination

Section 25 of the Settlement Agreement describes the Amaranth Defendants' right to terminate if certain conditions anticipated by the parties are not satisfied. These conditions are set forth in Section 25 of the settlement agreement. With respect to each such condition, the Amaranth Defendants have the right (as qualified in the settlement agreement), but not the obligation, to determine to exercise, in their sole discretion, a termination notice if the condition is not satisfied.

#### d. Plan of Allocation

The Plan of Allocation is as follows:

****

1. Except for the terms defined herein, the Plan of Allocation adopts and incorporates the definitions in the Stipulation and Agreement of Settlement, dated December 13, 2011, to which this Plan of Allocation is attached as an exhibit.

2. A Class Member's Allowed Claim Amount shall equal that Class Member's "Net Adverse Impact" (as defined in Section 5 of this Plan of Allocation) as calculated below in Sections 3 through 6. Section 7 sets forth how the Net Settlement Fund shall be distributed among Class Members.

3. A Class Member's "Adverse Impact" shall be equal to the sum of their "Artificiality Paid" on each purchase of a Class Contract minus the sum of their "Artificiality Received" on each sale of a Class Contract. For the avoidance of doubt, "sale" means either closing a long position or opening a short position and "purchase" means either closing a short position or opening a long position.

4. The amounts of "Artificiality Paid" and "Artificiality Received" for each Class Member shall be determined on a position-by-position basis for each Class Contract. For each

6

purchase or sale of all or a portion of a position in a Class Contract by a Class Member, the Class Member's "Artificiality Paid" or "Artificiality Received" shall be calculated based on either (a) the Daily Artificiality Estimates or (b) the Slam The Close Artificiality Estimates, whichever produces a higher Allowed Claim Amount for the Class Member.  See www.amaranthcommoditieslitigation.com (listing the artificiality estimates).

5. "Net Adverse Impact" shall mean the Adverse Impact minus the Hedging Deduction.

6. The Hedging Deduction, for Class Members who are determined to be hedgers, shall equal 25% of the Adverse Impact.

7. For the distribution among Class Members *inter se*, (i) if the sum of each and every claiming Class Member's Allowed Claim Amount is less than or equal to the Net Settlement Fund, each Class Member who executes the required release and covenant not to sue and submits adequate documentation, all as determined by the Settlement Administrator (or the Mediator in the event of an unresolved dispute), shall be entitled to receive an amount equal to that Class Member's Allowed Claim Amount; and (ii) if the sum of each and every claiming Class Member's Allowed Claim Amount is greater than the Net Settlement Fund, each Class Member who executes the required release and covenant not to sue and submits adequate documentation, all as determined by the Settlement Administrator (or the Mediator in the event of an unresolved dispute), shall be entitled to receive an amount computed by multiplying the Net Settlement Fund by a fraction, (1) the numerator of which is the Class Member's Allowed Claim Amount and (2) the denominator of which is the sum of each and every claiming Class Member's Allowed Claim Amount.  For the avoidance of doubt, no Class Member shall receive any distribution from the Net Settlement Fund in excess of that Class Member's Allowed Claim Amount.

8. All determinations under this Plan of Allocation shall be made by the Settlement Administrator subject to review by Class Counsel and the Court.

****

Examples of potential computations under the Plan of Allocation are available on the Settlement website at www.amaranthcommoditieslitigation.com.

The Plan of Allocation may be changed by the Court without providing further notice.

### e.   Changes or Further Orders by The Court

Any change by the Court in the Plan of Allocation, in the time and place of the Final Approval Hearing, or in any other matter and all further orders or requirements by the Court will be posted on the Settlement website at www.amaranthcommoditieslitigation.com as soon as practicable.

It is important that you refer to the Settlement website as no other notice may be published of such changes.

