UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION <br><br> This Document Relates To: <br> ALL ACTIONS | ) <br> ) <br> ) <br> ) MASTER FILE NO. <br> ) 07 CIV. 6377 (SAS) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF CHRISTOPHER M. MCGRATH
IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES**

I, Christopher M. McGrath, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. I am a partner with the law firm of Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart").

2. I submit this declaration in support of Lead Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses. Set forth below are Lovell Stewart's legal services rendered in this case, the lodestar value of those services and the expenses reasonably incurred by Lovell Stewart in connection with this litigation for which reimbursement is being requested.

3. Lovell Stewart was appointed by the Court to act as co-lead counsel for the Class. Lovell Stewart also represented Plaintiff Alan Martin.

4. With respect to the standing and background of Lovell Stewart, a firm resume is attached hereto as Exhibit 1. As detailed in the attached firm resume, Lovell Stewart has over thirty years of experience litigating commodity futures manipulation cases and, as sole lead or co-lead counsel, has obtained the **first, second and third** largest class action settlements in the history of the Commodity Exchange Act, 7 U.S.C. §1 *et seq*. See Ex. 1 at pp. 5-6.

5. The tasks undertaken by Lovell Stewart that resulted in the $77.1 million settlement herein include, but are not limited to, the following:

    a) Lovell Stewart's senior partner, Christopher Lovell, was responsible for formulating the litigation strategies throughout this case. This included, for example, seeking an attachment of funds in order to prevent Amaranth LLC from distributing a significant portion of its remaining limited assets.

1

b)  Mr. Lovell successfully argued each important motion in this case, including opposing Defendants' motion to dismiss, Plaintiffs' motion for class certification and Plaintiffs' motion for an attachment of a substantial portion of Amaranth LLC's limited remaining funds;

c)  Mr. Lovell deposed or defended depositions of the majority of the twenty-nine fact and expert witnesses herein;

d)  Mr. Lovell led the settlement negotiations with the Defendants and with the mediator;

e)  Lovell Stewart retained and had primary responsibility for almost all of Plaintiffs' numerous economists, experts and other consultants.  Lovell Stewart helped these experts prepare the many expert reports served in this action.  Such expert reports included the reports submitted by Professor Christopher Gilbert in support of Plaintiffs' successful motion for class certification.  Such expert reports also included the reports submitted by Dr. Craig Pirrong in support of Plaintiffs' successful motion for an attachment.

f)  Lovell Stewart prepared the initial and final drafts of almost all pleadings and briefs in the action including, but not limited to, the complaints, the oppositions to the numerous motions to dismiss, papers in support of the class motion in the District Court and on petition to the United States Court of Appeals for the Second Circuit, Plaintiffs' motion for an attachment of $72.4 million of Amaranth LLC's limited remaining funds, and other briefs;

g)  Lovell Stewart propounded and responded to voluminous discovery requests including, for example, Rule 34 document requests, Rule 33 interrogatories and numerous Rule 45 subpoenas.  Lovell Stewart also prepared hundreds of requests for admissions relating to Amaranth's positions and trades in natural gas futures contracts and derivatives over the eight-month Class Period;

h)  Lovell Stewart's attorneys used the firm's proprietary document review software to process, index and analyze hundreds of thousands of documents produced by Defendants and third parties;

i)  Lovell Stewart negotiated the initial and final settlement documents including the Settlement Agreement, Class Notice, Plan of Allocation and other settlement documentation.

6.  Lovell Stewart began its work on this case in July, 2007.  The schedule below is a summary reflecting the amount of time spent by the attorneys and professional support staff of Lovell Stewart who were involved in this litigation, and the lodestar calculation based on Lovell Stewart's current billing rates.  The following schedule was prepared from daily time records regularly prepared and maintained by Lovell Stewart, which are available at the request of the

Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

| Attorneys | Rates | Hours | Charges |
|---|---|---|---|
| | | | |
| Christopher Lovell (Partner) | $845.00 | 3,491.56 | $2,950,368.20 |
| Gary Jacobson (Partner) | $820.00 | 2,128.15 | $1,745,083.00 |
| Victor Stewart (Partner) | $820.00 | 180.10 | $147,682.00 |
| Jody Krisiloff (Partner) | $720.00 | 727.01 | $523,447.20 |
| Ian Stoll (Partner) | $680.00 | 3,716.17 | $2,526,995.60 |
| Peggy Wedgworth (Partner) | $675.00 | 402.10 | $271,417.50 |
| Craig Essenmacher (Partner) | $635.00 | 3,105.50 | $1,971,992.50 |
| Keith Essenmacher (Partner) | $615.00 | 674.30 | $414,694.50 |
| Christopher McGrath (Partner) | $485.00 | 2,748.25 | $1,332,901.25 |
| Merrick S. Rayle (Of Counsel) | $620.00 | 6.20 | $3,844.00 |
| Troy Gorman (Of Counsel) | $585.00 | 140.75 | $82,338.75 |
| Albert Powell (Of Counsel) | $515.00 | 227.00 | $116,905.00 |
| Imtiaz Siddiqui (Associate) | $450.00 | 84.45 | $38,002.50 |
| James Payne (Of Counsel) | $400.00 | 330.25 | $132,100.00 |
| Benjamin Herbert (Of Counsel) | $320.00 | 242.00 | $77,440.00 |
| Jacob Ferris (Of Counsel) | $320.00 | 285.00 | $91,200.00 |
| Laura Johnson (Of Counsel) | $315.00 | 52.25 | $16,458.75 |
| Lisa Peterson (Of Counsel) | $320.00 | 15.50 | $4,960.00 |
| Laura Wittman (Of Counsel) | $320.00 | 51.00 | $16,320.00 |
| Matthew Kuipers (Of Counsel) | $320.00 | 299.10 | $95,712.00 |
| Michael Oakes (Of Counsel) | $320.00 | 154.50 | $49,440.00 |
| Fred Isquith (Associate) | $310.00 | 1,286.70 | $398,877.00 |
| Ben Jaccarino (Associate) | $310.00 | 1,808.15 | $560,526.50 |
| | | | |
| **Paralegals and Legal Assistants** | | | |
| | | | |
| Ken Smith (Paralegal) | $220.00 | 149.33 | $32,852.60 |
| Marco Tanudra (Paralegal) | $195.00 | 180.25 | $35,148.75 |
| Christina Segro (Paralegal) | $195.00 | 140.75 | $27,446.25 |
| Tucker Kiessling (Paralegal) | $170.00 | 785.84 | $133,592.80 |
| Travis Carter (Paralegal) | $160.00 | 42.26 | $6,761.60 |
| Lindsay Jones (Intern) | $70.00 | 73.00 | $5,110.00 |
| | | | |
| **Totals** | | 23,527.42 | $13,809,618.25 |

3

7. As set forth in the above schedule, the total number of professional hours expended on this litigation by Lovell Stewart is 23,527.42 hours. The total lodestar value of Lovell Stewart's professional services is $13,809,618.25.

8. The hourly rates for Lovell Stewart's attorneys and professional support staff are the firm's current standard hourly rates. Lovell Stewart's standard hourly rates submitted to Judge Kaplan in February, 2011 were approved and fees were awarded based on the firm's lodestar. *In re XM Satellite Radio Copyright Litig.*, 07-cv-4682, Docket No. 123 at ¶18 (LAK) (S.D.N.Y.) (awarding Lovell Stewart a fee award based on its lodestar). The firm's current hourly rates have been increased by 6%-7% from their previously accepted and approved levels in order to compensate for changes in current market rates.

9. Lovell Stewart's lodestar figures are based upon the firm's current billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in Lovell Stewart's current billing rates.

10. As detailed and categorized in the below schedule, Lovell Stewart has incurred a total of $766,108.09 in un-reimbursed expenses in connection with the prosecution of this litigation.

| Expense Categories: | Cumulative Expenses |
|---|---|
| | |
| Expert/Consultants | $634,262.75 |
| Research/Westlaw/Historical Data | $57,617.00 |
| Travel/Meals/Hotels/Transportation | $25,284.46 |
| Mediation | $19,327.61 |
| Filing/Service/Court Reporter Fees | $11,027.48 |
| Photocopies/Reproduction | $9,692.95 |
| Document Review Hardware | $4,315.41 |
| Postage/Delivery | $3,549.25 |
| Telephone/Facsimile Transmission | $1,031.18 |
| | |
| **TOTAL EXPENSES** | $766,108.09 |

11. The above expenses incurred in this action are reflected in the books and records of Lovell Stewart. These books and records are prepared from expense vouchers, check records and other source materials.