## 2. The Releases, Discharge and Covenant Not To Sue

**IF YOU HAVE NOT REQUESTED TO BE EXCLUDED FROM THE CLASS, WHEN THE SETTLEMENT BECOMES FINAL YOU WILL BE RELEASING DEFENDANTS FOR THE CLAIMS DESCRIBED BELOW, AND YOU WILL BE BOUND BY THE RELEASES IN THE SETTLEMENT AGREEMENT INCLUDING THE COVENANT NOT TO SUE—EVEN IF YOU DO NOT FILE A PROOF OF CLAIM**

In exchange for Amaranth LLC's payments of the Initial Payment and the Additional Payment, Members of the Class will release their claims against the Amaranth Released Parties arising in any way out of transactions in Class Contracts, that is, arising in any way from the nucleus of operative facts alleged or at issue or underlying the action, whether or not asserted in the Action (the "Released Claims"), as is more fully set forth below.

Within five business days following the Effective Date, Lead Counsel will, under Rule 41(a) of the Federal Rules of Civil Procedure, voluntarily dismiss the Fraudulent Conveyance Action by filing a notice of dismissal. That notice of dismissal will dismiss the Fraudulent Conveyance Action with prejudice and without costs.

*****

(a) In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, and provided that the Court approves this Settlement Agreement, effective upon the Effective Date each and every Class Member hereby releases and forever discharges, to the fullest extent permitted by law, the Released Parties from and against any and all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature and kind whatsoever, including without limitation costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that each and every Class Member (including any of their past, present or future parents, subsidiaries, divisions, affiliates, stockholders, and each and any of their respective stockholders, officers, directors, insurers, general or limited partners, agents, attorneys, employees, legal representatives, trustees, associates, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund (the "**Releasing Parties**"), ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising in any way (i) from any transactions involving or relating to the Class Contracts, however made, between February 16, 2006, and September 28, 2006, inclusive, resulting from the nucleus of operative facts alleged or at issue or underlying the Actions, whether or not asserted in the Actions or from any losses incurred, in whole or in part, as a result of such transactions; and (ii) from any transfers that are the subject of the Fraudulent Conveyance Action (collectively, the "**Released Claims**"). Each Releasing Party hereby covenants and agrees that he/she/it shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims. The Final Order and Judgment shall expressly enjoin the Releasing Parties from asserting any such claims against any of the Released Parties.

(b)  In addition, each Releasing Party hereby expressly waives and releases any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> **Section 1542.  <u>General release extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor[.]**

Each Releasing Party also hereby expressly waives and releases any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Releasing Party may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Section 10 but each Releasing Party, through this Settlement Agreement, and with the ability to seek independent advice of counsel, hereby expressly waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  The releases herein given by the Releasing Parties shall be and remain in effect as full and complete releases of the claims set forth in the Actions, notwithstanding the later discovery or existence of any such additional or different facts relative hereto or the later discovery of any such additional or different claims that would fall within the scope of the release provided in Section 10 of this Settlement Agreement, as if such facts or claims had been known at the time of this release.

(c)  Each Class Member must execute a release and covenant not to sue in conformity with this Section in order to receive his/her/its share of the Settlement Fund.  Lead Counsel shall ensure that each claim form provided to Class Members contains a copy of the release and covenant not to sue set forth in this Section, which must be signed by the Member of the Class or his/her/its authorized representative as a precondition to receiving any portion of the Settlement Fund. Each Class Member's claims shall be released pursuant to Sections 10(a) and 10(b) of this Settlement Agreement, regardless of whether he/she/it executes a release and covenant not to sue pursuant to this Section 10(c).

*****

The settlement agreement does not settle or compromise any claims other than those set out therein.  All rights of the Plaintiffs or any Member of the Class against any other person or entity other than the Released Parties are specifically reserved by the Plaintiffs and the Members of the Class.