4

5

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 12, 2012


*/s/ Christopher M. McGrath*
Christopher M. McGrath

**EXHIBIT 1**

**LOVELL STEWART HALEBIAN JACOBSON LLP**

Lovell Stewart Halebian Jacobson LLP ("LSHJ") and its predecessors (collectively the "Firm") have been prosecuting complex class actions since 1980. The Firm believes that the best measure of class action attorneys is the recovery they obtain for their clients. Reportedly, the amount of recovery in financial class actions varies but averages approximately 5-10 percent of class member losses.

However, the Firm, as Court-appointed lead or co-lead counsel for the class, has succeeded in obtaining five different class action settlements that recovered, after deduction for all costs and attorneys fees, one hundred cents on each dollar of losses[1] of each claiming class member:

- ***In re NASDAQ Market-Makers Antitrust Litigation***, 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("*NASDAQ*") ($1,027,000,000);
- ***In re Sumitomo Copper Litigation***, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*") ($149,600,000);
- ***Blatt v. Merrill Lynch Fenner & Smith Inc.***, 94 Civ. 2348 (JAG) (D.N.J.) ("*Blatt*") ($70,000,000);
- ***In re Soybeans Futures Litigation***, 89 Civ. 7009 (CRN) (N.D. Ill.) ($21,500,000); and
- ***Kaplan v. E.F. Hutton Group, Inc., et al.***, Civ. Action No. 88-00889 (N.Y. Sup. Ct.) ($8,180,000).

A less important indicator of Firm's class action settlements, is how the recovery ranks among other class action settlements under the governing statutory scheme. Three of the above mentioned settlements represented the largest class action settlement in the history of the applicable federal statute to that point. See ***In re NASDAQ Market-Makers Antitrust Litigation***, 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("this all-cash settlement [for $1,027,000,000], achieved through 'four years of hard-fought litigation,' apparently is the largest recovery (class

---

[1] "Losses" means single, actual damages, exclusive of trebling and also exclusive of any prejudgment interest.

action or otherwise) in the hundred year history of the state and federal antitrust laws."); ***In re Sumitomo Copper Litigation,*** 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act"); ***Blatt v. Merrill Lynch Fenner & Smith Inc.***, 94 Civ. 2348 (JAG) (D.N.J.) ("by far the largest settlement" of class action claims under the Investment Company Act, *Securities Class Action Alert* letter dated August 17, 2000).

Although this Firm has been privileged to serve as class counsel in many types of financial class actions, the Firm has focused on price manipulation and price fixing class actions. Bloomberg Markets' magazine has reported about the Firm's senior partner, Christopher Lovell, as follows:

> To classify Pacific Investment Management Co. [managed by CEO and founder Bill Gross] as a large mutual fund family does it little justice. Its $747 billion in bond assets almost matches the gross domestic product of Australia.
>
> \*\*\*\*\*
>
> Pimco has found itself up against a formidable opponent in [Christopher] Lovell. What [Bill] Gross is to the world of Bonds, [Christopher] Lovell is to commodities manipulation and price-fixing lawsuits.

Seth Lubove and Elizabeth Stanton, *Pimco Power in Treasuries Prompts Suit*, BLOOMBERG MARKETS, February 20, 2008 (April 2008).

The Firm or its senior partner, Mr. Lovell:

(1) in 1979-1980, successfully defended the trial of a CEA manipulation claim, ***In the Matter of Harold Collins***, Commodity Futures Trading Commission ("CFTC") Docket No. 77-15, 1984 WL 48079 (C.F.T.C. February 3, 1984);[2]

---

[2] *See also* ***In the Matter of Manning Stoller***, CFTC 77-15, 1990 WL 282910 (C.F.T.C. April 18, 1990) (final order awarding attorneys' fees under the Equal Access To Justice Act).

(2)  in 1981, authored the successful U.S. Supreme Court brief in the original case which implied a private right of action under the Commodity Exchange Act for manipulation, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982);

(3)  in 1983, successfully tried and obtained a jury verdict for virtually all of the requested damages (and later upheld such verdict on appeal) on what was reportedly the first commodity futures manipulation claim to be tried under the amended Commodity Exchange Act (which created the CFTC and took effect in 1975) as well as on an accompanying price fixing claim.  *Strobl v. New York Mercantile Exch.*, 582 F.Supp. 770 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985)), *cert. denied sub nom.*, *Simplot v. Strobl*, 474 U.S. 1006 (1985) (after the Department of Justice decided not to bring price-fixing claims under the federal antitrust laws and after the CFTC lost a trial seeking to prove attempted manipulation, the Firm tried and won claims for price fixing and manipulation in a three-week jury trial).[3]

The Firm, in its own name or through one of its partners, has served as Court-appointed counsel in price-fixing or price-manipulation class actions in which billions of dollars have been recovered for the clients.