### B. Settlement With The Floor Broker Defendants

On behalf of the Class, the Plaintiffs entered into the settlement with the Floor Broker Defendants on December 22, 2011.  The following description of the proposed settlement is only a summary.  This description and this entire Notice are qualified in their entirety by the

9

settlement agreement which is on file with the Court at the address indicated in this Notice and is available at the official Settlement website www.amaranthcommoditieslitigation.com.

## 1. The Consideration Provided By the Floor Brokers For The Benefit of The Class

Pursuant to the terms of the settlement agreement, the Floor Broker Defendants and non-party Vincent Rufa (a former clerk of Defendant ALX Energy Inc.) have agreed to provide the following cooperation to Plaintiffs' Counsel for the benefit of the Class.

Defendant DeLucia has agreed to make himself available for up to 22.5 hours of interview time with Plaintiffs' Counsel. Defendants DeLucia and ALX have further agreed to provide all non-privileged documents in their possession or control relating to the Action and to provide up to 6 additional hours of interview time relating to issues surrounding such documents. *Id*. Finally, Vincent Rufa has agreed to sign affidavits reflecting truthful testimony, appear at trial to testify truthfully and make himself available for up to 7 hours of interviews with Class Counsel.

## 2. The Releases, Discharge and Covenant Not To Sue

**IF YOU HAVE NOT REQUESTED TO BE EXCLUDED FROM THE CLASS, WHEN THE SETTLEMENT BECOMES FINAL YOU WILL BE RELEASING DEFENDANTS FOR THE CLAIMS DESCRIBED BELOW, AND YOU WILL BE BOUND BY THE RELEASES IN THE SETTLEMENT AGREEMENT INCLUDING THE COVENANT NOT TO SUE**

In exchange for the consideration provided by the Floor Broker Defendants, Members of the Class will release their claims against the Floor Broker Defendants arising in any way out of transactions in Class Contracts, that is, arising in any way from the nucleus of operative facts alleged or at issue or underlying the action, whether or not asserted in the Action (the "Released Claims"), as is more fully set forth below.

\*\*\*\*

(a) In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, and provided that the Court approves this Settlement Agreement, effective upon the Effective Date each and every Class member hereby releases and forever discharges, to the fullest extent permitted by law, the Released Parties from and against any and all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature and kind whatsoever, including without limitation costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that each and every Class member (including any of their past, present or future parents, subsidiaries, divisions, affiliates, stockholders, and each and any of their respective stockholders, officers, directors, insurers, general or limited partners, agents, attorneys, employees, legal representatives, trustees, associates, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the Settlement (the "Releasing Parties"), ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising in any way from any

transactions involving or relating to NYMEX natural gas futures contracts for the months of March 2006 through April 2007, inclusive, however made, between February 16, 2006, and September 28, 2006, inclusive, resulting from the nucleus of operative facts alleged or at issue or underlying the Action, whether or not asserted in the Action or from any losses incurred, in whole or in part, as a result of such transactions (collectively, the "**Released Claims**"). Each Releasing Party hereby covenants and agrees that he/she/it shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims. The Final Order and Judgment shall expressly enjoin the Releasing Parties from asserting any such claims against any of the Released Parties.

(b) In addition, each Releasing Party hereby expressly waives and releases any and all provisions, rights, and benefits conferred by §1542 of the California Civil Code, which reads:

Section 1542. <u>General release extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor[.]

Each Releasing Party also hereby expressly waives and releases any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Section but each Releasing Party, through this Settlement Agreement, and with the ability to seek independent advice of counsel, hereby expressly waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The releases herein given by the Releasing Parties shall be and remain in effect as full and complete releases of the claims set forth in the Actions, notwithstanding the later discovery or existence of any such additional or different facts relative hereto or the later discovery of any such additional or different claims that would fall within the scope of the release provided in Section 5 of this Settlement Agreement, as if such facts or claims had been known at the time of this release.

\*\*\*\*

The settlement agreement does not settle or compromise any claims other than those set out therein. All rights of the Plaintiffs or any Member of the Class against any other person or entity other than the Released Parties are specifically reserved by the Plaintiffs and the Members of the Class.