● In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998), the Firm, as one of four co-lead counsel, obtained the largest class action settlement (up to that time) in the history of the antitrust laws, **$1,027,000,000** on price-fixing claims.  According to plaintiffs' experts and due to the absence of any reversionary terms in the

---

[3] At the conclusion of the trial record, the Honorable Lloyd F. MacMahon stated to Mr. Lovell and Defendants' counsel, Peter Fleming, Jr., Esq.:  "You both tried a very difficult case very well."  Trial Transcript, November 17, 1983, at 1253:4-5, *Leist, et al. v. Simplot, et al.*, 76 Civ. 4350 (S.D.N.Y.) (LFM), and *Strobl, et al., v. New York Mercantile Exchange, et al.,* 79 Civ. 1834 (S.D.N.Y.) (LFM).

settlement agreements, this settlement produced a pay-out to class members, after deducting all attorneys' fees and costs that equaled their single (non-trebled) damages.

- In *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897 (N.D. Ill.), one of the Firm's senior partners served on the Executive Committee in this price-fixing case in which the second largest class action settlement (up to that time) in the history of the federal antitrust laws, **$696,657,000** plus other relief, was obtained.

- In *In re Auction Houses Antitrust Litigation*, No. 00 Civ. 0648 (LAK) (S.D.N.Y.), the Firm, as interim co-lead counsel in this price-fixing action, prepared the consolidated complaint, retained Professor Hendrik Houthakker as expert, and authored the successful class motion and reply papers. *In re Auction Houses Antitrust Litigation*, 193 F.R.D. 162 (S.D.N.Y. 2000)(LAK) (granting class certification of these claims for alleged price-fixing in violation of the antitrust laws). Without further pleading or contested litigation, and after an attorneys fee auction resulted in the appointment of a new class counsel, the class certified by this Firm's efforts obtained a settlement of **$512,000,000.**

- In *In re Dynamic Random Access Memory ("DRAM") Antitrust Litigation*, MDL No. 1486 (N.D. Cal.), the Firm served as a member of the Executive Committee in this price-fixing class action in which settlements totaling **$325,000,000** were obtained for the class.

- In *Leider v. Ralfe*, No. 01 Civ. 3137 (S.D.N.Y., later transferred to D.N.J.), the Firm filed the first class action on behalf of consumers alleging price fixing and monopolization by DeBeers in violation of the antitrust laws. The Firm was named sole class counsel for the certified class. *Leider v. Ralfe*, 2003 WL 22339305 (S.D.N.Y. 2003) (HB) (certifying for class treatment plaintiffs' claims for injunctive relief under the Wilson Tariff Act and Sections 1 and 2 of the Sherman Act). The Firm prosecuted the claims of the certified class until the conclusion

of an evidentiary hearing on injunctive relief.  On the day before the hearing was to end, De Beers made settlements with other class actions.  These settlements were then amended and enhanced to include the *Leider* case with the other class actions.  The amended settlements were later again amended and enhanced resulting in settlements totaling **$295,000,000** and substantial injunctive relief for the class.  ***Sullivan, et al. v. DB Investments, Inc., et al.***, No. 04-CV-2819 (SRC)(MAS))(final judgment and order filed May 22, 2008 granting final approval of class action settlement) (Docket # 306), *rev'd* 613 F.3d 134 (3rd Cir. July 13, 2010), *opinion vacated* and *rehearing en banc granted*, 619 F.3d 287 (3rd Cir. August 27, 2010), Docket No. 08-2784 (3rd Circuit) (oral argument on approval of settlement held on February 23, 2011)).

- In ***In re Sumitomo Copper Litigation,*** 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*"), the Firm served as Lead Counsel and Chairman of the Executive Committee and obtained the still largest class action recovery in the history of the Commodity Exchange Act **($149,600,000)** on claims for commodity price manipulation.