### III.   YOUR OPTIONS

#### A.   <u>Submit a Proof of Claim</u>

As a Member of the Class, you may be entitled to share in the Net Settlement Fund if you submit a valid and timely Proof of Claim demonstrating that you have an Allowed Claim.

An important aspect of the Settlement is that Amaranth LLC is not entitled to any reversion of the Settlement Fund unless the Net Settlement Fund exceeds the sum of the Allowed Claims.  *See* II.A.3 above.

B. **Object To The Settlements**

Any Member of the Class may appear at the Final Approval Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness, and adequacy of the proposed settlements or any related matter (including the request for attorneys' fees or the plan of allocation or any other matter).

However, no person shall be heard in opposition to the proposed settlements, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless, by _____, 2012, such person files the following with the Court and serves the same on or before such filing by hand or overnight mail on the Lead Counsel and all counsel of record for the Amaranth Defendants and the Floor Broker Defendants: (i) a written notice of intention to appear; (ii) proof of membership in the Class; (iii) a detailed statement of the objections to any matters before the Court; (iv) a statement advising of any court proceeding in which said objector has made an objection to a proposed class action settlement within the past three years, including case name, docket number, and court; (v) the grounds or reasons why the Member of the Class desires to appear and be heard; and, (vi) all documents or writings the Member of the Class desires the Court to consider.

> Christopher McGrath
> **Lovell Stewart Halebian Jacobson LLP**
> 61 Broadway, Suite 501
> New York, NY  10006
>
> Vincent Briganti
> Geoffrey M. Horn
> **Lowey Dannenberg Cohen & Hart, P.C.**
> 1 North Broadway, Suite 509
> White Plains, NY  10601-2310
>
> Louis Burke
> **Louis F. Burke, P.C.**
> 460 Park Avenue, 21st Floor
> New York, NY  10022
>
> *Counsel for Plaintiffs*
>
> Amelia T.R. Starr
> **DAVIS POLK & WARDWELL LLP**
> 450 Lexington Avenue
> New York, New York 10017

>Stephen J. Senderowitz
>**WINSTON & STRAWN LLP**
>35 West Wacker Drive
>Chicago, IL 60601
>
>Geoffrey Aronow
>**BINGHAM MCCUTCHEN LLP**
>2020 K Street, NW
>Washington, DC 20006-1806
>
>Andrew C. Lourie
>**KOBRE & KIM LLP**
>800 Third Avenue
>New York, NY 10022
>
>Joshua A. Levine
>**SIMPSON THACHER & BARTLETT LLP**
>425 Lexington Avenue
>New York, NY 10017
>
>*Counsel for the Amaranth Defendants*
>
>Steven R. Goldberg
>One North End Avenue, Suite 1201
>New York, New York 10282
>
>*Counsel for the Floor Broker Defendants*

C.  **Request To Be Excluded From Class**

To exclude yourself from the Class (and thereby the settlements), you must submit a written request that clearly states: (i) the date of acquisition of each position in any Class Contract; (ii) when and at what price such position(s) was/were acquired, closed out or sold; and (iii) a statement and description of whether positions in the Class Contracts were acquired as a hedge of other positions or exposure.

Requests for exclusion from the Class must be sent by First-Class mail (preferably certified mail) to Counsel for Plaintiffs, Counsel for the Amaranth Defendants and the Floor Broker Defendants (see addresses in "B" above) and the Settlement Administrator (see address in VIII below).  Requests for exclusion must be received by the Settlement Administrator no later than _____, 2012.

If you exclude yourself from the Class, you will not be bound by the settlement agreements and can independently pursue claims you may have against Defendants at your own expense. You may also enter an appearance through an attorney if you so desire.  However, if you exclude yourself, you will not be eligible to share in the Net Settlement Fund.