- In *PIMCO*, Defendants' motion to dismiss has been denied, class certification has been granted by District Court,  ***Kohen v. Pacific Investment Management Co. LLC***, 244 F.R.D. 469 (N.D. Ill. 2007), and upheld by the Court of Appeals. ***Kohen v. Pacific Investment Management Co. LLC***, 244 F.R.D. 469, 475 (N.D. Ill. 2007) *aff'd* 571 F.3d 672 (7th Cir. July 7, 2009) (J. Posner) *petition for rehearing and rehearing en banc denied* (7th Cir. July 31, 2009) *petition for certiorari denied*.   The Firm, as sole Court appointed Lead Counsel, obtained preliminary approval of a **$118,750,000** settlement on January 26, 2011.  This is the largest payment by a single defendant, and the second largest recovery, in the history of class actions for manipulation under the CEA. This settlement provides that there will be no reversion to Defendants until claiming Class members receive in excess of 118% of their Allowed Claims.

5

● In *In re Natural Gas Commodity Litigation,* Index No. 03 CV 6186 (VM)(AJP)(S.D.N.Y.) ("*Natural Gas*"), the Firm served as co-lead counsel in this action in which the second largest class action recovery in the history of the CEA (**$100,800,000**) was obtained.

● In *In re Air Cargo Shipping Services Antitrust Litigation,* 06 MD 1775 (E.D.N.Y.) (CBA), the Firm was appointed U.S. indirect purchaser co-lead counsel on claims alleging price fixing in violation of antitrust and consumer protection laws. One of the thirty-seven defendants has agreed to settle the claims alleged here for $85,000,000. See *In re Air Cargo Shipping Services Antitrust Litigation*, 2009 WL 3443405 at *1 (E.D.N.Y. August 21, 2009) (dismissing indirect purchaser claims for damages) *appeal pending*.

● In *Billing v. Credit Suisse First Boston Ltd.,* 287 F.Supp.2d 497 (S.D.N.Y. 2003) (dismissing complaint), *vacated*, 426 F.3d 130 (2d Cir. 2005) ("epic Wall Street conspiracy") (vacating dismissal and remanding for further proceedings), *reversed*, 127 S.Ct. 2383 (2007), the Firm was appointed Chairman of Co-Lead Counsel in this class action alleging price fixing.

The Firm has also tried or prosecuted many securities manipulation or fraud cases. *E.g.*:

(1) In *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.) (SAS), the Firm has served as de facto co-lead counsel in these consolidated 308 class actions alleging fraud and manipulation under the federal securities laws; the settlement for $**586,000,000** has been approved. See *In re IPO Securities Litigation*, ___F.R.D.___, 2009 WL 3397238 at *4, n.35 (S.D.N.Y. October 5, 2009) (approving settlement).

(2) *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004), the Firm was appointed to the Executive Committee in this securities fraud class action in which four settlements totaling $**320 million** have been approved.

(3) In *Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (D.N.J.) (JAG) ("*Blatt*"), the Firm was appointed as co-lead counsel in this action resulting in a $**76.5 million** class action settlement which provided claiming class members, after all attorneys fees and costs had been paid, with a positive return on their investment (exclusive of prejudgment interest), and is the largest class action recovery under the Investment Company Act, 15 U.S.C. § 80a-1, *et seq*.

(4) In *Black v. Finantra Capital, Inc., et al.*, 01 Civ. 6819 (S.D.N.Y.) (JSR), the Firm successfully tried and obtained a jury verdict for manipulation. Although the District Court vacated the verdict, the Second Circuit Court of Appeals reinstated it, *Black v. Finantra*, 418 F. 3d 203 (2d Cir. 2005), leading to a settlement before the final judgment was entered.

(5) *Fiala, et al. v. Metropolitan Life Insurance Company, et al.*, Index No. 601181/00 (N.Y. Sup. Ct. N.Y. County), the Firm was appointed as Chairman of Co-Lead Counsel in this class action alleging fraud and violation of New York Insurance Law that has been settled, along with a similar federal securities law action, for $50,000,000. *See Fiala v. Metropolitan Life Insurance Co.*, 776 N.Y.S.2d 29 (1st Dep't 2004); *Fiala v. Metropolitan Life Insurance Co.*, Slip Op., 2006 WL 4682149 (N.Y. Sup. Ct., May 2, 2006 N.Y. County) (certifying the class).

The primary attorneys of the Firm are set forth below.