**IV.     PROOF OF CLAIM**

The Proof of Claim, which includes instructions on how and when to make a claim, is attached hereto. You should read the settlement agreements and Proof of Claim carefully before submitting your Proof of Claim or determining another course of action.

**V.      ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

A.      To date, the attorneys representing the Plaintiffs and the Class in this Action have not received payment for their services or reimbursement for their expenses. Class Members are not personally responsible for payment of attorneys' fees or expenses. As compensation for their time and their risk in prosecuting the litigation on a wholly contingent fee basis for four and a half-plus years, Lead Counsel will ask the Court for an award of attorneys' fees in the amount of up to one-third of the Settlement Fund, as a common fund, and for reimbursement of their costs and expenses in the amount of approximately $1,730,000—all to be deducted from the Settlement Fund.

B.      At the time the Net Settlement Fund is distributed to Class Members, the Plaintiffs will seek reimbursement of their own expenses and compensation for their time devoted to this litigation in the aggregate amount of no more than $200,000 to be paid from the Settlement Fund. A separate notice of this application and an opportunity to object will later be provided to Class Members who submit approved proofs of claims. Plaintiff Alan Martin is not a member of the Class as ultimately defined for purposes of the Settlement. However, Plaintiff Alan Martin will seek reimbursement of his expenses and compensation for his time devoted to this litigation, including the time he spent helping Plaintiffs successfully obtain the order of attachment described in Section I.B. above.

**VI.     FINAL APPROVAL HEARING AND THE RIGHT TO OBJECT**

The Court has scheduled a Final Approval Hearing for _____, 2012 at ___ a.m. to be held at the United States Courthouse, 500 Pearl Street, New York, New York. At the Final Approval Hearing the Court will determine if the proposed Settlement is fair, reasonable, and adequate. The Court will also consider Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses.

The time and date of the Final Approval Hearing may be continued from time to time without further notice and you are advised to confirm the time and location if you wish to attend; as soon as practicable after any change in the scheduled date and time, such change will be posted on the settlement website www.amaranthcommoditieslitigation.com.

If you are a Member of the Class, you are entitled to appear, in person or through duly authorized attorneys, and to show cause why the Settlement or other applications should or should not be approved. However, if you wish to appear you must submit a written statement, along with any materials you wish the Court to consider. This written statement must be received by the Court (at the address provided above) no later than _____, 2012 or it will not be considered. Such materials must also be served on Class Counsel and counsel for Defendants at the addresses set forth in III.B. by overnight mail or by hand or they will not be considered.

**VII.     CHANGE OF ADDRESS**

If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please enter your current information online at www.amaranthcommoditieslitigation.com, or send it to the Administrator at the address set forth in VIII. below.

**VIII.    THE SETTLEMENT ADMINISTRATOR**

The Court has appointed Rust Consulting, Inc. as the Settlement Administrator. Among other things, the Settlement Administrator is responsible for providing notice of the Settlement to the Class and processing Proof of Claim forms. You may contact the Settlement Administrator through the Settlement website (www.amaranthcommoditieslitigation.com), by telephone toll free at 1-855-460-1525, or by writing to the Settlement Administrator at this address:

> **Amaranth Commodities Litigation**
> c/o Rust Consulting, Inc.
> P.O. Box 24771
> West Palm Beach, FL 33416

**IX.      ADDITIONAL INFORMATION**

The Settlement Agreement and other important documents related to this Action are available online at www.amaranthcommoditieslitigation.com and also available for review during normal business hours at the office of the Clerk of Court, United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10005. If you have questions about this Notice, the procedure for registering, or the Settlement Agreement, you may contact Lead Counsel at the address listed in III.B. above.

<u>**DO NOT CONTACT THE JUDGE OR THE CLERK OF COURT**</u>.

Dated: _____, 2012

                                **BY ORDER OF THE COURT.**

                                Clerk of the United States District Court
                                Southern District of New York