I.  **Gary S. Jacobson**:

    A.    was named Valedictorian of John Randolph Tucker High School, Class of 1968;

    B.    is a 1972 graduate of Yale (with Honors), and a 1976 graduate of the University of Virginia Law School (Law Review 1974-76);

    C.    has been litigating antitrust cases since 1976, has tried more than twenty-five cases, and has an "AV" rating from Martindale-Hubbell; and

    D.    has extensive experience in prosecuting antitrust and commodity futures manipulation class actions including arguing the motion to dismiss in *Sumitomo* (*see* fn 1), and preparing the Class Certification Brief, the Reply Brief on Class Certification, and the Second Circuit Brief in Opposition to the Petition for

7

Review of plaintiffs' successful class motion in *Natural Gas supra*, 231 F.R.D. 171 (S.D.N.Y. 2005), *petition for review denied*, (2d Cir. August 1, 2006).

II. **Victor E. Stewart**:

   A. was named Valedictorian of St. Marks School Class of 1968;

   B. is a 1972 graduate of Yale, B.A., a 1975 graduate of Harvard Business School, M.B.A., and a 1979 graduate of the University of Virginia Law School, J.D.; and

   C. has extensive experience in prosecuting securities and commodity futures manipulation claims. This includes second chairing the ***Strobl*** trial conducting many depositions in Sumitomo, (*see* fn 3 *supra*), and serving as one of three supervising attorneys in charge of document and deposition discovery in *In re IPO Sec. Litig.*, 21 MC 92 (S.D.N.Y.) (SAS) ("*IPO Securities*")(alleging securities manipulation).

III. **Jody Krisiloff**:

   A. is a 1976 graduate of Mount Holyoke College, B.A., *summa cum laude*;

   B. is a 1979 graduate of Columbia University School of Law, J.D.;

   C. has more than twenty-five years' experience with commercial and securities litigation, including litigating primarily class actions since 1991; and

   D. has acted as Chairperson of Co-Lead Counsel for the Firm in ***Fiala v. Metropolitan Life Ins. Co.***, 6 A.D.3d 320, 776 N.Y.S.2d 29 (1st Dep't 2004)("*MetLife*")(challenging what was at the time the largest demutualization of a mutual insurance company). *MetLife* has been settled for $50,000,000.

IV. **John Halebian:**

   A. graduated from Georgetown University (A.B., 1974) and Villanova Law School (J.D. 1977) where he served on the *Law Review* (1975-77) as a Case and comments Editor and as Editor-in-chief of The Docket, the law school newspaper;

   B. since graduating from law school in 1977, has specialized in federal and state corporate and commercial litigation with an emphasis on class actions and securities litigation;

   C. was appointed to the Executive Committee in ***In re Global Crossing Securities and ERISA Litig.***, 225 F.R.D. 436 (S.D.N.Y. 2004) (three settlements totaling $320 million);

8

    D.    served as lead or co-lead counsel or as a member of an executive or steering committee in many other class action shareholder litigations around the country that have been successfully prosecuted to conclusion; and

        a.    prosecuted, defended and tried to conclusion several complex commercial and securities fraud litigations on behalf of individual claimants and companies before the New York Stock Exchange, the National Association of Securities Dealers and the American Arbitration Association. These actions generally involved brokerage customer claims of churning or unsuitable investments, and corporate wrongdoing.

V.    **Ian T. Stoll (Partner)**

    A.    graduated from the University of California at Berkeley, A.B., in 1987 and the State University of New York, Buffalo School of Law, J.D., in 1996;

    B.    is admitted to practice in New York and before the United States District Courts for the Southern and Eastern Districts of New York; and

VI.    **Craig M. Essenmacher (Partner)**

    A.    is a 1997 graduate of Michigan State University - DCL *summa cum laude*; and in 1994 and 1989 a PhD of Philosophy in Chemistry and a B.S. in Chemistry, respectively, from Michigan State University, the recipient of the Jurisprudence Award, King Scholarship Program, Alumni Scholarship Award, natural Resources Scholarship Award;

    B.    admitted to practice in the State of Michigan, before the United States District Court for the Eastern District of Michigan, and before the United States Court of Appeals for the Sixth Circuit; and

VII.    **Christopher Lovell**, the Firm's senior attorney, has tried more than sixty cases (counting administrative and arbitration hearings), has argued numerous appeals in eight different Circuit courts; and

    A.    graduated from New York University School of Law in 1976, receiving the Vanderbilt Award;

    B.    was associated with Beekman & Bogue from 1976 until 1980;

    C.    has maintained a private law practice since June 1980

    D.    has an "AV" rating from Martindale Hubbell;

    E.    was first appointed by a Court as class action or derivative action counsel in 1981; and

    F.      has spoken about commodity futures, antitrust and securities litigation matters to ABA, New York State, PLI and other attorney audiences for the last fifteen years.

Other attorneys in the Firm are:

VIII. **Adam C. Mayes:**

    A.      is a graduate of Yale University, *cum laude*, B.A. 1985, and of the University of California, Berkeley, M.A. (Asian Studies) and J.D. 1993;

    B.      studied at Chiang Mai University, Thailand, and was Legislative Assistant to Members of the Hong Kong Legislative Council, 1993-1997;

    C.      admitted to practice in California and New York; and

    C.      has been associated with this Firm since 2005, working primarily on securities disclosure and derivative actions.

IX. **Keith Essenmacher:**

    A.      is a graduate of Michigan State University in 1995;

    B.      is a graduate of Michigan State University Law, J.D. 2000;

    C.      was admitted to practice in the State of Michigan in 2000, and before the United States District Court for the Eastern District of Michigan in February 2001; and

    D.      has conducted electronic and other document discovery in class actions, and prosecuted and tried various individual actions.

X. **Christopher M. McGrath:**

    A.      is a 2001 graduate of the University at Missouri, B.A. (with Honors);

    B.      is a 2004 graduate of the University of Missouri, J.D.;

    C.      was admitted to practice in New York in 2005; and

    D.      has worked with this Firm since 2005 almost exclusively on commodity futures manipulation cases (*Natural Gas* and *Pimco*).

XI. **Fred Isquith**

    A.      is a 2004 graduate of Cornell University, B.S.;

        B.     is a 2009 graduate of Syracuse University College of Law, J.D. and 2009 Graduate of Syracuse University Maxwell School, M.P.A.

        C.     has passed the July 2009 New York State Bar Exam (Bar admission pending)

XII. **Ben Jaccarino**

        A.     is a 2006 graduate of Wheaton College, B.A.;

        B.     is a 2009 graduate of Suffolk Law School, J.D.

        C.     is licensed to practice in the State of New York, 2010, and before the United States District Courts for the Southern and Eastern Districts of New York, 2010;

        D.     has worked with this Firm since 2008 on commodity futures manipulation (*Pimco*), and Antitrust (*Precision Associates v. Panalpina et al*) cases.

XIII. **Merrick Scott Rayle**

        A.     received his law degree from Indiana University in 1970, where he was a member of the Indiana Law Review;

        B.     served as a Law Clerk to the Hon. Roy L. Stephenson, Circuit Judge, 8th Circuit U.S. Court of Appeals, 1970-72;

        C.     has nearly thirty years' experience in complex commercial litigation, trials, and appeals, including trying over twenty-five cases; and

        D.     has extensive experience with this Firm in prosecuting commodity futures and securities manipulation class actions.

XIV. **Riki Sakamoto**

        A.     is a graduate of Tulane University Law School

        B.     was admitted to the bar of New York in 1998

XV. **Janetta A. Pittman (Of Counsel)**

        A.     Is a graduate of the University of Michigan, Ann Arbor, B.A. in Communications, 2003;

        B.     Is a graduate of Michigan State University College of Law, J.D., 2008; and

        C.     Is licensed to practice in the State of Michigan

XVI. **James D. Payne (Of Counsel)**

    A.    Is a graduate of Huntingdon College (Montgomery, AL), B.A.;

    B.    Is a graduate of The American University School of International Service (Washington, D.C.), M.A. in International Economic Policy;

    C.    Is a graduate of The American University Washington College of Law (Washington, D.C.), J.D.;

    D.    Is a graduate of University of Amsterdam, LL.M. in International and European Union Trade Law, highest distinction; and

    E.    Is licensed to practice in the states of New York, New Jersey, Alabama and in the United States Court of International Trade.

XVII. **Matthew D. Kuipers (Of Counsel)**

    A.    Is a graduate of Calvin College, B.S., 2004;

    B.    Is a graduate of Michigan State University College of Law, J.D., 2007; and

    C.    Is licensed to practice in the State of Michigan.